**MULCAHY LLP**
James M. Mulcahy (SBN 213547)
*jmulcahy@mulcahyllp.com*
Filemon Carrillo (SBN 314220)
*fcarrillo@mulcahyllp.com*
4 Park Plaza, Suite 1230
Irvine, California 92614
Telephone: (949) 252-9377
Facsimile: (949) 252-0090
*Attorneys for Plaintiff HONEY BAKED HAM INC.*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HONEY BAKED HAM INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HONEY BAKED HAM COMPANY LLC, a Delaware limited liability company; and Does 1 through 20,<br><br>Defendants. | Case No.: 8:19-cv-01528<br><br>**COMPLAINT FOR:**<br><br>**Breach of Contract – Temporary Restraining Order, Preliminary and Permanent Injunction** |

Plaintiff HONEY BAKED HAM INC. ("HBH California" or "Plaintiff") hereby complains against HONEY BAKED HAM COMPANY LLC ("Defendant") as follows:

## NATURE OF ACTION

1. Defendant is the licensor and franchisor of the Honey Baked Ham brand (the "HBH Brand" or "Brand"). It offers franchises of Honey Baked Ham brick and mortar outlets and sells HBH Branded products online. HBH California has been Defendant's licensee and master franchisee for the State of California for over 30 years.

2. Under the terms of the parties' License Agreement, HBH California was granted an exclusive license to (1) offer Honey Baked Ham restaurant franchises and (2) offer, complete, and fulfill online sales of HBH Branded and non-branded products in the State of California (and, under limited circumstances, in other states). This exclusivity expressly prohibits Defendant from soliciting, taking, or fulfilling online sales of these products to California customers. This case is about Defendant's recent notice that it intends to launch a new website on August 11, 2019, that will directly violate HBH California's right to be the exclusive online retailer of HBH Branded products within California.

3. In order to implement the geographical division for online sales, the parties currently operate separate websites that offer online shopping. The National Website (www.honeybaked.com) promotes HBH Branded products throughout the country and is operated and controlled by Defendant.

4. To begin the online purchase from the National Website, the consumer is asked to select her state of residence. Customers who select "California" are redirected to the HBH California website (www.shophoneybaked.com) and customers who select any other state are directed to the website Defendant established to make online sales (www.honeybakedonline.com). This system ensures that each customer orders from the appropriate online retailer and maintains

the orderly system that the parties developed to ensure compliance with the territorial division.

5.     On July 22 and 30, 2019, Defendant served HBH California with letters giving notice that it will remove the mechanism for directing customers to the appropriate online retailer. Beginning on August 11, 2019, Defendant will begin soliciting, taking, and fulfilling all online orders for these products from its National Website. Defendant admits in its letters that the new website will impact HBH California's online sales and that it will lose revenue. It intends to proceed full steam ahead without regard to the devastating effect it will have on Plaintiff's business, effectively thumbing its nose to Plaintiff's exclusivity under the License Agreement.

6.     Beginning on August 11, 2019, unless Defendant is enjoined from violating the License Agreement, Plaintiff's customers will find themselves navigating a new website to place their orders for HBH Branded products. Instead of being directed to Plaintiff's online store as they have for over 15 years, they will be tricked into purchasing from Defendant all the while they are thinking they are purchasing from the retailer to which they have become accustomed. Upon finding a new online catalog, with different product offerings, at higher prices, many will leave the brand altogether.

7.     Plaintiff files this action seeking a temporary restraining order and preliminary and permanent injunction preventing Defendant from patently violating Plaintiff's right to be the exclusive online retailer of HBH Branded products to California consumers.

## PARTIES

8.     Plaintiff HBH California is a California corporation whose principal place of business is in Irvine, California.

9.     Defendant is a Delaware limited liability company with its principal place of business in Alpharetta, Georgia.

10. Plaintiff is unaware of the true names and capacities of Defendants named Does 1 through 20 and therefore sue these Defendants by fictitious names. Each of the Doe Defendants is and was responsible or liable in whole or in part for the acts and omissions alleged in this Complaint.

