KILPATRICK TOWNSEND & STOCKTON LLP
CAROLINE Y. BARBEE (State Bar No. 239343)
cbarbee@kilpatricktownsend.com
9720 Wilshire Blvd, Penthouse Suite
Beverly Hills, California 90212
Telephone: (310) 248-3830
Facsimile: (310) 860-0363

KILPATRICK TOWNSEND & STOCKTON LLP
J. DAVID MAYBERRY (admitted *pro hac vice*)
dmayberry@kilpatricktownsend.com
SARA K. STADLER (*pro hac vice* application to be filed)
sstadler@kilpatricktownsend.com
The Grace Building
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

Attorneys for Defendant
HONEY BAKED HAM COMPANY LLC

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| **HONEY BAKED HAM INC.**, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>**HONEY BAKED HAM COMPANY LLC**, a Delaware limited liability company, and **DOES 1 THROUGH 20**,<br><br>Defendants. | CASE NO.: 8:19-cv-01528-JVS (DFMx)<br><br>**DECLARATION OF JONATHAN HOCHMAN IN SUPPORT OF DEFENDANT'S SUPPLEMENTAL MEMORANDUM RE: THE COURT'S AUGUST 26 MINUTE ORDER RE: PRELIMINARY INJUNCTION**<br><br>Date:<br>Time:<br>Department:<br><br>Assigned to the Hon. James V. Selna<br><br>Complaint filed: August 7, 2019<br>_____ |

DECLARATION OF JONATHAN HOCHMAN

I, Jonathan Hochman, declare:

1. I am a resident of the State of Connecticut, over the age of eighteen years, and not a party within this action. My business address is JE Hochman & Associates LLC, 615 W. Johnson Ave, Suite 202, Cheshire, CT 06410-4532.

2. The statements made herein are true and based on my own personal knowledge. If called as a witness, I could and would give competent testimony to each of the matters stated.

3. I am an expert in e-commerce with significant experience in the field including: managing e-commerce operations and marketing at Barcoding.com, a now $100 million per year operation; founding CodeGuard and designing its product, which has over 250,000 online customers; and founding and managing Hochman Consultants, an Internet marketing agency that has provided e-commerce consulting to hundreds of businesses over the last 15 years. My *curriculum vitae*, which contains a full summary of my experience and relevant expertise, is on file with the Court as an exhibit to a declaration that I previously submitted in this case. *See* PageID.639-641.

4. JE Hochman & Associates is being compensated for my services in this case at my standard rate of $650 per hour. Other associates of JE Hochman & Associates LLC have assisted me in this engagement, and are being compensated at rates less than $150 per hour. No part of JE Hochman & Associates LLC or my compensation depends on the outcome of this case.

5. On August 23, 2019, I attended and testified during a hearing in this case where the parties and the Court discussed potential changes to the national website (HoneyBaked.com) operated by Defendant Honey Baked Ham Company LLC (Honey Baked USA). During that hearing and in a subsequent order, which I have reviewed, the Court discussed the need for the national website to include a software fail-safe such that customers could not avoid answering the question of whether they were residents of California before checking out with an order.

6. To assess the feasibility of such a software fail-safe, the Court directed me to meet and exchange information with Mr. Timothy Kiss, an expert retained by Honey Baked California, within 14 days. The Court issued an order to that effect on August 26, 2019.

7. It is my understanding that attorneys representing Honey Baked California suggested that I meet with Mr. Kiss between August 31 and September 1, over the Labor Day weekend. I told the attorneys for Honey Baked USA that I could not meet on those dates due to longstanding prior commitments to be with family over that holiday weekend.

8. At the direction of attorneys for Honey Baked USA, I purchased a plane ticket to fly to Atlanta, Georgia, where Mr. Kiss lives, in an effort to meet with him on Wednesday, September 4. I purchased that ticket without confirming Mr. Kiss's availability because I knew that the hurricane set to impact the East Coast would likely complicate travel to Atlanta during that week.

9. I later learned that Mr. Kiss would not be available to meet on September 4, but might be available to meet on Saturday, September 7. At that point, I purchased a new ticket and made arrangements to be in Atlanta on September 7.

