KILPATRICK TOWNSEND & STOCKTON LLP
KOLLIN J. ZIMMERMANN (State Bar No. 273092)
kzimmermann@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone:   (310) 248-3830
Facsimile:    (310) 860-0363

J. DAVID MAYBERRY (admitted *Pro Hac Vice*)
dmayberry@kilpatricktownsend.com
The Grace Building
1114 Avenue of the Americas
New York, New York 10036
Telephone:   (212) 775-8700
Facsimile:    (212) 775-8800

MARK H. REEVES (admitted *Pro Hac Vice*)
mreeves@kilpatricktownsend.com
Enterprise Mill
1450 Greene Street, Suite 230
Augusta, Georgia 30901
Telephone:   (706) 823-4206
Facsimile:    (706) 828-4488

Attorneys for Defendants
HONEY BAKED HAM COMPANY LLC and
HBH LICENSING, LLC

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| **HONEY BAKED HAM INC.**, a California corporation,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>**HONEY BAKED HAM COMPANY LLC**, a Delaware limited liability company, and **HBH LICENSING, LLC**, a Georgia limited liability company,<br><br>Defendants/Counterclaim Plaintiffs. | CASE NO.: 8:19-CV-01528-JVS (DFMx)<br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, AND FIRST AMENDED COUNTERCLAIMS**<br><br>Assigned to the Hon. James V. Selna Courtroom 10C<br><br>First Amended Complaint filed: May 22, 2020 |

1

Defendants Honey Baked Ham Company, LLC (Honey Baked USA), and HBH Licensing, LLC (HBH Licensing) (collectively, the Defendants), by their undersigned attorneys, answer the allegations of the First Amended Complaint for Injunctive Relief (FAC, Doc. 92) filed by Plaintiff Honey Baked Ham, Inc. (Plaintiff or Honey Baked California) as follows:

## NATURE OF ACTION

1.      The Defendants admit the allegations in paragraph 1 of the FAC.

2.      The Defendants admit that the Plaintiff has, subject to the terms and conditions set forth in the License Agreement, an apparently true and correct copy of which is filed with the Court as Exhibit A to the FAC (Doc. 92-1), the exclusive right to operate or license others to operate retail specialty stores and/or cafes using the Honey Baked Ham Brand (HBH Brand or Brand) in the State of California. The License Agreement speaks for itself and is the best evidence of its contents, and the Defendants deny any characterization of that document that is inconsistent with its contents. The Defendants deny the remaining allegations in paragraph 2 of the FAC.

3.      The Defendants deny the allegations in paragraph 3 of the FAC.

4.      The Defendants deny the allegations in paragraph 4 of the FAC.

## PARTIES

5.      The Defendants lack information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the FAC and deny those allegations on that basis.

6.      The Defendants admit the allegations in paragraph 6 of the FAC.

7.      The Defendants admit that Defendant HBH Licensing is a Georgia limited liability company with its principal place of business at the same address as Honey Baked USA, that HBH Licensing is a wholly owned subsidiary of Honey Baked USA, and that HBH Licensing shares office space with Honey Baked USA. The Defendants deny any remaining allegations in paragraph 7 of the FAC.

2

**JURISDICTION AND VENUE**

8.      The allegations contained in Paragraph 8 of the FAC are legal conclusions to which no response is required. Nevertheless, the Defendants affirmatively state that they do not contest this Court's subject-matter jurisdiction.

9.      The Defendants admit that the value of the injunctive relief that the Plaintiff seeks satisfies the jurisdictional threshold of $75,000. The Defendants affirmatively deny that the Plaintiff is entitled to any of the relief that it seeks, including but not limited to attorneys' fees and costs.

10.     The allegations contained in paragraph 10 of the FAC are legal conclusions to which no response is required. Nevertheless, the Defendants affirmatively state that they do not contest this Court's personal jurisdiction over Honey Baked USA.

11.     The allegations contained in paragraph 11 of the FAC are legal conclusions to which no response is required. Nevertheless, the Defendants affirmatively state that they do not contest this Court's personal jurisdiction over HBH Licensing.

12.     The allegations contained in paragraph 12 of the FAC are legal conclusions to which no response is required. Nevertheless, the Defendants affirmatively state that they do not contest that venue is proper.

**FACTUAL BACKGROUND**

I.     Brief History of the Honey Baked Ham Brand and Online Distribution[1]

13.     The Defendants admit the Honey Baked Ham brand dates from at least 1957 when founder Harry J. Hoenselaar obtained a patent covering his spiral ham

---

[1] For the sake of clarity and ease of reference, the Defendants have included the section headings used in the FAC. This in no way implies the Defendants' agreement with the frequently argumentative, misleading, and inaccurate characterizations set forth in those headings.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

slicing machine and acquired the first Honey Baked Ham store in Detroit Michigan. The Defendants admit the Brand has expanded is now distributed nationwide via retail stores and online sales. The Defendants deny the remaining allegations in paragraph 13 of the FAC.

14.     The Defendants admit that as the Brand expanded nationwide, the HBH Brand business was allocated among the Honey Baked Ham founder's children, who operated the business in different regions. The Defendants deny the remaining allegations in paragraph 14 of the FAC.

15.     The Defendants admit that the Plaintiff, directly or through a predecessor, has been granted a series of exclusive licenses to operate or license the operation of specialty retail stores and/or cafes operating under the HBH Brand in California. The Defendants deny the remaining allegations in paragraph 15 of the FAC.

16.     The Defendants admit that, effective in 1988, ownership of the HBH Brand and related assets were transferred to HBH Limited Partnership, a Michigan limited partnership, which became the licensor to entities owned by four families descended from the founder and to Plaintiff. The Defendants deny the remaining allegations in paragraph 16 of the FAC.

17.     The Defendants admit that each licensee of the HBH Brand distributed printed paper catalogs to promote sales of HBH Brand products by mail order before the advent of the Internet, and later each licensee, with the approval of Licensor and subject to its control, developed online catalogue websites. The Defendants deny the remaining allegations in paragraph 17 of the FAC.

18.     The Defendants admit that HBH Limited Partnership developed a website at *www.honeybaked.com*, referred to in License Agreement and the FAC as the National Website, to act as a gateway for online shopping inquiries regarding HBH Brand products and for other reasons. The Defendants admit that the National

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

Website included a state selector that redirected customers to regional websites based on the customer's interaction with the state selector. The Defendants admit that a customer who selected California in the National Website's state selector would have been redirected to Honey Baked California's catalogue website. The Defendants admit that HBH Limited Partnership did not make any retail sales itself. The Defendants deny all remaining allegations in paragraph 18 of the FAC.

19. The Defendants admit that HBH Limited Partnership required its licensees to include "noindex" instructions in their individual websites to attempt to prevent Internet search engines from listing the individual catalogue websites in search results. The Defendants deny all remaining allegations in paragraph 19 of the FAC.

20. Paragraph 20 of the FAC attributes quotes to Honey Baked USA without identifying the alleged source of the quoted material. For that reason, the Defendants are unable to verify the accuracy of the alleged quotes and deny their accuracy on that basis. The Defendants deny the remaining allegations in paragraph 20 of the FAC.

21. The Defendants lack information sufficient to form a belief as to the accuracy of the allegations in paragraph 21 of the FAC and deny those allegations on that basis.

22. The Defendants deny the allegations in paragraph 22 of the FAC.

23. The Defendants admit that each licensee of the HBH Brand managed its own pricing, orders, and inventory. The Defendants admit that certain products bearing the HBH Brand have a lengthy production process and cyclical market. The Defendants admit that the production of half and whole hams ranging from six to sixteen pounds can takes months to complete. The Defendants lack information sufficient to form a belief as to the remaining allegations in paragraph 23 of the FAC and deny those allegations on that basis.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

II.   Plaintiff's License Agreement

24.   The Defendants admit that the Plaintiff entered into its current License Agreement with HBH Limited Partnership as licensor effective July 1, 2015, and that what appears to be a true and correct copy of that License Agreement is attached to the FAC as Exhibit A. The Defendants deny all remaining allegations in paragraph 24 of the FAC.

25.   The Defendants admit that the words appearing in quotation marks in paragraph 25 of the FAC, excluding the addition of the word "conduct" as denoted by the inclusion of brackets in the FAC, constitute accurate but incomplete quotations of the cited provisions of the License Agreement. The License Agreement speaks for itself and is the best evidence of its contents, and the Defendants deny any characterization of the document that is inconsistent with its contents. The Defendants deny all remaining allegations in paragraph 25 of the FAC, specifically including but not limited to any allegation that the License Agreement gives the Plaintiff an exclusive right to make online sales to customers in California.

26.   The Defendants admit that the Plaintiff uses the domain name *shophoneybaked.com* for online sales and other purposes. The Defendants deny that the Plaintiff has used that domain name with approval of HBH Limited Partnership and without objection from HBH Licensing. The Defendants deny that the Plaintiff's online sales have at all times been in substantial compliance with the requirements of § 6(b)(xi) of the License Agreement.

27.   The Defendants admit that the words appearing in quotation marks in paragraph 27 of the FAC constitute accurate but incomplete quotations of the cited provision of the License Agreement. The License Agreement speaks for itself and is the best evidence of its contents, and the Defendants deny any characterization of the document that is inconsistent with its contents. The Defendants deny any and all remaining allegations in paragraph 27 of the FAC, specifically including but not

6

limited to any allegations that the Plaintiff's interweaving of selectively chosen quotations from discrete provisions of the License Agreement accurately reflect the intent or context of that document.

III.     Consolidation of Family Ownership

28.     The Defendants admit the allegations in paragraph 28 of the FAC.

29.     The Defendants admit that as of May 4, 2015, Honey Baked USA acquired substantially all of the assets of HBH Limited Partnership and the remaining family regional licensees, except rights under the Plaintiff's License Agreement, which was transferred to HBH Licensing. The Defendants admit that Honey Baked USA became the owner of the HBH Brand, all related intellectual property, and the National Website. The Defendants deny any and all remaining allegations of paragraph 29 of the FAC.

30.     The Defendants admit that HBH Licensing acquired HBH Limited Partnership's rights under the License Agreement as of May 4, 2015, and that HBH Licensing is entitled to receive all payments from the Plaintiff that would otherwise go to HBH Limited Partnership pursuant to the License Agreement.

31.     The Defendants deny the allegations in paragraph 31 of the FAC.

IV.     HBH USA's Efforts to Infringe on HBH California's Exclusive Territory

32.     The Defendants admit that after May 4, 2015, Honey Baked USA consolidated the former family regional online catalogue websites into a single catalogue at the domain *honeybakedonline.com*. The Defendants admit that before July 22, 2019, Honey Baked USA consulted with a website design and marketing company called Proving Ground LLC, dba Dragon Army, to help with the operation and design of various websites owned and operated by Honey Baked USA. The Defendants deny the remaining allegations in paragraph 32 of the FAC.

33.     The Defendants deny the allegations in paragraph 33 of the FAC.

34.     The Defendants deny the allegations in paragraph 34 of the FAC.

35.     The Defendants deny the allegations in paragraph 34 of the FAC.

36.     The Defendants admit that Honey Baked USA sent letters to the Plaintiff on July 22 and 30, 2019, and that what appear to be true and correct copies of those letters have been filed as Exhibits B and C to the FAC, *see* Docs. 92-2 & 92-3. Those documents speak for themselves and are the best evidence of their content, and the Defendants deny any characterization of those documents that is inconsistent with their contents.

37.     The Defendants admit that the language in quotation marks in paragraph 37 of the FAC, with the exception of the substitution of the word "Plaintiff's" as indicated in brackets within the first quotation, accurately but incompletely quotes the text of the cited documents. The Defendants admit that the July 22, 2019, letter referred to a "loss of sales" for the Plaintiff and set forth measures to mitigate any such loss. The documents referenced in paragraph 37 of the FAC speak for themselves and are the best evidence of their content, and the Defendants deny any characterization of those documents inconsistent with their content.

38.     The Defendants admit that as of July 22, 2019, HBH Licensing required the Plaintiff not to index its shopping website. The Defendants deny all remaining allegations in paragraph 38 of the FAC.

39.     The Defendants admit that the language in quotation marks in paragraph 39 of the FAC, with the exception of the substituted language denoted by brackets within the quotation, accurately but incompletely quotes the cited letter. The July 30, 2019, letter speaks for itself and is the best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its content. The Defendants deny stating an attempt to misappropriate all of the Plaintiff's online business.

