KILPATRICK TOWNSEND & STOCKTON LLP
KOLLIN J. ZIMMERMANN (State Bar No. 273092)
*kzimmermann@kilpatricktownsend.com*
1801 Century Park East, Suite 2300
Telephone: (310) 248-3830
Facsimile: (310) 860-0363

J. DAVID MAYBERRY (admitted *pro hac vice*)
*dmayberry@kilpatricktownsend.com*
The Grace Building
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

MARK H. REEVES (admitted *pro hac vice*)
*mreeves@kilpatricktownsend.com*
Enterprise Mill
1450 Greene Street, Suite 230
Augusta, Georgia 30901
Telephone: (706) 823-4206
Facsimile: (706) 828-4488

PLAVE KOCH PLC
JAMES C. RUBINGER (admitted *pro hac vice*)
*jrubinger@plavekoch.com*
12005 Sunrise Valley Drive, Suite 200
Reston, Virginia 20191
Telephone: (703) 774-1200
Facsimile: (703) 774-1201
Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| **HONEY BAKED HAM INC.**, <br><br> Plaintiff, <br><br> v. <br><br> **HONEY BAKED HAM COMPANY LLC**, et al., <br><br> Defendants. | CASE NO.: 8:19-cv-01528-JVS (DFMx) <br><br> **DECLARATION OF JO ANN HEROLD** <br><br> Judge: Hon. James v. Selna <br> Courtroom: 10C, 411 West 4th Street <br> Santa Ana, CA 92701 <br> Date: August 10, 2020 <br> Time: 1:30 P.M. <br><br> Complaint filed: August 7, 2019 |

DECLARATION OF JO ANN HEROLD

I, Jo Ann Herold, declare:

1. I am a resident of the State of Georgia, over the age of eighteen years. My business address is 3875 Mansell Road, Alpharetta, GA 30022. The statements made herein are true and based on my own personal knowledge. If called as a witness, I could and would give competent testimony to each of the matters stated.

2. I am the Chief Marketing Officer of the Honey Baked Ham Company LLC (Honey Baked USA). I began working for Honey Baked USA in 1993 as a Retail Marketing Manager. Prior to my current role, I also served as Director of Marketing and Vice President of Catalogue and Retail Marketing at Honey Baked USA.

3. I have been very involved in Honey Baked USA's efforts to modernize its e-commerce platform. These efforts include optimizing www.honeybaked.com, which operates as the national website for all Honey Baked Ham branded products (the "National Website").

4. I have knowledge of and am directly involved in Honey Baked USA's major marketing decisions and the substance and mechanics of its marketing efforts.

5. On February 13, 2020, Honey Baked USA launched a new and improved version of the National Website. Among other changes, the improved National Website integrated what had previously been separate Honey Baked USA-affiliated websites into the National Website. This includes Honey Baked USA's online shopping website, previously hosted at www.honeybakedonline.com and now located at shipping.honeybaked.com, and other websites such as a brick and mortar store locator (found at locator.honeybaked.com) and a page where customers can place orders for in-person pickup at a brick-and-mortar store (pickup.honeybaked.com).

6. As part of the redesign of the National Website, Honey Baked USA implemented a software fail-safe (the "state selector") designed and approved by an outside expert (Jonathan Hochman) that requires visitors to identify their state of

residence the first time they click "SHOP NOW" and thereby try to access Honey Baked USA's online catalog on the National Website. Based on their state selection, visitors receive a cookie in their web browser identifying them as being a customer in California (a CA cookie) or elsewhere (a USA cookie). On future visits to the National Website, visitors who again attempt to access the online catalog and have a cookie will be automatically directed to the online catalog website that corresponds to their cookie (shipping.honeybaked.com for customers with a USA cookie, or Honey Baked California's website at shophoneybaked.com for customers with a CA cookie) without being challenged by the question "What state do you live in?" again. As described by Mr. Hochman, this greatly improves the user experience for visitors to the National Website by preventing them from having to repeatedly answer the same question each time they visit the catalog website or move from one part of the National Website to another. In fact, if we didn't use cookies, or an equivalent technology, I am informed that the user would be presented the state selector each time they loaded a new page, which would render our website unusable. Users would think the website was broken; users would not trust our website, users would abandon our website and this would cause severe harm to the Honey Baked system as a whole, including Honey Baked California and its catalog website. If we are going to have a state selector, we need to use cookies to store the response in order to avoid badgering our customers for the same information over and over again.

7. Historically, before we integrated our shopping website (shipping.honeybaked.com) with the National Website, visitors to the National Website customers (honeybaked.com) were not required to answer the question, "What state do you live in?" before accessing other parts of the website or other affiliated websites that do not relate to fulfilment of orders that require shipment of food to customers by mail or common courier (i.e. "mail order transactions"). For example, from inception of the National Website in the 1990s, customers were able to look up the location of a brick-and-mortar store (FIND A STORE), or look up

DECLARATION OF JO ANN HEROLD - 2 -

general information about the Brand (WHY HONEYBAKED, MEAL PREP & SERVING, RECIPES, ABOUT US) without being forced to answer the question "What state do you live in?" Since customers looking for information about a local store (FIND A STORE) identified the local store by its address, we never even thought to ask those customers "What state do you live in? We never deemed this practice necessary to protect Honey Baked California's exclusive rights to engage in mail order transactions in California. Reserving and picking up hams or other foods from a local Honey Baked store does not require mail order shipment of food, and thus is not a "mail order transaction" as defined in the governing License Agreement. Nor were engaging in local retail transactions outside California deemed to violate any exclusive right to operate Honey Baked stores in California under the License Agreement.

