KILPATRICK TOWNSEND & STOCKTON LLP
KOLLIN J. ZIMMERMANN (State Bar No. 273092)
*kzimmermann@kilpatricktownsend.com*
9720 Wilshire Blvd, Penthouse Suite
1801 Century Park East, Suite 2300
Telephone:  (310) 248-3830
Facsimile:    (310) 860-0363

J. DAVID MAYBERRY (admitted *pro hac vice*)
*dmayberry@kilpatricktownsend.com*
The Grace Building
1114 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 775-8700
Facsimile:    (212) 775-8800

MARK H. REEVES (admitted *pro hac vice*)
*mreeves@kilpatricktownsend.com*
Enterprise Mill
1450 Greene Street, Suite 230
Augusta, Georgia 30901
Telephone:  (706) 823-4206
Facsimile:    (706) 828-4488

PLAVE KOCH PLC
JAMES C. RUBINGER (admitted *pro hac vice*)
*jrubinger@plavekoch.com*
12005 Sunrise Valley Drive, Suite 200
Reston, Virginia 20191
Telephone:  (703) 774-1200
Facsimile:    (703) 774-1201
Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| **HONEY BAKED HAM INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**HONEY BAKED HAM COMPANY LLC**, et al.,<br><br>Defendants. | CASE NO.: 8:19-cv-01528-JVS (DFMx)<br><br>**DECLARATION OF JONATHAN HOCHMAN**<br><br>Judge: Hon. James v. Selna<br>Courtroom: 10C, 411 West 4th Street<br>             Santa Ana, CA 92701<br>Date:  August 10, 2020<br>Time:  1:30 P.M.<br><br>Complaint filed:  August 7, 2019 |

I, Jonathan Hochman, declare:

1.     I am a resident of the State of Connecticut, over the age of eighteen years, and not a party to this action. My business address is JE Hochman & Associates LLC, 615 W. Johnson Ave., Suite 202, Cheshire, CT 06410-4532. The statements made herein are true and based on my own personal knowledge. If called as a witness, I could and would give competent testimony to each of the matters stated.

2.     I have been asked by Honey Baked Ham Company LLC (Honey Baked USA), a defendant in this case, to review and prepare a response to the June 22, 2020, declaration of Mr. Peter Kent in support of a preliminary injunction against Honey Baked USA.

3.     I have previously submitted declarations to this Court describing the system that I designed to protect the Honey Baked USA ecommerce catalog and shopping cart through the use of a state selector and cookies.

4.     Mr. Kent's declaration indicates that the system in place on Honey Baked USA's National Website, www.honeybaked.com, does not function as I previously told the Court that it would. Mr. Kent is wrong.

<u>What was promised.</u>

5.     The state selector requires a user to declare their state of residence before viewing catalog shopping pages online and before making a purchase.

6.     Any users who declares their state to be California are redirected to the Honey Baked California website and have a cookie indicating their selection placed on their web browser.

7.     The use of cookies avoids the annoying problem of asking users about their state repeatedly.

8.     My representation was that there would be no way for a user to view the catalog without choosing a state. Two exceptions were disclosed: (1) a user coming through a geographically targeted advertisement that was targeted outside California could potentially bypass the state selector because that geographic targeting already

reveals what state the user is in; (2) a user clicking an email link that was sent to existing customers of Honey Baked USA would not have to fill out the state selector form because the requirement that was disclosed to me included an allowance that Honey Baked USA could continue to solicit orders from its existing customers. *See* Doc. 41, Page.ID 802, ¶ 24.

9.     I attached an illustration of how the system would function to one of my prior declarations. *See* Doc. 41, Ex. B, Page.ID 809-10. For convenience, I have again attached that illustration here as Exhibit A. The Court referred to that illustration in providing a summary of how the system would work in one of its prior orders, and it noted the existence of the pre-existing customer ("Collateral Rights") exception described in the preceding paragraph. *See* Doc. 53, Page.ID 1142-43. The system functions as described in that illustration and in the Court's order.

10.    No other promises or representations were made by me regarding this system.

11.    The Honey Baked USA system has been implemented according to my design and works correctly. Outside of the exceptions that I previously explained to the Court, there are no known use cases where a visitor will be able to access the online shopping catalog or make an online catalog purchase without interacting with the state selector.

