P. Kurt Peterson (State Bar No. 067123)
K. Nina Reynolds (State Bar No. 206802)
PETERSON MARTIN & REYNOLDS, LLP
299 Third Street, Suite 200
Oakland, California 94607
(415) 399-2900
(415) 399-2930 facsimile
kpeterson@pmrlegal.com

Attorneys for Plaintiff,
Honey Baked Ham Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| Honey Baked Ham, Inc., a California corporation,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>Honey Baked Ham Company LLC, a Delaware limited liability company, HBH Licensing, LLC, a Georgia limited liability company,<br><br>　　　　　Defendants.<br><br>And related counterclaim. | Case No. :19-cv-01528-JVS (DFMx)<br><br>REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY INJUNCTION<br><br>Judge:　　Hon. James V. Selna<br>Courtroom: 10C<br>　　　　　411 West 4th Street<br>　　　　　Santa Ana, CA 92701<br>Date:　　August 10, 2020<br>Time:　　1:30 p.m.<br><br>Complaint filed: August 7, 2019 |

REPLY MEMO ISO RENEWED MO. FOR PRELIM INJ.                                        -1-

## **Table Of Contents**

Introduction ........................................................................................................... 3

What Is Not Disputed ............................................................................................ 4

Honey Baked USA's Disingenuous Argument #1: *We Always Said We'd Send Emails To Existing Customers* ............................................................. 5

Honey Baked USA's Disingenuous Argument #2: *The Data Shows That The Current System Is Working* ...................................................................... 6

Honey Baked USA's Disingenuous Argument #3: *We've Never Put Recipes and General Information Behind The State Selector* ............................................................................................................. 7

Honey Baked USA's Disingenuous Argument #4: *This Would Never Happen The Way Plaintiff Describes* ........................................................... 8

Honey Baked USA's Disingenuous Argument #5: *We've Already Addressed The Problem (That We Say Doesn't Exist)* ......................................... 9

Honey Baked USA's Disingenuous Argument #6: *The State Selector Is Vulnerable To Customer Errors* ..................................................... 9

Honey Baked USA's Disingenuous Argument #7: *Plaintiff Seeks To Upset The Status Quo* .................................................................................. 10

Honey Baked USA's Disingenuous Argument #8: *No Irreparable Harm* .................................................................................................................. 11

Honey Baked USA's Disingenuous Argument #9: *The Balance Of Equities Is In Our Favor* .................................................................................... 12

Conclusion .......................................................................................................... 13

## Introduction

The issue raised by this motion is that Honey Baked USA cheats on its "fail safe" state selector. In response Honey Baked USA insists that its state selector "functions exactly as represented and correctly." Response To Plaintiff's Renewed Motion for Preliminary Injunction, Docket No. 116 ("Opposition") at page ID #2230:3-4. This is disingenuous. Honey Baked USA never disclosed to plaintiff or to the Court that it intended to not just to bring "pre-existing" customers around the state selector, but <u>everyone on its email list</u> whether or not they have ever purchased from it before. It also did not disclose that it was going to use a secret code tag those visitors—some of whom it even describes as "shared customers"—with a cookie that effectively prevents them from ever seeing plaintiff's website again. It doesn't disclose that to the web site visitors, either.

Honey Baked USA does not even discuss this secret code in its Opposition memorandum, other than to outright deny that any back door to its website exists. Its expert, Jonathan Hochman, touches on it only once and then glosses over it with illogical assertions. Its Senior Vice-President of Information Technology, Bill Bolton, doesn't mention it; he just says Mr. Hochman is responsible for the state selector and then goes on to talk about other things. Chief Marketing Officer, Jo Ann Herold, also throws Mr. Hochman under the bus, and downplays the harm to plaintiff with meaningless statistics and argument about what she believes to be Honey Baked USA's legal rights.

Plaintiff simply wants to continue to enjoy what Honey Baked USA concedes is its contractual exclusivity in the California market. It wants Honey Baked USA to stop trying to take away its online business in that market. Honey Baked USA first tried to kill plaintiff's online business directly, threatening to unilaterally stop forwarding traffic from the National Website. That is what led to this lawsuit in the first place. Now, Honey Baked USA is trying to take plaintiff's online business indirectly, in violation of this Court's Order.

