P. Kurt Peterson (State Bar No. 067123)
*kpeterson@pmrlegal.com*
K. Nina Reynolds (State Bar No. 206802)
*nreynolds@pmrlegal.com*
PETERSON MARTIN & REYNOLDS, LLP
299 Third Street, Suite 200
Oakland, California 94607
Telephone: (415) 399-2900
Facsimile: (415) 399-2930

Attorneys for Plaintiff,
Honey Baked Ham, Inc.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| Honey Baked Ham, Inc., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>Honey Baked Ham Company LLC, a Delaware limited liability company, HBH Licensing, LLC, a Georgia limited liability company,<br><br>Defendants.<br><br>And Related Counterclaim. | Case No. :19-cv-01528-JVS (DFMx)<br><br>REPLY DECLARATION OF PETER KENT IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY INJUNCTION<br><br>Judge: Hon. James V. Selna<br>Courtroom: 10C<br>411 West 4th Street<br>Santa Ana, CA 92701<br>Date: August 10, 2020<br>Time: 1:30 p.m.<br><br>Complaint filed: August 7, 2019 |

I, Peter Kent, declare:

1. I have been asked by Honey Baked Ham, Inc., of California ("HBH California") to review and respond to the declarations of Jonathan Hochman, Docket No. 119 ("Hochman Decl."), Bill Bolton, Docket No. 118 ("Bolton Dec."), and Jo Ann

REPLY DECLARATION OF PETER KENT                                                                                                   -1-

Herrold, Docket No. 117 ("Herold Dec.") filed by Honey Baked Ham Company LLC ("HBH USA") in opposition to HBH California's renewed motion for preliminary injunction.

2. My qualifications to perform this review and provide this opinion are set forth in my declaration filed in this action on September 16, 2019 (Docket No. 44-4) and Exhibit A thereto (Docket No. 44-5).

## **Challenge to Qualifications**

3. Mr. Hochman argues that I am "not qualified to render software engineering opinions because [I am] not a software engineer" and because my CV "does not disclose any education or experience in software engineering." Hochman Decl., *supra*, page ID #2276 at ¶ 13. Mr. Hochman appears to have overlooked the following:

    a. In my initial declaration in support of Honey Baked California's Renewed Motion for Preliminary Injunction, Docket No. 105, I have not rendered any "software engineering opinions." Rather, my initial declaration evaluates the operation of Honey Baked USA's National Website state selector and its handling of cookies in light of representations made by Honey Baked USA and the requirements set forth by the Court. My initial declaration also explains certain user-observable details of the operation of the state selector, cookies, and direct email links. I offered no opinion on the "engineering" of the National Website (other than to note in my conclusion that it is unnecessarily complex).

    b. However, I am extensively qualified to offer software engineering opinions. My CV makes clear that I have been involved in software design and development (particularly user interface design) and testing since 1981, and that for the first five years of my computing career I held the position of "Systems Analyst." "A systems analyst is an information technology (IT) professional who specializes in analyzing, designing and implementing information systems. Systems analysts assess

REPLY DECLARATION OF PETER KENT      -2-

the suitability of information systems in terms of their intended outcomes and liaise with end users, software vendors and programmers in order to achieve these outcomes." https://en.wikipedia.org/wiki/Systems_analyst, citing G. B. Shelly, T. J. Cashman, and M. E. Vermaat, *Discovering Computers* (2008, Complete. Boston: Thomson Course Technology).

   c. My CV also reflects considerable familiarity with Web development—the creation of Web sites, and in particular e-commerce Web sites. As reflected in my CV, in 1998 I personally created my first e-commerce Web site; in 1999 I founded an e-business service provider company creating Web-based e-commerce software for small businesses which included the first integration of PayPal transactions into an e-commerce system; in 2001 I became Vice-president of Web Solutions for a national Internet Service Provider with a staff of sixty Web-development and Web-hosting professionals working for me. (By comparison, Mr. Hochman's CV reflects education in computer science but no actual work in software development until 2004. *See*, Docket 20-3, page ID #462.)

   d. My CV also reflects that I have co-authored three books about JavaScript, a Web-development scripting language, written a book about Web development (likely one of the most widely reviewed and praised titles in computer-book history), and have consulted with companies large and small about ecommerce, Web-development, and digital marketing issues. Those companies include Amazon, Zillow, Avvo, Dunn & Bradstreet, Lonely Planet, TowerRecords.com, and literally hundreds of smaller companies.

   e. Further, courts have accepted my qualifications as an expert on issues related to Web development, including in patent cases hinging on very technical issues. These include *DDR Holdings, LLC v. Hotels.com L.P., et. al*, which involve Web-site development (my testimony in that case was later used to invalidate one of the patents at issue). I have worked on 30 patent cases, the majority of which involved Web-development issues, and have testified in deposition in seven of them, including

*IPR (Inter Partes Review) of U.S. Patent 7,818,399*.

