1  Jonathan Solish (CA Bar No. 67609)
   Jonathan.solish@bclplaw.com
2  Glenn J. Plattner (CA Bar No. 137454)
   Glenn.plattner@bclplaw.com
3  Alfred Shaumyan (CA Bar No. 266908)
   Alfred.shaumyan@bclplaw.com
4  David J. Root (CA Bar No. 307251)
   David.root@bclplaw.com
5  **BRYAN CAVE LEIGHTON PAISNER LLP**
   120 Broadway, Suite 300
6  Santa Monica, California  90401-2386
   Telephone:    (310) 576-2100
7  Facsimile:    (310) 576-2200

8  Attorneys for Plaintiff and Counterclaim Defendant
   HONEY BAKED HAM INC.
9

10              **UNITED STATES DISTRICT COURT**

11         **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

12                  **SOUTHERN DIVISION**

13  **HONEY BAKED HAM INC.,**              Case No.:8:19-cv-01528-JVS (DFMx)

14              Plaintiff/Counterclaim         Judge: Hon. James V. Selna
                Defendant,
15                                             **HONEY BAKED HAM INC.'S
                                               NOTICE OF MOTION AND
16      v.                                     MOTION FOR SUMMARY
                                               JUDGMENT, OR PARTIAL
17  **HONEY BAKED HAM**                        SUMMARY JUDGMENT, ON
    **COMPANY LLC, et al.,**                   COUNTERCLAIMANTS'
18                                             SECOND AMENDED
                Defendants/Counterclaim        COUNTERCLAIM AND PARTIAL
19              Plaintiffs.                    SUMMARY JUDGMENT ON ITS
                                               AMENDED COMPLAINT;
20                                             MEMORANDUM OF POINTS
                                               AND AUTHORTIES IN
21                                             SUPPORT**

22                                             [Filed concurrently with Separate
                                               Statement of Uncontroverted Facts;
23                                             Appendix of Exhibits; and Declarations
                                               of Richard Gore, Nancy Wang and
24                                             Jonathan Solish]

25                                             Date:        October 4, 2021
                                               Time:        1:30 p.m.
26                                             Courtroom:  10C

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

# TABLE OF CONTENTS

**Page**

I.    Prefatory Statement ................................................................... 1

II.   Legal Standard on Summary Judgment ............................................. 2

III.  Legal Argument ......................................................................... 3

    A.    The Failure to Comply with the CFRA Prohibits Termination ................ 3

        1.    The CFRA Protects Franchisees .................................................... 3

        2.    There are Strict Standards for Notices of Termination .................. 4

            a.    There Was No Notice of *Immediate* Termination ................... 7

            b.    There Was No Termination Notice with a Right to Cure ...... 8

            c.    The Counterclaims Are Not Notices to Terminate ............... 9

            d.    Termination Necessarily Creates Risk ................................. 10

            e.    The Failure to Give Statutory Notice is Material ................. 11

        4.    Honey Baked Licensing Has Waived the Alleged Breaches .......... 12

    B.    The Specific Performance Claims Fail as a Matter of Law ................... 13

        1.    Specific Performance Is Not Practically Feasible .......................... 13

        2.    Personal Service Contracts Cannot Be Specifically Enforced ....... 14

    C.    The Claims for the Unauthorized Use of Trademarks Fail ................... 15

        1.    Brand Standards Require Use of the Trademarks ......................... 16

        2.    There Has Been No Objection to Using the Trademarks ............. 17

        3.    The Written Approval of the Right to Use Domain Names ......... 20

        4.    All Claim to Ownership of the Domain Was Released ................. 21

        5.    A Franchisor Cannot Change Its Guidelines to Require Transfer ............................................................................... 22

    D.    There is No Viable Claim for Underpayment of Royalties ................... 24

    E.    Honey Baked USA Has No Right to Sell into California ..................... 26

IV.  Conclusion ............................................................................... 28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.B.C. Distributing Co. v. Distillers Distributing Corp.*,
154 Cal.App.2d 175 (1957) ...................................................................................28

*Alameda Cty. Flood Control & Water Conservation Dist. v. Dep't of Water Res.*,
213 Cal. App. 4th 1163 (2013) .............................................................................27

*Allstate N.J. Ins. Co. v. Amazon.com, Inc.*,
2018 WL 3546197 (D.N.J. July 24, 2018) ............................................................25

*Am. Seating Co. v. Transportation Seating, Inc.*,
220 F. Supp. 2d 845 (W.D. Mich. 2002) ...............................................................9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................2

*Apex Pool Equip. Corp. v. Lee*,
419 F.2d 556 (2d Cir. 1969) .................................................................................13

*Atl. Mach. & Equip., Inc. v. Tigercat Indus., Inc.*,
427 F. Supp. 2d 657 (E.D. Va. 2006) .....................................................................5

*Barndt v. County of Los Angeles*,
211 Cal. App. 3d 397 (1989) ................................................................................14

*Begley v. Peabody Coal Co.*,
210 F.3d 374 (7th Cir. 2000) .................................................................................9

*Bird Hotel Corp. v. Super 8 Motels, Inc.*,
2010 WL 572741 (D.S.D. Feb. 16, 2010) ............................................................24

*Bonfield v. AAMCO Transmissions, Inc.*,
708 F. Supp. 867 (N.D. Ill.1989) .........................................................................24

*British Motor Car Distribs. v. New Motor Vehicle Bd.*,
194 Cal. App. 3d 81 (1987) ....................................................................................5

*Carvel Corp. v. Diversified Management Group, Inc.*,
930 F.2d 228 (2d Cir. 1991) .................................................................................24

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................................................................ 2, 3

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    68 Cal. App. 4th 445 (1998) ............................................................................... 22, 23

*Delta Forensic Eng'g, Inc. v. Delta V Biomechanics, Inc.*,
    402 F. Supp. 3d 902 (C.D. Cal. 2019) ....................................................................... 17

*Designs in Medicine, Inc. v. Xomed, Inc.*,
    522 F. Supp. 1054 (E.D. Wis. 1981) ............................................................................. 5

*Devore v. H&R Block Tax Servs., LLC*,
    2016 WL 11520668 (C.D. Cal. May 11, 2016) ............................................................ 3

*Diamond v. Sup. Ct.*,
    217 Cal. App. 4th 1172 (2013) ............................................................................... 5, 7

*Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.*,
    779 F. App'x 471 (9th Cir. 2019) .............................................................................. 17

*ESA Mgmt., LLC v. Jacob*,
    63 Cal. App. 5th Sup. 1 (2021) .................................................................................... 5

*Evergreen Safety Council v. RSA Network Inc.*,
    697 F. 3d 1221 (9th Cir. 2012) ................................................................................. 17

*Gabana Gulf Distribution, Ltd. v. Gap Int'l Sales, Inc.*,
    2006 WL 2355092 (N.D. Cal. Aug. 14, 2006) ........................................................... 10

*Harold L. James, Inc. v. Five Points Ranch, Inc.*,
    158 Cal. App. 3d 1 (1984) ........................................................................................... 7

*Holdings v. Miva, Inc.*,
    2016 WL 4943048 (S.D. Cal. Sept. 16, 2016) ........................................................... 14

*Huang v. Holiday Inns, Inc.*,
    594 F. Supp. 352 (C.D. Cal. 1984) ........................................................................... 24

*Hydril Co., L.P. v. Grant Prideco, L.P.*,
    2007 WL 1791663 (S.D. Tex. June 19, 2007) .............................................................. 9

*IGA Aluminum Prod., Inc. v. Manufacturers Bank*,
    130 Cal. App. 3d 699 (1982) ...................................................................................... 5

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HONEY BAKED HAM INC.'S NOTICE OF MOTION FOR SUMMARY JUDGEMENT OR PARTIAL SUMMARY JUDGMENT

*Jones v. GNC Franchising,*
 211 F.3d 495 (9th Cir. 2000) .................................................................3

*JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.,*
 115 Cal. App. 4th 168 (2004) .............................................................4, 8

*Keating v. Sup. Ct. (Southland Corp.),*
 31 Cal. 3d 584, 593-94 (1982), *overruled on other grounds* (FAA
 preemption), 459 U.S. 1101 ...................................................................3

*Leiter v. Eltinge,*
 246 Cal. App. 2d 306 (1966) ...............................................................13

*Lies v. Farrell Lines, Inc.,*
 641 F.2d 765 (9th Cir. 1981) .................................................................2

*Long Beach Drug Co. v. United Drug Co.,*
 13 Cal. 2d 158 (1939) .........................................................................14

*MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.,*
 2019 WL 6655398 (C.D. Cal. May 15, 2019) ......................................13

*Mahroom v. Best W. Int'l, Inc.,*
 2009 WL 2216578 (N.D. Cal. July 22, 2009)........................................4

*Mahroom v. Best W. Int'l, Inc.,*
 2010 WL 11575097 (N.D. Cal. Mar. 29, 2010) ....................................4

*Matsuo Yoshida v. Liberty Mut. Ins. Co.,*
 240 F.2d 824 (9th Cir. 1957) ..........................................................20, 21

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
 475 U.S. 574 (1986) ...............................................................................2

*Miller v. Glenn Miller Prods., Inc.,*
 454 F.3d 975 (9th Cir. 2006) ...............................................................19

*Okun v. Morton,*
 203 Cal. App. 3d 805 (1988) ...............................................................14