11. Except as may be indicated to the contrary, Defendant and Does 1 through 20 are referred to collectively as "Defendant" herein.

12. At all times mentioned herein, Defendants, and each of them, were the agents, servants and employees of each remaining Defendant and were, in doing the things complained of, acting within the scope of their agency and/or employment, and acting with the full knowledge or subsequent ratification of their principals or employers.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action under diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff is a California citizen and Defendant is a Delaware limited liability company with its principal place of business in the State of Georgia. Therefore, complete diversity exists.

14. Plaintiff has satisfied the amount in controversy requirement as the value of the requested relief, including attorneys' fees and costs, exceeds the jurisdictional threshold of $75,000.

15. This Court has personal jurisdiction over Defendant on the grounds that it is registered to do business in California with the California Secretary of State. Jurisdiction over Defendant is proper because it has sufficient continuous and systematic minimum contacts with California such that it foresaw the possibility of being sued in this state, including but not limited to, conducting significant business activities in this state and engaging in the conduct which is the subject of this dispute. In fact, the conduct by Defendant that is the subject of this lawsuit concerns its efforts to make sales to customers located in California in violation of HBH California's contractually granted exclusive territory.

16. Venue is also proper in this district in that Defendant is subject to personal jurisdiction in this District and a substantial part of the events occurred in this District.

## FACTUAL BACKGROUND

### I. HISTORY OF THE HONEY BAKED HAM BRAND AND DISTRIBUTION MODEL

17. The Honey Baked Ham brand's (the "HBH Brand" or "Brand") roots stem back to 1957, when its founder Harry J. Hoenselaar opened the first store in Detroit, Michigan, after securing a patent covering his spiral-slicing machine. Since then, the Brand has expanded and is now distributed on a national level via retail stores and catalog and internet sales. Defendant is the licensor and distributor of products under the HBH Brand.

18. As the Brand expanded nationwide, the distribution of HBH Branded products was divided among five parties. Four of the founder's children operated separate entities that acted as sub-franchisors and distributors of the Brand in their own, separate geographical regions within the United States.

19. HBH California was granted an exclusive license to (1) offer and sell franchises of the HBH Brand in California and (2) offer, sell, and fulfill mail-order transactions for the delivery of HBH Branded products. HBH California has served in this capacity for over three decades now and over this period has invested to develop awareness of the Brand within its territory with great success. Defendant and HBH California entered into the current version of the Honey Baked Ham® License Agreement for State of California (the "License Agreement" or "Agreement") on July 1, 2015, renewing HBH California's rights. A true and accurate copy of the License Agreement is attached hereto as **Exhibit A**. Upon information and belief, Defendant is the successor in interest to HBH Limited Partnership with all rights obligations and duties under the Agreement.

20. While HBH California was renewing its License Agreement, the distribution model for the Brand in the remainder of the United States consolidated. In 2015, the licensees that serviced customers outside of California consolidated into one entity—Defendant—that now acts as the franchisor of Honey Baked Ham Co. franchises and distributor of HBH Branded products via mail-order transactions in all states outside of California.

21. Today, HBH California remains the only entity with the right to offer and sell franchises and offer, sell, and fulfill mail-order transactions of HBH Branded products in California. Despite this, on July 22, 2019, Defendant served HBH California with a letter giving it notice that Defendant will begin to solicit California customers and sell and fulfill orders for HBH Branded Products via its new website. As explained below in more detail, Defendant's planned launch of its new website will (*admittedly*) violate HBH California's contractually granted protected territory.

## II. THE LICENSE AGREEMENT GRANTS HBH CALIFORNIA THE *EXCLUSIVE* RIGHT TO SELL TO CALIFORNIA CUSTOMERS VIA ONLINE SALES

22. The License Agreement establishes that HBH California's rights to sell to California customers is *exclusive*, and sets the outer limits of Defendant's level of involvement in the state.