10. Prior to meeting with Mr. Kiss, I prepared updated wireframes for merging Honey Baked USA's national website (www.honeybaked.com) with its shopping website (www.honeybakedonline.com). *See* Ex. A, August 31 Pre-Meeting Wireframes. The updated wireframes demonstrated a proposed software fail-safe that would, per the Court's instruction, require customers to select their state of residence, thereby directing them to the appropriate shopping website, before accessing the shopping cart on the national site. This proposal differed from those shared with Honey Baked California in advance of the August 23 hearing, with changes from the prior proposals aimed at addressing concerns and objections raised by Honey Baked California and the need for a fail-safe discussed in the Court's order. It was my understanding that that proposed solution and accompanying wireframes provided to

Mr. Kiss and Honey Baked California after the August 23 hearing would be the primary topic of discussion during my meeting with Mr. Kiss, and that I needed to be prepared to answer any questions and address any concerns that Mr. Kiss raised about that proposal.

11. On the morning of September 7, I met in Atlanta with Mr. Kiss as well as Ms. Jo Ann Herold, the Chief Marketing Officer of Honey Baked USA, and Mr. Richard Gore, an executive of Honey Baked California.

12. I began the September 7 meeting by referring to the Court's requirement that the parties discuss a software-based fail-safe mechanism.

13. I then proceeded to walk Mr. Kiss and Mr. Gore through the wireframes illustrating Honey Baked USA's proposal, explaining that the user would have a chance to select their state when they press the "Shop Now" button from the landing page, or before they could add an item to their cart if they were already on Honey Baked USA's catalog page. Whenever a user selects a state the selection is recorded in a cookie file that is transmitted to their browser. This cookie allows the website to avoid asking the user again, once a selection has been made, and also allows the website to apply the appropriate routing based on the state selected.

14. Honey Baked USA's updated proposal maintained the same user experience as the framework currently in place on the national website. As on the current version of the website, visitors will be able to click on a button that allows them to shop online. A first time visitor who clicks on that button will immediately be presented with a state selection overlay identical to the one currently in use. The visitor will then be prompted to select their state of residence. Visitors who select California will be directed, as is currently the case, to Honey Baked California's shopping website. Visitors selecting any other state will proceed to Honey Baked USA's shopping catalog. The only change is that where Honey Baked USA's shopping catalog is currently a separate website, it will now be hosted on the national website.

DECLARATION OF JONATHAN HOCHMAN - 3 -

Case 8:19-cv-01528-JVS-DFM   Document 41   Filed 09/16/19   Page 5 of 15   Page ID #:800

15. Mr. Gore indicated that this was the third or fourth proposal that he had seen from Honey Baked USA, and suggested that Honey Baked USA was engaged in some sort of "scheme."

16. I explained that Honey Baked USA had revised its prior proposals in an attempt to address concerns raised by Honey Baked California. Ms. Herold added that the parties have known each other for a long time and that the sole intent of the proposals is to implement web enhancements that will lead to increased sales for both parties. Mr. Gore and Mr. Kiss agreed that this was needed.

17. Mr. Gore questioned the introduction of the cookie that will automatically direct a customer to Honey Baked USA's online store (HoneyBakedOnline.com) when that customer has indicated during a previous visit to the national website that they are not a California resident. I explained that the purpose of the cookie is to avoid pestering customers by making them navigate a state selector each time they visit the national website. The cookie feature simply records a first time visitor's choice in the state-selection overlay and remembers it for future visits. Based on discussions during the meeting, the participants agreed to revise the cookie process to be symmetrical—*i.e.*, it would direct customers to either party's online store, as appropriate, on future visits to the national website once that customer had previously identified their state of residence. Honey Baked USA also agreed to review California cookie laws to ensure that the proposed solution was compliant.

18. The cookie feature of the Honey Baked USA proposal can also be cleared by the user manually deleting the cookie from his or her browser. Alternatively, cookies can be set to be deleted automatically after a specified amount of time. If the cookie was reset or deleted, a visitor to the national website would again be prompted to answer the state selector overlay as if it was their first visit to the website.