40.     The Defendants deny the allegations of paragraph 40 of the FAC.

8

1

V.    This Litigation to Date

2

41.    The Defendants admit that the Plaintiff filed this action on August 7,

3

2019, and that the initial complaint sought the relief described in paragraph 41 of the

4

FAC. The Defendants deny that the Plaintiff is entitled to any such relief. The

5

Defendants deny that the License Agreement grants the Plaintiff exclusive rights to

6

the California market.

7

42.    The Defendants admit that this Court initially granted a temporary

8

restraining order prohibiting Honey Baked USA from removing the state selector

9

mechanism from the National Website pending further proceedings in this case. The

10

Defendants admit that the Court subsequently imposed a self-expiring preliminary

11

injunction and then dissolved that preliminary injunction provided that the National

12

Website be maintained in its then-existing manner unless and until the fail-safe

13

system described by Honey Baked USA's expert, Jonathan Hochman, could be

14

implemented such that there was a seamless transition which ensured that at all times

15

California customers were routed to the Plaintiff's website. The Defendants admit

16

that the Court ordered Honey Baked California to submit monthly status reports

17

regarding its progress. The Defendants deny any remaining allegations in paragraph

18

42 of the FAC.

19

43.    The Defendants admit that the March 2020 Website Transition Status

20

Report, Doc. 83, informed the Court that Honey Baked USA merged the National

21

Website with its shopping website and deployed its new and improved state selector

22

modal on February 13, 2020. The Defendants admit that the language in quotation

23

marks in paragraph 43 of the FAC accurately but incompletely quotes the March

24

2020 Status Report. The March 2020 Status Report speaks for itself and is the best

25

evidence of its content, and the Defendants deny any characterization of that

26

document inconsistent with its contents.

27

44.    The Defendants admit the allegations in paragraph 44 of the FAC.

28

9

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

## VI.   Defendants' Evasion of This Court's Order

45.     The   Defendants   admit   that   both   *honeybaked.com*   and *shipping.honeybaked.com* include state selector mechanisms. The Defendants admit that those state selector mechanisms function. The Defendants deny any remaining allegations in paragraph 45 of the FAC.

46.     The Defendants admit that if the state selector mechanism does not detect a pre-existing cookie indicating a visitor's residence, the visitor is required to interact with the state selector mechanism to identify their state of residence. The Defendants admit that if the user identifies California as its state of residence, a cookie is placed on the user's web browser indicating that selection (a CA cookie) and the user is redirected to the Plaintiff's shopping website at *shophoneybaked.com*. The Defendants admit that if the user identifies any other state as their residence, a cookie so indicating is placed on their web browser (a USA cookie), and the user is redirected to Honey Baked USA's shopping website at *shipping.honeybaked.com*. The Defendants deny any remaining allegations in paragraph 46 of the FAC.

47.     The Defendants admit that if a user's web browser already has a cookie indicating their state of residence, they are not required to interact with the state selector mechanism again and are instead redirected to the appropriate shopping website based on their state of residence as identified by the cookie. The Defendants deny any remaining allegations in paragraph 47 of the FAC.

48.     The Defendants admit that Honey Baked USA has the legal right to modify the state selector in its discretion without notice to the Plaintiff. The Defendants lack information sufficient to form a belief as to the remaining allegations in paragraph 48 of the FAC and deny those allegations on that basis.

49.     The Defendants deny the allegations of paragraph 49 of the FAC.

50.     The Defendants admit that Honey Baked USA has distributed emails to existing customers within its customer database containing direct links (Targeted

10

Links) to *shipping.honeybaked.com* and that customers who clicked those links would be taken directly to *shipping.honeybaked.com*. The Defendants deny all remaining allegations in paragraph 50 of the FAC.

51.   The Defendants deny the allegations in paragraph 51 of the FAC.

52.   The Defendants deny the allegations in paragraph 52 of the FAC.

53.   The Defendants deny the allegations in paragraph 53 of the FAC.

54.   The Defendants admit that HBH Licensing has informed the Plaintiff that social media accounts, such as Facebook, Instagram, and Twitter, representing the HBH Brand must be subject to control and/or pre-approval of HBH Licensing in accordance with the License Agreement and the Brand social media guidelines. The Defendants admit that the Plaintiff currently does not have approval to operate any social media accounts involving the HBH Brand. The Defendants deny the remaining allegations in paragraph 54 of the FAC.

55.   The Defendants admit that a number of customers have voiced legitimate complaints about the Plaintiff and online orders and deliveries in California and elsewhere on social media accounts maintained by the Defendants, as well as numerous private and third party social media accounts and websites, and on the National Website. The Defendants deny the remaining allegations in paragraph 55 of the FAC.

56.   The Defendants deny the allegations in paragraph 56 of the FAC as stated.

VII.   HBH USA's Attempts to Obstruct Plaintiff's Supply

57.   The Defendants admit that, under the express terms of the License Agreement, the Plaintiff is required to purchase cured hams, turkey breasts, and certain other products identified by the HBH Brand from certain Selected Suppliers approved by HBH Licensing. The Defendants affirmatively state that the License Agreement speaks for itself and is the best evidence of its content, and they deny any

11

characterization of that document inconsistent with its content. The Defendants admit that the Plaintiff is free to order independently from Selected Suppliers, and is not required to seek approval from the Defendants for its communications with Selected Suppliers regarding orders. The Defendants admit that Selected Suppliers are free to supply the Plaintiff independently and to communicate with the Plaintiff regarding orders without need to seek approval from the Defendants. The Defendants deny the remaining allegations in paragraph 57 of the FAC.

58. The Defendants admit the allegations in paragraph 58 of the FAC.

59. The Defendants admit that the language in quotation marks in paragraph 59 of the FAC accurately but incompletely quotes an email sent from Dan McAleenan, Honey Baked USA's Senior Vice-President of Store Operations, to Richard Gore, Plaintiff's Vice-President, on April 20, 2020. That document speaks for itself and is the best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its content. The Defendants deny that they have failed to make the necessary introduction to Tyson. The Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in paragraph 59 of the FAC and deny those allegations on that basis.

60. The Defendants admit that Honey Baked USA put the Plaintiff in touch with Fresh Mark on April 15, 2020, that Fresh Mark told the Plaintiff that it had 20,000 lbs. of sliced, bone-in ham available and that Fresh Mark offered to provide all of that product to the Plaintiff immediately. Fresh Mark also offered to provide additional, unsliced hams that it had on hand to the Plaintiff immediately. The Defendants admit that pre-sliced hams are an integral part of the HBH Brand product line and feature prominently in HBH Brand marketing. The Defendants deny any and all remaining allegations in paragraph 60 of the FAC.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

## First Claim for Relief

## Anticipatory Breach of Contract

61.   The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the FAC.

62.   Paragraph 62 of the FAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 62 of the FAC.

63.   The Defendants admit that the License Agreement gives the Plaintiff the exclusive right and license to use the HBH Brand trademarks and trade dress to promote and operate HBH retail specialty stores and/or cafes and to market and sell HBH Branded products and certain other products through such specialty retail stores in the State of California. The Defendants admit that the License Agreement gives the Plaintiff the right to fulfill orders requiring the shipment of HBH Brand food to customers in California, including online orders. The Defendants admit that the language appearing in quotation marks in paragraph 63 of the FAC accurately but incompletely quotes portions of the cited section of the License Agreement. The Defendants deny that the License Agreement grants the Plaintiff an exclusive right to fulfill orders requiring the shipment of HBH Brand food to customers in California. The License Agreement speaks for itself and is best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its contents. The Defendants deny any remaining allegations in paragraph 63 of the FAC.

64.   The Defendants admit that in July 2019, Honey Baked USA informed the Plaintiff that it intended to remove the state selector mechanism from the National Website. The Defendants deny the remaining allegations in paragraph 64 of the FAC.

65.   The Defendants admit that they subsequently undertook to implement a fail-safe state-selector mechanism to direct customers identifying themselves as

13

California customers exclusively to the Plaintiff's website for purchases. The Defendants deny the remaining allegations in paragraph 65 of the FAC.

66.     Paragraph 66 of the FAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 66 of the FAC.

67.     The Defendants lack information sufficient to form a belief as to whether the Plaintiff's online store depends heavily on the National Website to capture potential customers and denies those allegations on that basis. The Defendants deny all remaining allegations in paragraph 67 of the FAC.

68.     The Defendants deny the allegations in paragraph 68 of the FAC.

69.     The Defendants deny the allegations in paragraph 69 of the FAC.

70.     The Defendants deny the allegations in paragraph 70 of the FAC.

The Defendants deny that the Plaintiff is entitled to any of the requested relief.

## **Second Claim for Relief**

## **Breach of Contract**

71.     The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the FAC.

72.     Paragraph 72 of the FAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 72 of the FAC.

73.     Paragraph 73 of the FAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 73 of the FAC.

74.     The Defendants admit that the License Agreement gives the Plaintiff the exclusive right and license to use the HBH Brand trademarks and trade dress to promote and operate HBH retail specialty stores and/or cafes and to market and sell HBH Branded products and certain other products through such retail specialty stores

14

in the State of California. The Defendants admit that the License Agreement gives the Plaintiff the right to fulfill orders requiring the shipment of HBH Brand food to customers in California, including online orders. The Defendants deny that the License Agreement grants the Plaintiff an exclusive right to fulfill orders requiring the shipment of HBH Brand food to customers in California. The License Agreement speaks for itself and is best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its contents. The Defendants deny any remaining allegations in paragraph 74 of the FAC.

75.   The Defendants admit that the language appearing in quotation marks in paragraph 75 of the FAC accurately but incompletely quotes language appearing in the cited provision of the License Agreement. The License Agreement speaks for itself and is best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its contents. The Defendants deny any remaining allegations in paragraph 75 of the FAC.

76.   The Defendants deny the allegations in paragraph 76 of the FAC.

The Defendants deny that the Plaintiff is entitled to any of the requested relief.

## Third Claim for Relief
## Breach of Implied Covenant

77.   The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the FAC.

78.   Paragraph 78 of the FAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 78 of the FAC.

79.   The Defendants admit that HBH Licensing has at all times been aware of Honey Baked USA's actions with regard to the National Website and the state selector mechanism. The remaining allegations in paragraph 79 of the FAC state legal

15

conclusions to which no response is required. To the extent that a response is required, the Defendants deny the remaining allegations in paragraph 79 of the FAC.

80.    Paragraph 80 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 80 of the FAC.

81.    Paragraph 81 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 81 of the FAC.

The Defendants deny that the Plaintiff is entitled to any of the requested relief.

## **Fourth Claim for Relief**

## **Unfair Competition**

82.    The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the FAC.

83.    The Defendants have moved to dismiss the Fourth Claim for Relief. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), they are not required to respond to the allegations supporting this claim pending the Court's action on that motion. To the extent that a response is required, the Defendants deny the allegations set forth in paragraph 83 of the FAC.

84.    The Defendants have moved to dismiss the Fourth Claim for Relief. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), they are not required to respond to the allegations supporting this claim pending the Court's action on that motion. To the extent that a response is required, the Defendants deny the allegations set forth in paragraph 84 of the FAC.

## **Plaintiff's Prayer for Relief**

The Defendants deny that the Plaintiff is entitled to any of the relief requested.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

1

## **DEFENSES**

2   The Defendants affirmatively deny any and all other allegations, inferences, or
3   implications arising from any statement in the FAC to the extent that such has not
4   been affirmatively admitted by the Defendants in their answer.

5   The Defendants further propound the following separate and additional
6   defenses. By doing so, the Defendants in no way concede that they have the burden
7   of proof/and or burden of persuasion with respect to any of the following defenses.

8

## **First Defense**

9   1.   The Plaintiff's Fourth Count fails to state any claim upon which relief
10   may be granted.

11

## **Second Defense**

12   4.   The Plaintiff's requests for injunctive relief are barred by the lack of any
13   irreparable harm from the purported conduct, if any at all, by the Defendants.

14   5.   The Plaintiff's requests for injunctive relief are further barred because, to
15   the extent that the Plaintiff can demonstrate that it has suffered any injury from the
16   Defendant's purported conduct, such injury is adequately remedied at law.

17

## **ADDITIONAL DEFENSES**

18   6.   In addition to the enumerated defenses identified above, the Defendants
19   reserve the right to raise any additional defenses that may become available or
20   appropriate.