8. After we integrated our shopping website with the National Website, we continued the same practices. Customers were allowed to obtain information about the brand on the National Website (www.honeybaked.com), look up the location of a brick and mortar store (locator.honeybaked.com) or place an online order for in-person pickup at a local store (pickup.honeybaked.com) without being shown a state selector overlay that forces them to answer "What state do you live in?" As noted above, Honey Baked USA has never required customers to say what state they live in before accessing these services or local store information through the National Website since its inception. Further, honoring Honey Baked California's rights to engage in mail order transactions in California does not require customers to disclose their state of residence before engaging in non-mail order transactions, looking up a local store, or placing an order for in-person pickup outside California. If a customer looking for a brick-and-mortar store on the National Website indicates that they are interested in placing a pickup order at a California store, they are redirected to the appropriate page on Honey Baked California's website at shop.honeybaked.com. If they select a store in any other state, they remain on the National Website. In both

scenarios, the location of the store they have selected indicates the appropriate site without requiring them to disclose "What state do you live in?"

9. Requiring all visitors to the National Website to answer "What state do you live in" before being able to obtain any information about the Honey Baked Brand or to answer that question over and over again would be extremely intrusive from a user experience and disastrous from marketing perspective. Customers will not answer that question repeatedly as they attempt to navigate from page to page. Instead, they would leave the website without obtaining desired information or making purchases either from the online catalog or by visiting a local store. This would not improve traffic to Honey Baked California's website or route more traffic there. But it would be tremendously disruptive to the entire Honey Baked system, including its franchisees across the country who depend upon the National Website for referrals and foot traffic, not to mention Honey Baked USA's online catalog. These changes to the website architecture would destroy the substantial benefits that we have seen from the modernization of the National Website, and irreparably damage the Honey Baked Brand, the franchise system, and our competitive position.

10. We know that the new and improved National Website is accomplishing its goal of increasing web traffic and online awareness of the Honey Baked Brand based on Google Analytics data. For example, during the three-week period leading into the 2020 Easter holiday (March 22, 2020 – April 12, 2020), the National Website logged 2,207,258 visitor sessions. During the three-week period leading up to Easter in 2019 (March 31, 2019 – April 21, 2019), the National Website logged a total of 616,060 sessions. That represents a 258% year-over-year increase in traffic. This is a particularly relevant time period to consider because the Honey Baked Ham sales are highly seasonal, and the Easter 2020 season is the only high sales season since the launch of the redesigned National Website.

11. While we did not track referrals from the National Website to Honey Baked California's shopping website, shophoneybaked.com, in 2019, we can be

confident that referrals increased substantially. During the three-week period leading up to Easter 2020, www.honeybaked.com and shipping.honeybaked.com sent a total of 325,519 visitors to Plaintiff Honey Baked California's website. That represents more than half of the <u>total</u> session visits (616,060) to the National website during the corresponding 2019 period.

12. As explained in Honey Baked USA's earlier filings with the Court, one exception to the general rule requiring customers to interact with the state selector before accessing the National Website's online shopping catalog involves visitors to the National Website who reach shipping.honeybaked.com through links contained in promotional emails that Honey Baked USA sends to its existing customers.

13. Under the License Agreement governing the relationship between the parties to this lawsuit, each party has limited, non-exclusive rights to sell into each other's territory in some instances on the basis of pre-existing customers or in response to unsolicited orders ("collateral rights" as described by the Court in the Court order entered after the hearing that I attended). Therefore, Honey Baked USA has the right to market and sell to its existing customers even if they live in California, and Honey Baked California has the right to market and sell to its existing customers even if they live outside of California.

14. Because Honey Baked USA has the right to market and sell to its pre-existing customers no matter where they live, historically we have not forced existing customers to identify the state in which they lived before entering Honey Baked USA's shopping website (previously hosted at honeybakedonline.com) via a direct link in a promotional email. Instead pre-existing customers received a direct link to honeybakedonline.com in a promotional email and were allowed to shop immediately for the food items described in the email promotion. Honey Baked California follows the same practice. Its customers receive a direct link to its website (www.shophoneybaked.com), not the National Website, and are allowed to shop immediately.

15. After Honey Baked USA launched the new National Website, we continued the same practice. When we sent promotional emails to existing customers with a link to our online shopping catalog (hosted on the National Website at the subdomain shipping.honeybaked.com), they were allowed to shop immediately for the items described in the email promotion without first being forced to answer what state they lived in. Then, if they made a purchase, a cookie was placed on their browser indicating they were a USA customer.