12.    I reviewed the construction of the system as it was being built and helped identify and correct any errors that were found. When the system was launched in February 2020, I checked the system, found that it passed all tests, and certified to Honey Baked USA that the system was working as intended and as I represented that it would. My February 10, 2020, email conveying my certification to Honey Baked USA is attached as Exhibit B to this declaration. In addition, Honey Baked California had the opportunity to review the system prior to launch, reported the state selector cookie misbehaved on use of the browser "Back" button and on mobile devices, and those errors were immediately corrected.

Mistakes and Misrepresentations in Peter Kent's Declaration

13.   Contrary to his assertion, Peter Kent is not qualified to render software engineering opinions because he is not a software engineer. Kent Declaration, Doc. 105, Page.ID 2060, ¶ 2. His CV does not disclose any education or professional experience in software engineering. Kent Declaration, Doc. 44-5, Page.ID 927-34.

14.   In conclusory fashion Kent declares, "My opinion is that the National Website does not perform in the manner promised by Honey Baked USA." Doc. 105, Page.ID 2060, ¶ 3. Nowhere does Kent declare what was promised. This is a classic straw man argument, where he falsely asserts that Honey Baked USA promised or said something that it did not.

15.   Kent declares that Honey Baked USA "has designed and structured the National Website in a manner that facilitates evasion of the state selector." *Id.*, ¶ 4(a). It is passing strange that none of his videos show even a single purchase being made where the user has evaded the state selector. Surely if such evasion were possible, he would have demonstrated it.

16.   Users can enter false information in the state selector, as Kent did in at least one of his demonstration videos. Everyone understood that the system was never intended to detect if a user supplied false information. *See, e.g.*, Transcript of Aug. 23, 2019 Hearing, p. 6, lines 3-6 (recognizing that users may not always answer the state selector truthfully). That was not part of the engineering requirements. Neither I nor HBH ever promised to resolve that problem. On the contrary, I always maintained that some slippage would be possible, but that the new site would be no worse, and probably much better, than the old site. I explained this to Honey Baked California's representatives when I met with them in Atlanta to discuss the design of the state selector mechanism, as ordered by the Court.

17.   My opinions are based upon more than 40 hours spent analyzing the old Honey Baked USA website, providing specifications for, and then testing, the new Honey Baked USA website.

DECLARATION OF JONATHAN HOCHMAN                                          - 3 -

18.     Kent's Demonstrative Video No. 1 demonstrates that the system works as designed. *See* Doc. 105, Page ID. 2061, ¶ 9, video at 2:38). However, Kent asserts that the video shows what Honey Baked USA promised the court. In actuality, the behavior in the video goes beyond what was promised. For instance, Honey Baked USA reserved the right to bypass the state selector (and automatically set the cookie) if the user clicked a link on a paid ad that was geographically targeted outside California. In the video, even though Kent (who lives in Colorado) clicks a paid link, one that would not be seen by a user in California because Honey Baked USA does not purchase search advertising in California, the state selector was still presented to the user because Honey Baked USA is being cautious with their new site.

19.     Kent states, "It is simply not true that a first-time customer landing on the Honey Baked USA website will always be asked for their state of residence." *Id.*, Page.ID 2061, ¶ 12. This statement is misleading because it is not a requirement, and not the intended design, that the state selector would be shown to every visitor. Doing so would create a bad user experience because users should not immediately be forced to answer questions when they first interact with a brand. A user might want to get some basic information about the brand or look up a local brick-and-mortar store. If the user then chooses to engage by shopping online, that may be an appropriate time to ask what state they reside in. The state selector is shown to every visitor who does not already have a cookie when they try to navigate to Honey Baked USA's online catalog and shopping cart. The state selector was designed to allow customers to browse other parts of the National Website freely, because those pages do not solicit online catalog orders.

20.     Kent seems to misunderstand both the requirement of the state selector and the purpose of subdomains. He says, "Honey Baked USA has designed and constructed its website to include at least four separate areas, or subdomains. These subdomains are: www.honeybaked.com, shipping.honeybaked.com, pickup.honeybaked.com, and locator.honeybaked.com. Of these four, only

shipping.honeybaked.com is protected by the 'fail-safe' mechanism." *Id.* ¶ 12.  His factual observation is correct, but he presents an incomplete set of facts. Honey Baked USA's state selector is only designed to be used with the online catalog, *i.e.*, the portion of the web pages that reside on shipping.honeybaked.com that allow customer to see pricing or place orders for shipment by mail.  The other three subdomains offer different functions, such as finding a local store (locator.honeybaked.com), ordering for pickup at a local store (pickup.honeybaked.com), or learning general information about the brand (honeybaked.com). Using subdomains is a good practice for a variety of technical and trust reasons.