Honey Baked USA's conduct threatens cumulative damage to plaintiff's business until this case is resolved at trial. That threat, just like Honey Baked USA's original threat, warrants re-imposition of controls on its behavior until this case is resolved at trial.

Honey Baked USA's supporting declarations opine baselessly about its legal rights and they speculate wildly about the potential impact of the relief plaintiff requests.[1] This, too, is disingenuous. Honey Baked USA completely ignores the fact that this is a situation of its own making. No preliminary relief would be necessary at all if Honey Baked USA were not luring visitors around its "fail-safe" state selector and then locking them out of plaintiff's website.

Indeed, all of Honey Baked USA's arguments are disingenuous.

## What Is Not Disputed

There is no dispute that the state selector properly performs its function <u>if it is not manipulated or evaded by a special link</u>. In the absence of manipulation or evasion, when a visitor with no cookie tries to shop on the National Website they are presented with the state selector, and are redirected according to their choice of location. When a visitor who does have a cookie returns to the National Website and tries to shop, they are automatically redirected according to their cookie setting without seeing the state selector. Plaintiff made this clear in its moving papers. As far as that goes, Honey Baked USA is doing what it told the Court it would do.

There is no dispute that Honey Baked USA is sending out marketing emails containing links that include a *resident_status=USA* parameter, which causes a visitor—cookie or not—to skip right past the state selector and land in Honey Baked USA's shopping site. Plaintiff's moving papers demonstrate this. Nowhere in its Opposition or its extensive supporting declarations does Honey Baked USA deny this.

---

[1] *See*, plaintiff's accompanying objections to Honey Baked USA's declarations.

Indeed, Honey Baked USA says it made clear it would provide its pre-existing customers direct links to its shopping site.

There is no dispute that the *resident_status=USA* parameter causes a *stateCode="USA"* cookie to be set on the visitor's computer, labeling that visitor a Honey Baked USA customer for a year. Plaintiff's moving papers demonstrate this. Nowhere in its extensive supporting declarations does Honey Baked USA deny this. Honey Baked USA never told the Court it would do this.

There is no dispute that with a *stateCode="USA"* cookie a visitor will never see plaintiff's website when they try to shop on the National Website. They will not even see the state selector.

There is no dispute that the *resident_status=USA* parameter causes any *stateCode="CA"* cookie the visitor had before they clicked on the marketing email link to be overwritten with a *stateCode="USA"* cookie, thus converting a customer of plaintiff's into a customer of Honey Baked USA's for at least a year. Plaintiff's moving papers demonstrate this. Nowhere in its Opposition or its extensive supporting declarations does Honey Baked USA deny this. Honey Baked USA never told the Court it would do this.

**Honey Baked USA's Disingenuous Argument #1:**

*We Always Said We'd Send Emails To Existing Customers*

Honey Baked USA argues that one exception to the state selector it "told the Court would exist involves existing customers who receive promotional emails containing links that take them directly to Honey Baked USA's online shopping catalog." Opposition, at page ID #2232:10-13. Its Chief Marketing Officer, Jo Ann Herold, declares that Honey Baked USA never previously asked existing customers to identify their state before entering its shopping website, that those customers always received direct links in promotional emails, and that it is simply continuing this practice. Herold Decl., Docket No. 117, page ID #2261-62 at ¶¶ 14-15.

This is disingenuous because, as plaintiff's expert Mr. Kent demonstrated in his initial declaration ("Kent Decl."), and as he makes clear in his Reply Declaration of Peter Kent ("Reply Kent Decl."), these emails go to *everyone* on Honey Baked USA's email list, irrespective of their address, and irrespective of whether they are already customers. Kent Decl., Docket No. 105, page ID #2063 at ¶ 18; Reply Kent Decl. at ¶ 14. Honey Baked USA admits this is so. Herold Decl., page ID #2262-63 at ¶¶ 19-20, 22-23. As Mr. Kent and Ms. Herold agree, Mr. Kent has received scores of these marketing emails notwithstanding the fact that he has never made a purchase from Honey Baked USA, notwithstanding the California address he listed when he joined Honey Baked USA's email list, and notwithstanding what Honey Baked USA claims were temporary attempts to filter out California customers.

**Honey Baked USA's Disingenuous Argument #2:**

*The Data Shows That The Current System Is Working*

Honey Baked USA argues that overall traffic to the National Website and referrals to plaintiff's website are up. Opposition, at page ID #2234. This, it claims, shows that it is "highly effective at identifying website users who are California residents and sending them to Honey Baked California's website." *Id*.