4.  Indeed, both Mr. Hochman and Mr. Bolton go to some lengths to describe two proposed changes to the National Website that Mr. Hochman has designed and Mr. Bolton says he will implement specifically in response to the analysis Mr. Hochman asserts I am unqualified to make. Hochman Decl., *supra*, page ID #2284-85, at ¶¶ 31-33.

### What The Hochman, Bolton, and Herold Declarations Do NOT Say

5.  Except in one regard (discussed below) none of these declarations disputes any of the technical information I provided in my initial declaration regarding the operation of the National Website.

6.  Nor do any of these declarations challenge any of the technical bases for the opinions expressed in my initial declaration.

7.  None of these declarations addresses the existence and use of the *resident_status=USA* parameter in Honey Baked USA's marketing emails except in Mr. Hochman's case to argue (incorrectly) that it is "irrelevant" because emails containing this parameter are supposedly sent only to existing customers for whom there is no need to include such a parameter. Hochman Decl., *supra*, page ID #2286 at ¶ 35.

### (Some of the) Things Mr. Hochman Gets Wrong

8.  Mr. Hochman opines that I have "falsely assert[ed] that Honey Baked USA promised or said something that it did not" or that he did not. *Id.*, at ¶¶ 9-10, 14. In fact, and as made expressly clear in paragraph 7 of my initial declaration, my opinions in my initial declaration are based on the proposal made by Honey Baked USA that was reflected in and adopted by the Court in its Order of October 1, 2019, Docket No. 53, at page ID #1142. I do not concur with Mr. Hochman's assertion, Hochman Decl. at ¶ 14, that saying Honey Baked USA has an obligation to comply

REPLY DECLARATION OF PETER KENT                                                     -4-

with this Court's Order is a "straw man argument."

9. Mr. Hochman asserts that there was no requirement, nor was there ever an intent, "that the state selector would be shown to every visitor." Hochman Decl. at ¶ 19. Here he misses (or deliberately avoids) the point. We agree that the state selector should be shown to a visitor without a cookie, and that it need not be shown to a returning visitor with a cookie, who should simply be forwarded to the appropriate shopping site. However, Mr. Hochman fails to address the fact that—as demonstrated in my initial declaration—his client's marketing emails conduct an end-run around this Court-ordered state selector behavior in two respects: (1) a visitor without a cookie who clicks a link in one of these marketing emails never sees the state selector, even though they should; and, (2) a visitor with a California cookie who clicks one of those links has their California cookie overwritten with a one-year USA cookie and is forwarded to the USA shopping site.

10. Mr. Hochman asserts that I "cannot show any way for a customer to place an online order without passing through the state selector." Hochman Decl. ¶ 27. Mr. Hochman evidently overlooked paragraph 21 of my initial declaration in which I discuss (and demonstrate in a video) how links in Honey Baked USA's marketing emails take customers on an end-run around the state selector and land them directly in its own shopping area. Customers who click those links <u>never</u> see the state selector, whether they have a cookie or not, and they are <u>always</u> taken directly to Honey Baked USA's shopping site. Mr. Hochman does not dispute my technical description of what the *resident_status=USA* parameter does, and he makes no suggestion that a customer who clicks a link containing that parameter would be unable to place or complete an order.

11. Mr. Hochman asserts that I have not demonstrated "even a single purchase being made where the user has evaded the state selector." Hochman Decl. ¶ 15. This too misses (or avoids) the point. First, it is not the user "evading" the state selector, but Honey Baked USA itself who is doing so. Second, both the end-run links

REPLY DECLARATION OF PETER KENT -5-

in the marketing emails and the behavior of the National Website in response to those links could only have been deliberately designed and implemented. Third, because those links set <u>only</u> USA cookies and overwrite <u>only</u> California cookies, they were obviously designed to ensure that traffic gets routed to Honey Baked USA's site instead of Honey Baked California's site, irrespective of what is appropriate.

12. Mr. Hochman asserts that the National Website works exactly as he designed and intended it to work, and as he represented it would work. I have reviewed the declarations filed by Mr. Hochman in this case and the transcripts of the hearings in this case at which he addressed the Court, and I have found no discussion by him of any design or intent to implement a feature involving links that perform an end-run around the state selector and delete California cookies. I would assume that he himself did not design, had no intent to implement, and was unaware of the existence of such a feature, but his declaration does not deny his involvement.