*Postal Instant Press, Inc. v. Sealy,*
 43 Cal. App. 4th 1704 (1996) ..........................................................3, 11

*Sekisui Am. Corp. v. Hart,*
 15 F. Supp. 3d 359 (S.D. N.Y. 2014) ..................................................11

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

HONEY BAKED HAM INC.'S NOTICE OF MOTION FOR SUMMARY JUDGEMENT OR PARTIAL SUMMARY JUDGMENT

*Shadeland Hills Dev. Co. v. Westel-Indianapolis Co.*,
2002 WL 31431571 (S.D. Ind. Sept. 25, 2002) ................................................................10

*Store SPE LA Fitness v. Fitness Int'l, LLC*,
2021 WL 3285036 (C.D. Cal. June 30, 2021) ........................................................6, 8

*Tikiz Franchising, LLC v. Piddington*,
2017 WL 8780761 (S.D. Fla. Aug. 1, 2017).................................................*passim*

*Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.)*,
90 F.3d 1472 (9th Cir. 1996) .....................................................................23

*Woolley v. Embassy Suites, Inc.*,
227 Cal. App. 3d 1520 (1991) .............................................................. 14, 15

**Statutes**

Cal. Bus. & Prof. Code § 20020 ............................................................... 3, 3, 8

Cal. Bus. & Prof. Code § 20021 ................................................................3, 3

Cal. Bus. & Prof. Code § 20030 .......................................................4, 9, 10, 28

Cal. Civ. Code § 1442 .......................................................................................5

Cal. Civ. Code § 1641 .....................................................................................22

Cal. Civ. Code § 3390 .....................................................................................14

Cal. Code Civ. Proc. § 337 .............................................................................18

CFRA ...................................................................................................*passim*

New Jersey Products Liability Act ................................................................25

**Court Rules**

Central District Local Rule 7-3....................................................................4

Fed. R. Civ. P. 56.........................................................................................2, 2

Fed. R. Civ. P. 56(a)....................................................................................2, 3

L.R. 56-3 .........................................................................................................3

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

HONEY BAKED HAM INC.'S NOTICE OF MOTION FOR SUMMARY JUDGEMENT OR PARTIAL SUMMARY JUDGMENT

## Other Authorities

7 Witkin, *Summary of Cal. Law* ...................................................................................5

Double Entry Bookkeeping, *https://www.double-entry-
    bookkeeping.com/deferred-revenue/accounting-for-gift-cards* ....................................25

*Equity* § 18 .............................................................................................................5

*Equity* § 47 ...........................................................................................................14

Mail Order Transactions, *to the extent permitted by Section 6(b)(xi)* ..........................26

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, on October 4, 2021, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Dept. 10C of the above-entitled Court, located at 411 West 4th Street, Room 1053, Santa Ana, CA 92701-4516, Plaintiff and Counterclaim Defendant Honey Baked Ham Inc. ("Honey Baked California") will, and hereby does, move the Court for an order granting summary judgment or partial summary judgment in favor of Honey Baked California and against Defendants and Counterclaimants Honey Baked Ham Company LLC ("Honey Baked USA") and HBH Licensing, LLC ("Honey Baked Licensing") (collectively, "Counterclaimants") on the Second Amended Counterclaim.  Honey Baked California also seeks an order granting partial summary judgment in favor of Honey Baked California and against Honey Baked USA and Honey Baked Licensing on the issue in the Second Amended Complaint relating to whether Honey Baked USA and Honey Baked Licensing have the right to sell products in California.

Honey Baked California makes this Motion pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that:

1.      There is no triable issue of material fact as to Counts I through III and VI of the Counterclaim for specific performance for breach of contract and Honey Baked California is entitled to judgment as a matter of law because specific performance would entail protracted court supervision and personal service contracts are not subject to specific performance;

2.      There is no triable issue of material fact as to Counts IV and V of the Counterclaim for specific performance for breach of contract and Honey Baked California is entitled to judgment as a matter of law because (1) specific performance would entail protracted court supervision, (2) personal service contracts are not subject to specific performance, (3) the alleged use of the Honey Baked trademarks on side dishes and domain names was authorized, (4) Count IV is time-barred, and (5) Counterclaimants' released any claims to ownership of the domain names;

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

3.     There is no triable issue of material fact as to Count VII of the Counterclaim for specific performance for breach of contract (underpayment of royalty) and Honey Baked California is entitled to judgment as a matter of law because the audit did not reveal an underpayment of royalties;

4.     There is no triable issue of material fact as to Count VIII of the Counterclaim for Federal Trademark Infringement and Count X of the Counterclaim for Federal Unfair Competition and Honey Baked California is entitled to judgment as a matter of law because the alleged use was authorized and their claims fail under laches, estoppel, and waiver;

5.     There is no triable issue of material fact as to Count XI of the Counterclaim for termination of the License Agreement under California Business & Professions Code § 20020 and Honey Baked California is entitled to judgment as a matter of law because Honey Baked Licensing has not provided the statutorily required notice and Honey Baked Licensing has waived the alleged breaches;

6.     There is no triable issue of material fact as to Count XII of the Counterclaim for termination of the License Agreement under California Business & Professions Code § 20021 and Honey Baked California is entitled to judgment as a matter of law because Honey Baked Licensing has not provided the statutorily required notice and Honey Baked Licensing has waived the alleged breaches; and

7.     There is no triable issue of material fact as to that portion of the First Claim for Relief (anticipatory breach of contract), Second Claim for Relief (breach of contract), and Third Claim for Relief (breach of the implied covenant) in the Second Amended Complaint relating to whether Honey Baked USA and Honey Baked Licensing have the right to sell products in California and Honey Baked California is entitled to an order treating that material fact as established in the case.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the concurrently-filed Separate Statement of Uncontroverted Facts and Conclusions of Law, the Declarations of Richard Gore,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1   Nancy Wang, and Jonathan Solish, the Appendix of Exhibits, the pleadings and papers

2   on file in this action, and such other evidence and argument as may be adduced upon

3   hearing in this matter.

4         This Motion is filed following the conference of counsel pursuant to Central

5   District Local Rule 7-3, which took place on August 17, 2021.

6

7   Dated:  August 30, 2021             Respectfully submitted,
                                       **BRYAN CAVE LEIGHTON PAISNER LLP**

8

9                                      By: */s/ Jonathan Solish*

10                                      Jonathan Solish
                                        Attorneys for Plaintiff and Counterclaim

11                                      Defendant
                                        HONEY BAKED HAM INC.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

# I.      Prefatory Statement

Honey Baked California has held the license to franchise and operate Honey Baked outlets in California for more than fifty years.  This suit was initially filed to stop the master franchisor from terminating its right to make Internet sales.  Before the pandemic, the franchisor acknowledged that "California has the highest (quality control) scores in the HBH retail system! . . . The effort you put into the overall program is just terrific.  You should be very proud of those results."  [Separate Statement of Undisputed Facts, Undisputed Fact ("UF") # 3.]

In Easter of 2020, Honey Baked California was faced with pandemic challenges that included a dramatic six-fold increase in customer orders; an inability to obtain shipment of food containers from China; an inability to cancel pre-ordered television advertisements; the closure of its major supplier due to a COVID-19 outbreak; the overload of Internet and telephone communications systems; and the failure of local delivery services to pick up and deliver products on schedule.  [UF # 4.]  These challenges resulted in customer complaints.  [UF # 5.]

At the time, internal memos reflect that Honey Baked USA considered moving for an injunction related to these complaint, but ultimately it decided *not* to so move. [UF # 17.]  On June 22, 2020, the Counterclaimants filed their Answer to the First Amended Complaint and Counterclaim seeking, *inter alia*, a court order terminating the California franchise.  The Second Amended Counterclaim, filed herein on October 22, 2020, is referred to hereinafter as the "Counterclaim."

Counts I through III and VI of the Counterclaim assert breaches of contract related to food safety and labeling and seek specific performance of the 2015 License Agreement.  Counts IV and V complain about the unauthorized use of Honey Baked trademarks on side dishes and on the website shophoneybaked.com, seeking specific performance of the License Agreement and the transfer of ownership of that website domain name.  Count VII seeks unpaid royalties from an audit.  Counts VIII and X seek an injunction against the unauthorized use of the Honey Baked trademarks.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1  Counts XI and XII seek a declaration of the right to terminate the License Agreement.

2  There is no Count IX.

3       Counts XI and XII are addressed first below.  The California Franchise

4  Relations Act ("CFRA") requires a formal notice of termination and an opportunity to

5  cure before a franchise can be terminated before the end of its term.  The

6  Counterclaimants have failed to comply with the CFRA.

7       Counts I through III and VI seek specific performance of the License

8  Agreement, a remedy that is inappropriate in a personal services agreement.  The audit

9  claim alleged in Count VII did not uncover any failure to pay royalties and should,

10 therefore, be dismissed.  There is no right to the injunction against the use of

11 trademarks sought in Counts VIII and X, or the specific performance sought in Counts

12 IV and V, because there has been actual consent to the challenged uses and there has,

13 accordingly, been no unauthorized use of licensed trademarks.