23. Section 2(a) of the Agreement states: "Licensor hereby grants to Licensee the ***exclusive*** right and license to use the Proprietary Marks and the system to (i) promote and operate the HoneyBaked Outlets within the Territory, (ii) market and sell Branded Products and Non-Branded Products through HoneyBaked Outlets within the Territory to consumers for on-premises or off-premises consumption, and

(iii) **Mail Order Transactions**, to the extent permitted by Section 6(b)(xi)."[1] [Ex. A, § 2(a) (emphasis added).] The "Territory" of HBH California is defined as "the entire State of California." [Ex. A, § 1(d).] As such, Plaintiff's exclusive right to sell into California is comprehensive and includes all channels of distribution.

24. In particular, HBH California is granted the exclusive right to sell HBH Branded products via online sales to California customers. With regard to these sales, Defendant "must administer an orderly system for Mail Order Transactions" and may "establish a mail order house, . . . provided that the system *shall not undermine Licensee's fundamental right to engage in Mail Order Transactions*, as defined herein." [*Id.* § 6(b)(xi) (emphasis added).] Defendant is required to "operate and maintain a National Website to *promote* the Branded Products and the Proprietary Marks." [Ex. A, § 6(c)(iv) (emphasis added).]

25. Taken together, the provisions of the License Agreement establish that while Defendant may establish an orderly system to administer online sales and must operate a National Website to promote the Brand, it may not undermine HBH California's status as the only online retailer of HBH Branded products to customers in California.

### III. THE CURRENT SYSTEM OF ONLINE SALES

26. As set forth above, online sales of HBH Branded products within the United States are divided between two retailers. Plaintiff sells to California customers while Defendant sells to customers in the rest of the country. For years, the parties have complied with this market division by operating separate websites for the sale of these products.

---

[1] "Mail Order Transactions" is defined as "fulfillment of orders that require shipment of food to customers, including orders placed through HoneyBaked Outlets, print catalogs, or *through online catalogs accessible on Internet websites* associated with domain names the use of which has been approved by Licensor. [Ex. A, § 1(g) (emphasis added).]

27. The National Website (www.honeybaked.com) promotes HBH Branded products throughout the country. To begin the online purchase from the National Website, the consumer is asked to select her state of residence. Customers who select "California" are redirected to the HBH California website (www.shophoneybaked.com) and customers who select any other state are directed to the website Defendant established to make online sales (www.honeybakedonline.com). This system ensures that each customer orders from the appropriate online retailer and maintains the orderly system that the parties developed to ensure compliance with the territorial division.

28. The current system also allows each party to promote their separate businesses. HBH California and Defendant offer different products and packages of products at significantly differing prices. HBH California generally has lower retail prices than Defendant.

29. Moreover, it allows the parties to manage their production and inventory independently. This is a critical component in the market for HBH Branded products because of the lengthy production process and the cyclical nature of the market. The peak season for the sale of Honey Baked Ham products revolves around the holidays. And, the production of the big-ticket items (*i.e.*, half and whole hams ranging from six to sixteen pounds) takes up to nine months to complete. As a result, HBH California and Defendant must analyze trends in sales from prior years to order the production of HBH Branded products months in advance. Point in fact, Plaintiff has already ordered the products it expects to sell during the peak season between 2019 and 2020.

30. The parties also depend on the National Website to market online. Currently, when a consumer searches the web via Google or another search engine for "honey baked ham," only the National Website will be included in the highest-ranking results. Under the terms of the License Agreement, the settings on each party's individual website are not set to increase visibility on the internet. This

ensures that each customer is directed to the appropriate online retailers depending on their state of residency. That is, the National Website is the primary marketing vehicle for both parties online and it serves as a distribution center to direct online customers to the appropriate retailer. Otherwise, Plaintiff's website and Defendant's website would compete for online visibility and consumers would be more likely to make a purchase from the wrong retailer. In order to comply with the territorial provisions of the License Agreement the National Website must include a mechanism to direct each customer to the appropriate retailer. Consumers of the HBH Brand have become accustomed to this process.