DECLARATION OF JONATHAN HOCHMAN - 4 -

19. The participants in the meeting also discussed the amount of time that the cookie would remain in effect. Based on those discussions, Honey Baked USA proposed a one-year cookie duration.

20. Mr. Kiss suggested that instead of allowing customers to view products and then querying their state residence when they attempted to add an item to the shopping cart, the customer instead should be presented with the residence question prior to being able to view a product. I agreed that the suggestion of Mr. Kiss would improve the consumer experience. All of the participants in the meeting discussed and agreed that, due to product differences and pricing differences in similar products offered by the parties that cannot be readily resolved, it would be best to require the customer to identify their state of residence and be redirected to the appropriate shopping website before they can view available products and pricing online. The Honey Baked USA proposal, modified after the meeting does incorporate Mr. Kiss's suggestion.

21. The Honey Baked USA proposal has the added benefit of producing a symmetrical user experience for customers in California and the rest of the country. The only difference in the customer experience will be the catalog and shopping cart that they are directed to after identifying their state of residence. Otherwise, the user experience and pathways are identical for all customers.

22. Another issue discussed during the meeting was the importance of transparency and access to website analytics. Honey Baked USA recognized the importance of this issue, but the participants did not discuss details on sharing analytics.

23. During the September 7 meeting I also reviewed, with Mr. Gore and Mr. Kiss, a proposal that Honey Baked California circulated after the August 23 hearing. In the course of that discussion, Honey Baked USA agreed to change the flow of its proposal so that a customer that attempts to access the shopping cart on the national website without answering the state selector question prompt is sent back to the

1  HoneyBaked.com landing page and again prompted to select their state of residence
2  instead of receiving an error message. This helps to ensure, as directed by the Court,
3  that a customer cannot circumvent the state selection mechanism.

4      24.    The two exceptions to the requirement that customers identify their state
5  of residence prior to viewing a catalog or accessing the shopping cart will be (a) those
6  customers who access the national site through a geographically targeted
7  advertisement run outside of California, or (b) existing customers of HBH USA who
8  are emailed a promotional message that contains a link. It is possible to encode the
9  link in such a way that the user's state will automatically be stored in a cookie. The
10 need to select a state is redundant when the geographic targeting of the ad identifies
11 the customer's location. I suggested during the September 7 meeting that Honey
12 Baked California could also take advantage of these two options to the extent that it
13 runs online ads geographically targeted within the State of California, or sends emails
14 to its existing customers. This aspect of the Honey Baked USA proposal is
15 symmetrical and mutually beneficial, as it allows both parties to take advantage of
16 targeted Google Shopping ads and email marketing without asking users to supply
17 information that is already known.

18     25.    Mr. Gore indicated that the Honey Baked USA proposal, as modified
19 based on discussions during the September 7 meeting and set forth herein (the
20 modified Honey Baked USA proposal), was reasonable. It was my understanding
21 that, at the conclusion of the September 7 meeting, the modified Honey Baked USA
22 proposal satisfactorily addressed all of the technical concerns raised by Honey Baked
23 California.

24     26.    Mr. Gore did express concern about the timing of changes to the
25 website, noting that the parties are nearing the extremely busy holiday shopping
26 season.

DECLARATION OF JONATHAN HOCHMAN - 6 -

27. I assured Mr. Gore that the changes proposed in the modified Honey Baked USA proposal could be implemented during the current, non-peak season, without disrupting holiday season sales.

28. At the end of the September 7 meeting, which lasted approximately 3.5 hours, Mr. Gore asked that Honey Baked USA send wireframes of the modified Honey Baked USA proposal to Honey Baked California. I sent the wireframes to Honey Baked USA's attorneys, and it is my understanding that they forwarded the wireframes to Honey Baked California's attorneys on September 9. A copy of those post-meeting wireframes is attached to this declaration as Exhibit B.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 16, 2019, West Hartford, Connecticut.

_____

Jonathan Hochman

-8-

# EXISTING CUSTOMERS





## PAID ADVERTISING VISITORS





-10-





# USER CLICKS "ADD TO CART" TO BUY AN ITEM AT HBH USA CATALOG





USER VISITS LANDING PAGE

Note: Cookie is set for 12 months