21

## **COUNTERCLAIMS**

22   Pursuant to Federal Rule of Civil Procedure 13, Defendants and Counterclaim
23   Plaintiffs Honey Baked Ham Company, LLC (Honey Baked USA) and HBH
24   Licensing, LLC (HBH Licensing or Licensor), assert the following counterclaims
25   against Plaintiff and Counterclaim Defendant Honey Baked Ham, Inc. (Honey Baked
26   California or Licensee):

27

28

17

**Parties**

1.      Counterclaim Defendant Honey Baked California is a California corporation with its principal place of business in Irvine, California.

2.      Counterclaim Plaintiff Honey Baked USA is a Delaware limited liability company with its principal place of business in Alpharetta, Georgia.

3.      Counterclaim Plaintiff HBH Licensing is a Georgia limited liability company with its principal place of business in Alpharetta, Georgia. HBH Licensing is a wholly owned subsidary of Honey Baked USA.

**Jurisdiction & Venue**

4.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332, and 1338.

5.      This Court has personal jurisdiction over Honey Baked California because it is a California corporation with its principal place of business in California.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this district and Honey Baked California's principal place of business lies within this district.

**Nature of Counterclaims**

7.      Honey Baked USA is the owner of trademarks, trade names, trade dress, and other intellectual property associated with the HBH Brand (the Proprietary Marks).[2]

8.      HBH Licensing is a wholly owned subsidiary of Honey Baked USA that is authorized to license the Proprietary Marks to Honey Baked California. Pursuant to a License Agreement (Doc. 92-1) entered into with HBH Limited Partnership and transferred to HBH Licensing, Honey Baked California, has certain, limited rights to

---

[2]  *See* License Agreement ¶ 1(a) and Exhibit A to License Agreement.

18

use the Proprietary Marks and certain duties and obligations to HBH Licensing as specified in that License Agreement.

9.      These counterclaims involve numerous breaches of Honey Baked California's duties and obligations under the License Agreement. Based on those breaches, HBH Licensing seeks a declaratory judgment that it has good cause to terminate the License Agreement prior to the expiration of its term. Honey Baked California's breaches of its obligations under the License Agreement include, but are not necessarily limited to:

- Repeated failure to adhere to Brand standards by preparing and shipping perishable food in interstate commerce from food facilities not registered with the FDA or USDA;

- Repeated failure to adhere to applicable laws and Brand standards regarding food labeling, including but not limited to allergy warnings;

- Engaging in gross violations of license requirements, Brand standards and the California Retail Food Code when fulfilling Easter 2020 food orders that materially and unfavorably affected the operation and reputation of the HBH Brand and System. This harm is real and substantial, as evidenced by the flood of customer complaints concerning Honey Baked California's egregious failures to use appropriate packaging and shipping materials and techniques to preserve the safety and quality of the food it sold to consumers during the 2020 Easter holiday season and its inability to fulfil prepaid orders in time for the holiday meal. Many of those outraged customers indicated that have been longtime customers, yet they were so appalled by Honey Baked California's shocking violation of their holiday and family traditions that they vowed they would never again make purchases from the Brand. Such loss of Brand goodwill is irreparable and reflects materially and

19

unfavorably upon the operation and reputation of the franchise business and System;

- Applying the Proprietary Marks to food products not approved for sale under the Brand, the manufacturers and sources of which have not been approved by HBH Licensing;

- Using unapproved domain names containing the Proprietary Marks and unapproved social media accounts using the Proprietary Marks to confuse consumers and market its products outside its licensed territory; and

- Repeatedly failing to follow Brand standards regarding use of approved graphics, signage, and packaging.

10. Despite HBH Licensing's years of repeated, good faith efforts to work with Honey Baked California to bring it in line with food safety, quality control, and other Brand standards, Honey Baked California repeatedly has flouted, ignored, and violated its obligations under the License Agreement, causing irreparable harm to the Brand.

11. By repeatedly and willfully flouting its legal obligations under the License, Honey Baked California has forfeited the right to use the Honey Baked Brand. HBH Licensing therefore respectfully requests that the Court enter a declaratory judgment that HBH Licensing has good cause and is entitled to terminate the License Agreement.

12. In addition to HBH Licensing's claims based on Honey Baked California's breaches of the License Agreement, Honey Baked USA asserts additional counterclaims against Honey Baked California based on the latter's unauthorized and unapproved use of HBH Brand marks in violation of federal law.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

**General Allegations**

13.     Honey Baked Ham has been a family tradition for three generations. Millions of consumers mark the most important milestones in their lives with their loved ones by sharing a Honey Baked Ham as the centerpiece of their table. The Brand is quite simply adored.

14.     The founder and his family descendants have spent three generations painstakingly building the Brand into the commercial success and position of prominence that it holds in the consumer's imagination today.

15.     This success did not occur purely by happenstance. The owner of the Brand always has held itself and its licensees to lofty standards that befit a premium brand. The HBH Brand is a premium brand for special occasions, and the execution and performance of its lofty standards is crucial to its ongoing success.

16.     The Honey Baked System is made up of approximately: (a) 201 retail specialty stores owned by Counterclaim Plaintiffs; (b) 215 retail specialty stores owned and operated by 145 independent franchisees (excluding Honey Baked California's retail stores); (c) an online catalogue owned by Counterclaim Plaintiffs; (d) 36 retail stores in California operated or licensed by Honey Baked California, as a licensee; and (e) a separate online catalogue owned by Honey Baked California.

17.     Since 2015, when the family owners of the business decided to pool their shared resources into a single operating company, the owner of the Brand has moved with single minded determination to promote uniform standards of quality and operations system wide and to grow the business in a highly competitive market for seasonal customers of gourmet food.

18.     Unfortunately, Honey Baked California refuses to fulfill its end of the bargain; it wants the benefits of the License Agreement but not the obligations. It has decided that compliance with its contractual obligations to be part of a national system is not mandatory but optional, and that System standards must be followed

21

only if it so chooses and then on a timetable it dictates. Honey Baked California has
actively thwarted all efforts to bring it in line with the rest of the System.

19.    Honey Baked California has maximized its profits to the detriment of the
quality and uniformity of operations required under the Brand. The results speak for
themselves.

20.    During the Easter 2020 holiday, from an website operated under the
domain name *shophoneybaked.com*, Honey Baked California packaged, labeled, and
shipped by common carrier side dishes, condiments, and other food products branded
with the HONEYBAKED trademarks that arrived to consumers like this:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28











23

The Honey Baked Ham Company

I have yet to receive an email back or a refund for my ham. So I'm putting you on blast Honey Baked. We will never use you again and I hope this will influence others to stay away. After getting a confirmation of our order for one ham ($67.95) we were told we would be notified when it shipped. Our ham was due to arrive April 10th. We receive NO shipping notification and we did not receive a ham We received our ham a day late on 4/11 (still no shipping notification and it was unrefrigerated wrapped only in a shopping bag and bubble wrap. The ham was leaking fluids everywhere including all the way to the bottom of the box. This makes me conclude that the ham was sitting in a warehouse or a truck overnight as it was not delivered on time. This also made the ham completely inedible Side note: A few years back honey baked actually did this same exact thing on Easter (late delivery) and we were unable to eat our ham because we left out of town the day after it was supposed to arrive. I had to have a friend pick up the ham on our doorstep since we had already left. Thanks for ruining our Easter dinner once again.

21.     Licensee has treated the Brand and its customers shabbily and with disrespect. As a result, customers in the state of California are not receiving the benefits of the quality and food safety standards that the rest of the Honey Baked System enjoy.

22.     Licensee repeatedly and recalcitrantly has obstructed Licensor's reasonable efforts to create a nationwide system of Honey Baked stores with uniform methods of operation and standards of quality.

23.     Licensee's conduct reflects materially and unfavorably upon the operation and reputation of the franchise system.

24.     Licensee repeatedly has failed to comply with the requirements of the License Agreement and follow Brand standards.

25.     For these reasons, immediate termination of Honey Baked California's right to use the Brand is justified.

24

I.    The Parties' rights and obligations under the License Agreement.

26.    Section 2(a) of the License Agreement grants to Honey Baked California "the exclusive right and license to use the Proprietary Marks and the System" to (i) promote and operate HONEYBAKED retail stores in California; (ii) promote and sell "Branded Products" and "Non-Branded Products" through HONEYBAKED retail stores in California (as defined in Exhibits B and C to the License Agreement, respectively); and to conduct "Mail Order Transactions," to the extent permitted by Section 6(b)(xi).[3] License Agreement § 2(a).

27.    "Proprietary Marks" include: (a) the trademark and service marks identified in Exhibit A to the License Agreement,[4] (b) the trade names "The Honey Baked Ham Company" and "Honey Baked Ham Co."; and (c) "other trademarks, service marks, proprietary symbols, logos, advertising slogans, label and wrapper designs, and trade dress specified by Licensor from time to time." License Agreement § 1(a), Ex. A to License Agreement.

28.    Honey Baked California may only use the Proprietary Marks on those "Branded Products" that are identified in Exhibit B of the License Agreement unless it obtains HBH Licensing's prior written approval, which HBH Licensing may withhold in its sole discretion.  License Agreement ¶¶ 1(e)(iii); 2(a); 6(a); 6(a)(i); Ex. B to License Agreement.

29.    Should Honey Baked California like to propose to offer a new product as a Branded Product, or a new supplier to supply a Branded Product, Honey Baked

---

[3]  Counterclaim Plaintiffs use capitalized terms herein to indicate terms that are defined in the License Agreement, Doc. 92-1.

[4]  Which include U.S. Reg. Nos. 1,384,504 (HONEY BAKED HAM); 1,861,924 (HONEYBAKED); 3,049,064 (HONEYBAKED); 2,126,500 (THE HONEYBAKED HAM COMPANY); 2,136,466 THE HONEYBAKED HAM COMPANY & Design); 2,150,993 (THE HONEYBAKED HAM COMPANY & Design); 3,452,316 (THE HONEYBAKED HAM COMPANY & Design); and 2,534,573 (THE HONEYBAKED HAM CO. AND CAFÉ) (the "Registered Proprietary Marks").

25

California must request HBH Licensing's approval and provide it with any information HBH Licensing requests, including product samples. License Agreement ¶ 6 (viii). HBH Licensing may grant, deny, or revoke approval of a product or a supplier, in its sole discretion, for any reason. *Id.*

30.    The License Agreement also permits Honey Baked California to sell through its HoneyBaked Outlets in California and Mail Order Transactions certain food products or related products sourced from third party suppliers that are identified in Exhibit C to the License Agreement. Those "Non-Branded Goods" may not use the Proprietary Marks. License Agreement ¶¶ 1(vi); 2(a); 6(a)(i); 6(b)(vii); Exhibit C to License Agreement.

31.    The License Agreement expressly provides that any use of the Proprietary Marks not authorized by its Section 6(a), including use of the marks for products not identified as Branded Products if not otherwise authorized by HBH Licensing, constitutes a material breach of the Agreement. License Agreement § 6(a).

32.    The following paragraphs set forth a partial list of Honey Baked California's obligations under the License Agreement that are relevant to HBH Licensing's counterclaims.

33.    Section 6(b) of the License Agreement provides, in part:

> Licensee recognizes that the Business to be operated by it will be part of a nationwide network of specialty food stores and businesses operated under licenses granted by Licensor or its licensees, engaging in the sale under the Proprietary Marks of Branded Products and other specialty food items and related services pursuant to the System developed by Licensor. In order to maintain such System and in order to protect and enhance the reputation, value and goodwill of the Proprietary Marks and Licensor's licensing System, and to control the nature and quality

26

of the goods and services provided under the Proprietary Marks, so that the public may rely upon the Proprietary Marks as identifying Branded Products and other goods and services of the highest order, Licensee agrees to abide by and conform to the standards of Licensor (and such standards as Licensor may formulate from time to time to enhance the quality and national reputation of the System and the goods and services sold under the Proprietary Marks)…

34.     Section 6(b) of the License Agreement further provides: "Licensee agrees all products will be marketed to the public as high-end, premium products in order to protect and enhance the image and goodwill of the Proprietary Marks and the System."

35.     Section 6(b)(ii) of the License Agreement provides, in part, that Honey Baked California shall "at all times comply with all applicable federal, state and local laws, ordinances and regulations."

36.     Section 6(b)(ii) of the License Agreement further provides, in part, that Honey Baked California "shall take all reasonable precautions to ensure that Branded Products and other products offered for sale retain for as long as possible their original flavor, taste, consistency, freshness and other quality attributes."