16. Shortly after the deployment of the modernized National Website, Honey Baked California objected to Honey Baked USA's resetting a customer's cookie to "USA" if a shared customer of Honey Baked USA and Honey Baked California visited the National Website in response to a direct email solicitation sent by Honey Baked USA in an exercise of its collateral rights

17. In response to that concern, our IT team began consideration of a software solution to use a temporary "warm cookie" that would expire after a short period of time such as 72 hours. The purpose of the "warm" cookie would be to allow a visitor to keep their order information saved in their "shopping cart" for up to 72 hours if they did not immediately decide to check out with their order. After the warm cookie expired, any preexisting cookie would remain in place and would again become effective.

18. While we believe the use of warm cookies may be a viable way to design the National Website, our IT team informed us that there simply was not enough time to test and implement this change before the busy Easter holiday season.

19. Rather than rush out an untested solution, Honey Baked USA simply stopped all email solicitations to our pre-existing customers who are listed in our email database with either a "bill to" or "ship to" mailing address in California. Though we believed we were within our rights to solicit these customers, we stopped these solicitations on March 16, 2020, well before the Easter holiday. We have temporarily suspended marketing emails to approximately 36,839 shared customers,

DECLARATION OF JO ANN HEROLD - 6 -

which unquestionably included many longstanding Honey Baked USA customers to whom Honey Baked USA has collateral rights to make sales. All of these customers would have received promotional emails from Honey Baked USA leading up to the Easter season in prior years.

20. By suspending these promotional emails, we are temporarily foregoing our contractual rights to solicit orders from these customers until we have time to successfully test and implement a software solution.

21. As a result, our sales to customers in California have declined significantly on a percentage basis since we launched the modernized National Website. For example, during the three-week period leading into Easter 2019, 3.49% of all orders placed on shipping.honeybaked.com had a California billing address. During the three-week period leading into Easter 2020, that number fell to 2.58% - a decrease of more than 26%.

22. We investigated why Honey Baked California's expert (Mr. Kent) continues to receive promotional emails from Honey Baked USA. We located what appears to be Mr. Kent's business email address Peter@PeterKentConsulting.com in Honey Baked USA's database. According to our records, Mr. Kent originally created an account on our prior shopping website, honeybakedonline.com, on September 16, 2019. He entered the street address associated with his firm as 404 Locust St, Lost Angeles, CA 90014. UPS suggested an address correction as 500-598 Locust St, Los Angeles, CA 90065, which he accepted. However, Mr. Kent has never actually made any online purchase from Honey Baked USA.

23. Because Mr. Kent never completed an online shipping order with Honey Baked USA, he has not established a "Bill to" or "Ship to" address (in California or elsewhere) in our mailing database, so we did not scrub him from our email list. This may explain why he continues to receive mailings from Honey Baked USA. His experience, as a Colorado resident (according to the bio he supplied to the Court) who signed up for Honey Baked USA's website using a California address as

an expert on behalf of a party to the lawsuit and never completed a purchase through that account to establish a bill to or ship to address, does not reflect typical customer behavior.

24. I understand that Mr. Kent has objected to the fact that PDF documents consisting of local brick-and-mortar store takeout, pickup, and catering menus can be viewed by California customers on shipping.honeybaked.com without triggering the state selector.

25. These PDF documents cannot be used to place online orders, nor do they reflect pricing for online orders. They simply show customers what is available at a particular Honey Baked Ham retail store.

26. Local stores have the right to set their own pricing for dine-in, pickup, and catering, and they are not allowed to ship food beyond their local territories. Because of this, the visibility of these PDF files does not impair any of Honey Baked California's contractual rights to engage in mail order transactions in California that are the subject of this lawsuit.

27. It is also important to understand that mail order transactions, which are the focus of the Honey Baked California's complaint, represent only a small fraction of the functionality of the National Website. Many more customers use the National Website for things other than mail order transactions. For example, during the week preceding Easter 2020 (April 4-11), more than 163,000 customers used the National Website to place an order for in-person pickup at a Honey Baked Ham retail store. For the sake of comparison, the total number of mail orders received by Honey Baked USA during the six weeks before Easter 2020 was less than 68,000. Far more customers use the National Website to place pickup orders at local brick and mortar outlets than to engage in mail order transactions.

28. These figures do not even take into account the significant number of customers who use the website for purposes other than placing any sort of order. As described in my prior declaration, *see* Doc. 47, Page.ID 1038, ¶¶ 5-7, the National

Website serves as the Honey Baked Ham Brand's online "front door," and many customers use it simply to look up their local store, reserve a ham at their local store, or obtain food preparation/recipe tips without ever intending to make a purchase from the online catalog on the National Website.

29. The injunction that the Plaintiff is asking for would severely undermine the National Website's functionality for all of these customers who use it for reasons other than engaging in the mail order transactions. As discussed above, it would cripple the functionality of the website, drive customers away from the Brand and hurt foot traffic and retail commerce with local Honey Baked outlets that are the heart of our franchise system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 20, 2020.

*Jo Ann Herold*
Jo Ann Herold