21.    Each subdomain can be assigned to different server computers or a cluster of servers running different software.[1] Each of the four areas requires software with different functionality. It can improve performance, reliability, ease of management, and security to keep these areas on separate hardware (or virtual machines).

22.    Subdomains inherit trust from the parent domain. Honeybaked.com is the parent domain.   Shipping.honeybaked.com,   locator.honeybaked.com   and pickup.honeybaked.com are all subdomains. When a user visits one of these URLs, they (and their browser) can understand that they have connected to the official HBH site, not some dangerous imposter site.

23.    Kent makes a further misleading statement: "Moreover, not all of shipping.honeybaked.com is behind the 'fail-safe' mechanism." *Id.*, Page.ID 2061-62, ¶ 13. He then lists a set of PDF documents that are menus for local HBH retail locations. None of these documents require protection by the state selector mechanism because they are not for online shipments. They are for local customers who will visit an HBH retail store to pick up lunch or catering.

---

[1]  A "cluster" is a group of computers working together as a logical unit. Clusters can be used to serve a high volume website to a larger number of users than would be possible from a single piece of hardware.

24.      Moreover, these PDF documents are extremely difficult to find.  Kent has used his SEO knowledge to find obscure pages and documents that California users would be unlikely to encounter. For example, in his video titled "Most of the National Website is Outside the Fail-Safe Mechanism," Kent uses the Google site search operator ("site:") at timestamp 1:45. *Id.*, Page.ID 2062, ¶ 14. The average consumer does not know how to use the "site:" search operator. Kent has not even attempted to quantify how many California visitors have found these PDF documents, nor has he explained how these documents could possibly cause material harm to the business of Honey Baked California. The PDF documents do not contain functionality for ordering online. Nor do any of the PDF documents linked in Kent's declaration offer Honey Baked USA catalog pricing.[2]

25.      Kent asserts, "I have found at least two hundred pages showing Honey Baked USA products and pricing that appear in the pickup.honeybaked.com and www.honeybaked.com areas of the National Website." *Id.*, Page.ID 2062, ¶ 13. Kent does not list these pages, presumably because they are unrelated to online ordering, and thus irrelevant to the state selector.

26.      Kent again makes a strawman argument when he says, "As shown in my demonstrative video 'Most of the National Website Is Outside the Fail-Safe Mechanism', any visitor is free to browse extensively throughout most of the National Website without ever encountering the state selector." *Id.*, ¶ 14. There never has been a requirement, promise, or intention that Honey Baked USA protect every one of its web pages with the state selector. As discussed below, such a requirement would harm the user experience. The state selector was designed to be used for online catalog page used by customers who want products shipped to them.

---

[2]  Honey Baked USA has informed me that local stores can set their own prices for takeout meals and catering and that they are not allowed to ship meals beyond their local territory.

27.     Kent cannot show any way for a customer to place an online order without passing through the state selector, so he turns to complaining about minor distractions. He says, "[N]umerous pages on the National Website, and dropdown menus that exist on numerous pages, invite visitors to sign up for email lists. This behavior is demonstrated in my demonstrative video 'Pages Outside the 'Fail-Safe' System Encourage Email Signups.'" *Id.*, Page.ID 2063, ¶ 15.

28.     As an initial matter, Kent does not address the likelihood of a customer reaching and interacting with an email signup invitation on the National Website without first interacting with the state selector. He has not quantified the number of California customers who might have signed up for emails. He also has not shown that the pathways he found have actually been used by customers. In reality, these pathways may be unused, and there is no information in Kent's declaration to show that any website user other than Kent had followed one of these pathways, or that any user would be likely to repeat Kent's sequence of steps.

29.     As an example, a customer looking to pick up Honey Baked Ham products from a local store might search for "Honey Baked Pickup." They would likely find pickup.honeybaked.com in the search results. This page has an email signup invitation, but it is way at the bottom. A customer would have to scroll past two or three screens full of other content before they would be able to even view the link to "SIGN UP FOR HONEYBAKED REWARDS."