Honey Baked USA's data shows absolutely nothing about the effect of its direct email marketing. Its data shows nothing about how many customers living in or shipping to California it has tagged with a *stateCode="USA"* cookie, or how many of those customers previously had a California cookie. And, of course, its data shows nothing about how many California customers it will illicitly claim as its own going forward if its behavior is left unchecked.

Honey Baked USA's statistical argument is essentially just this: *you're getting more traffic so you can't complain that we are poaching*. Moreover, its attempt to claim credit for this increase in traffic is entirely without foundation.

**Honey Baked USA's Disingenuous Argument #3:**

*We've Never Put Recipes and General Information Behind The State Selector*

Honey Baked USA argues that historically the National Website has provided general information without invoking the state selector, and that changing this now would "hamstring" its brick and mortar stores, which rely heavily on the site. Opposition, page ID #2236-37. Honey Baked USA complains about a self-inflicted wound.

Historically, i.e. before the 2015 consolidation of the former family licensees into a single organization, the National Website did not include prominent invitations to join an email marketing list that would be used by the licensor to compete for the licensees' territorial customers. The National Website simply provided general information and a gateway to each of the regional licensees' online shopping sites. *See*, *e.g.*, https://web.archive.org/web/20141118095036/http://www.honeybaked.com/ (the National Website as of October 18, 2014). Even after the 2015 consolidation the National Website remained a general information and gateway site, where a request for a catalog <u>did</u> trigger a state selector. *See*, *e.g.*, https://web.archive.org/web/20161203023359/http://www.honeybaked.com/ (the National Website as of December 3, 2016).

Now, however, Honey Baked USA has transformed the National Website into a gallery of solicitations for signups to its email marketing list, <u>and then uses those signups to send end-run links to its newly acquired "customers" in order to avoid the "perfectly functioning" state selector</u>. It expressly acknowledges that it does so in direct (and what it claims to be legitimate) competition with plaintiff. Honey Baked USA cannot now be heard to complain that the consequences of its conduct could mean a change in the way the National Website has historically been structured. Its deliberate modifications of the National Website mean either further changes are warranted, or that the site should be returned to the status quo ante.

REPLY MEMO ISO RENEWED MO. FOR PRELIM INJ. -7-

**Honey Baked USA's Disingenuous Argument #4:**

*This Would Never Happen The Way Plaintiff Describes*

Honey Baked USA argues that plaintiff has not shown any California customers actually have been caught in its email honeytrap, and that it is "very unlikely that anyone from California would have found this 'back door.'" Opposition, at page ID #2239:14-22. This makes no sense for three reasons.

First, as Mr. Kent makes clear, prominent invitations to sign up for Honey Baked USA's email list exist in the unprotected areas of the National Website. Reply Kent Decl., at ¶ 15. Moreover, Honey Baked USA's email sign up forms are available as search results returned by major search engines. *Id.*, at ¶ 16. Both of these facts indicate it is not unlikely at all for California customers to be snared.

Second, as Mr. Kent also makes clear, even assuming that Honey Baked USA is correct that certain pathways to its email list are not widely used today, they may well be heavily used tomorrow, particularly given Honey Baked USA's stated goal of increasing its visibility on the web. *Id.*, at ¶ 16.

Third, if there is effectively no way for a California customer to get onto Honey Baked USA's email list—almost 37,000 examples to the contrary notwithstanding, Herold Decl., page ID #2263 at ¶ 19—then why does the *resident_status=USA* parameter even exist? Honey Baked USA implies it is not necessary, so rigorous and effective is its screening of California customers. Yet, this secret code is used in its marketing emails, and it surreptitiously and quasi permanently brands anyone who clicks the email link as a Honey Baked USA customer before they have ever placed an order, before they have ever chosen their location in the state selector, without ever presenting them with a state selector, indeed even after they have <u>already</u> self-identified as California customers. From that point on they are unable to reach plaintiff's site through the National Website.

**Honey Baked USA's Disingenuous Argument #5:**

*We've Already Addressed The Problem (That We Say Doesn't Exist)*

Honey Baked USA claims it "addressed this complaint months ago," both at a technical level and by suspending marketing emails to its almost 37,000 customers in California. Opposition, page ID #2241-42.