13. Mr. Hochman asserts that there "never has been a requirement, promise, or intention that Honey Baked USA protect every one of its web pages with the state selector." Hochman Decl., *supra*, page ID #2279 at ¶ 26. This, too, ignores the point. The problem I describe in my initial declaration is that Honey Baked USA's National Website is set up such a way that the non-protected pages solicit email addresses from potential customers whether or not they live in or are shipping to California, and then sends them emails with links that bypass the state selector, destroy any California cookie, and set a USA cookie—all without informing the customer of what is happening. Again, none of this is contemplated in the Court's Order.

14. Mr. Hochman asserts that only Honey Baked USA's existing customers receive its marketing emails, and that California residents who are not its customers do not receive those emails. Hochman Decl., *supra*, page ID #2286 at ¶ 35. I have personal experience that both of those assertions are incorrect. I have received literally scores of marketing emails from Honey Baked USA even though I have never made a purchase from it, and I have received those emails, the latest as recently as July 23,

2020, notwithstanding the fact that I provided a California zip code when I signed up for Honey Baked USA's email list. I show one of those emails in the demonstrative video referred to in paragraph 21 of my initial declaration "HBH USA Marketing Links Replace California Cookies." Docket No. 105, page ID #2065 at ¶ 21.

### (Some of the) Places Where These Declarations Make No Sense

15. Mr. Hochman does not dispute that California customers can sign up for its email lists, but he asserts that is unlikely because the email signup link is at the bottom of a particular Web page and thus "the least important, least viewed, and least used." Hochman Decl. Doc. 119, ¶30. Mr. Hochman ignores the https://www.honeybaked.com/hunt-for-honeybaked page shown in the demonstrative video linked to in paragraph 15 of my initial declaration, Docket No. 105, page ID #2062-63 at ¶ 15, "Pages Outside the 'Fail-Safe' System Encourage Email Signups." The consumer does not have to scroll far down that page to reach the prominent link to the signup form, and the sole purpose of that page is to encourage visitors to sign up for Honey Baked USA's email marketing list. That page has none of the distractions described by Mr. Hochman in his chosen example.

16. Additionally, Honey Baked USA' email sign-up forms themselves are accessible through the major search engines. Even if one "pathway" is not much used today, it may be heavily used tomorrow. Given Honey Baked USA's stated goal of increasing the visibility of its pages in the major search engines, as it achieves its goal such pathways such as search engine links to its email signup pages will become more commonly used.

17. Mr. Hochman does not dispute that the "two bites at the apple" scenario described in paragraph 27 of my initial declaration occurs, instead he calls it "irrelevant for three reasons: (1) there is no showing that any significant number of customers follow this pathway, (2) the state selector mechanism is not designed to deal with a customer who provides incorrect information, such as selecting two different

REPLY DECLARATION OF PETER KENT -7-

states when asked on two different occasions; and (3) the entire purpose of asking "what state you live in" twice in this scenario is to prevent a person from being able to avoid the state selector." Hochman Decl., *supra*, page ID #2286 at ¶ 37.  The fact of the matter is that this situation exists and it improperly (and non-reciprocally) results in overwriting California cookies.  There is no reason why it needs to exist—a customer could have been prevented from placing an order without going through the state selector by use of a <u>single</u> state selector operating solely within shipping.honeybaked.com.   I see no functional necessity for having two state selectors and two separate sets of cookies to accomplish redirection, and accordingly conclude that the existence of two state selectors either reflects poor site design and implementation or reflects a deliberate effort to manipulate the redirection process.

18.   While Mr. Hochman does not dispute my description of how the system works, Mr. Bolton claims that "Contrary to Mr. Kent's representation, the converse of the scenario that he describes is also possible…it is possible that a customer who first accesses the Honey Baked USA online catalog via a direct link to shipping.honeybaked.com and receives a USA cookie will be asked what state they live in if they later try to access the catalog through www.honeybaked.com, and if that customers incorrectly answers 'California,' they will be redirected to shop.honeybaked.com and receive a CA cookie." Bolton Decl., *supra*, page ID #2271 at ¶ 21.  Either Mr. Bolton is being evasive or he does not understand how his own website works.  In Mr. Bolton's example, a "CA cookie" will be placed within the www.honeybaked.com area of the site and the user will be forwarded to HBH CA's website.  But, the "USA cookie" will remain within the shipping.honeybaked.com area of the site; it will not be overwritten with CA, and the next time that customer visits shipping.honeybaked.com directly they will not be presented with the state selector and will not be redirected.  This behavior occurs without any request by or notice to the customer.