14 **II.    Legal Standard on Summary Judgment**

15      Summary judgment is appropriate where the record, read in the light most

16 favorable to the non-movant, indicates "that there is no genuine dispute as to any

17 material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

18 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The "purpose of

19 summary judgment is to 'pierce the pleadings and to assess the proof in order to see

20 whether there is a genuine need for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio*

21 *Corp.,* 475 U.S. 574, 587 (1986).

22      Summary adjudication, or partial summary judgment, "upon all or any part of [a]

23 claim," is appropriate where there is no genuine dispute as to any material fact

24 regarding that portion of the claim.  Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*,

25 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that

26 will often fall short of a final determination, even of a single claim").

27      Material facts are those necessary to the proof or defense of a claim, and are

28 determined by referring to substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

248 (1986).  "In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion."  L.R. 56-3.

"Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp.*, 477 U.S. at 322.

## III.   Legal Argument

### A.   The Failure to Comply with the CFRA Prohibits Termination

#### 1.   The CFRA Protects Franchisees

The Counterclaim alleges that "Honey Baked California is a franchisee of the HBH Brand within the meaning of § 20020" and "[t]he License Agreement is a franchise agreement within the meaning of § 20021."  [UF # 6.]  The California legislature determined that "franchisees are in need of special protection in dealing with franchisors."  *Keating v. Sup. Ct.* (*Southland Corp.*), 31 Cal. 3d 584, 593-94 (1982), *overruled on other grounds* (FAA preemption), 459 U.S. 1101.  Courts have noted the "bargaining disparity between franchisors and franchisees" and "the unequal bargaining power of franchisors and franchisees," which "carries within itself the seeds of abuse."  *Postal Instant Press, Inc. v. Sealy*, 43 Cal. App. 4th 1704, 1716 (1996).  "Although franchise agreements are commercial contracts they exhibit many of the attributes of consumer contracts."  *Id.* at 1715.

Judge Fischer held that the statutory "protections for franchisees in the event of termination" express "a fundamental policy of California."  *Devore v. H&R Block Tax Servs., LLC*, 2016 WL 11520668, at *2-3 (C.D. Cal. May 11, 2016); *see also Jones v. GNC Franchising*, 211 F.3d 495, 498 (9th Cir. 2000) (holding that California has a "strong

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1   public policy" protecting franchisees).

2              **2.      There are Strict Standards for Notices of Termination**

3          "[T]he CFRA requires a notice of termination regardless of whether the

4   franchisor terminates the agreement with or without the opportunity to cure." *Tikiz*

5   *Franchising, LLC v. Piddington*, 2017 WL 8780761, at *8 (S.D. Fla. Aug. 1, 2017) (applying

6   California law and citing § 20021). "[T]he CFRA not only requires a 'notice of

7   termination,' but it also *requires that the notice be in writing and contain specific, mandatory*

8   *information*." *Id.* (emphasis added).

9          The notice of termination of a California franchise:

10              (a)    Shall be in writing;

11              (b)    **Shall be** posted by registered, **certified, or other receipted**

12              **mai**l, delivered by telegram or personally delivered to the

13              franchisee; and

14              (c)    **Shall contain a statement of intent to terminate . .**

15              **. together with the reasons therefor, and [t]he effective date**

16              **of such termination**. . . .

17   Bus. & Prof. Code § 20030 (emphasis added).

18          In *Mahroom v. Best W. Int'l, Inc.*, 2009 WL 2216578 (N.D. Cal. July 22, 2009), an

19   express mail letter purporting to terminate a California franchise stated that the

20   franchisor, after "full and complete consideration of the information provided" had

21   decided to terminate, "effective immediately." *Id.* at *3. Judge Fogel ruled that the

22   termination notice "did not meet the requirements of § 20030." *Id.* at *7.

23          In *JRS Prods., Inc. v. Matsushita Elec. Corp. of Am.*, 115 Cal. App. 4th 168, 172

24   (2004), Panasonic gave notice to a franchisee that it was terminating the franchise in 90

25   days but "did not give a reason for the termination." On appeal, the franchisor

26   conceded that its termination had been "wrongful under the Act." *Id.* at 173; *see also*

27   *Mahroom v. Best W. Int'l, Inc.*, 2010 WL 11575097, at *8 (N.D. Cal. Mar. 29, 2010)

28

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  (franchisor had unclean hands where "termination letter did not meet the requirements

2  of the statute").

3      In *British Motor Car Distribs. v. New Motor Vehicle Bd.*, 194 Cal. App. 3d 81, 91

4  (1987), the California Court of Appeal reversed the trial court's determination that

5  there had been good cause to terminate an automobile dealership franchise because the

6  notice did not comply with statutory notice requirements.[1]

7      Statutory notice provisions are strictly construed against the party required to

8  provide notice.  *Diamond v. Sup. Ct.*, 217 Cal. App. 4th 1172, 1193 (2013) ("the notice

9  requirements of sections 1367.1 and 1367.4 are mandatory."); *ESA Mgmt., LLC v. Jacob*,

10  63 Cal. App. 5th Sup. 1 (2021) (in an unlawful detainer proceeding, there must be

11  compliance with statutory notice requirements "which are strictly construed.").  This is

12  all the more the case here because termination of the License Agreement would work a

13  forfeiture.  Under §13(c)(vi) of the License Agreement, Honey Baked Licensing

14  contends that it accedes to ownership of the entire California Honey Baked franchise

15  system upon termination of the agreement.  [UF # 7.]  Because "equity abhors a

16  forfeiture," 7 Witkin, *Summary of Cal. Law (8ᵗʰ), Equity* § 18, at 5243, a "condition

17  involving a forfeiture must be strictly interpreted against the party for whose benefit it

18  is created."  Cal. Civ. Code § 1442.

19      If a party fails to provide the requisite statutory notice, it may not enforce rights

20  or obtain remedies under that statute.  *Diamond*, 217 Cal. App. 4th at 1193 ("Since the

21  Association admittedly failed to satisfy this notice requirement, the assessment lien

22  recorded on Diamond's property is not valid and may not be enforced in a judicial

23  foreclosure action."); *IGA Aluminum Prod., Inc. v. Manufacturers Bank*, 130 Cal. App. 3d

24

25  [1] *See also Atl. Mach. & Equip., Inc. v. Tigercat Indus., Inc.*, 427 F. Supp. 2d 657, 670 (E.D. Va. 2006) (granting summary judgment the defendant's attempted termination of

26  agreement "did not comport with the notice requirements of [the statute] and was therefore invalid"); *Designs in Medicine, Inc. v. Xomed, Inc.*, 522 F. Supp. 1054, 1057 (E.D.

27  Wis. 1981) (failure to comply with notice requirements may constitute violation of the law, regardless of whether the franchisor had good cause to terminate).

28

699, 706 (1982) ("Because proper service of the preliminary notice is a prerequisite to perfecting a lien, and because the papers show that plaintiff failed to give notice according to section 3097, the judgment [in favor of the defendant] is affirmed.").

Summary judgment is appropriate if the plaintiff failed to provide the requisite notice before filing the complaint. *See, e.g., Store SPE LA Fitness v. Fitness Int'l, LLC*, 2021 WL 3285036, at *5 (C.D. Cal. June 30, 2021) ("it is undisputed that Plaintiffs did not provide written notice of default relating to approval of the potential sublease until nearly three months after it was terminated, and even then the written notice did not ask Plaintiffs to cure any purported default because the potential sublease was already terminated. . . . Given that the Court has strictly construed the language in the lease as requiring written notice and 30 days to cure, the Court finds it appropriate to grant summary judgment. . . .").

### 3.  Mandatory Statutory Notice Was Never Provided

Counts XI and XII of the Counterclaim seek declaratory judgment that Honey Baked Licensing "is entitled to terminate the License Agreement." [Counterclaim, ¶¶ 272, 282.]  Count XII seeks "immediate" termination, while Count XI seeks a declaration of the right to terminate for breach of the License Agreement after an opportunity to cure.  In neither claim has Honey Baked Licensing complied with the statutory notice requirements.

The Counterclaimants contend that three documents serve as their statutory notices to terminate the California franchise:  (1) a November 1, 2019 letter; (2) the Answer and Counterclaims filed on June 22, 2020; and (3) the Answer to Plaintiff's Second Amended Complaint and Second Amended Counterclaims filed on October 22, 2020.  [UF # 9.]

The Counterclaimants admit, however, that *none* of these alleged notices was "posted to Plaintiff by registered, certified, or other receipted mail, or delivered personally or by telegram  .  .  .  ." [UF # 10-12.]  Because Honey Baked Licensing concedes that the manner of posting the notices did not comply with the statutory

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

requirements, there is no triable issue of material fact, and the termination claims fail as a matter of law. *Diamond*, 217 Cal. App. 4th at 1197 (granting summary judgment because the undisputed facts established that the plaintiff had not complied with statutory notice requirements).

It does not matter whether there was actual notice. When a statute establishes specific notice requirements, a party must comply with those requirements, even if the other party had actual notice. *Diamond*, 217 Cal. App. 4th at 1189-93 (holding that the defendant was entitled to summary judgment, even though it had received actual notice, because the plaintiff had not complied with statutory mailing requirements). *See also Harold L. James, Inc. v. Five Points Ranch, Inc.*, 158 Cal. App. 3d 1, 6 (1984) ("where the Legislature has provided a detailed and specific mandate as to the manner or form of serving notice upon an affected party that its property interests are at stake, any deviation from the statutory mandate will be viewed with extreme disfavor.").