## IV. DEFENDANT HAS INDICATED THAT IT WILL BEGIN MAKING ONLINE SALES INTO PLAINTIFF'S EXCLUSIVE TERRITORY

31.     On July 22, 2019, Defendant served Plaintiff with a letter giving it notice that it will begin making online sales to California customers beginning on August 11, 2019. Defendant will be eliminating the mechanism that allows each online customer to select her state of residency, which in turn directed each California customer to Plaintiff and non-California customer to Defendant. Moreover, Defendant will begin offering *its* product line at the prices it chooses and will "begin to fulfill all orders for online purchases" that come through an online store on the National Website. Plaintiff's customers will no longer be directed to Plaintiff's website. A true and accurate copy of Defendant's July 22nd letter is attached hereto as **Exhibit B**.

32.     Defendant's planned change will have devastating effects on Plaintiff's online sales. As explained above, both parties' online stores depend heavily on the National Website to capture potential customers. By eliminating the mechanism by which California customers of HBH Branded products are directed to Plaintiff, then, Defendant will effectively eliminate Plaintiff from the online market. Remarkably, Defendant recognized in its July 22nd notice that is plan "*will* impact the volume of orders coming to [Plaintiff's] California website." [Ex. B at 3.]

33. According to Defendant, its proposed solution to "mitigate the loss of sales" Plaintiff will suffer is to provide a list of customers from California in Defendant's database on an ongoing basis. [*Ibid.*] Plaintiff will then be able to send direct marketing materials to the customers in an effort to capture future business. However, despite Plaintiff's right to be the exclusive online retailers to California customers, Defendant first intended to keep the proceeds of the unlawful sales. At some point in the "coming years" Defendant hopes to connect fulfillment channels, which will require Plaintiff and Defendant to align their pricing.

34. On July 30, 2019, Defendant sent a second letter to specifically address the impact on Plaintiff's sales that it acknowledges will occur after it changes the National Website on August 11th. A true and accurate copy of Defendant's July 30th letter is attached hereto as **Exhibit C**. In this letter, Defendant acknowledges that "the traffic to California website was certainly higher in the last two years due [to Defendant] running out of hams and turkeys two weeks prior to the holiday." [Ex. C, at 2.] In other words, it acknowledges that for the past two years it has failed to fulfill orders for the customers outside of California.

35. Remarkably, Defendant also acknowledges that the proposed change "could drive huge volume or it could be very modest." [*Id.*] It is absolutely certain that the proposed change will have a *negative* impact on Plaintiff's business, and it is willing to effectuate the change despite not knowing whether the change will help the Brand.

36. Incredibly, Defendant proposes that "next year," the parties can "review what ACTUALLY happened" and it commits to "do what needs to be done to ensure [Plaintiff is] made whole." [*Id.*] Defendant acknowledges that the change will eliminate a significant portion of Plaintiff's online retail sales, that it will have adverse effects on Plaintiff, and that it will need to compensate Plaintiff for the damages it will cause. Still, Defendant intends to proceed full-steam ahead in

violation of HBH California's contractually provided exclusive right to engage in online sales of HBH Branded products.

37. Plaintiff brings this action seeking a temporary restraining order and preliminary and permanent injunction preventing Defendant from launching its new website. If no such order is granted, Plaintiff will suffer severe and irreparable harm.

## FIRST CAUSE OF ACTION

(Breach of Contract – Permanent Injunction)

38. Plaintiff repeats, realleges, and incorporates by this reference all previous paragraphs of this Complaint as though fully set forth herein.

39. On July 1, 2015, HBH California, on the one hand, and Defendant, on the other hand, entered into the License Agreement.

40. HBH California has performed all obligations required of it under the License Agreement other than obligations as to which performance was excused (if any).