37.     Section 6(b)(ii) of the License Agreement further provides, in part, that HBH Licensing "has the right, in its sole discretion, to determine, approve and supervise the quality of service, the food products and ingredients used by Licensee and the method of preparation of all products sold from the Business and to take all other action, of whatever kind or nature, it deems necessary or appropriate to maintain the quality and standards of the Branded Products, the Business, and the HoneyBaked system."

38.     Section 6(b)(ii) of the License Agreement further provides, in part, that if HBH Licensing "establishes food safety guidelines or requires all of its licensees to implement internal or external food safety audits or procedures, Licensee shall, at a minimum, follow such guidelines and implement such audits or procedures in all aspects of its Business, at Licensee's expense."

39.     Section 6(b)(v) of the License Agreement, in part, requires Honey Baked California to "make such repairs and changes to each HoneyBaked Outlet as Licensor may reasonably request in writing in order to maintain and upgrade the image of the HoneyBaked Outlets."

40.     Section 6(b)(vii) of the License Agreement requires Honey Baked California to provide HBH Licensing "with a list of all Non-Branded Products offered in its Business at least sixty (60) days prior to Easter and sixty (60) days prior to Thanksgiving."

41.     Section 6(c)(iv) of the License Agreement provides, in part, that Honey Baked California "may operate and maintain a website for its Business using the Proprietary Marks only at a domain approved in writing by Licensor."

42.     Section 6(c)(iv) of the License Agreement provides, in part, that Honey Baked California "may not register or use domain names, establish or use social media accounts, or create or use apps for its Business without prior written consent of Licensor, which shall have the right to require such domain names and accounts to be registered in Licensor's name."

43.     Section 6(c)(iv) of the License Agreement further provides, in part, that Honey Baked California "must fully comply with any specifications, standards, policy statements, rules or any other requirements specified by Licensor from time to time related to the use of the Proprietary Marks on the Internet and/or any operations of the Business on the Internet, provided that all of the Licensor's licensees are subject to such requirements."

44.    HBH Licensing has performed all of its obligations under the License Agreement.

II.    Honey Baked California's non-compliance with food safety standards and requirements.

45.    HBH Licensing requires as a System standard, with limited exceptions not relevant here, that all "food products sent through Interstate commerce must come directly from USDA or FDA registered food processing facilities without further processing."

46.    In February of 2015, the predecessor of HBH Licensing, HBH Limited Partnership, commissioned an independent laboratory to conduct testing of side dishes manufactured by Honey Baked California in its in-house, non-FDA inspected facilities.

47.    The independent testing of Honey Baked California's side dishes revealed high levels of bacteria microorganisms in cheesy potatoes, prepackaged ham salad, and other side dishes. By way of example, cheesy potatoes from Honey Baked California's Anaheim, California, interstate shipping facility were found to have an unacceptably high aerobic plate count (APC) of 6,000,000.

48.    On April 8, 2015, a representative of HBH Limited Partnership informed Honey Baked California's Vice-President, Mr. Richard Gore, about the excessive microbial counts in certain side dishes revealed by the February 2015 testing.

49.    Mr. Gore claimed that Honey Baked California was no longer preparing the ham salad side dishes in-house and would begin sourcing cheesy potatoes from a third party vendor, among other corrective measures.

50.    HBH Licensing renewed the License Agreement effective July 1, 2015.

51.    Between 2016 and 2017, HBH Licensing repeatedly discussed with Honey Baked California the need for Honey Baked California to align its food safety program and practices with the rest of the System.

29

52.    In 2018, HBH Licensing requested that Honey Baked California provide a letter from the USDA confirming that Honey Baked California's Anaheim shipping facility was exempt from any USDA inspection requirements. For the rest of the System, shipping from a USDA inspected facility is required as the standard.

53.    After extensive discussions with Honey Baked California and review of applicable legal requirements, HBH Licensing ultimately agreed to permit the Anaheim facility to continue to ship Branded hams and turkeys produced in its non-USDA inspected facility while conditioning the shipment of all other food products on their being produced and shipped in a registered USDA or FDA food processing facility.

54.    The exception referenced in the preceding paragraph was limited to Branded Product hams and turkeys that are processed by approved suppliers pursuant to Brand specifications, due in part to the use of antimicrobial agents that inhibit the growth of bacteria and other pathogens in the meat, and also because the hams and turkeys have fewer ingredients and handling requirements that result in a lower risk of pathogens.

55.    In a letter dated July 22, 2019, HBH Licensing conveyed food safety requirements (the Safety Requirements) to Honey Baked California relating to food products shipped from the Anaheim Mail Order facility.

56.    Honey Baked California has never objected to the Safety Requirements.

57.    The Safety Requirements conveyed to Honey Baked California on July 22, 2019, included, *inter alia*:

    a) With the exception of Branded Product hams and turkey breasts, all food products shipped through interstate commerce-specifically including cheesy potatoes-must come directly from USDA or FDA registered food processing facilities without further processing;

    b) Honey Baked California must adhere to the California Retail Food Code;

30

    c) Honey Baked California must maintain food products under proper and safe temperatures through to the point of delivery to consumers;

    d) Honey Baked California must provide consumers with proper instructions on food safety in its shipment packaging materials and provide access to live customer support to address consumer issues or questions.

58. Upon information and belief, Honey Baked California is continuing to ship, from its Anaheim facility and other facilities, substantial quantities of cheesy potatoes, other side dishes, and other food products that have not been manufactured or produced in a registered USDA or FDA facility in accordance with the Safety Requirements and to commit other violations of the Safety Requirements.

III.   <u>Honey Baked California's improper labeling of food products.</u>

59. In 2013, Section 403 of the Federal Food, Drug, and Cosmetic Act of 1938 (FDCA) was amended to establish a federal standard for menu labeling. The federal menu labeling provisions require restaurants and similar retail food establishments that are part of a chain with 20 or more locations doing business under the same name (regardless of the type of ownership, *e.g.*, individual franchises) and offering for sale substantially the same menu items to provide calorie and other nutrition information for standard menu items. *See* 21 U.S.C. § 343(q)(5)(H); 21 C.F.R. § 101.11.

60. Immediately after the federal menu labeling requirements became effective on December 1, 2014, the family licensees of HBH Limited Partnership began making the necessary changes throughout the System to achieve compliance well before the May 7, 2018, federal deadline.[5]

---

[5] California law required California restaurants to conform to the menu labeling regulations as of December 1, 2016, prior to the federal compliance date. *See* Cal. Health & Safety Code § 114094.

31

61.     Effective as of November 8, 1990, the Nutrition Labeling and Education Act (NLEA) amended the FDCA to require most foods regulated by the FDA to be labeled with nutrition information, including, without limitation, a list of ingredients by common or usual name in descending order of predominance by weight. *See* 21 § 343(q); C.F.R. § 101.4.

62.     Additionally, the Food Allergen Labeling and Consumer Protection Act (FALCPA) requires that all food labels of packaged foods regulated under the FDCA identify in plain language if the good contains an ingredient that is or contains protein derived from a "major food allergen" (one of the eight major allergenic foods - milk, egg, fish, crustacean shellfish, tree nuts, wheat, peanuts, or soybeans), as specified in the Act. *See* 21 U.S.C. § 343(w). These requirements apply to covered products labeled on or after January 1, 2006.

63.     Once each of the NLEA and FALCPA became effective, the family licensees of HBH Limited Partnership began implementing all necessary changes throughout the System to achieve compliance well before their respective compliance deadlines.

64.     In addition to these federal requirements, HBH Licensing has long required as a System standard that all pre-packaged or pre-portioned food for later serving at home display a food label including: (a) product name; (b) ingredient list; (c) allergen warnings; (d) use by date; (e) net weight; (f) handling requirements (*i.e.*, "Keep Refrigerated"); (g) store name and location; and (h) a nutritional fact label (the Labeling Requirements).

65.     From 2016 to the present, HBH Licensing has discussed with Honey Baked California the need for Honey Baked California to align its labeling practices with the rest of the System.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

66.     In February 2016, Honey Baked California assured HBH Licensing that it would soon be adopting the Labeling Requirements followed by the rest of the System.

67.     In June 2017, and repeatedly thereafter, HBH Licensing informed Honey Baked California that side dishes being produced and shipped to Mail Order customers by Honey Baked California did not comply with the System's Labeling Requirements.

68.     Honey Baked California again assured HBH Licensing that it would cure these labeling deficiencies by July 5, 2017.

69.     HBH Licensing is informed and believes, and on that basis alleges, that Honey Baked California did not cure these labeling deficiencies by July 5, 2017, but instead has continued through Easter 2020 to ship by common carrier from its Anaheim Mail Order facility side dishes and other foods lacking proper labeling, including allergen warnings, ingredient lists, and nutritional facts, among other labeling deficiencies.

70.     In addition, in 2017 and repeatedly thereafter, HBH Licensing also notified Honey Baked California that food pre-packed and pre-portioned for sale in its California retail stores is not properly labeled in accordance with applicable law and in keeping with System standards.

71.     During this period, Honey Baked California repeatedly assured HBH Licensing that it would correct its retail store food labeling deficiencies.

72.     Notwithstanding these repeated assurances, Honey Baked California repeatedly has continued to sell improperly labeled food from its retail stores.

73.     For example, during the 2019 winter holiday season, a customer posted a complaint to the Yelp consumer review website indicating that a Honey Baked California retail outlet not only failed to apply labels identifying product ingredients,

but went so far as to actively refuse to provide that information to the customer on request:



(Emphasis added.)

74.    In February 2020, Honey Baked California admitted that it is not in compliance with applicable laws and System standards regarding allergen warnings, but it sought to justify its failure to comply on the basis that the "law is not being enforced."

75.    Notwithstanding repeated assurances that Honey Baked California's food labeling practices are otherwise in compliance with System standards and applicable laws, HBH Licensing is informed and believes, and on that basis alleges, that Honey Baked California is continuing to sell food through Mail Order Transactions and in retail stores that is not properly labeled according to System Labeling Requirements for pre-packed or pre-portioned food, and further, is not properly labeled in accordance with food labeling laws and regulations.

IV.    Honey Baked California's Easter 2020 performance damaged the Brand.

76.    Upon information and belief, at least as early as late March and early April, Honey Baked California began having problems fulfilling orders for Easter 2020.

77.    Honey Baked California did not alert the rest of the system to its performance issues. Instead, Honey Baked USA's customer service department began receiving inquiries and complaints regarding the fulfillment of food orders taken by Honey Baked California.

78.    When contacted by Honey Baked USA, Honey Baked California downplayed the problem.

79.    Throughout the holiday period, Honey Baked California customers submitted hundreds and hundreds of complaints concerning Honey Baked California's performance through the contact page of Honey Baked USA's website. In addition, Honey Baked USA began receiving dozens of complaints daily through Facebook Messenger.

80.    Many customers complained that improper labeling, packaging, or shipping techniques used by Honey Baked California resulted in ruined, contaminated, and spoiled food, or that they ordered Easter Meals from Honey Baked California but received nothing, with no explanation or further information available.

81.    One customer inquired, "Received shipment.  Got small baked ham with sides. One plastic wrapped side was not identified. It's all yellow in color. I am not sure what it is. I am allergic to cheese and Cheese ingredients …Please advise what this is. . . Please let me know if this contains cheese and what it is."

82.    To add insult to injury, most customers reported they were unable to contact Honey Baked California for live support about their food orders, to request refunds, or even obtain order status information. Many customers expressed understandable frustration after discovering that links on the California shipping

website were broken and after waiting on hold for hours on Honey Baked California's customer service phone line, with no success.

83.    For example, on April 7 another customer complained: "I received my delivery order today and the beans, potatoes and beans had split open [leaving] a mess in the bag. The ham was ok. I spent 2 1/2 hours on hold for to first position and then a busy signal. I was unable to get through. Tried calling a store and again disconnected. I know it is a busy time but I'm hoping someone can call me tomorrow."

84.    On April 8, another customer complained: "I received my order last night. The box was intact BUT the bag inside containing the two side orders was filled with the contents of the two containers! Both containers were cracked down the side and the contents beans and I think potatoes (hard to tell because they were mixed in with the beans at the bottom of the bag) drained out of the CRACKED containers. I would like to receive a credit to my credit card for these two side orders."

85.    The severity of Honey Baked California's failure to comply with the license's requirements to use appropriate packaging, shipping materials and techniques became apparent when customers started sending Honey Baked USA photographs of their orders received from Honey Baked California. A sampling of representative messages are shown below.



36

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Frozen on dry ice????I did order ahead. My box came 1 day late. Not frozen, no dry ice and this is what it looked like. I know these are hard times but I'm sure they knew once orders started coming in that they were not going to be able to handle it. At that point they needed to have shut down online ordering and they didn't. This was my order. Do you see dry ice?