This image shows the top of pickup.honeybaked.com, the first screen a visitor sees. Most visitors would immediately click on RESERVE NOW where they would be presented the options to FIND A STORE and RESERVE for PICKUP without ever viewing the reward offer.



But if a visitor clicks "Shop Now" they get the state selector.



This image shows the middle of pickup.honeybaked.com. If the customer did not previously select either RESERVE NOW or SHOP NOW, but continued to scroll past those offers, this is the second screen a visitor sees.

This image shows the bottom of pickup.honeybaked.com, where a visitor could request email promotions.

30.    The email signup module is the last thing on the page before the footer, which means that it is the least important, least viewed, and least used. Before seeing that reward, most customers would choose a store to pick up from, which is the main purpose for their visit to this page on the website. Those customers who choose a store to reserve for pickup in California are automatically redirected to the Honey Baked California website and would never even sign up for the reward.

31.    Even though it is unlikely that very many California customers signed up for a reward on this page, Honey Baked USA has deployed a software change, effective on or about July 31, 2020, that will require every person visiting the National Website to answer the question, "What state do you live in" before being able to sign up for rewards and future promotional offers.

32.    If a customer attempts to sign up for email offers at a web page of Honey Baked USA and then selects California as their state, Honey Baked USA will direct the

DECLARATION OF JONATHAN HOCHMAN                                              - 11 -

1    user to Honey Baked California's home page on which appears an email Sign Up and
2    Save offer.

3         33.    I have attached a graphic illustration of how the state selector will work
4    for email signups as Exhibit C.  This change further ensures that Honey Baked USA
5    will not add any California customers to its data base from any visitors to the National
6    Website who are seeking to order and pick up from one of the stores listed on
7    pickup.honeybaked.com.

8         34.    Kent also presents a grab bag of complaints unrelated to the state-selector
9    requirements and implies that they constitute evidence that Honey Baked USA is not
10   doing what it said it would do. In other words, he is inventing new requirements on the
11   fly that were not disclosed to me when I designed the state selector mechanism. I cannot
12   recreate the issues he complains about because he fails to provide exemplary URLs.
13   He merely asserts, in conclusory fashion, that the new web site does not meet an
14   undisclosed set of requirements:

15        a.    Some National Website pages visible to California customers mistakenly
16              indicate that there are no Honey Baked stores in California;

17        b.    California customers are presented with customer support information and
18              offers on the National Website that pertain only to customers outside
19              California;

20        c.    California customers are presented in the National Website with delivery
21              information for Uber and Doordash that suggests there are no Honey
22              Baked stores in California from which they can order products for
23              immediately delivery, indeed which prominently promote products from
24              other prepared food suppliers; and

25        d.    Information about mailing lists, store locations, offers, and delivery
26              options that exists on HBH CA's website and that is appropriate to
27              California customers is effectively hidden from California customers.

28

DECLARATION OF JONATHAN HOCHMAN                                         - 12 -

Doc. 105, Page.ID 2063, ¶ 17. I never represented to the Court that the system that I designed would address any of these issues.

35.    Kent describes at length how the Honey Baked USA email marketing system sends messages with links that set the resident status cookie. *Id.*, Page.ID 2063-65, ¶¶ 18-26. This entire discussion is irrelevant because HBH only sends emails to its existing customers, as it is allowed to do, according to the explanation of the contract provided to me by counsel. Moreover, since March 2020, Honey Baked USA has suppressed any emails to customers with "bill to" or "ship to" mailing addresses in California. Consequently, Kent is assuming a counterfactual situation: that California residents who are not customers of Honey Baked USA receive emails from Honey Baked USA that alter the cookie state.  Because the assumption is counterfactual, any conclusion derived from it is irrelevant.

36.    Further, I am assisting Honey Baked USA with evaluating methods for sending promotional emails to its existing customers in California with links that will allow customers to directly access Honey Baked USA's online catalog but will not overwrite preexisting cookies. If Honey Baked USA is able to implement this approach, there would be no reason to continue suppressing promotional emails to any existing customers with California addresses.