In the same breath, however, it acknowledges that its technical fix has not been tested or implemented. *Id.* at page ID #2241:19-22. In the next breath Honey Baked USA admits that suspension of marketing emails to its California customers didn't work in Mr. Kent's case (and who knows how many others) because he was not actually a customer, and he therefore received one of the marketing emails (that are supposedly sent only to pre-existing customers) notwithstanding the California address he listed. *Id.*, at page ID #2242:8-17.

**Honey Baked USA's Disingenuous Argument #6:**

*The State Selector Is Vulnerable To Customer Errors*

Honey Baked USA protests that despite the efforts of its expert Mr. Hochman, despite the efforts of its programming firm Dragon Army in implementing that vision, the state selector can readily be defeated by user "error." Opposition, page ID #2243-44. There are two problems with this argument.

The first is that this effectively admits Honey Baked USA's expert and its programmers simply haven't done a very good job. Other than trying to justify its approach as "belt and suspenders," *id.* at page ID #2243:25, Honey Baked USA presents no technical argument for having dual state selectors and cookies. As Mr. Kent observes, there is no functional need for invoking the state selector twice and setting two separate cookies, and the existence of two cookies suggests either poor site design and implementation or a deliberate attempt to manipulate the redirection process. Reply Kent Decl., at ¶ 17.

Second, the undisputed fact is that the National Website is implemented in such a way that conflicting user choices in response to the two separate state selectors

always benefit Honey Baked USA.  Kent Decl., page ID #2066 at ¶ 27; Reply Kent Decl., at ¶ 18.  Perhaps this two-cookie implementation was accidental, but Honey Baked USA does not claim that it was and it certainly does not offer to fix it.

### Honey Baked USA's Disingenuous Argument #7:

*Plaintiff Seeks To Upset The Status Quo*

Honey Baked USA argues that a preliminary injunction at this point "would upset the status quo" by forcing all visitors to repeatedly respond to the state selector and by putting brand and local store information behind the state selector where it historically has never been.  Opposition, page ID #2245.  This is particularly rich.

The "status quo" Honey Baked USA wants to protect is the new state of affairs it created when it went live with its new website containing its "fail-safe" state selector.  (That is, the new and improved state selector, that can be evaded with a secret code and that can be defeated by user error.)  What plaintiff seeks is a return to the status quo ante, the same status quo that existed when it filed this lawsuit, the same status quo it asked to maintain with its original motion for preliminary injunction. Honey Baked USA argues that having changed the status quo with unfulfilled promises and deceptive behavior, its new tilted playing field has become the "status quo" that should be protected.

Moreover, Honey Baked USA's brave new "status quo" is one in which it already repeatedly tries to tag visitors with its *stateCode="USA"* cookie by way of its own duplicative invocation of a state selector.  Plaintiff seeks a return to the status quo ante involving a single invocation of the state selector.

Plaintiff is not asking that visitors "repeatedly answer the question 'What state do you live in?'"  Plaintiff has requested only elimination of the Honey Baked USA's new, persistent *stateCode* cookie.  Mr. Kent makes clear that there is a well-known technique for handling user preferences in the course of a browsing session, namely a session cookie, which is temporary.  Reply Kent Decl., ¶ 23.  Of course, Honey Baked USA is free to use whatever technique it pleases—plaintiff does not seek to tell it how

to design the National Website. Plaintiff simply asks that Honey Baked USA comply with the Court's Order that it implement a fail-safe state selector and that it not cheat on that implementation with back doors, end-run links, and quasi-permanent cookies.

As for putting general information and local store information behind the state selector, this is very much a problem of Honey Baked USA's own making. It has not suggested any other solution to the situation it has created. To the contrary, it implies it should be allowed to carry on with its duplicitous practices.

**Honey Baked USA's Disingenuous Argument #8:**

*No Irreparable Harm*

Honey Baked USA argues that a preliminary injunction is not appropriate because plaintiff cannot show irreparable harm. Opposition, at page ID #2248.

The irreparable harm that exists now is the same irreparable harm that existed when this Court issued its Order that Honey Baked USA not go live with its new National Website unless and until it implemented a fail-safe state selector. Honey Baked USA acknowledges that this was to prevent it from cutting off plaintiff's online business all at once, but argues that no such threat exists now.