19.   Mr. Hochman argues that Honey Baked California's site does not provide

REPLY DECLARATION OF PETER KENT                                                                                    -8-

reciprocal benefits to Honey Baked USA. This ignores the obvious and fundamental fact that Honey Baked USA's site is the gateway site. There is no reason for Honey Baked California's site to redirect customers. It also ignores the fact that the lack of reciprocity I discussed in my initial declaration pertains to the fact that the National Website is programmed to respond <u>only</u> to *resident_status=USA* (by setting a USA cookie and wiping out any California cookie), and <u>not</u> to respond at all to a *resident_status=CA* cookie.

20. Mr. Hochman complains that he cannot recreate some issues discussed in my initial declaration because I did not provide "exemplary URLs." Hochman Decl., *supra*, page ID #2285 at ¶ 34. I am surprised that an expert such as Mr. Hochman was so easily stymied. For example, most (perhaps all) pages within the pickup.honeybaked.com subdomain have a banner at the top of the page that looks like this:

> 🚚 Want it delivered? Go to Uber Eats or Door Dash for availability in your area. 🚚
> Curbside pickup is available at select locations. Call ahead to confirm!

An example of a URL showing this link is https://pickup.honeybaked.com/special_offers. Clicking on the words "Uber Eats" or "Door Dash" opens a page at one of these services in the customer's browser which encourages the customer to purchase food from a provider other than a Honey Baked Ham store (I have been unable to find an instance in which this is not the case).

**Mr. Hochman's and Ms. Herold's Mischaracterization Of The Relief Requested**

21. Mr. Hochman opines that "The requested injunction would be harmful to users. Customers could not look up any information (local store address, or general HBH brand information) without interacting with state selector and having to do so multiple times if they wanted to know multiple things… **Removing the cookie** would require the state selector to be presented every time the user loads a new page!" Hochman Decl. ¶¶ 48-49 (emphasis added). Ms. Herold makes similarly alarmed

REPLY DECLARATION OF PETER KENT -9-

statements. Herold Decl., *supra*, page ID #2258 at lines 13-20. They are wrong.

22. First, Honey Baked California's motion requests that "Honey Baked USA immediately and permanently **disable the stateCode cookie** feature of the state selector, so that **every visitor to the National Website, first-time or repeat**, will be presented with the state selector and **no stateCode cookie (or similar cookie)** be set or read." Docket No. 102, page ID #2033. The motion does not request the State Selector be displayed every time a page is loaded (which of course, would make no sense), only that HBH USA "disable the stateCode cookie." This is a cookie that saves the visitor's state choice, that Honey Baked USA has programmed to last for one year, and that persists between browser sessions. That is, should the visitor close their browser, the cookie will still be active the next time they open the browser. The Motion for Preliminary Injunction envisions only removal of this cookie.

23. Second, elimination of the stateCode cookie would not preclude HBH USA from using what is known as a session cookie, also sometimes referred to as a transient cookie, to temporarily store the visitor's state choice during the current browser session. For instance, once a visitor selected a state from the State Selector a session cookie would store that choice, governing redirection and, if the user were not redirected to Honey Baked California's site, allowing the visitor to browse from page to page within Honey Baked USA's site without seeing the State Selector again during that session. When the user closed their browser the cookie would be destroyed. This is hardly a novel concept in Web programming.

24. Mr. Hochman and Ms. Herold also opine about how harmful to the user experience it would be to put the entire National Website behind the state selector. This does not make any technical sense for three reasons.

25. First, as discussed above they already take "two bites at the apple" with the state selector, and make no claim that invoking the state selector again as a customer moves between www.honeybaked.com and shipping.honeybaked.com harms

REPLY DECLARATION OF PETER KENT                                                    -10-

the user experience. To the contrary, they defend and justify this approach.

26. Second, as discussed above there is no need to repeatedly invoke the state selector when they could use a session cookie.

27. Third, the issues they discuss arise from HBH USA's own design decisions: integration of its shopping site into the National Website, placement of invitations throughout unprotected areas of the National Website for visitors to sign up to its email list, and implementation of the *resident_status=USA* parameter in its marketing emails.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true of my personal knowledge and that this declaration was executed at Denver, Colorado, on July 27, 2020.

_____

Peter Kent

REPLY DECLARATION OF PETER KENT -11-