Beyond the failure to comply with statutory posting requirements, the notices are *substantively* defective because they do not comply with statutory requirements.

### a.   There Was No Notice of *Immediate* Termination

Count XII is a claim for the *immediate* termination of the franchise "without providing an opportunity to cure." However, "[i]n order to terminate a franchise without an opportunity to cure, the franchisor must provide '*immediate notice of termination*.'" *Tikiz Franchising*, 2017 WL 8780761 at *8 (following California law) (emphasis added). This never occurred.

Linda van Rees served as the Counterclaimants' CEO until earlier this year and was designated as the person most knowledgeable ("PMK") on any notices of noncompliance, opportunities to cure, and notices of immediate termination. [UF # 13, 14.] Ms. van Rees was asked, "Did you ever immediately terminate the California license," and answered, "No." [UF # 15.] Asked, "Is there any place else that a date of termination of the License Agreement was provided to the licensee in California?" Ms. van Rees answered, "Not that I'm aware of." [UF # 16.]

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA   90401-2386

1    As previously mentioned, at Easter of 2020, Ms. Van Rees considered that "we

2    may go to court for a preliminary injunction on [Honey Baked California]." [UF # 17.]

3    She inquired as to what the evidence would show "if we go in front of judge." [UF

4    #17.] She chose not to proceed, and no "immediate notice of termination" was

5    issued—in the form prescribed by the CFRA or otherwise. [UF #17.]

6    None of the three notices the Counterclaimants identify as their statutory notices

7    provided notice that Honey Baked Licensing is immediately terminating the franchise.

8    [UF # 18.] As discussed in detail in §3(c), *infra,* the answer and counterclaims cannot

9    serve as notices to terminate.

10                    **b.    There Was No Termination Notice with a Right to Cure**

11   Count XI alleges: "264.  California Business & Professions Code § 20020

12   provides that a franchisor may terminate a franchise prior to the expiration of its term

13   for good cause.  [¶]  Section 20020 defines good cause as 'the failure of the franchisee

14   to substantially comply with the lawful requirements imposed upon the franchisee by

15   the franchise agreement *after being given notice of at least 60 days in advance of the termination*

16   *and a reasonable opportunity, which in no event shall be less than 60 days from the date of the notice of*

17   *noncompliance, to cure the default.*'" [Counterclaim, ¶¶ 264-265 (emphasis added).]

18   The PMK for the Counterclaimants on notice of cure, Ms. van Rees, when asked

19   whether a notice to cure franchise breaches had been provided to Honey Baked

20   California, testified:  "The license agreement would – would tell you how much time he

21   has to cure it." [UF # 19, 20.]  This misapprehends the function of providing a notice

22   and an opportunity to cure.  *See STORE SPE LA Fitness, supra,* 2021 WL at *5 (where

23   agreement provided for notice of a right to correct a default, the defaulting party was

24   entitled to a "thirty day period after written notice in which Plaintiffs would be able to

25   cure any defect before being charged with default.").

26   The CFRA "prohibits a franchisor from terminating a franchise without good

27   cause and requires the franchisor to give a franchisee notice to cure any

28   transgressions." *JRS Prods.*, 115 Cal. App. 4th at 173.  The parties signed releases when

they signed the License Agreement, so the agreement could not possibly serve as a notice to cure a specific subsequent breach or what was needed to cure a specific breach, how long would be given to cure or a specific date on which the franchise relationship would terminate if a breach was not cured.

The November 1, 2019 letter is not a notice to terminate because it does not "contain a statement of intent to terminate . . . together with the reasons therefor, and [t]he effective date of such termination." Bus. & Prof. Code § 20030. The letter instead merely notes: "Honey Baked California's numerous breaches of the License Agreement and violations of law expose it to *potential termination* of the License Agreement." [UF # 21 (emphasis added).]

### c.   The Counterclaims Are Not Notices to Terminate

The Counterclaimants maintain that their Counterclaim fulfills the function of a statutory notice of termination and of an opportunity to cure. [UF # 9.] The Counterclaims, however, do not meet the requirements of Business and Professions Code § 20030. The Counterclaims do *not* assert the immediate termination of the franchise, do *not* provide any right to cure, do *not* specify the reason for termination, and do *not* provide a termination date. [UF # 22-25.]

"[W]here an agreement requires that one party be given an opportunity to cure (upon sufficient notice) prior to the other party gaining a particular 'right' (e.g., . . . the right to terminate the agreement), the injured party's **filing of a lawsuit does not constitute proper notification** of the allegedly breaching party's need to cure and, furthermore, **interferes with that party's opportunity to cure**." *Am. Seating Co. v. Transportation Seating, Inc.*, 220 F. Supp. 2d 845, 849 (W.D. Mich. 2002) (emphasis added); *see also Begley v. Peabody Coal Co.,* 210 F.3d 374, *2 (7th Cir. 2000) ("Courts consistently hold that papers initiating litigation do not count as 'notice' for purposes of such statutes [requiring notice].") (citing *McNeil v. United States,* 508 U.S. 106 (1993); *Hallstrom v. Tillamook County,* 493 U.S. 20 (1989)); *Hydril Co., L.P. v. Grant Prideco, L.P.*, 2007 WL 1791663, at *4 (S.D. Tex. June 19, 2007) ("Because the filing and service

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1   of a complaint does not give an opportunity to cure the alleged breach, the notice of

2   breach is ineffective and the 'subsequent attempt to terminate the Agreement cannot be

3   given effect.'"); *Shadeland Hills Dev. Co. v. Westel-Indianapolis Co.*, 2002 WL 31431571, at

4   *3 (S.D. Ind. Sept. 25, 2002) ("The notion that a notice-of-default clause in a contract

5   may be satisfied by a lawsuit subverts the entire purpose of these clauses of avoiding

6   unnecessary litigation; nor has opportunity to cure been given where notice of default

7   and the lawsuit arrive in one fell swoop.").  The provision of the License Agreement on

8   defaults and the allegations of the Counterclaim cannot, as a matter of law, meet the

9   notice requirements established in § 20030.

10                  **d.        Termination Necessarily Creates Risk**

11          The Counterclaimants assert that they had "a real and reasonable apprehension"

12   that if they terminated the California franchise, the franchisee would "seek judicial

13   relief." [Counterclaim, ¶ 272.]  Honey Baked Licensing, however, cannot bypass the

14   required notice of termination, because it is worried about the risk of facing the

15   statutory remedy for improvident termination of a franchise.

16          Honey Baked Licensing seeks a no-risk option for terminating a franchise

17   relationship that is directly at odds with a protective statutory procedure that states a

18   fundamental policy of California.  The "motivating purpose behind the CFRA was to

19   protect franchisees, not franchisors, from contracts of adhesion and *abrupt terminations*

20   *without cause.*"  *Gabana Gulf Distribution, Ltd. v. Gap Int'l Sales, Inc.*, 2006 WL 2355092, at

21   *5 (N.D. Cal. Aug. 14, 2006) (emphasis added).

22          Improvident termination of a franchise brings with it substantial risks.  In *Tikiz*

23   *Franchising,* the franchisee had admittedly abandoned his franchise.  Even though

24   abandonment is a statutory ground for termination of a franchise, the franchisor did

25   not issue a termination notice.  Because the franchisor had "failed to provide a written

26   notice of termination of the franchise agreements as required by the CFRA," the failure

27   to provide notice of termination violated the CFRA, triggering the "remedy available

28   under § 20035" (payment of the fair market value of the franchise and any additional

1   damages).  *Id.,* 2017 WL 8780761 at *8.

2       Further, termination of a franchise extinguishes the franchisor's right to seek

3   future damages.  *Postal Instant Press, Inc. v. Sealy*, 43 Cal. App. 4th 1704, 1713 (1996).

4   The CFRA was meant to afford franchisees a reasonable opportunity to cure, not to

5   give franchisors a risk-free manner of averting their statutory obligations.

6           **e.     The Failure to Give Statutory Notice is Material**

7       Honey Baked USA acknowledges that "errors, failures" occur and that

8   "[p]erfection is not possible.  You're going to fail to meet the–the mark."  [UF # 26.]

9   The statutorily required notice of termination signals that a particular breach has

10  become the basis for the termination of a franchise on a certain date—whether

11  immediately or after a chance to cure—distinguishing the breach from the routine, day-

12  to-day operational challenges inevitably faced by franchisees.  To ensure that

13  franchisees appreciate that they are facing termination, the Legislature has mandated

14  that there *must* be a formal notice of termination.

15      Not providing proper statutory notice with an opportunity to cure was material

16  here because corrective measures were, in fact, taken.  For example, after Easter of

17  2020, Honey Baked California issued $502,000 in customer refunds along with

18  complimentary gift cards.  [UF # 27.]

19      Honey Baked USA has retained an independent quality control inspection

20  company, Steritech, to conduct "food safety-focused audits" on all Honey Baked stores

21  nationwide, to ensure compliance with Honey Baked USA "standards and local

22  authority standards for health and food safety, product temperatures and cleanliness

23  and sanitation standards."  [UF # 28.]