41. The License Agreement establishes at Sections 1(d) and 2(a) that Plaintiff enjoys the exclusive right to solicit, complete, and fulfill Mail Order Transactions, which includes online sales, within the State of California. By engaging in the conduct described above with the intent of establishing a new National Website that will no longer refer California customers to Plaintiff's online store and with the intent of soliciting, taking, and fulfilling online orders to California customers, Defendant has breached (or is in the process of breaching) the License Agreement.

42. The contemplated conduct by Defendant described above threatens to cause real and continuing harm to Plaintiff. Moreover, if Defendant is not enjoined from publishing its new National Website eliminating the only mechanism that directs California customers to Plaintiff's website, Plaintiff will suffer irreparable harm because, among other things:

a. Plaintiff's ongoing relationships with its customers will be interrupted as they will no longer be able to go through the channels they are accustomed to in order to purchase HBH Branded products;

b. Plaintiff will lose a significant portion of the potential customers that are directed to its website from the current National Website, which has in recent years amounted to between 40-50% of the traffic;

c. Plaintiff's customers will be confused because Defendant's online store offers different products at different (often higher) prices than Plaintiff, which may lead them to believe they can no longer obtain the products, service, and delivery services they have previously received from Plaintiff, and cause them to leave the HBH Brand altogether;

d. Given Defendant's history of running out of products to fulfill orders outside of California, Plaintiff's customers may be disappointed when Defendant fails to fulfill their orders, which may lead them to believe that Plaintiff has fallen on hard times and can no longer provide the services and products it has provided; and

e. Defendant has indicated that it will keep all proceeds of Mail Order Transactions that would have been completed by Plaintiff, despite Plaintiff's entitlement to all revenue arising out of transactions with California customers.

43. Defendant's notices that it will make the changes to the National Website described above constitute a breach of the License Agreement. Their conduct in developing the new website breaches the contract and will continue to cause harm to Plaintiff in amounts to be determined at trial, but in excess of $75,000.

44. Defendant's threatened and wrongful conduct in violation of the License Agreement will also almost certainly cause great and irreparable injury to Plaintiff unless and until enjoined.

45. Plaintiff has no adequate remedy at law to protect its substantial business rights and the damages from Defendant's threatened breaches of the License Agreement are considerable and continuing, and thus not capable of ascertainment at this time – if ever. Further, it is impossible to know how many customers Defendant's conduct will impact or how much business Plaintiff will lose as a result of Defendant's wrongful conduct. Unless Defendant is enjoined by this Court from publishing its new National Website, Plaintiff will suffer irreparable and incalculable harm.

46. Section 20(d)(iii) of the License Agreement gives the Court authority to grant injunctive or provisional relief including a temporary restraining order and preliminary injunction.

47. Plaintiff is also entitled, under Section 20(i) of the License Agreement, to recover its attorneys' fees and legal expenses incurred in pursuing this action.

**WHEREFORE**, Plaintiff prays for relief against Defendant as follows:

1. On Count One:
   a. For the issuance of a temporary restraining order and preliminary injunction prohibiting Defendant from publishing its new National Website that eliminates the mechanism by which California customers are directed to Plaintiff's online shopping website until the merits of Plaintiff's claims may be adjudicated;
   b. For the issuance of a permanent injunction prohibiting Defendant from (1) publishing a National Website that eliminates the mechanism by which California customers are directed to Plaintiff's online shopping website and (2) publishing a National Website that offers customers the option to purchase Honey Baked Ham products from Defendant;
   c. For an award of compensatory damages; and
   d. For an award of reasonable attorneys' fees and costs.

2. For such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMAND

Plaintiff hereby requests a jury trial for all issues so triable.

DATED: August 7, 2019

MULCAHY LLP

By: /s/ James M. Mulcahy
James M. Mulcahy
Filemon Carrillo
*Attorneys for Plaintiff Honey Baked Ham Inc.*