My first time ordering online.  I usually pick it up but with the stay at home order and being in the high risk bracket I thought I would try it. Very Disappointed! I get food delivered from other places, this needs to be packed better.



How can I get help with this.
This is how my ham and 2 sides showed up.



I just received my Easter meal and this is how it came

37

86.   On April 10, a customer complained: "I am sending this complaint because we received our honey baked ham dinner, on time, but when I opened the box, the containers of baked beans and scalloped potatoes were open and spilt all over the bubble wrap and inside of the box and the taping tool were right on top of everything, And when I picked up the bag of dried beans thinking I could save something, the whole bag on the bottom fell open into the mess in the box so basically I lost everything but the ham. And also during this coronavirus issue I may have the coronavirus in the box. This is our second order from Honeybaked and if this can happen I don't think I would wanna [sic] ever order this again especially for a holiday meal. This whole purpose was so we didn't have to go out due to the virus." The customer also sent Honey Baked USA a photograph of what they received from Honey Baked California, which inexplicably included a packing tape dispenser, as shown below.



CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

87.     Other consumers reported similar experiences. One customer complained: "On April 10 @ 1:15p our [order] was delivered to us, the package was opened, the delivery guy could not explain why. The ham unit was covered in macaroni & cheese and potatoes. The contents of soup bag was opened, the ham was lukewarm. It appears someone opened the box and contents w/in in the box and [poured] these ingredients over the ham. It clearly look as the package has been vandalized prior to arrival to our home. HBH would not deliver this package like this. This is a huge disappointment to my family and mother-in-law who spent good money on this Easter dinner only to have it arrive in a threatening manner. We feel violated and threatened by your package arriving as it did. I have photos to verify the above. A huge disappointment and COMPLETE waste of time try to access HBH customer service over the phone at either OC or Ventura shops. Between my wife and my 10 attempts to contact your customer service, we were abruptly hung up on. I am currently on hold w/ the 800 # on your website, it will be over 100 min to speak with a representative. The obnoxious Santana knockoff doesn't help this disastrous experience with HBH. I hope your Easter better than ours gonna be."

88.     The customer also sent Honey Baked USA photographs demonstrating how his order was delivered, as shown below.




CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

89.    In addition to failing to use appropriate packaging to secure side dishes during mailing of Easter orders, Honey Baked California failed to maintain perishable food items under proper and safe temperatures through to the point of delivery to consumers.

90.    On its website, a screen capture of which is shown below, Honey Baked California guarantees that customer orders will "arrive in perfect order," with the foods flash frozen, insulated in a foam cooler, and accompanied by multiple ice packs.  (Emphasis added.)[6]

**Guaranteed Delicious Delivery**

There is a lot that we do behind the scenes to make sure that your order arrives as fresh and beautiful as the minute we made it. Whether it is our HoneyBaked Ham, a full HoneyBaked Dinner, a delicate dessert, or any of our other gourmet fare, we guarantee it will arrive in perfect order. After all, we want you and your gift recipients to taste the care and pride we put into every HoneyBaked item we make. That's why our packaging process is best in the business.

We utilize UPS to guarantee delivery and ensure that your packages arrive in the best possible condition and in the timeliest manner. Due to the perishability of our products, they are shipped flash frozen (which means they're frozen very quickly at a very low temperature). You, or your recipients, will want to allow 24-36 hours to thaw your product before you plan to serve it.



Flash frozen to preserve freshness and appearance

Gold Foil Wrapped

Multiple ice packs to keep product cool

Insulated foam cooler

Faster handling and shipping to ensure freshness

---

[6] Accessed on July 9, 2020 at Honey Baked California's "Shop Online" webpage. https://shophoneybaked.com/shop-by-product/sides-soups-more/the-classic-2-side-sampler.html

40

91.     Despite these representations, Honey Baked California shipped many Easter orders through common carrier without using proper shipping materials and techniques, and in some cases, without foam coolers, Styrofoam insulating inserts, or ice packs altogether.

92.     Scores of consumers contacted HBH Licensing about receiving orders from Honey Baked California that they determined were unsafe to consume.

93.     For example, one customer reported: "My turkey breast arrived yesterday with the juices leaking through the cardboard and the ice pack completely melted. I'm afraid to eat it since I don't know how long it's been at room temperature." Another customer reported: "I just received my ham. . . it was shipped yesterday. And it was not shipped with anything to keep it cold. Just placed in the box in a bag. Is it safe to eat? Just doesn't seem right. . . I'm worried about serving it to my family." Similarly, another customer reported that the Honey Baked Ham they had ordered for overnight delivery arrived a day late, and had "been sitting at the distribution center for 2 days without refrigeration. The Box did not come with any ice packs or solution to keep the ham cold as suggested on your website. We are very hesitant to eat the ham, since we ordered it for our Easter dinner." And yet another customer complained: "[t]he turkey breast came in a cardboard box with no ice and not Styrofoam. It is at room temperature and juice out of its container. I'm sure this can't be right. . . I'm concerned, especially about the turkey, that it will make my family sick.  I can't get a hold of anyone via phone. . . very frustrated." Another customer expressed great frustration at the condition of his food and inability to reach Honey Baked California for assistance: "Order shipped yesterday from Anaheim, CA. Delivered today. No packaging like Styrofoam or anything to cool it. It's rotted through the box and smells. Now I'm on hold for 138 minutes to your 800 number."

94.     Another customer tried to get assistance through the Honey Baked Ham website after two of the three separate orders she placed with Honey Baked

41

California failed to arrive, and she had been disconnected from Honey Baked California's customer service line after holding for three hours.  She wrote: "I ordered 3 hams. One to Utah, one to Oregon, and one to California. Only the one to California had a tracking number and was delivered. Waited on the phone 2hr 57 min to get tracking numbers for the other two because as of 4: 22 pm they have not [been] delivered. Was told I was next, heard a click and then the call was dropped. Now on the phone again and the wait time is 184 minutes. :[ "

95.    The day before Easter, Honey Baked USA was flooded with calls and messages from California customers seeking assistance with their orders and stating that the California call center was closed. Many customers were upset because they received spilled or spoiled food they could not use for their family's Easter meal. Others hadn't received their orders, hadn't been giving tracking numbers, and couldn't reach Honey Baked California for assistance.

96.    One customer complained: "When I opened the box it was a mess.... beans, potatoes, all opened in box looked like a bowl of soup....I will never ever purchase anything from Honey Baked Ham again....Thanks for destroying Easter......"

97.    Another customer wrote: "I am currently on hold with your customer service for a quoted time of 178 minutes. I spent a LOT of money on this ham to make our Easter special. It was supposed to be delivered today. When I checked UPS... it now says Monday which is after Easter and also means it will have been in transit for 5 days.... I can't get a hold of anyone who can help me."

98.    Another customer stated: "I am so upset, I paid a lot ahead of time to have a ham delivered, it did not arrive, I was calling and being hung up on, then I finally am on hold and I have been on hold for over 4 hours, I just want to feed my family for Easter, the lack of communication is so frustrating, if you had issues as a company with deliveries you should have sent an email to your customers advising this to them since we are in times that we cannot just run to the store for a back up. I

42

am very very upset with you all!." Similarly, a customer complained: "I ordered a ham a week before Easter. You took my payment and I never got my ham. You ruined our Easter dinner. I will never order from HBH again.  I will warn everyone not to do business w your co[mpany]."

99.    Still another customer complained that: "Your company has taken advantage of this pandemic, offering product with delivery dates that were impossible to meet. You ruined our holiday as we ordered and paid our ham a week in advance and never received it. Spent days and hours in 'cue' in a feeble attempt to reach your customer service. As their work day ended before our call reached a representative. Shame on you and your greedy business practices."

100.  In addition to contacting Honey Baked USA, hundreds of customers of Honey Baked California posted complaints and negative reviews about the HBH Brand and the System that appeared nationwide on social media platforms such as Facebook, Twitter, and Instagram. Representative examples of consumer complaints posted to Facebook are shown below.



CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Hilary Guy ▶ The Honey Baked Ham Company**
13 hrs · ⊙

The Honey Baked Ham Company

I have yet to receive an email back or a refund for my ham. So I'm putting you on blast Honey Baked. We will never use you again and I hope this will influence others to stay away. After getting a confirmation of our order for one ham ($67.95) we were told we would be notified when it shipped. Our ham was due to arrive April 10th. We receive NO shipping notification and we did not receive a ham 😤 We received our ham a day late on 4/11 (still no shipping notification and it was unrefrigerated wrapped only in a shopping bag and bubble wrap. The ham was leaking fluids everywhere including all the way to the bottom of the box. This makes me conclude that the ham was sitting in a warehouse or a truck overnight as it was not delivered on time. This also made the ham completely inedible 😤 Side note: A few years back honey baked actually did this same exact thing on Easter (late delivery) and we were unable to eat our ham because we left out of town the day after it was supposed to arrive. I had to have a friend pick up the ham on our doorstep since we had already left. 😤Thanks for ruining our Easter dinner once again.

**D'Artagnan Pendleton ▶ The Honey Baked Ham Company**
15 hrs · ⊙

My delivery from Anaheim, Ca. Shipped yesterday at 8am and delivered today at 2 pm. No Styrofoam, no ice pack. Nothing but food poisoning in a box. Confirmation Number: HBCA400013763 Your Order Number: 996347 After 3 hours and 2 minutes, I was 12 in the queue and I was hung up on. Called back and the recording said No one here to answer the phone. Here is your delivery for my Easter! After 31 years of Honey Bake Ham tradition, Way to Go, CEO!



**Mike Gines ▶ The Honey Baked Ham Company**
19 hrs · ⊙

Just received our order.
$100 down the drain. How infuriating. We always buy Honeybaked for the holidays. Not anymore.
I'm 143 in line on the phone.
Apparently we were not they only ones.
UPDATE- Ive been on hold for 2 HOURS!!!!!! im now number 62 in line.



44

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17
18
19
20
21
22
23
24
25



26    101.  Many customers also took to Twitter to post about their poor experiences

27   caused by Honey Baked California. Some also used hashtags to indicate their disdain

28

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

for the brand due to their Easter 2020 experiences, such as #honeybakedscam,
#honeybakedhamscam, #hamscam, and #honeybakedpredator. Representative
examples of consumer complaints posted to Twitter are shown below:





CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

1
2
3
4
5
6
7
8
9
10



11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27



28

47

1
2
3
4
5
6
7
8
9
10
11



12
13
14
15
16
17
18
19
20
21



22
23
24
25
26
27
28



48

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





49

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







50

102.   Additionally, dozens of customers posted complaints to Yelp consumer review webpages for Honey Baked California's retail stores. A sample is shown below:



**Vickie S.**
San Francisco, CA
0 friends
14 reviews
5 photos

  4/10/2020

STAY AWAY FROM HONEYBAKED HAM.  The company has lost its way.  There is no quality control, they ship the wrong items, and offer not rebate or coupon for their continuing mistakes.  The call center is so overwhelmed with people trying to fix their deliveries they have SHUT DOWN THEIR CALL CENTER, and  recordingn says try again later.  The first time I called they had waits of 2-1/4 hours until I was cut off.  The second time was longer, and after waiting for 45 minutes, they cut me off again. No customer service now.  If you order be prepared to get substitutions or defective products.  My last two experiences with ordering from this company have been frustrating and negative, and I will never order from them again.

**Pierre D.**
Lomita, CA
2 friends
18 reviews
2 photos

  4/10/2020

1 photo

Gift from family member, they had it delivered to our house and this is how it showed up. No ice packing or insulation, absolute waste. Yes, this came from the Torrance location.

You guys suck, big time.



51

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15




**S B.**
Aliso Viejo, CA
14 friends
14 reviews
2 photos

⭐ ☆ ☆ ☆ ☆   4/10/2020

📷 1 photo

Most frustrating experience ordering dinner for Easter.  Trying to support our local businesses in this chaotic time & they were anything but grateful.  I called regarding this order and how it came, waited on hold for over a half!  I was then told that it wasn't their fault & to call the shipping company to figure it out.  Unacceptable to me since I had no control over how their food was delivered.  Very disappointing to not have Easter dinner as well as now having to clean up this huge mess.