37.    In a similar way, Kent analyzes a scenario where a customer could be presented the state selector twice, and one of those times enters incorrect information. "Even if a visitor has already set a stateCode="CA" cookie at shipping.honeybaked.com, if that visitor later visits www.honeybaked.com and clicks the link for shopping online they will be presented with a state selector. If by mistake, or out of a desire to see what products and prices may be in another state, or for any other reason whatsoever, they select a state other than California…" *Id.*, Page.ID 2066, ¶ 27. This analysis is irrelevant for three reasons: (1) there is no showing that any significant number of customers follow this pathway, (2) the state selector mechanism is not designed to deal with a customer who provides incorrect information, such as

selecting two different states when asked on two different occasions; and (3) the entire purpose of asking "what state you live in" twice in this scenario is to prevent a person from being able to avoid the state selector. The scenario assumes that a customer first accesses the shipping catalog directly without first visiting the home page of the National Website, but instead through the subdomain shipping.honeybaked.com, and then later returns to the homepage of the National Website at the domain, www.honeybaked.com to place an order. To ensure that a customer from California cannot place an order without going through the state selector, after clicking on SHOP NOW, the customer is asked "What state do you live in?" This design actually helps ensure that California customers are routed to Honey Baked California's website. Honey Baked USA tries to minimize the number of times a customer is asked what state they live in, but there may be obscure scenarios where the question is asked more than once to ensure that everyone is asked the question at least once before they view the online catalog.

38.     Kent errs when he says, "this programming is not reciprocal, but benefits Honey Baked USA," *id.*, ¶ 29, because the design specification does not require reciprocity. How could it? Honey Baked California has no state selector on its site and appears to have no security measures in place to avoid soliciting orders from non-California customers.

Kent's Omissions

39.     Aside from the errors identified above, Kent's analysis has several serious omissions.

40.     Kent has not analyzed usage of the state selector. I have. If I were in Kent's position, I would have requested the data presented below. There is no reason to speculate, as he has done, when data is available to enlighten us. I also analyzed the installation of Google Analytics tags and Event tracking to make sure I was looking at the right data.

DECLARATION OF JONATHAN HOCHMAN                                                    - 14 -

41. My first finding is that there were 3,021,082 users on www.honeybaked.com from February 16, 2020 – June 27, 2020.[3] That represents a 190% increase over the 1,042,836 visitors to www.honeybaked.com during same period in 2019, strongly supporting my prior testimony that the redesigned National Website would increase traffic and online visibility for the Honey Baked Ham brand. *See* Doc. 48, Page.ID 1097, ¶ 8 ("In a very real sense, the merging of the national and Honey Baked USA websites will generate a rising tide that will lift all boats.").

42. Of those 3,021,082 visitors to www.honeybaked.com, a total of 1,766,510 visits included an interaction with the state selector, and 273,455 of those selected California as their state of residence and were directed to the Honey Baked California site. This information strongly supports the idea that the state selector works very well. California represents about 12% of the United States population,[4] and www.honeybaked.com is sending 15% its visitors who interact with the state selector to the Honey Baked California site. Some visitors do not interact with the state selector because they do not attempt to access the Honey Baked USA online catalog. I would expect the percent selecting any state to be roughly proportional to that state's percentage of US population. The data shows that Honey Baked USA is highly effective at identifying website users who are California residents and sending them to Honey Baked California's website because California is over-represented in the state selector responses (15%) compared to its share of population (12%).

43. Many users visiting shipping.honeybaked.com have already passed through the state selector when clicking the "Shop Now" button on www.honeybaked.com, but some visitors to the shipping.honeybaked.com subdomain may arrive through other channels that do not involve the state selector. These visitors are presented the state selector, as I explained to the Court. *See* Doc. 41, Ex. B, Page.ID

---

[3] I selected these dates to include whole calendar weeks, Sunday to Saturday, starting after the new site was launched and ending before I began drafting this declaration.
[4] *See* https://www.census.gov/quickfacts/fact/table/CA,US/PST045219

809-10. Of the 1,974,167 (visits to shipping.honeybaked.com, 1,126,610 included an interaction with the state selector from February 16, 2020 – June 27, 2020. Of those who interacted with the state selector at least 49,037 (4.35%) selected California and were sent to the Honey Baked California site. This percentage is lower than for Honeybaked.com because many (but not all) visitors arrive after pressing Shop Now and passing through the state selector on www.honeybaked.com before they arrive at shipping.honeybaked.com. Most California users have already been directed to Honey Baked California by this stage of their journey. Nevertheless, the data shows that the state selector is effective at correctly routing users who may enter shipping.honeybaked.com via pathways that do not include the "Shop Now" button on www.honeybaked.com.

44.     In short, the Honey Baked USA state selector is working as intended. There is no information presented by Kent to show that any visitors are being sent to the wrong site.