There was no debate about the existence of irreparable harm when the Court entered its prior Order, and this motion effectively seeks to enforce that Order. The only difference is that whereas before Honey Baked USA threatened to kill plaintiff's online business all at once, now it proposes to strangle it slowly, one *stateCode="USA"* cookie at a time. This despite the fact that Honey Baked USA admits that plaintiff has "exclusive rights to engage in mail order transactions in California." Herold Decl., page ID #2259:6-7.

Honey Baked USA protests that its evasion of the Court's Order is irrelevant, and that no harm exists, because it has actually increased web referrals to plaintiff and is "honoring" plaintiff's right to conduct business online. Honey Baked USA shows only that referrals were up over the Easter 2020 period. It shows nothing to demonstrate the cause of this increase—whether it was the Covid-19 pandemic, which

REPLY MEMO ISO RENEWED MO. FOR PRELIM INJ.                                              -11-

significantly increased online traffic for many businesses, whether it was plaintiff's own advertising efforts, or whether it was something else altogether. It shows <u>nothing</u> to establish that this increase was permanent.

Anyway, as noted above the question here is not whether plaintiff's business is up, or whether Honey Baked USA is "honoring" plaintiff's right to do business online. The question is whether Honey Baked USA may progressively infringe plaintiff's <u>exclusive</u> right to the California market by surreptitiously adding California customers to its "pre-existing" customer list through the use of secret codes and cookies.

### Honey Baked USA's Disingenuous Argument #9:
*The Balance Of Equities Is In Our Favor*

Finally, Honey Baked USA argues that the balance of equities does not favor plaintiff. Opposition, page ID #2249. This is because (it now says) it cannot make the fail-safe state selector actually fail-safe; because the back door that Mr. Kent demonstrates in operation does not actually exist;[2] and because plaintiff is trying to redesign the National Website. It speculates without basis that the consequences of fixing the state selector and closing the back door would be "disastrous" and would result in "an entirely dysfunctional website." *Id*. at page ID #2249-2250.

The National Website was not disastrous or dysfunctional before Honey Baked USA changed it. Honey Baked USA suggests no reason why it would be disastrous or dysfunctional if it returned to the status quo ante. Honey Baked USA is free to use a session cookie, or to adopt some other design of its own choosing, but it is not free to cheat on the Court's Order in order to erode plaintiff's exclusive right to the California

---

[2] Mr. Hochman's declaration uses the term "counterfactual" with respect to Mr. Kent's initial declaration. Hochman Decl., page ID #2286 at ¶ 35. "Counterfactual" means "contrary to fact." https://www.merriam-webster.com/dictionary/counterfactual. For example, denying the existence of a back door to Honey Baked USA's online shopping platform is *counterfactual*. By contrast, Mr. Kent's declaration demonstrates what actually happened when he clicked a marketing link he received from Honey Baked USA.

market. It promised to create a fail-safe state selector as a condition of launching its new National Website. It suggests no reason why it should be allowed to bypass that state selector by enticing visitors to click links containing secret codes.

In short, the balancing of the equities looks like this:

- Plaintiff—asks only that its contractual right to exclusivity in the California market be respected, and that Honey Baked USA cease eroding that right by surreptitiously tagging California customers as its own.
- Honey Baked USA—promised the Court it would implement a fail-safe state selector, was ordered by the Court to do so, and not only admits that it failed to do so but has been caught cheating with a deliberately programmed back door and with marketing emails that surreptitiously capture new and even self-declared California customers as its own.

On the facts the equities quite clearly tip heavily in plaintiff's favor.

## Conclusion

Honey Baked USA promised to implement a fail-safe state selector as a condition of making a radical change to the National Website by which it threatened to wipe out plaintiff's online business. It abused this Court's trust by deploying a state selector it admits is flawed and claims cannot be fixed, and by programming a back door that evades the state selector when opened by a link containing a secret parameter. Worse, that link prevents customers from visiting plaintiff's site from the National Website again. The result is infringement upon and erosion of plaintiff's contractual exclusive right to the California market. This is an existential threat to plaintiff's business and the equities compel preliminary relief.

Dated: July 27, 2020          PETERSON MARTIN & REYNOLDS LLP

By:    /s/ P. Kurt Peterson
        P. Kurt Peterson
        Attorneys for Plaintiff, Honey Baked Ham Inc.