24      The inspections conducted by Steritech in Honey Baked California stores from

25  July 16 through August 4, 2021, resulted in grades of 99.3; 99.3; 98.1; 98.7; 99.3 and

26  100 on a scale of 100.  [UF # 29.]  Scores averaging above 99% should meet the

27  "substantial compliance" standard for the cure of a breach of a franchise agreement,

28  stated in paragraph 266 of the Counterclaim.  *See Sekisui Am. Corp. v. Hart*, 15 F. Supp.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

3d 359, 367 (S.D. N.Y. 2014) (third-party audits were "highly probative of whether ADI materially complied with FDA regulations during the relevant period."). Dan McAleenan, Honey Baked USA's COO, testified that the quality control audits establish that Honey Baked California is "meeting those standards defined in those [audit] reports." [UF # 30.]

Honey Baked USA has never terminated a franchise or closed a corporate store for failing these audits. [UF # 31.] When franchisees outside of California do not receive high enough scores on their Steritech audits, "they submit an action plan" for correcting the deficiencies and Honey Baked USA works with its franchisees to ensure compliance. [UF # 32.]

These facts are cited here not because they cannot be contested. It is assumed that Honey Baked USA will take issue with the test results from its own independent inspection company. The point, in the context of this motion, is that the failure to provide the statutorily required notice to cure was *material,* because there is strong evidence that a cure could have been and, in fact, may have been effected.

## 4.   Honey Baked Licensing Has Waived the Alleged Breaches

Despite its claim that it has sued to "immediately" terminate the California franchise, Honey Baked Licensing has accepted more than $1.3 million in royalties from Honey Baked California after filing its original counterclaim. [UF # 33.]

Since Easter of 2020, Honey Baked California has spent $110,000 completely remodeling two stores and a third store that is in progress. [UF # 34.] Honey Baked Licensing has continuously updated its standards and guidelines for remodeling stores and those standards have been followed in these remodels. [UF # 35.] Had Honey Baked California been served with a notice of immediate termination of its franchise, these investments would not have been made. [UF # 36.] Honey Baked California has already committed to purchase over $5,316,000 in branded Honey Baked hams and $740,000 in other branded products in anticipation of the upcoming holidays that it would not have the right to sell or use if its franchise were to be terminated. [UF #

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

37.]

"Where the injured party continues to perform and accepts further performance from the guilty party after the alleged breach, this constitutes a waiver of the breach." *MAG Aerospace Indus., LLC v. Precise Aerospace Mfg., Inc.*, 2019 WL 6655398, at \*5 (C.D. Cal. May 15, 2019); *see also Apex Pool Equip. Corp. v. Lee*, 419 F.2d 556, 562 (2d Cir. 1969) (when the "injured party chooses to go on, he loses his right to terminate the contract because of the default"); *Leiter v. Eltinge*, 246 Cal. App. 2d 306, 317 (1966) ("[T]reating the contract as binding after full knowledge of the breach[ ] is a waiver of the right to rescind the contract for the material breach.").

Instead of immediately terminating the License Agreement for Honey Baked California's purported breaches at Easter of 2020 by moving for an injunction, Honey Baked Licensing instead elected to continue the contract by accepting Honey Baked California's royalty payments.  [UF # 33-35.]  By continuing to treat the contract as an ongoing agreement, maintaining a suit against Honey Baked California that demands the specific performance of the License Agreement and failing to issue termination notices that comply with the CFRA, the Counterclaimants have waived any right to terminate the franchise.

**B.     The Specific Performance Claims Fail as a Matter of Law**

Counts I through VI of the Counterclaim seek "an order directing Honey Baked California to specifically perform its obligations under the License Agreement. . . ." [Counterclaim, ¶¶ 179, 192, 205, 213, 227, 236.]  The claim is inappropriate in a personal services contract and would elevate any claimed breach into a contempt of Court, which would be inappropriate because the parties are already contractually bound to comply with their agreement.

**1.     Specific Performance Is Not Practically Feasible**

California courts have generally followed the "rule prohibiting specific enforcement 'where the contracts stipulate a succession of continuous acts which require protracted supervision and direction by the court with the exercise of special

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1  knowledge, skill and judgment by the parties performing the acts.'"  *Okun v. Morton*, 203

2  Cal. App. 3d 805, 820 (1988).  *See also Long Beach Drug Co. v. United Drug Co.*, 13 Cal. 2d

3  158, 171-72 (1939) (declining to accept the impossible task of specifically enforcing a

4  dealership agreement). Although this rule has been labeled "archaic" by some courts,

5  the modern view still considers whether specific performance is "practically feasible."

6  13 Witkin, Sum. Cal. Law 11th, *Equity* § 47.

7      In *Holdings v. Miva, Inc.,* 2016 WL 4943048, at *6 (S.D. Cal. Sept. 16, 2016), the

8  court struck a prayer for specific performance that would have required "judicial

9  enforcement of a continuous series of acts involving the exercise of discretion between

10  two parties to a business relationship that has clearly experienced a falling out."

11  Specific performance "would place an onerous supervisory burden on the court in

12  order for the decree to have any meaningful effect." *Id.*

13      *Okun v. Morton* is also instructive.  There, the court concluded that it could order

14  specific performance of the contract where doing so would *not* involve "the day-to-day

15  management of any particular Hard Rock Cafe or related enterprises that would require

16  the close and on-going cooperation of the parties or the court." 203 Cal. App. 3d at

17  821.

18          **2.      Personal Service Contracts Cannot Be Specifically Enforced**

19      Civil Code § 3390 establishes that "[t]he following obligations cannot be

20  specifically enforced:  [a]n obligation to render personal service; [a]n obligation to

21  employ another in personal service." *Barndt v. County of Los Angeles*, 211 Cal. App. 3d

22  397, 404 (1989).  In *Woolley v. Embassy Suites, Inc.*, 227 Cal. App. 3d 1520, 1534-1535

23  (1991), Embassy Suites, Inc. had agreed to manage a hotel owned by the plaintiff.  The

24  hotel management agreement was held to be a "personal services contract" that was

25  not subject to specific performance because the manager's performance called for "the

26  rendition of services which require the exercise of special skill and judgment," and "a

27  series of complex and delicate business decisions" based on "mutual cooperation and

28  trust . . . between the parties." *Id.* at 1534.

The former CEO of Honey Baked Licensing, Ms. van Rees, acknowledged that because "California is a licensee," "we don't direct them at the same level that we would direct a franchisee." [UF # 40.] "With a licensee, licensees are basically to self-regulate . . . . [T]he contract would say these are the marks you have to hit, and how you get there, as a licensee, is up to you." [UF # 41.] Because the "how you get there" is to be determined by the California licensee, this is a personal services contract, like the agreement in *Woolley*. Honey Baked California, as in *Woolley*, is required to exercise special skill and judgment in its business decisions about the management of its Honey Baked stores [UF # 42] and in the selection, training, and oversight of its sub-licensees [UF # 43].

Honey Baked California must forecast future product sales and make long-range purchases of hams and other products, set pricing, and manage its business based on more than 50 years of experience in the California market. [UF # 44.] Like the manager in *Woolley*, Honey Baked California is the manager of its own territory. [UF # 45.] The transfer provision in the License Agreement focuses on the "financial capacity, retail and other business experience" of the licensee [UF # 46], further demonstrating that the License Agreement is a personal service contract not readily amenable to specific enforcement.

## C.  The Claims for the Unauthorized Use of Trademarks Fail

Counts VIII and X of the Counterclaim contend that Honey Baked California has used Honey Baked USA's trademarks on side dishes and Internet domain names "[w]ithout authorization or approval." [Counterclaims, ¶ 249.] Counts IV and V of the Counterclaim also assert that Honey Baked California breached the License Agreement by using the trademarks on certain products and failing to transfer ownership of the shophoneybaked.com domain name. These uses, however, have all been authorized and approved by the Counterclaimants and cannot serve as the basis for breach of contract, infringement or unfair competition claims.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

### 1.    Brand Standards Require Use of the Trademarks

Despite allegations that the use of Honey Baked trademarks on side dishes is unauthorized, the Counterclaimants allege that *their own brand standards* **require** the use of their trademarks "on packaging for side dishes and condiments." [UF # 49.]  The Counterclaim even includes full color mock-ups of how the Honey Baked trademarks are supposed to appear on side dishes like "Cheesy Potatoes" and "Cranberry Walnut Chutney." [UF # 50.]  Honey Baked California is obligated to "abide by and conform to the standards of Licensor"[2] under § 6(b) of the License Agreement.  [UF # 51.]

In Honey Baked USA's Initial Disclosures, Jo Ann Herold was designated as the witness knowledgeable about "Honey-Baked Brand standards for marketing, use, and display of the Proprietary Marks." [UF # 52.]  Ms. Herold was shown pages 21 and 23 of Exhibit 202 (the Honey Baked Standards Manual) and confirmed that they depict the brand standard for "how side dishes are supposed to be packaged" and "the brand standard for condiments and soup." [UF # 53.]  Page 21 of the Honey Baked Standards Manual shows a package of Cheesy Potatoes, where the Honey Baked trademarks appear three times in full color, and the Honey Baked logo appears twice. [UF # 54.]  The Honey Baked trademark appears in full color on the packaging Standards for desserts [UF # 55.] and the name Honey Baked appears three times on the packaging Standards for condiments.  [UF # 56.]  Franchisees are instructed: "Always lead with the HONEYBAKED seal as hero. . . ."  [UF # 57.]  Outside of California, all franchisees sell side dishes "that are marked with the Honey Baked Ham trademark" and they "don't pay an extra royalty" for the right to do so.  [UF # 58.]