16
17
18
19
20
21
22
23
24
25
26
27
28



**Lossie S.**
Los Angeles, CA
0 friends
3 reviews

⭐ ☆ ☆ ☆ ☆   4/13/2020

I am very angry and disappointed on a High Holy Day.  Honey Baked Ham disappointed so many people, including myself.  Your business should be under promise and over deliver...not the other way around.  Your ham has been the centerpiece of holiday dinners for years.  In better days, we have stood in long lines to pick up one.  But now, when so many of us were dependent on delivery because of COVID-19, I as a senior called and called and called.  I was left on hold for hours and your company didn't even have the decency to produce a recorded message for those of us who sat on hold for hours to let us know that the deliveries would be delayed so we could make other arrangements as to not be completely disappointed.  You were even advertising delivery services on T.V. when you couldn't even figure out how to fulfill the deliveries already processed.  I want my money back, a ham and a gift card for my trouble...oh, and add an apology from the CEO, too!  And I want that 1 star back Yelp made me give you to post this review.

52



103. Some customers were so frustrated by their inability to reach Honey Baked California's customer support that they began attempting to contact Honey Baked USA employees by sending messages through the LinkedIn website. This is one example:

> Greetings Horace: I am a retired Boeing exec residing in SoCal, and I have been enjoying Honey Baked hams for more than 50 years; it is a long standing Easter tradition for our family. Because my family is not local, I ordered three Honey Baked ham meals to be delivered to our homes for Easter; we were going to Zoom our Honey Baked Easter meal from around the state! The first of three ordered meals was delivered to my sons home about an hour ago, When the box was opened it looked like a war had taken place; food was spilled all over the box and the ham was room temperature and probably spoiled. So much for our Easter dinner. I tried to contact the local store in Lake Forest Ca which hung up on me three times. I called your 1-800 and 1-866 lines and, of course, no one answered the phone. I realize that times are difficult . . . and if ever we needed Honey Baked to bring our families and country together it was 2020. I am actually beyond greatly disappointed; I am really perplexed how this could ever happen to a cornerstone company in the US of A. Our family Zoom / Honey Baked virtual Easter meal has been cancelled.
>
> [Name removed]
> Cell: 949 xxx-xxxx

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

104.   Other Honey Baked California customers went so far as to locate and contact Honey Baked USA employees at their homes. One customer even sent a letter to Honey Baked USA's CEO, Linda van Rees.

105.   The complaints described in the preceding paragraphs are illustrative and by no means exhaustive.

106.   Customers posted hundreds, if not thousands, of complaints and negative commentary about the HBH Brand on social media platforms and various websites relating to Honey Baked California's disastrous performance during Easter 2020.

107.   Honey Baked USA alone received more than 800 complaints submitted through its website from Honey Baked California customers around the Easter holiday.

108.   Several hundred Honey Baked California customers complained that their Honey Baked Ham, turkey, and other food items had never arrived for the Easter holiday, or arrived after their scheduled delivery date.

109.   More than 100 Honey Baked California customers complained that they received food that was delivered warm or thawed, or food that had spilled out of containers that were not securely closed and not appropriate for mail order shipping of food

110.   Many customers told Honey Baked USA that their Easter holiday was ruined due to Honey Baked California's dismal performance and total lack of customer service. For example, a long time Honey Baked customer who didn't receive her Easter ham in time for the holiday and was unable to reach anyone at Honey Baked California said "[t]hank you for making this the saddest Easter ever." A man who had purchased a prime rib feast for his family's Easter dinner, who did not receive his order but instead received a smashed cake and mashed potatoes, stated that "[m]y Easter with my family is ruined and with me out of work, me and my family were looking forward to this meal together."   A woman who received a

54

spoiled harm stated that "[m]y Easter dinner is ruined and just can say how disappointed I am." Another woman who received inedible spilled side dishes and ham that was not kept cool stated "I want [my] money back we had to throw the whole thing out and its ruined our Easter dinner that due to the pandemic I can't even replace properly." Further, a woman who did not receive the meal she ordered for Easter stated "[m]y Easter dinner was ruined because you did not fulfill your promise to deliver."

111. Honey Baked California's operational issues and repeated failures to meet customer expectations around the Easter holiday reflected materially and unfavorably upon the operation and reputation of the Brand and System.

112. Following the deluge of complaints from Honey Baked California customers, HBH Licensing demanded that Honey Baked California temporarily suspend courier shipping from its Anaheim facility until HBH Licensing could investigate the problems and ensure that protective measures were in place to protect consumer health and safety, and prevent further damage to the Brand and System.

113. Honey Baked California declined and refuses to do so.

V.   HBH California's unauthorized use of HBH Proprietary Marks

114. The License Agreement grants Honey Baked California a license to use the Proprietary Marks only in connection with the Branded Products listed in Exhibit B of the License Agreement. *See* License Agreement § 6(b)(vii).

115. Honey Baked California has no right, license, or authorization to use the Proprietary Marks other than those limited rights set forth in the License Agreement, and only pursuant to all restrictions and requirements of the License Agreement.

116. HBH Licensing has not licensed or authorized Honey Baked California to use the Proprietary Marks for any products other than the Branded Products. The Branded Products do not include side dishes, condiments, desserts, or soup mixes.

117.  At some point in time, without approval of HBH Licensing, Honey Baked California began using the Proprietary Marks in connection with the sale of side dishes, condiments, desserts, soup mixes, and other food products.

118.  For example, Honey Baked California is selling the products below, which use the Proprietary Marks, in its California retail stores.

**Tantalizing Honeyspice Sauce**



**Champagne Gourmet Mustard**



**Cakes**



**Ham Bone Soup Mix**



56

119.   HBH Licensing has not approved the manufacturer or supplier of these side dishes, condiments, desserts, and other food products.

120.   These side dishes, condiments, desserts, and other food products are not listed in Exhibit B of the License Agreement as Branded Products.

121.   These side dishes, condiments, desserts, and other food products do not comply with System standards. They are not made by an approved manufacturer, and upon information and belief do not comply or fully comply with System Labeling Requirements.

122.   The sale of these unapproved products with the Proprietary Marks affixed to them is likely to cause, and has caused, actual consumer confusion as to whether these products have been approved by HBH Licensing.

VI.   <u>Honey Baked California's unauthorized registration and use of domain names.</u>

123.   The License Agreement provides that Honey Baked California may not register or use domain names, establish or use social media accounts, or create or use apps for its business without the prior written consent of HBH Licensing, which shall have the right to require such domain names and accounts to be registered in Licensor's name.

124.   The License Agreement further provides that Honey Baked California must fully comply with any specifications, standards, policy statements, rules or any other requirements specified by Licensor from time to time related to the use of the Proprietary Marks on the Internet.

125.   At least as early as 1996, the predecessor of HBH Licensing registered the subdomain *ca.honeybaked.com* and approved it for use by Honey Baked California.

126.   From 1996 until at least 2018, HBH Limited Partnership and HBH Licensing caused traffic from the National Website to be directed to this subdomain.

127.   At some point in time, without the knowledge or approval of HBH Licensing or its predecessor, Honey Baked California registered the domain *shophoneybaked.com* and apparently began re-directing traffic from *ca.honeybaked.com* to *shophoneybaked.com*.

128.   In 2018, HBH Licensing became aware that Honey Baked California is using domain name *shophoneybaked.com*. HBH Licensing later became aware that Honey Baked California has registered and is using an additional domain name, *hbhca.com*.

129.   On November 1, 2019, HBH Licensing requested the transfer of the two domain names after the holiday sales rush.

130.   Honey Baked California, through counsel, stated that it would transfer the two domain names to HBH Licensing as requested.

131.   On November 27, 2019, HBH Licensing published in draft form updated Internet Guidelines that delineated requirements pertaining to use of the Proprietary Marks in digital media. These updated requirements, which became effective February 1, 2020, permitted Honey Baked California to use the domain names that it previously registered under certain conditions, including that Honey Baked California transfer ownership of the domain names to Honey Baked USA, include titles and metatags that clearly define the territorial limitations of the California website, and include features distinguishing that website from Honey Baked USA's shopping portals.

132.   On February 28, 2020, Honey Baked California notified HBH Licensing that despite its earlier agreement to transfer ownership of the domain names to HBH Licensing, it was now unwilling to do so.

133.   Honey Baked California has registered and is using the domain names *shophoneybaked.com* and *hbhca.com* in breach of its obligations under License Agreement. Further, Honey Baked California is not complying with the

58

specifications, standards, policy statements, rules and any other requirements specified by Licensor related to the use of the Proprietary Marks on the Internet.

134.   Honey Baked California's use of the domain name *shophoneybaked.com* is likely to cause, and has caused, actual consumer confusion and damaged the reputation of the Honey Baked System and trademarks.

VII.   Honey Baked California's failure to update stores to System standards

135.   Prior to renewal of the License Agreement in 2015, HBH Limited Partnership notified Honey Baked California that approximately ½ of California's stores were still using pre-1996 "Hexagon" signage.

136.   In the 2015 License Agreement, Honey Baked California committed to "update its signage on all of its HoneyBaked Outlets, and [to] cause its sublicensees to update their signage on all of their HoneyBaked Outlets, to match Licensor's current standards for signage … within 180 days" of the License Agreement's effective date. *See* License Agreement § 6(a)(ii).

137.   Honey Baked California further committed to update signage on its retail stores to correspond to any signage standards adopted by HBH Licensing in the future on the occurrence of certain conditions and within certain timeframes set forth in the § 6(a)(ii) of the License Agreement.

138.   From July 2015 to 2019, Honey Baked California repeatedly informed HBH Licensing that it had fully converted all the pre-1996 signage to current System standards or imminently would do so.

139.   In fact, Honey Baked California failed to update and convert many signs throughout California, while continuing to represent that it had or would. For example, in 2016, Honey Baked California assured HBH Licensing that with three exceptions (none of which are identified in the following paragraph) all stores have been converted.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

140.   On November 1, 2019, HBH Licensing notified Honey Baked California that it was in default of its obligation to update store signs at its store locations in La Mesa, Stockton, Huntington Beach, and Ventura.

141.   As of February 28, 2020, Honey Baked California had still not corrected the signage defaults at the La Mesa and Stockton stores with permanent signage. On information and belief, it still has not done so as of the date of this filing.

VIII.   Honey Baked California's failure to update graphics to System standards.

142.   Section 6(b) of the License Agreement provides, in part, "In order to maintain such System and in order to protect and enhance the reputation, value and goodwill of the Proprietary Marks and Licensor's licensing System, and to control the nature and quality of the goods and services provided under the Proprietary Marks, so that the public may rely upon the Proprietary Marks as identifying Branded Products and other goods and services of the highest order, Licensee agrees to abide by and conform to the standards of Licensor."

143.   In early spring 2018, Honey Baked USA completely redesigned and modernized the Brand.

144.   On or about March 25, 2018, HBH Licensing sent Honey Baked California a draft of the proposed new Brand Standards, which imposed requirements for the printed display of the Proprietary Marks.

145.   HBH Licensing also reviewed a copy of the new Brand Standards with Honey Baked California in a meeting in June of 2018.

146.   The new Brand Standards contained specifications and requirements for use of the new marks on product packaging, retail bags, shipping boxes, and other materials.

147.   Examples of the new Brand Standards used on packaging for side dishes and condiments, and on retail bags, are shown below.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16



17

18

19

20

21

22

23



24

25

26

27

28

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS




148.   On October 13, 2018, HBH Licensing notified Honey Baked California that it required adoption of the new Brand Standards, effective June 1, 2019. Although much of the rest of the System had already implemented the new Brand Standards, HBH Licensing delayed implementation of the Brand Standards for stores in California for more than six months (two holidays later) to allow Honey Baked California time to exhaust its current supply of packaging and to plan ahead to be able to implement the required changes in time for the 2019 Holidays.

149.   Despite having more than a year's notice, Honey Baked California continued to use packaging and bags displaying outdated graphics throughout the 2019 Holiday season in its retail stores:

 

7

150.   On or about February 28, 2020, Honey Baked California represented to HBH Licensing that it had completed its transition to new standard packaging.

151.   In fact, contrary to its representation, Honey Baked California continued to use outdated, unapproved graphics on tote bags and packaging throughout the 2020 Easter holiday, as shown below:

 

---

7 In addition to this product packaging using outdated branding, Honey Baked California's distribution of this product itself materially breaches the License Agreement because it uses the Proprietary Marks but is not an authorized Branded Product or otherwise approved by HBH Licensing.

63

 

152.   Honey Baked California's continued use of outdated packaging that is non-compliant with current System Standards constitutes a breach of the License Agreement and damages the Brand.