45.     I looked at the percentage of visitors who selected Alabama, the first state in the state selector list of choices. If a user from California were going to enter incorrect information, it is most likely that they would just choose the first state on the list. In other words, if customers were not interacting with the state selector truthfully, we would expect to see a disproportionately high number of customers selecting Alabama as their state.

46.     Alabama represents 1.5% of the United States population.[5] A total of 13,910 of 1,766,510 (0.78%) state selector users of www.honeybaked.com selected Alabama as their state. The rate of users selecting Alabama is approximately the same as the rate of users selecting South Carolina (0.86%). Both states have similar populations, and both states are neighbors to Georgia, where HBH is headquartered. Alabama is the first choice on the list, while South Carolina is way down near the bottom.

---

[5] *See* https://www.census.gov/quickfacts/fact/table/AL,US/PST045219

47.     The data undercuts the speculation that any substantial number of visitors enter mistaken or false information into the Honey Baked USA state selector. On the contrary, it appears that nearly all users provide accurate information about their state of residence.

Grave Harms of the Preliminary Injunction Requested by Honey Baked California

48.     The requested injunction would be harmful to users. Customers could not look up any information (local store address, or general HBH brand information) without interacting with state selector and having to do so multiple times if they wanted to know multiple things. This bureaucratic approach would annoy users and damage traffic to the National Website. Annoyed users would simply abandon the site and look elsewhere causing irreparable damage to the brand..

49.     Honey Baked California requests, "First, that Honey Baked USA immediately and permanently disable the stateCode cookie feature of the state selector, so that every visitor to the National Website, first-time or repeat, will be presented with the state selector and no stateCode cookie (or similar cookie) be set or read." Doc. 102, Page.ID 2033. Removing the cookie would require the state selector to be presented every time the user loads a new page! The only way the Honey Baked USA websites can connect two (or more) different page requests to the same user session is via a cookie. A user wishing to browse the catalog would quickly be driven away after being badgered multiple times with the state selector. Online sales would quickly drop toward zero.

50.     If that were not bad enough, Honey Baked California also requests, "Second, that Honey Baked USA make the state selector apply to the entire National Website, i.e. not just shipping.honeybaked.com, but also to www.honeybaked.com, pickup.honeybaked.com, locator.honeybaked.com, and any other subdomain of that site that it may create." *Id.*, Page.ID 2034.  No ecommerce site I have ever seen operates in the manner that Honey Baked California suggests. It is wrong to ask the user for personal information the moment the user arrives and before allowing the user to gather

DECLARATION OF JONATHAN HOCHMAN                                                                    - 17 -

information about the brand "from a distance." A user wants to get to know the brand before giving personal information. Once the user decides to shop, the state selector is presented and a rationale is given, "Product selection may vary by state." This statement, which I crafted in cooperation with Honey Baked USA, is important because it tells the user why HBH needs to know their state of residence. Asking questions prematurely, without any good reason, would be off-putting and drive prospective customers away.

51.     The process of bringing Honey Baked USA's website into compliance with the proposed preliminary injunction would likely take many months of development and testing, with high costs.  Such a change could not be completed before the 2020 Christmas shopping season. The proposed changes are major, equivalent to a full website redesign and re-architecture of the website's technology. If cookies could not be used, the user experience would be unacceptable unless an entirely different approach to ecommerce were developed, such as an AJAX (asynchronous JavaScript and XML) catalog that avoided loading a new page each time the user clicked a link. Such architecture is atypical, expensive, and not recommended for a merchant like Honey Baked Ham.

52.     The state selector has a real cost in terms of lost business opportunity. Sometimes this cost is described as "friction." To put this in perspective, the state selector was shown 1,766,510 visitor sessions on www.honeybaked.com from February 16, 2020 – June 27, 2020 involved the state selector.  On at least 145,039 occasions (8%) the user clicked the "X" in the corner of the selector to dismiss the module. Because the user declined to answer the state selector question, they were not directed to the online catalog. Every question asked of the user exhausts their patience, increases attrition, and risks losing sales.  To minimize friction, the state selector should be used sparingly. It can be used when necessary, but redundant use should be avoided.

1    Executed this 20 day of July, 2020.

2
                                    *Jonathan E Hochman*
3                                   Jonathan Hochman

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JONATHAN HOCHMAN                                          - 19 -