In a letter dated November 1, 2019, Honey Baked Licensing complained that Honey Baked California was using "outdated packaging materials" on side dishes.  [UF # 59.]  Instead of objecting to the unauthorized use of the Honey Baked trademarks on

---

[2] The Licensor in the License Agreement is HBH Limited Partnership. Counterclaimants allege that they are the successors-in-interest to HBH Limited Partnership.

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

side dishes, Honey Baked Licensing only requested that more current graphics for the
Honey Baked trademarks be used instead.  [*Id.*]

According to the Counterclaims, Honey Baked California's use of the Honey
Baked trademarks on non-Branded Products, like side dishes, is an unauthorized use of
trademarks, supporting a recently asserted claim that Honey Baked California owes an
additional $61,838,479 for the unauthorized use of trademarks.[3]  [UF # 60.]  The
Counterclaimants have no right to mandate the use of trademarks on side dishes and
then claim that compliance with that mandate constitutes the unauthorized use of the
trademarks.

## 2.    There Has Been No Objection to Using the Trademarks

Laches prevents a party from unreasonably delaying the enforcement of its rights
when it knows that another company has been using its trademarks.  *Evergreen Safety
Council v. RSA Network Inc.*, 697 F. 3d 1221, 1226 (9th Cir. 2012).  Laches applies when
two criteria are met: first, the plaintiff unreasonably delayed in bringing suit; and
second, that delay prejudiced the defendant.[4]  *Id.*  Count IV for breach of the License
Agreement through the unauthorized use of trademarks is time-barred under

---

[3] The Second Amended Counterclaim does not seek damages for the use of the
trademarks and the "COMPUTATION OF DAMAGES" section of the Initial
Disclosures states that "Honey Baked USA is not seeking damages in this action."
[UF # 61, 62.]  This was "supplemented" at the eleventh hour, followed soon after by
an "expert" report claiming $61,838,479 for the unauthorized use of trademarks. [UF #
63.]  The Counterclaimants retained this "expert" a year ago, in September of 2020, but
gave no notice that it was in the process of developing a new trademark damages claim.

[4] There is a strong presumption in favor of laches because Counterclaimants have
known for years that Honey Baked California was using the trademarks.  *Eat Right
Foods Ltd. v. Whole Foods Mkt., Inc.*, 779 F. App'x 471, 473 (9th Cir. 2019) (trademark
owner failed to overcome the "strong presumption … that laches applie[d]" when the
lawsuit was filed after the expiration of applicable statutes of limitations).  *Delta Forensic
Eng'g, Inc. v. Delta V Biomechanics, Inc.,* 402 F. Supp. 3d 902, 911–12 (C.D. Cal. 2019)
(holding that laches barred trademark claims under "California's four-year statute of
limitation for trademark infringement actions.").

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1  California's four-year statute of limitations for contract claims.  Cal. Code Civ. Proc. §

2  337.

3  Honey Baked California has sold side dishes with the Honey Baked trademarks

4  on them since the early 2000s.  [UF # 64.]  Until the filing of the Answer to the First

5  Amended Complaint and Counterclaims in June of 2020, the Counterclaimants never

6  objected to the use of the trademarks on these products.  [UF # 65.]

7  In the "late 1990s, early 2000s," Honey Baked USA "went through nationally

8  and we looked at all of the materials . . . [W]e went out to each one of the areas and we

9  pulled bags and boxes and labels and just everything to see how the trademark was

10  being utilized."  [UF # 66.]  Ms. van Rees visited the California stores "probably half a

11  dozen times, at least." [UF # 67]  The pre-contract Term Sheet states that the Licensor

12  "will visit every Retail Outlet before executing the agreement."  [UF # 68, 73].

13  Counterclaimants "had people buy products from California stores."  [UF #

14  69.]  Ms. van Rees even hired investigators to go through the trash at Honey Baked

15  stores in California at night.  [UF # 70.]  "Mystery shops" of the California Honey

16  Baked stores provided "details on a store by store basis, that included a report about

17  the "deli case," a list of "sides from the Deli," and a color photograph of a side dish

18  that prominently displays the Honey Baked brand.  [UF # 74.]  Counterclaimants'

19  counsel, Mr. Mayberry, was copied on a Mystery Shop report.   [UF # 75.]

20  "In February of 2015, the predecessor of HBH Licensing, HBH Limited

21  Partnership, commissioned an independent laboratory to conduct testing of side dishes

22  manufactured by Honey Baked California in its in-house, non-FDA inspected

23  facilities."  [UF # 71.]  Even though the independent testing supposedly "revealed high

24  levels of bacteria microorganisms," the Counterclaimants made no objection to the

25  continued use of the trademarks on these side dishes.  [UF # 72.]

26  On June 30 and July 1, 2015, Honey Baked California's Vice President met with

27  the Counterclaimants' executives and employees.  [UF # 76.]  The parties discussed the

28  products that both Honey Baked California and the Counterclaimants sold in their

1   stores and online, including the fact that Honey Baked California was selling the subject

2   items with the Honey Baked name on them.  [UF # 77.]  The Counterclaim

3   acknowledges that Honey Baked Licensing has been discussing "labeling practices"

4   with Honey Baked California since February of 2016.  [UF # 81.]  In September of

5   2015, Dave Keil, then the CEO of Honey Baked Licensing, visited the Honey Baked

6   California stores and thought that the "overall product quality looked pretty good," but

7   there was "too much product on the floor."  [UF # 78.]

8       In March of 2017, the CEO of the Counterclaimants at the time, Linda Heasley,

9   visited the California stores with the then general counsel of Honey Baked USA, Adam

10  Haight.  [UF # 79.]  After the visit, Ms. Heasley sent a letter to Honey Baked California

11  stating that the Counterclaimants were focused on reviewing Honey Baked California's

12  "entire product line" and verifying that side dishes "comply with the applicable

13  requirements surrounding labeling information."  [UF # 80.]  In May of 2018, the

14  Counterclaimants "completed a thorough review of the California ecommerce

15  packaging and products."  [UF # 82.]

16      And, as previously mentioned, the Counterclaimants use a third-party service to

17  inspect every Honey Baked California store twice a year.  [UF # 83.]

18      The Counterclaimants inspected *all* of the California stores, took photographs of

19  side dishes that displayed the Honey Baked trademarks, continuously discussed the

20  display of trademarks on side dishes and even issued brand standards as to how the

21  Honey Baked trademarks had to be displayed on all side dishes.  The Counterclaimants

22  knew about and even regulated the use of its trademarks on side dishes.  This conduct

23  is inconsistent with a trademark claim for unauthorized use.

24      In *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 999 (9th Cir. 2006), the

25  plaintiffs had constructive knowledge of infringement because the defendants had

26  "openly sold merchandise bearing the  .  .  . mark" at performances, and one of the

27  plaintiffs had even attended performances where such branded merchandise had been

28  offered for sale.  Here, there was full knowledge of the use of Honeybaked trademarks

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

1   more than four years before the first pleading was filed in this action.

2       "[E]stoppel is any conduct, express or implied, which reasonably misleads

3   another to his prejudice so that a repudiation of such conduct would be unjust in the

4   eyes of the law." *Matsuo Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 829–30 (9th Cir.

5   1957).

6       Here, Honey Baked California has been prejudiced by the delay in asserting a

7   claim.  As Ms. van Rees testified, Honey Baked California has always emphasized the

8   "sale of side dishes."  [UF # 84.]  Honey Baked California has invested a significant

9   amount of time and money in developing these products.  [UF # 85.]  Honey Baked

10   California has also been prejudiced by the loss of evidence throughout the years.  [UF

11   # 86.]  And Honey Baked California would have removed the trademarks if the

12   Counterclaimants had objected.  [UF # 87.]  The Counterclaimants, however, stood by

13   without objecting and collected millions of dollars in royalties, including royalties from

14   the sale of the subject products.  Now they want an additional $61,838,479.

15       **3.    The Written Approval of the Right to Use Domain Names**

16       Section 6(c)(iv) of the License Agreement authorizes Honey Baked California to

17   "operate and maintain a website for its Business using the Proprietary Marks only at a

18   domain name approved in writing by Licensor."  [UF # 89.]  The shophoneybaked site

19   was approved in writing by the Licensor, both *before* the 2015 License Agreement on

20   May 24, 2010, and by its putative successors-in-interest *after* the License Agreement on

21   July 13, 2018.

22       Honey Baked California registered shophoneybaked.com in 2004 and has been

23   using it in commerce since 2007.  [UF # 90.]  On May 24, 2010, five years prior to the

24   2015 License Agreement, Honey Baked Licensing sent a letter stating:  "We wanted to

25   take this opportunity *to clarify that Licensees are licensed to use HONEYBAKED domain*

26   *names*," specifically mentioning the domain names shophoneybaked.com and

27   hbhca.com as Honey Baked California's domain names.  [UF # 91, 92 (emphasis

28   added).]