### Count I – Breach of Contract—Food Safety Requirements
### (By HBH Licensing against Honey Baked California)

153.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–152 as if fully set forth herein.

154.   HBH Licensing and Honey Baked California are parties to the License Agreement.

155.   HBH Licensing performed all of its duties under the License Agreement.

156.   The License Agreement obligates Honey Baked California to, *inter alia*, follow food safety requirements established by HBH Licensing. *See* License Agreement § 6(b)(ii).

157.   HBH Licensing has exercised its rights under the License Agreement by establishing Safety Requirements mandating, *inter alia*, that:

64

a)    All food products shipped through interstate commerce, with the exception of Branded Product hams and turkey breasts, must come directly from USDA or FDA registered food processing facilities without further processing;

b)    Honey Baked California must adhere to the California Retail Food Code;

c)    Honey Baked California must maintain food products under proper and safe temperatures through to the point of delivery to consumers;

d)    Honey Baked California is to provide consumers with proper instructions on food safety in the shipment packaging materials and provide access to live customer support to address consumer issues or questions.

158.    Honey Baked California has repeatedly and materially breached and failed to meet its obligations under the Safety Requirements.

159.    Honey Baked California has shipped products through interstate commerce, including but not limited to cheesy potatoes, ham salads, side dishes and condiments, that did not come directly from a USDA or FDA registered food processing facility without further processing.

160.    Honey Baked California repeatedly has shipped food to customers via common courier that was not packaged in a way that allowed it to maintain proper and safe temperatures through to the point of delivery to consumers.

161.    Honey Baked California repeatedly has failed to provide proper food safety instructions in the shipment packaging of food products shipped to consumers via common courier.

162.    Honey Baked California failed to provide adequately staffed live customer support to field and respond to customer complaints and questions.

163.    Honey Baked California has violated the California Retail Food Code in regards to shipments from its retail stores.

164.   Honey Baked California's repeated breaches of the Safety Requirements endanger consumer health and welfare and irreparably harm Counterclaim Plaintiff, the Brand, and they System.

165.   HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to complying with System food safety requirements, so long as the License Agreement remains in effect.

**Count II – Breach of Contract—Product Labeling**

**(By HBH Licensing against Honey Baked California)**

166.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–165 as if fully set forth herein.

167.   The License Agreement obligates Honey Baked California to, *inter alia*, abide by and conform to standards established by HBH Licensing as well as by all applicable federal, state, and local laws and regulations. *See* License Agreement §§ (6)(b), (b)(ii).

168.   HBH Licensing has exercised its rights under the License Agreement by establishing Labeling Requirements for the System that require all retail stores in the Honey Baked System to follow FDA food and menu labeling laws and to label each pre-packed and pre-portioned food products sold at Honey Baked outlets with various information including: (a) product name; (b) ingredient list; (c) allergen warnings; (d) use by date; (e) net weight; (f) handling requirements (i.e. "Keep Refrigerated"); (g) store name and location; and (h) a nutritional fact label.

169.   Honey Baked California has repeatedly violated the Labeling Requirements by, *inter alia*:

- Failing to provide required allergen statements;
- Failing to provide required ingredient lists;
- Failing to provide required nutritional information;

66

- Failing to provide required use by dates;

- Failing to provide required net weights;

- Failing to provide required store name and location; and

- Failing to provide required nutritional facts and information.

170. In addition to its recurrent failures to comply with the Labeling Requirements, Honey Baked California has repeatedly and recalcitrantly made misrepresentations to HBH Licensing regarding its compliance or plans to come into compliance.

171. In addition to requiring Honey Baked California to comply with Licensor's Labeling Requirements, the License Agreement obligates Honey Baked California to comply with all applicable federal, state, and local laws and regulations.

172. Honey Baked California has not complied with federal labeling laws.

173. In addition to federal laws, one state law, California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Prop 65") requires retailers producing food in California that introduce a listed chemical known to cause cancer or reproductive toxicity into a food product, or sell such a food product under a brand or trademark owned or licensed by the retailer or an affiliated entity, to provide a warning that the food product contains a chemical known to the State of California to cause cancer or reproductive toxicity. *See* Cal. Health & Safety Code § 25249.6.

174. Honey Baked California produces and sells food products that, on information and belief, contain or are likely to contain chemicals identified by the State as Prop 65 chemicals.

175. On information and belief, Honey Baked California's online catalogue and many of its retail stores do not provide the required Prop 65 warnings.

176. Since at least 2017, HBH Licensing has repeatedly voiced its concerns about Prop 65 compliance to Honey Baked California, and the latter has repeatedly failed to provide requested assurances of compliance.

177. Honey Baked California's noncompliance with the Labeling Requirements and federal and state law and regulations, including Prop 65, endangers consumer health and welfare and irreparably harms Counterclaim Plaintiff, the HBH Brand and System.

178. HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to complying with applicable Labeling Requirements, Prop 65, and all other applicable federal, state, and local laws and regulations, so long as the License Agreement remains in effect.

**Count III – Breach of Contract—Gross Violations of Quality Control Standards**
**(By HBH Licensing against Honey Baked California)**

179. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–178 as if fully set forth herein.

180. The License Agreement obligates Honey Baked California to, *inter alia*: (1) market all products as high-end, premium products in order to protect and enhance the image and goodwill of the Proprietary Marks and the System; (2) take all reasonable precautions to ensure that products that it packs and ships to consumers retain their original flavor, taste, quality, and other attributes; (3) use appropriate packaging and shipping materials and techniques and (4) comply with directives from HBH Licensing regarding actions to be taken to maintain the quality and standards of the HBH Brand and System. *See* License Agreement §§ 6(b), 6(b)(ii).

181. During the 2020 Easter holiday season, Honey Baked USA grossly violated these and other obligations under the License Agreement.

182. Honey Baked California shipped by common carrier Branded Products and other products, including numerous side dishes, to consumers in inappropriate and unsafe packaging that was not designed to and could not prevent food spillage and spoilage or maintain temperature control.

183.   In many instances, Honey Baked California simply placed hams and unsecure containers of side dishes in cardboard boxes, sometimes with an ice pack, and shipped them to customers in California via overnight couriers.

184.   Unbelievably, in several instances Honey Baked California shipped by common carrier the Brand's signature product, the Honey Baked Ham, in a cardboard box with no ice pack or dry ice, and no insulation.

185.   Scores of customers complained to Honey Baked USA that their eagerly anticipated Honey Baked Ham was unsafe to eat, spoiled, and rotten.

186.   As a result of Honey Baked California's violation of its duties, many customers who placed orders for family celebrations and observations of the Easter holiday received boxes filled with leaking or broken packages of spilled, spoiled food. Many others complained they never received their Easter meals at all or received them after the holiday.

187.   The improper food shipments sent out by Honey Baked California over the Easter holiday season generated more than 1,000 customer complaints and hundreds of negative reviews posted on social media and other websites, endangered health and safety, damaged Counterclaim Plaintiff, and caused serious and irreparable harm to the HBH Brand.

188.   The problems were compounded by Honey Baked California's breach of its duty to make available live customer support to respond to customer complaints and inquiries.

189.   Scores of dissatisfied customers reached out to Honey Baked USA through many different channels, to express their displeasure and to relay stories of being kept on hold with Honey Baked California's ostensible customer support line for hours, only to be disconnected without receiving assistance. Honey Baked USA itself was many times unable to reach Honey Baked California to relay the complaints.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

190.   Honey Baked California's breach of its obligations, *inter alia*, to (1) market all products as high-end, premium products in order to protect and enhance the image and goodwill of the Proprietary Marks and the System; (2) take all reasonable precautions to ensure that products that it packs and ships to consumers retain their original flavor, taste, quality, and other attributes; (3) use appropriate packaging and shipping materials and techniques; and (4) comply with directives from HBH Licensing regarding actions to be taken to maintain the quality and standards of the Brand and System reflected materially and unfavorably upon the reputation of the franchise operation and System, caused irreparable harm to the Brand, and damaged HBH Licensing.

191.   HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to the mandates that: (1) it take all reasonable precautions to ensure that products that it packs and ships to consumers retain their original flavor, taste, quality, and other attributes; (2) use appropriate packaging and shipping materials and techniques; and (3) comply with directives from HBH Licensing regarding actions to be taken to maintain the quality and standards of the Brand and System, so long as the License Agreement remains in effect.

**Count IV—Breach of Contract—Unauthorized Use of Proprietary Marks**

**(By HBH Licensing against Honey Baked California)**

192.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–191 as if fully set forth herein.

193.   The License Agreement grants Honey Baked California a clearly defined and limited License to use the Proprietary Marks.

194.   Honey Baked California is only licensed to use the Proprietary Marks on those Branded Products identified in Exhibit B of the License Agreement. *See* License Agreement § 1(e)(iii), 2(a), 6(a), 6(a)(i).

70

195.   The License Agreement expressly prohibits the Licensee from using the Proprietary Marks for any products other than the Branded Products identified in Exhibit B of the Agreement without HBH Licensing's prior written approval, which HBH Licensing may withhold in its sole discretion. *See* License Agreement § 6(a)(i).

196.   The License Agreement provides that any use of the Proprietary Marks for products not identified as Branded Products without HBH Licensing's prior written approval constitutes a material breach of the Agreement. *See* License Agreement § 6(a).

197.   Without the authorization or approval of HBH Licensing, Honey Baked California has offered for sale, and on information and belief continues to offer for sale, in packaging bearing the Proprietary Marks, numerous types of food products that are not authorized Branded Products.

198.   Honey Baked California's unauthorized use of the Proprietary Marks on food products not authorized as Branded Products materially breaches the License Agreement and irreparably damages Counterclaim Plaintiff and the HBH Brand and System. *See* License Agreement § 6(a).

199.   HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to, immediately and permanently suspending the unauthorized use of the Proprietary Marks all products that are not approved for sale as Branded Products.

**Count V—Breach of Contract—Unauthorized Use of and Refusal to Transfer Domain Names and Social Media Accounts**

**(By HBH Licensing against Honey Baked California)**

200.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–199 as if fully set forth herein.

201.   Through the License Agreement, Honey Baked California agreed that any advertising or marketing that it conducts through the Internet shall be made in accordance with any policies that HBH Licensing shall designate from time to time.

202.   Additionally, the License Agreement provides that Honey Baked California may operate and maintain a website for its Business using the Proprietary Marks only at a domain name that HBH Licensing has approved in writing.

203.   Further, Honey Baked California may not register or use domain names, or establish or use social media accounts, without HBH Licensing's prior written consent.

204.   The License Agreement also provides that HBH Licensing has the right to require that any domain names and social media accounts used by Honey Baked California be registered in HBH Licensing's name.

205.   The License Agreement further provides that Honey Baked California must fully comply with any specifications, standards, policy statements, rules or any other requirements specified by Licensor from time to time related to the use of the Proprietary Marks on the Internet and/or any operations of the Business on the Internet.

206.   Honey Baked California is using or has used the domain names *shophoneybaked.com* and *hbhca.com*, both of which are registered in its own name, without approval from HBH Licensing.

207.   On November 1, 2019, HBH Licensing sent Honey Baked California a letter notifying it of its various breaches of, and obligations under, the License Agreement, including Honey Baked California's obligation to transfer all domain names used in its Business to HBH Licensing upon request.

208.   Also in that letter, HBH Licensing requested that Honey Baked California transfer the registration of the domain names *shophoneybaked.com* and *hbhca.com* to HBH Licensing by March 1, 2020.

72

209.   On November 27, 2019, HBH Licensing updated its Internet Guidelines, which set forth requirements pertaining to use of the Proprietary Marks in digital media. These updated requirements, which became effective February 1, 2020, permitted Honey Baked California to use the domain names that it previously registered under certain conditions, including that Honey Baked California transfer ownership of the domain names to Honey Baked USA, include titles and metatags that clearly define the territorial limitations of the California website, and include features distinguishing that website from the National Website.

210.   Despite initially agreeing to transfer the domain names to HBH Licensing in accordance with the License Agreement, Honey Baked California has since refused to do so, in breach of the License Agreement.

211.   Honey Baked California has also breached the License Agreement by establishing and using numerous social media accounts in the operation of its Business, including accounts on Facebook and Twitter, without HBH Licensing's prior written consent and thereby has irreparably damaged Counterclaim Plaintiff, the Brand, and the System.