The Counterclaimants again expressly authorized the use of the shophoneybaked.com site in 2018. On July 13, 2018, Sean Heslin of Honey Baked California wrote to Honey Baked USA, requesting the right to replace the ca.honeybaked.ca with the shophoneybaked.com domain. [UF # 93.] Bill Bolton, the PMK about the national website, says that he approved the request to have referrals routed to shophoneybaked.com—"And you approved it? Yes I did." [UF # 94-96.] The move to shophoneybaked.com could not have been done without Bolton's help. [*Id.*]

### 4.    All Claim to Ownership of the Domain Was Released

At a March 19, 2010 Board of Directors Meeting of the Licensor, a document was circulated "showing ownership of domain names" by the Honey Baked licensees. [UF # 97.] David Mayberry, counsel for the Counterclaimants in this action, believed that the Licensor would be "best protected by having ownership of the domain names." [UF # 98.]

On May 10, 2010, Mr. Mayberry wrote a memo discussing the Licensor's options in dealing with the contested ownership of Honey Baked domain names by Honey Baked licensees. [UF # 99.] Ms. van Rees (who was then a licensee and not yet the CEO) was refusing the Licensor's request to turn over the Honey Baked domain names that were still being used by her family's licensee entity; as Mr. Mayberry explained, "she wants to keep the *ownership* [of the domain name] as a bargaining chip." [UF # 100 (emphasis added).] Mr. Mayberry suggested that one option would be to send out a "non-waiver letter . . . reserving all rights until the other issues are sorted out." [UF # 101.] Although it considered doing so in 2010, the Licensor never sent a letter to the licensees stating that it was not waiving its rights in failing to contest ownership of the Honey Baked domain names. [UF # 102.]

On May 24, 2010, in granting Honey Baked California permission to *use* the domain shophoneybaked.com, the Licensor asserted the claim that the Licensees "are not permitted to *own* HONEYBAKED domain names." [UF # 103 (emphasis added).]

The Licensor demanded that Honey Baked California "promptly take steps to transfer the registration [of the domain names] to the [Licensor], and in any event, by April 30, 2010 (sic)."  [UF # 104.]

In the Release attached to the License Agreement, the Licensor released all known and unknown "*claims, demands*, debts, liabilities, actions, and causes of action of whatever kind" that existed as of April 23, 2015.  [UF # 105 (emphasis added)]  The May 24, 2010 letter demanding that Honey Baked California had to "promptly take steps to transfer the registration [of the domain names] to the Partnership" was a *claim and a demand* that was fully released in 2015.  The Counterclaim ignores the Release and seeks to revive a claim and a demand that pre-date the Release.

The prohibition on the registration of Honey Baked domain names, stated in § 6(c)(iv) of the License Agreement, is directed at the *subsequent* registration of a domain name.  The Shophoneybaked.com domain had already been registered eleven years before the 2015 License Agreement.  [UF # 107.]  Under § 13(c)(iii) of the License Agreement, any domain names that contain the word "Honeybaked" were to be transferred to the Licensor upon termination of the Agreement.  [UF # 108.]  Because any subsequent registration of Honey Baked domain names was prohibited after 2015, there would be no reason for the License Agreement to address the transfer of ownership of Honeybaked domain names at the end of the relationship unless the Licensee was already using a domain name. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *see also City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998) (courts "must interpret contractual language in a manner which gives force and effect to every provision, and not in a way which renders some clauses nugatory, inoperative or meaningless.").

### 5. A Franchisor Cannot Change Its Guidelines to Require Transfer

On November 1, 2019, Honey Baked Licensing renewed the demand the

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA 90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1   Licensor had made on May 24, 2010, that Honey Baked California had to transfer

2   ownership of the domain name shophoneybaked.com.  [UF # 109.]  The demand

3   required transfer of ownership by March 1, 2020.  [*Id.*]  When this demand was not

4   acceded to, Honey Baked USA followed up by issuing a "Guideline" that required

5   Honey Baked California to transfer ownership of the domain name to Honey Baked

6   USA, with no consideration.  [UF # 110.]  The right to "administer an orderly system

7   for Mail Order Transactions for the benefit of the entire HoneyBaked system," under §

8   6(b)(xi) [UF # 111], does not support the issuance of such a "Guideline."

9        A franchisor may "not act to destroy the right of the franchisee to enjoy the

10   fruits of the contract. . . ."  *Vylene Enters., Inc. v. Naugles, Inc.* (*In re Vylene Enters., Inc.*), 90

11   F.3d 1472, 1477 (9th Cir. 1996).  The License Agreement acknowledges the

12   "fundamental right" of Honey Baked California to engage in Mail Order transactions.

13   [UF # 112.]  Mail order transactions are processed through the shophoneybaked.com

14   website in the exercise of that fundamental right.  [UF # 113.]

15        Today, the Internet Guidelines promulgated by Honey Baked USA apply only to

16   itself and Honey Baked California.[5]  [UF # 114.]  The right to administer an orderly

17   system for the benefit of the entire Honey Baked system does not support a standard

18   that requires transfer of a right that has previously been contested and released.  Such a

19   rule benefits only the party making the rule, not the entire system.  Since this Court's

20   initial ruling prohibiting the termination of the Internet sale right, there has been an

21   orderly system of referrals to shophoneybaked.com, which would not be improved by a

22   change in the right to use that domain name.  [UF # 118.]

23   ───────────────────

24   [5]  The License Agreement had a provision that kept the Licensor, and now the
     Counterclaimants, in check by limiting the right to require compliance with a rule only

25   if "all of Licensor's licensures are subject to such requirements."  [UF # 115.]  This was
     a protective provision, because all U.S. licensees but Honey Baked California were

26   members of the same extended family.  [UF # 116.]  Right after signing the renewal
     License Agreement, however, the Licensor consolidated all of the U.S. licensees, except

27   Honey Baked California, so that there are now no other "licensures" to keep the

28   Counterclaimants' rule-making power in check.  [UF # 117.]

A franchisor may adopt standards that benefit the franchise system, but where a change in standards creates an unfair economic benefit favoring the franchisor, courts have interceded.  *See, e.g., Huang v. Holiday Inns, Inc.*, 594 F. Supp. 352, 359 (C.D. Cal. 1984) (when implementing new system requirements, a franchisor cannot impose "conditions by which a franchisor might extort its own profit at the expense of the profits of the franchisee;" "the requirements [should be] of the kind that would work to the advantage of both parties"); *Bonfield v. AAMCO Transmissions, Inc.*, 708 F. Supp. 867, 885 (N.D. Ill.1989) ("when AAMCO decided to change its policies, its implied duty of good faith compelled it to do so 'reasonably and with proper motive.' . . . So even if the express terms of the Agreement permitted AAMCO to alter its policies, it could not change them arbitrarily."); *Bird Hotel Corp. v. Super 8 Motels, Inc.*, 2010 WL 572741 (D.S.D. Feb. 16, 2010) (although a franchisor had retained the right to change a franchised motel system, it breached the contract by imposing a fee on its franchisees as part of a new customer rewards program); *Carvel Corp. v. Diversified Management Group, Inc.*, 930 F.2d 228 (2d Cir. 1991) (finding that Carvel "acted within the bounds of its discretion, [but that] it would be in breach [of the covenant of good faith and fair dealing] if it acted unreasonably").

**D.     There is No Viable Claim for Underpayment of Royalties**

Count VII alleges that Honey Baked Licensing is conducting an audit under §9(b) of the License Agreement and seeks to recover any underpayment uncovered by the audit.  [Counterclaim, ¶ 243.]  Its then CEO, Ms. van Rees, informed this Court that she anticipated a shortfall of royalty payments "over the years [that] could total millions of dollars."  [UF # 119.]

In fact, she was obsessed with a misguided belief that the California licensee had been dishonest about its royalty payments.  [UF # 120.]  Honey Baked USA's own Controller characterized Ms. Van Rees' obsession as a "witch-hunt," and compared the paranoia of Ms. van Rees in believing that Honey Baked California was "trying to screw us" to the "vendetta" of "Maleficent" and her "massive paranoia" in the Disney movie,

*Maleficent, Mistress of Evil.*   [UF # 121.]

The audit began on June 10, 2020.  [UF # 122.]  In July of 2021, at the close of fact discovery in this case, the CFO for Honey Baked USA and the PMK on the audit claim, when asked if Honey Baked California owes money for unpaid royalties, answered, "I-I do not have any conclusion that they either-that they've either overpaid us or underpaid us."  [UF # 123.]

Two weeks after the CFO's deposition, an expert witness report was served wherein the expert states that he has "been asked to assume that revenue is recognized at the time a gift card is issued."  [UF # 124.]  Based upon that *ipse dixit* assumption, the expert calculated that $51,525 is owed on gift card transactions.  [*Id.*]  In total, Honey Baked California has already paid more than $9.4 million in royalties under the License Agreement.  [UF # 130.]  The Counterclaimants admit that they have "not yet demanded any specific payment for an alleged deficiency or underpayment under Section 9(e) of the License Agreement."  [UF # 129.]

Further, the expert's assertion is flawed.  Gift cards, which are often issued to establish customer goodwill [UF # 125], would not constitute the sale of products.  *See* Double Entry Bookkeeping, *https://www.double-entry-bookkeeping.com/deferred-revenue/accounting-for-gift-cards* ("gift cards or gift certificates are sold by a business to customers *to allow them to purchase products* at some future date") (emphasis added); *see also Allstate N.J. Ins. Co. v. Amazon.com, Inc.,* 2018 WL 3546197 (D.N.J. July 24, 2018) (in issuing a gift card, Amazon did not become a "product seller" under the New Jersey Products Liability Act).