212.   HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to: (1) transfer of the registration and ownership of the domain names *shophoneybaked.com* and *hbhca.com* to HBH Licensing; (2) transfer of control of all social media accounts using the Proprietary Marks in the operation of Honey Baked California's Business; (3) comply with the Internet Guidelines regarding use of titles and metatags that clearly define the territorial limitations of the California website and the inclusion of features distinguishing that website from the National Website, so long as the License Agreement remains in effect.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

## Count VI—Breach of Contract—Noncompliance with Brand Standards
## (By HBH Licensing against Honey Baked California)

213.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–212 as if fully set forth herein.

214.   The License Agreement obligates Honey Baked California to, *inter alia*, use and display the Proprietary Marks as authorized and directed by HBH Licensing.

215.   In exercise of its rights under the License Agreement, HBH Licensing from time to time updates Brand logos and other Proprietary Marks.

216.   The License Agreement requires Honey Baked California to use and employ updated Proprietary Marks as directed by HBH Licensing.

217.   On or about October 13, 2018, HBH Licensing updated its Brand Standards for printing and display of the Proprietary Marks.

218.   Although most of the rest of the System immediately adopted the updated Proprietary Marks, HBH Licensing delayed the effective date of this update for Honey Baked California until June 1, 2019, so that Honey Baked California would have time to exhaust existing supplies of packaging and other materials bearing the legacy Proprietary Marks.

219.   Despite repeated requests from HBH Licensing and repeated assurances of compliance from Honey Baked California, Honey Baked California continued to use noncompliant packaging at least through the 2020 Easter holiday season.

220.   Honey Baked California's refusal to comply with Brand standards for use of the Proprietary Marks violates the License Agreement, does not confirm to System standards, undermines the licensing system and the uniform use of the Proprietary Marks throughout the System, and irreparably harms Counterclaim Plaintiff and the HBH Brand and System.

221.   HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not

74

1  limited to bringing and keeping all packaging materials making use of the Proprietary

2  Marks into compliance with updated Brand standards, so long as the License

3  Agreement remains in effect.

4  **Count VII—Federal Trademark Infringement, 15 U.S.C. 1114(1)**

5  **(By Honey Baked USA against Honey Baked California)**

6  222.  The Counterclaim Plaintiffs hereby incorporate the allegations of

7  paragraphs 1–222 as if fully set forth herein.

8  223.  Honey Baked USA owns the trademarks HONEYBAKED, HONEY

9  BAKED HAM and the HONEY BAKED HAM COMPANY ("the HONEYBAKED

10  marks"), which have been duly registered in the United States Patent and Trademark

11  office.

12  224.  Copies of the corresponding registration certificates are attached as

13  Exhibit 1 and constitute evidence of Honey Baked USA's ownership of and exclusive

14  rights to use the marks in connection with the goods and services recited in the

15  registrations.

16  225.  By and through its wholly owned subsidiary HBH Licensing, Honey

17  Baked USA has licensed the use of the HONEYBAKED marks to Honey Baked

18  California for use on specified food products. Without authorization or approval,

19  Honey Baked California is using certain reproductions, copies, or colorable imitations

20  of the HONEYBAKED marks on certain types of food products not authorized for

21  sale as Branded Products under the License Agreement.

22  226.  Additionally, by and through its wholly owned subsidiary HBH

23  Licensing, Honey Baked USA has licensed the use of the HONEYBAKED marks for

24  use in specified domain names and subject to territorial restrictions. Without

25  authorization or approval, Honey Baked California is using in the operation of its

26  Business unapproved domain names incorporating reproductions, copies, or colorable

27  imitations of the HONEYBAKED marks on websites without titles or metatags that

28

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

clearly define the territorial limitations of the California website and without features distinguishing the California website from the National Website. Honey Baked California also has used without approval in the operation of its Business social media accounts incorporating reproductions, copies, or colorable imitations of the HONEYBAKED marks.

227. Honey Baked California's actions in using the HONEYBAKED marks beyond the scope of the license have caused Honey Baked USA to lose control over the reputation and goodwill associated with the HONEYBAKED marks.

228. Honey Baked California's unauthorized uses of the HONEYBAKED marks, as described above, is likely to cause, and has already caused, confusion, deception, or mistake among consumers concerning the source, affiliation, or sponsorship of Honey Baked California's products and services, and concerning the affiliation, connection, approval, sponsorship, or association of these products with Honey Baked USA.

229. Honey Baked California's unauthorized uses of the HONEYBAKED marks constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

230. As a direct and proximate result of Honey Baked California's actions alleged above, Honey Baked USA has been damaged and will continue to be damaged.

231. Honey Baked California's infringement irreparably injures Counterclaim Plaintiff's business, reputation, and goodwill, which are embodied in the HONEYBAKED marks. Counterclaim Plaintiff has no remedy at law and is entitled to an injunction restraining Honey Baked California from engaging in further acts of infringement.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

**Count VIII—Federal Unfair Competition, 15 U.S.C. § 1125(a)**

**(By Honey Baked USA against Honey Baked California)**

232.  The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–231 as if fully set forth herein.

233.  As detailed above, Honey Baked California is selling, offering for sale, and distributing certain unauthorized food products using packaging that infringes the HONEYBAKED marks.

234.  Honey Baked California is also using domain names and social media accounts in the operation of its Business that infringe the HONEYBAKED marks.

235.  Honey Baked California's acts have caused Honey Baked USA to lose control over the reputation and goodwill associated with its HONEYBAKED marks.

236.  Honey Baked California's unauthorized use of the HONEYBAKED marks constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

237.  As a direct and proximate result of Honey Baked California's actions alleged above, Counterclaim Plaintiff has been injured and will continue to be injured.

238.  Honey Baked California's infringement irreparably injures Counterclaim Plaintiff's business, reputation, and goodwill. Counterclaim Plaintiff has no remedy at law and is entitled to an injunction restraining Honey Baked California from engaging in further acts of unfair competition.

**Count IX—Termination of License Agreement under**

**California Bus. & Prof. Code § 20020**

**(By HBH Licensing against Honey Baked California)**

239.  The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–238 as if fully set forth herein.

240.   California Business & Professions Code § 20020 provides that a franchisor may terminate a franchise prior to the expiration of its term for good cause.

241.   Section 20020 defines good cause as "the failure of the franchisee to substantially comply with the lawful requirements imposed upon the franchisee by the franchise agreement after being given notice of at least 60 days in advance of the termination and a reasonable opportunity, which in no event shall be less than 60 days from the date of the notice of noncompliance, to cure the failure." *Id.*

242.   Honey Baked California is a franchisee of the HBH Brand within the meaning of § 20020.

243.   HBH Licensing is the franchisor of the HBH Brand within the meaning of § 20020.

244.   The License Agreement is a franchise agreement within the meaning of § 20020.

245.   As detailed in Counts I – VI *supra*, Honey Baked California has repeatedly failed to substantially comply with numerous lawful requirements imposed on it by the License Agreement.

246.   Honey Baked California has received numerous notices of and reasonable opportunities to cure its noncompliance with lawful requirements imposed by the License Agreement and has failed to do so.

247.   Based on Honey Baked California's repeated, uncured noncompliance with numerous lawful requirements imposed by the License Agreement, good cause exists to terminate Honey Baked California's license to use the HBH Brand and all associated Proprietary Marks and information, and HBH Licensing is entitled to a declaration to that effect.

248.   HBH Licensing has a real and reasonable apprehension that if it exercised its right to terminate the License Agreement, Honey Baked California

1    would seek judicial relief. HBH Licensing thus requires a declaratory judgment that it

2    is entitled to terminate the License Agreement and requests that the court enter one.

3                    **Count X—Termination of License Agreement under**

4                        **California Bus. & Prof. Code § 20021**

5                    **(By HBH Licensing against Honey Baked California)**

6        249.   The Counterclaim Plaintiffs hereby incorporate the allegations of

7    paragraphs 1–248 as if fully set forth herein.

8        250.   The License Agreement provides that grounds for termination prior to

9    the expiration of its term include, *inter alia*, the occurrence of any event specified in

10   the version of California Business & Professions Code § 20021 in effect on the

11   effective date of the License Agreement. *See* License Agreement § 13(a)(iii), or the

12   occurrence of any other event that shall be deemed to be good cause for termination

13   under California law.

14       251.   The version of Section 20021 in effect on July 1, 2015 provides that a

15   franchisor may terminate a franchise prior to the expiration of its term immediately,

16   without providing an opportunity to cure, where, *inter alia*, (1) the franchisee, after

17   curing any failure in accordance with § 20020, again engages in the same

18   noncompliance, *see* § 20021(f); (2) the franchisee repeatedly fails to comply with one

19   or more requirements of the franchise, whether or not corrected after notice, *see* §

20   20021(g); or (3) the franchisee engages in conduct that reflects materially and

21   unfavorably upon the operation and reputation of the franchise business or system,

22   *see* § 20021(d). In addition, the failure of the franchisee to comply with the lawful

23   requirements imposed upon it by the franchise agreement after being given notice of

24   the noncompliance and a reasonable opportunity to cure the failure constitutes good

25   cause for termination of the agreement under the operative version of § 20020.

26       252.   Honey Baked California is a franchisee of the HBH Brand within the

27   meaning of § 20021.

28

                                            79

253.  HBH Licensing is the franchisor of the HBH Brand within the meaning of § 20021.

254.  The License Agreement is a franchise agreement within the meaning of § 20021.

255.  As set forth herein, Honey Baked California has repeatedly failed to comply with one or more requirements of the License Agreement.

256.  Honey Baked California's noncompliance includes both repeated failures to comply with individual requirements of the License Agreement and failures to comply with multiple requirements of the License Agreement. In addition, Honey Baked California has engaged in conduct which reflects materially and unfavorably upon the operation and reputation of the Honey Baked franchise business and system.

257.  Based on Honey Baked California's repeated noncompliance with multiple requirements of the License Agreement, its recurrent non-compliance with individual requirements of the License Agreement after notice and cure, and its conduct that reflects materially and unfavorably upon the operation and reputation of Honey Baked USA, valid grounds exist to terminate Honey Baked California's license to use the HBH Brand and all associated Proprietary Marks and information, and HBH Licensing is entitled to a declaration to that effect.

258.  HBH Licensing has a real and reasonable apprehension that if it exercised its right to terminate the License Agreement, Honey Baked California would seek judicial relief. HBH Licensing thus requires a declaratory judgment that it is entitled to terminate the License Agreement and requests that the court enter one.

## **PRAYER FOR RELIEF**

WHEREFORE, the Defendants respectfully request judgment as follows:

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND AMENDED COUNTERCLAIMS

1.      That the Court enter judgment in favor of Honey Baked USA and HBH Licensing on all of Honey Baked California's claims and dismiss those claims with prejudice;

2.      That Honey Baked California take nothing;

3.      That the Court enter a declaratory judgment finding that HBH Licensing is justified in terminating the License Agreement under California Business & Professions Code § 20020 and/or § 20021;

4.      In the alternative, should the Court not enter the declaratory judgment requested in the immediately preceding paragraph, that the Court enter a declaratory judgment finding that Honey Baked California has breached the License Agreement in each of the ways set forth in HBH Licensing's counterclaims for breach of contract;

5.      In the event that the Court grants all or part of the relief requested in the immediately preceding paragraph, that the Court also order Honey Baked California to specifically perform each of its obligations under the License Agreement that the Court finds Honey Baked California to have breached;

6.      That the Court order Honey Baked California to assign all HONEYBAKED-formative and HBH-formative domain names, and any other domain names containing reproductions, copies, colorable imitations, or abbreviations of, or references to, the Proprietary Marks, that Honey Baked California owns, has registered, or controls, to HBH Licensing, including, without limitation, the domain names *shophoneybaked.com* and *hbhca.com*;

7.      That the Court order Honey Baked California to transfer control of all social media accounts used in its Business to HBH Licensing;

8.      That the Court enjoin Honey Baked California's infringement and unauthorized use of the HONEYBAKED marks;

1      9.      That the Court award Honey Baked USA and HBH Licensing their

2   attorneys' fees and costs incurred in connection with this litigation, pursuant to 15

3   U.S.C. § 1117 and the License Agreement, or as otherwise permitted by law; and

4      10.     That the Court award Honey Baked USA and HBH Licensing such

5   additional relief as it deems just and proper.

6

7   DATED:  July 13, 2020

8                                        Respectfully submitted,

9                                        KILPATRICK TOWNSEND &
                                         STOCKTON LLP

10

11                                        /s/ J. David Mayberry
                                         J. DAVID MAYBERRY
12                                        KOLLIN J. ZIMMERMANN
                                         MARK H. REEVES

13

14                                        *Attorneys for Defendants*

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                         82