Whether or not the assumption the expert was instructed to make is valid, Honey Baked California has overpaid its royalties because it mistakenly paid $234,982.04 in royalties on shipping charges.  [UF # 126.]  Shipping charges are not a product.  Honey Baked USA's CFO, asked whether shipping was a "product," answered, "It's not a product.  No."  [UF # 127.]

Even if royalties were due on the sale of gift cards, Honey Baked California has

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1  still overpaid more than $183,457 in royalties and owes nothing.  [UF # 128.]  Because

2  the audit did not uncover any unpaid royalties, Count VII should be dismissed.

3      **E.**    **Honey Baked USA Has No Right to Sell into California**

4      Counts I through III of the Second Amended Complaint challenge the

5  Counterclaimants' "collateral right" to sell Honey Baked products to California

6  residents by mail order.

7      In anticipation of negotiating the 2015 License Agreement, the Licensor wrote:

8  "Exclusive license.  **Will need to clarify the right** . . . to sell products under

9  proprietary marks **in the territory** . . . for the purpose of selling spiral sliced hams **and**

10  **through mail order transactions**."  [UF # 131 (emphasis added)].  The Internet was a

11  "super touchy area."  [UF # 132.]  Ms. van Rees characterized this part of the

12  "California contract [as] sticky and a bit unfortunate. . . No avoiding the difficulties

13  here."  [UF # 133.]  Despite highlighting a difficult issue that needed to be clarified in

14  the License Agreement, the Licensor, and consequently its successors-in-interest, did

15  *not* obtain a right to sell products into California.

16      A "Mail Order Transaction" is the "fulfillment of orders that require shipment

17  of food to customers, including orders . . . through online catalogs accessible on

18  Internet. . . ."  [UF # 134.]  Under the caption "*Exclusive Rights*," Honey Baked

19  California has "the exclusive right and license to use the Proprietary Marks and the

20  System [in]. . . Mail Order Transactions, *to the extent permitted by Section 6(b)(xi)*."  [UF #

21  135 (emphasis added).]  Section 6(b)(xi) provides an express right *to the*

22  *Licensee*:  "*Licensee* may sell Branded and Non-Branded Products in the Territory

23  through Mail Order Transactions. . . ."  [UF # 136 (emphasis added).]

24      The non-existent "collateral right" for the *Licensor* to sell into California is

25  addressed in the "*Rights Retained*" provision:  "[E]xcept as expressly granted in Section

26  2(a), Licensor retains all rights to . . . market and sell. . . the Branded Products outside

27  the Territory including . . . the right to market and sell. . . through any distribution

28  channels to customers located *outside the Territory*, **and to the extent permitted in**

1    *Section* 6(b)(xi), to customers located inside the Territory. . . ."  [UF # 137
2    (emphasis added)].  Ms. van Rees, the PMK on the topic of Honey Baked USA's rights
3    under the License Agreement, acknowledged that any retained rights of the
4    Counterclaimants to sell Honey Baked products into California are set forth in §
5    6(b)(xi).  [UF # 138, 139.]  No such right appears in § 6(b)(xi).

6         Asked to point to the provision in the License Agreement that establishes the
7    Counterclaimants' right to make Internet sales into California, Ms. van Rees cites a
8    sentence that begins "Licensee may not ship products" (going on to define the *Licensee's*
9    right to make sales out of California).  [UF # 140.]  Asked how a sentence that begins
10   "*Licensee may not*" could grant "the right to sell products to customers in California" *to*
11   *Honey Baked USA,* Ms. van Rees answered, "That is how we translated this language for
12   decades.  That's how we read it.  There was never even discussion around this point."
13   [UF # 141.]  Asked if "there's anything in the custom and practice that modifies the
14   language of the agreement as to the right to sell hams into California," Ms. van Rees
15   answered, "No."  [UF # 142.]

16        An earlier draft of the License Agreement *did* have a specific provision reserving
17   the Licensor's right to sell products to unsolicited customers in California.  In an initial
18   draft, the subject provision, § 6(b)(xi), stated:  "Licensee acknowledges that Licensor or
19   other licensees may, without compensating or notifying Licensee, **make sales** or
20   provide appropriate literature in response **to unsolicited orders from consumers or**
21   **orders placed by existing customers located within the Territory**."  [UF # 143
22   (emphasis added).]  This sentence is *not* in the final License Agreement.  [UF # 144.]

23        "It is well settled that extrinsic evidence cannot be used to add a provision to the
24   contract that was omitted by the parties. . . . An explicit "market rate" provision was
25   proposed but dropped, and it cannot be restored via extrinsic evidence untethered to
26   contractual language."  *Alameda Cty. Flood Control & Water Conservation Dist. v. Dep't of*
27   *Water Res.,* 213 Cal. App. 4th 1163, 1190 (2013); *see also A.B.C. Distributing Co. v. Distillers*
28   *Distributing Corp.*, 154 Cal.App.2d 175, 185 (1957) ("Matters which were intentionally

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

USA.604064422.25/I5F

27

MEMORANDUM OF POINTS AND AUTHORITIES

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1   omitted from a contract may not be added under the guise of interpretation").

2         Accordingly, Honey Baked USA has no right, collateral or otherwise, to sell to

3   customers in California, as a matter of law.  This leaves a modest factual dispute as to

4   the amount of sales made in the exclusive California territory and the calculation of

5   what is owed for infringing sales.

6   **IV.    Conclusion**

7         "[T]he CFRA requires a notice of termination regardless of whether the

8   franchisor terminates the agreement with or without the opportunity to cure."  *Tikiz*

9   *Franchising,* 2017 WL 8780761 at *8.  Honey Baked Licensing has never served a

10  franchise termination notice that complies with § 20030 of the CFRA.  No notice,

11  including the alleged "notices" provided in the Counterclaim, ever stated the intent to

12  terminate the franchise, the date of termination of the franchise, or the specific reason

13  for termination, nor was any notice ever served by certified mail.

14        Honey Baked Licensing's PMK on cure notices testified that the notice of the

15  right to cure appears in the breach of contract provisions in the License Agreement.  If

16  a contract provision could properly serve as a pre-default notice to cure, there would

17  never be a need to provide a notice of termination with a right to cure, which would

18  make the CFRA's provisions on notice entirely superfluous. Honey Baked Licensing

19  misses the point when it contends that the Counterclaim and the License Agreement

20  serve as the termination notice and notice to cure defaults.  The purpose of the formal

21  notice requirement in the CFRA is to have the franchisor go on record that a particular

22  default is the ground for termination, provide a reasonable time to cure the default and

23  to state a firm date on which the franchise will terminate if the default is not cured.

24  The franchise agreement cannot serve as a notice of termination with an opportunity to

25  cure.

26        A year-long audit did not uncover any shortfall in royalty payments.  After an

27  aptly characterized "witch-hunt" fueled by the "massive paranoia" of Honey Baked

28  USA's CEO, what is owing is an apology.  The audit claim should be dismissed.

1    Honey Baked California received express written consent to the use of the

2    shophoneybaked.com site both before and after the License Agreement was signed.

3    The Honey Baked brand standard for side dishes mandates that the Honey Baked

4    trademarks *must* appear in full color at least three times on every package.  Compliance

5    with this brand standard cannot constitute an unauthorized use of the Honey Baked

6    trademarks.

7         Until Honey Baked USA decided to cut off the right of its California licensee to

8    make Internet sales, the parties lived in peace for forty years and were both willing to

9    sign on for another twenty-year term.  The parties are each bound by the terms of their

10   contract and it makes no sense for the Court to elevate commercial contract obligations

11   into court orders, as requested by the claims for specific performance.  Licensees like

12   Honey Baked California are expected to "self-regulate."  There "are the marks you have

13   to hit, and how you get there, as a licensee, is up to you"—in the words of Ms. van

14   Rees.  This describes a personal services contract that should not be specifically

15   enforced.

16        The Counterclaimants contend that they have a collateral right to sell Honey

17   Baked products in California.  They do not.  The right to sell into California appeared

18   in an earlier draft but not in the final draft of the License Agreement.  There was no

19   "custom and practice" between the parties that would create a right not mentioned in

20   the License Agreement, nor were there any pre-contract discussions about the claimed

21   collateral right.  In the section of the final License Agreement that is supposed to

22   include all rights for the Counterclaimants to sell into California, no right is stated.

23        It is, therefore, respectfully submitted that summary judgment should be granted

24   in favor of Honey Baked California and against Counterclaimants Honey Baked USA

25   and Honey Baked Licensing as to Counts I through XII of the Counterclaim.  Partial

26   summary judgment should be granted in favor of Honey Baked California and against

27   Honey Baked USA and Honey Baked Licensing establishing, as to Counts I through III

28   of the Second Amended Complaint, that Honey Baked USA and Honey Baked

BRYAN CAVE LEIGHTON PAISNER LLP
120 BROADWAY, SUITE 300
SANTA MONICA, CA  90401-2386

1    Licensing have no right to sell Honey Baked products by mail order in California.

2

3    Dated:  August 30, 2021                    Respectfully submitted,
                                                **BRYAN CAVE LEIGHTON PAISNER LLP**

4

5                                               By: */s/ Jonathan Solish*
                                                Jonathan Solish

6                                               Attorneys for Plaintiff and Counterclaim
                                                Defendant

7                                               HONEY BAKED HAM INC.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28