1  Jonathan Solish (CA Bar No. 67609)
   Jonathan.solish@bclplaw.com
2  Glenn J. Plattner (CA Bar No. 137454)
   Glenn.plattner@bclplaw.com
3  Alfred Shaumyan (CA Bar No. 266908)
   Alfred.shaumyan@bclplaw.com
4  David J. Root (CA Bar No. 307251)
   David.root@bclplaw.com
5  **BRYAN CAVE LEIGHTON PAISNER LLP**
   120 Broadway, Suite 300
6  Santa Monica, California  90401-2386
   Telephone:    (310) 576-2100
7  Facsimile:     (310) 576-2200

8  Attorneys for Plaintiff and Counterclaim Defendant
   HONEY BAKED HAM INC.

9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                   **SOUTHERN DIVISION**

13

**HONEY BAKED HAM INC.,**

14                                          Case No.:8:19-cv-01528-JVS (DFMx)

15          Plaintiff/Counterclaim          Judge: Hon. James V. Selna
            Defendant,
                                            **APPENDIX OF EXHIBITS IN**
16                                          **SUPPORT OF HONEY BAKED**
       v.                                   **HAM INC.'S MOTION FOR**
17                                          **SUMMARY JUDGMENT, OR**
                                            **PARTIAL SUMMARY**
**HONEY BAKED HAM**                         **JUDGMENT, ON SECOND**
18 **COMPANY LLC, et al.,**                 **AMENDED COUNTERCLAIM**
                                            **AND PARTIAL SUMMARY**
19          Defendants/Counterclaim         **JUDGMENT ON ITS SECOND**
            Plaintiffs.                      **AMENDED COMPLAINT**
20
                                            **VOLUME II (Exhibits 16-23)**
21
                                            [Filed with Notice of Motion and
22                                          Motion; Separate Statement;
                                            Declarations of Jonathan Solish,
23                                          Richard Gore, and Nancy Wang;
                                            [Proposed] Order and Judgment]
24
                                            Date:        October 4, 2021
25                                          Time:        1:30 p.m.
                                            Courtroom:  10C
26

27

28

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

Plaintiff and Counterclaim Defendant Honey Baked Ham Inc. ("HBH California") hereby submits this Appendix of Exhibits in support of its Motion for Summary Judgment or Partial Summary Judgment on Counterclaimants' Second Amended Counterclaim and Partial Summary Judgment on its Second Amended Complaint.

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1. | License Agreement |
| 2. | Email from Richard Gore to Craig and Thad Martin forwarding the initial term sheet dated November 27, 2012, |
| 3. | Email from Alexander Tuneski to Richard Gore with attached redline version of California license agreement, email dated August 14, 2014 |
| 4. | Email from Thad Martin to, among others, Richard Gore concerning the registration of the *shophoneybaked.com* domain dated May 10, 2004 |
| 5. | Page of brochure used in 2008 bates stamped |
| 6. | Board of Directors Meeting Minutes dated March 19, 2010, |
| 7. | Email from David Mayberry to Richard Gore regarding Domain Names dated May 10, 2010 |
| 8. | Letter from Louis Schmidt, Jr. regarding Honey Baked domain names, dated May 24, 2010 |
| 9. | Email chain approving the use of shophoneybaked.com |
| 10. | Email chain between Richard Gore to Linda van Reese |
| 11. | Labels for side dishes |
| 12. | Email from Linda van Rees to Richard Gore dated October 9, 2018 |

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

| EXHIBIT | DESCRIPTION |
|---|---|
| 13. | Inspection reports conducted by Steritech for California stores from July 16 through August 4, 2021. |
| 14. | Spreadsheet Nancy Wang created calculating the royalties paid on shipping charges |
| 15. | Summaries Nancy Wang submitted with the yearly royalty reports for 2015-2020. |
| 16. | Defendants' Answer to Plaintiff's First Amended Complaint for Injunctive Relief, and Counterclaim, filed June 22, 2020, Dkt. 99. |
| 17. | Defendants' Answer to Plaintiff's Second Amended Complaint, and Second Amended Counterclaims, dated October 22, 2020, Dkt. 144 |
| 18. | Honey Baked Ham Company LLC's Responses to Honey Baked Ham Inc.'s Second Set of Requests for Admission (14-30) dated June 22, 2021 |
| 19. | Excerpts from a certified copy of the deposition of Linda van Rees dated June 28, 2021 |
| 20. | Plaintiff's Notices of Deposition to Defendant HBH Licensing, LLC and Honey Baked Ham Company LLC, along with correspondence from counsel with designations. |
| 21. | Email from Linda van Rees to Dave Keil dated June 4, 2015. |
| 22. | Excerpts from a certified copy of the deposition of Linda van Rees dated June 29, 2021 |
| 23. | Excerpts from a certified copy of the deposition of John David Jones dated July 1, 2021. |
| 24. | Robert A. Taylor's expert report |

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 25. | Honey Baked Ham Company, LLC's and HBH Licensing, LLC's Initial Disclosures dated August 7, 2020 |
| 26. | Excerpts from a certified copy of the deposition of Jo Ann Herold dated July 2, 2021 |
| 27. | Relevant portions of the Proprietary Marks Standards Manual |
| 28. | Excerpts from a certified copy of the deposition of Bill Bolton dated July 1, 2021. |
| 29. | Excerpts from a certified copy of the deposition of Carolyn Kinzler dated July 1, 2021. |
| 30. | Messages between Carolyn Kinzler to Ann Marie Jernigan |
| 31. | Excerpts from a certified copy of the deposition of Dan McAleenan dated June 30, 2021. |
| 32. | Email from Craig Kurz regarding California Mystery Shop |
| 33. | Email from Mandy Muller to Dave Keli regarding California Mystery Shop |
| 34. | Email from Donna Wilson to Linda van Rees regarding CA-License Update |
| 35. | Letter dated November 1, 2019 from David Gurnick |
| 36. | Email from Dave Keil regarding his visit to the Honey Baked California stores on September 2015 |
| 37. | Email from Greg Hundt to Linda Van Rees |
| 38. | June 27, 2021 Supplemental Disclosure |
| 39. | Email from Dave Keil to Linda van Rees regarding California gameplan |
| 40. | Letter from Linda Heasley to Richard Gore dated May 30, 2017 |

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 41. | Letter from Mark Reeves regarding Honey Baked Ham – Updated Internet Guidelines & Domain Transfer, dated January 24, 2020, bates stamped HBHUSA0088469-HBHUSA0088470. |
| 42. | Declaration of Linda Van Rees in support of Motion to Compel Production of Documents, Dkt. 152-9 |
| 43. | Additional messages between Carolyn Kinzler to Ann Marie Jernigan |
| 44. | Email from Dave Keil with Management Presentation for Richard Gore (relevant portions of presentation). |

Dated:  August 30, 2021                        Respectfully submitted,

**BRYAN CAVE LEIGHTON PAISNER LLP**


By: */s/ Jonathan Solish*
   Jonathan Solish
   Attorneys for Plaintiff and Cross-Defendant
   Honey Baked, Inc.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

# EXHIBIT 16

1  KILPATRICK TOWNSEND & STOCKTON LLP
2  KOLLIN J. ZIMMERMANN (State Bar No. 273092)
   kzimmermann@kilpatricktownsend.com
3  1801 Century Park East, Suite 2300
   Los Angeles, California 90067
4  Telephone:  (310) 248-3830
   Facsimile:   (310) 860-0363
5
6  J. DAVID MAYBERRY (admitted *Pro Hac Vice*)
   dmayberry@kilpatricktownsend.com
7  The Grace Building
   1114 Avenue of the Americas
   New York, New York 10036
8  Telephone:  (212) 775-8700
   Facsimile:   (212) 775-8800
9
10 MARK H. REEVES (admitted *Pro Hac Vice*)
   mreeves@kilpatricktownsend.com
11 Enterprise Mill
   1450 Greene Street, Suite 230
12 Augusta, Georgia 30901
   Telephone:  (706) 823-4206
13 Facsimile:   (706) 828-4488
14
15 Attorneys for Defendants
   HONEY BAKED HAM COMPANY LLC and
16 HBH LICENSING, LLC

17            **UNITED STATES DISTRICT COURT**
18       **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
                   **SOUTHERN DIVISION**

19 **HONEY BAKED HAM INC.**, a          CASE NO.: 8:19-CV-01528-JVS
20 California corporation,               (DFMx)

21       Plaintiff/Counterclaim        **DEFENDANTS' ANSWER TO**
         Defendant,                     **PLAINTIFF'S FIRST AMENDED**
22                                       **COMPLAINT FOR INJUNCTIVE**
         v.                             **RELIEF, AND COUNTERCLAIMS**
23
   **HONEY BAKED HAM COMPANY**
24 **LLC**, a Delaware limited liability  Assigned to the Hon. James V. Selna
   company, and **HBH LICENSING,**      Courtroom 10C
25 **LLC**, a Georgia limited liability
   company,                             First Amended Complaint filed:
26                                       May 22, 2020
         Defendants/Counterclaim
27       Plaintiffs.

28                                    1

US2008 17042149 2

                                    CASE NO. 8:19-CV-01528 JVS (DFMx)
          DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
                 FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

                                                        **Ex. 16 Page 230**

1    Defendants Honey Baked Ham Company, LLC (Honey Baked USA), and

2    HBH Licensing, LLC (HBH Licensing) (collectively, the Defendants), by their

3    undersigned attorneys, answer the allegations of the First Amended Complaint for

4    Injunctive Relief (FAC, Doc. 92) filed by Plaintiff Honey Baked Ham, Inc. (Plaintiff

5    or Honey Baked California) as follows:

6                              **NATURE OF ACTION**

7        1.    The Defendants admit the allegations in paragraph 1 of the FAC.

8        2.    The Defendants admit that the Plaintiff has, subject to the terms and

9    conditions set forth in the License Agreement, an apparently true and correct copy of

10   which is filed with the Court as Exhibit A to the FAC (Doc. 92-1), the exclusive right

11   to operate or license others to operate retail specialty stores and/or cafes using the

12   Honey Baked Ham Brand (HBH Brand or Brand) in the State of California. The

13   License Agreement speaks for itself and is the best evidence of its contents, and the

14   Defendants deny any characterization of that document that is inconsistent with its

15   contents. The Defendants deny the remaining allegations in paragraph 2 of the FAC.

16       3.    The Defendants deny the allegations in paragraph 3 of the FAC.

17       4.    The Defendants deny the allegations in paragraph 4 of the FAC.

18                                  **PARTIES**

19       5.    The Defendants lack information sufficient to form a belief as to the

20   truth of the allegations contained in paragraph 5 of the FAC and deny those

21   allegations on that basis.

22       6.    The Defendants admit the allegations in paragraph 6 of the FAC.

23       7.    The Defendants admit that Defendant HBH Licensing is a Georgia

24   limited liability company with its principal place of business at the same address as

25   Honey Baked USA, that HBH Licensing is a wholly owned subsidiary of Honey

26   Baked USA, and that HBH Licensing shares office space with Honey Baked USA.

27   The Defendants deny any remaining allegations in paragraph 7 of the FAC.

28

2

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 231

## JURISDICTION AND VENUE

8.    The allegations contained in Paragraph 8 of the FAC are legal conclusions to which no response is required. Nevertheless, the Defendants affirmatively state that they do not contest this Court's subject-matter jurisdiction.

9.    The Defendants admit that the value of the injunctive relief that the Plaintiff seeks satisfies the jurisdictional threshold of $75,000. The Defendants affirmatively deny that the Plaintiff is entitled to any of the relief that it seeks, including but not limited to attorneys' fees and costs.

10.    The allegations contained in paragraph 10 of the FAC are legal conclusions to which no response is required. Nevertheless, the Defendants affirmatively state that they do not contest this Court's personal jurisdiction over Honey Baked USA.

11.    The allegations contained in paragraph 11 of the FAC are legal conclusions to which no response is required. Nevertheless, the Defendants affirmatively state that they do not contest this Court's personal jurisdiction over HBH Licensing.

12.    The allegations contained in paragraph 12 of the FAC are legal conclusions to which no response is required. Nevertheless, the Defendants affirmatively state that they do not contest that venue is proper.

## FACTUAL BACKGROUND

I.    Brief History of the Honey Baked Ham Brand and Online Distribution[1]

13.    The Defendants admit the Honey Baked Ham brand dates from at least 1957 when founder Harry J. Hoenselaar obtained a patent covering his spiral ham

---

[1] For the sake of clarity and ease of reference, the Defendants have included the section headings used in the FAC. This in no way implies the Defendants' agreement with the frequently argumentative, misleading, and inaccurate characterizations set forth in those headings.

3

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 232

slicing machine and acquired the first Honey Baked Ham store in Detroit Michigan. The Defendants admit the Brand has expanded is now distributed nationwide via retail stores and online sales. The Defendants deny the remaining allegations in paragraph 13 of the FAC.

14.     The Defendants admit that as the Brand expanded nationwide, the HBH Brand business was allocated among the Honey Baked Ham founder's children, who operated the business in different regions. The Defendants deny the remaining allegations in paragraph 14 of the FAC.

15.     The Defendants admit that the Plaintiff, directly or through a predecessor, has been granted a series of exclusive licenses to operate or license the operation of specialty retail stores and/or cafes operating under the HBH Brand in California. The Defendants deny the remaining allegations in paragraph 15 of the FAC.

16.     The Defendants admit that, effective in 1988, ownership of the HBH Brand and related assets were transferred to HBH Limited Partnership, a Michigan limited partnership, which became the licensor to entities owned by four families descended from the founder and to Plaintiff. The Defendants deny the remaining allegations in paragraph 16 of the FAC.

17.     The Defendants admit that each licensee of the HBH Brand distributed printed paper catalogs to promote sales of HBH Brand products by mail order before the advent of the Internet, and later each licensee, with the approval of Licensor and subject to its control, developed online catalogue websites. The Defendants deny the remaining allegations in paragraph 17 of the FAC.

18.     The Defendants admit that HBH Limited Partnership developed a website at *www.honeybaked.com*, referred to in License Agreement and the FAC as the National Website, to act as a gateway for online shopping inquiries regarding HBH Brand products and for other reasons. The Defendants admit that the National

4

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 233

Website included a state selector that redirected customers to regional websites based on the customer's interaction with the state selector. The Defendants admit that a customer who selected California in the National Website's state selector would have been redirected to Honey Baked California's catalogue website. The Defendants admit that HBH Limited Partnership did not make any retail sales itself. The Defendants deny all remaining allegations in paragraph 18 of the FAC.

19. The Defendants admit that HBH Limited Partnership required its licensees to include "noindex" instructions in their individual websites to attempt to prevent Internet search engines from listing the individual catalogue websites in search results. The Defendants deny all remaining allegations in paragraph 19 of the FAC.

20. Paragraph 20 of the FAC attributes quotes to Honey Baked USA without identifying the alleged source of the quoted material. For that reason, the Defendants are unable to verify the accuracy of the alleged quotes and deny their accuracy on that basis. The Defendants deny the remaining allegations in paragraph 20 of the FAC.

21. The Defendants lack information sufficient to form a belief as to the accuracy of the allegations in paragraph 21 of the FAC and deny those allegations on that basis.

22. The Defendants deny the allegations in paragraph 22 of the FAC.

23. The Defendants admit that each licensee of the HBH Brand managed its own pricing, orders, and inventory. The Defendants admit that certain products bearing the HBH Brand have a lengthy production process and cyclical market. The Defendants admit that the production of half and whole hams ranging from six to sixteen pounds can takes months to complete. The Defendants lack information sufficient to form a belief as to the remaining allegations in paragraph 23 of the FAC and deny those allegations on that basis.

## II.   Plaintiff's License Agreement

24.    The Defendants admit that the Plaintiff entered into its current License Agreement with HBH Limited Partnership as licensor effective July 1, 2015, and that what appears to be a true and correct copy of that License Agreement is attached to the FAC as Exhibit A. The Defendants deny all remaining allegations in paragraph 24 of the FAC.

25.    The Defendants admit that the words appearing in quotation marks in paragraph 25 of the FAC, excluding the addition of the word "conduct" as denoted by the inclusion of brackets in the FAC, constitute accurate but incomplete quotations of the cited provisions of the License Agreement. The License Agreement speaks for itself and is the best evidence of its contents, and the Defendants deny any characterization of the document that is inconsistent with its contents. The Defendants deny all remaining allegations in paragraph 25 of the FAC, specifically including but not limited to any allegation that the License Agreement gives the Plaintiff an exclusive right to make online sales to customers in California.

26.    The Defendants admit that the Plaintiff uses the domain name *shophoneybaked.com* for online sales and other purposes. The Defendants deny that the Plaintiff has used that domain name with approval of HBH Limited Partnership and without objection from HBH Licensing. The Defendants deny that the Plaintiff's online sales have at all times been in substantial compliance with the requirements of § 6(b)(xi) of the License Agreement.

27.    The Defendants admit that the words appearing in quotation marks in paragraph 27 of the FAC constitute accurate but incomplete quotations of the cited provision of the License Agreement. The License Agreement speaks for itself and is the best evidence of its contents, and the Defendants deny any characterization of the document that is inconsistent with its contents. The Defendants deny any and all remaining allegations in paragraph 27 of the FAC, specifically including but not

6

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 235

limited to any allegations that the Plaintiff's interweaving of selectively chosen quotations from discrete provisions of the License Agreement accurately reflect the intent or context of that document.

III.  Consolidation of Family Ownership

28.  The Defendants admit the allegations in paragraph 28 of the FAC.

29.  The Defendants admit that as of May 4, 2015, Honey Baked USA acquired substantially all of the assets of HBH Limited Partnership and the remaining family regional licensees, except rights under the Plaintiff's License Agreement, which was transferred to HBH Licensing. The Defendants admit that Honey Baked USA became the owner of the HBH Brand, all related intellectual property, and the National Website. The Defendants deny any and all remaining allegations of paragraph 29 of the FAC.

30.  The Defendants admit that HBH Licensing acquired HBH Limited Partnership's rights under the License Agreement as of May 4, 2015, and that HBH Licensing is entitled to receive all payments from the Plaintiff that would otherwise go to HBH Limited Partnership pursuant to the License Agreement.

31.  The Defendants deny the allegations in paragraph 31 of the FAC.

IV.  HBH USA's Efforts to Infringe on HBH California's Exclusive Territory

32.  The Defendants admit that after May 4, 2015, Honey Baked USA consolidated the former family regional online catalogue websites into a single catalogue at the domain *honeybakedonline.com*. The Defendants admit that before July 22, 2019, Honey Baked USA consulted with a website design and marketing company called Proving Ground LLC, dba Dragon Army, to help with the operation and design of various websites owned and operated by Honey Baked USA. The Defendants deny the remaining allegations in paragraph 32 of the FAC.

33.  The Defendants deny the allegations in paragraph 33 of the FAC.

34.  The Defendants deny the allegations in paragraph 34 of the FAC.

7

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 236

35. The Defendants deny the allegations in paragraph 34 of the FAC.

36. The Defendants admit that Honey Baked USA sent letters to the Plaintiff on July 22 and 30, 2019, and that what appear to be true and correct copies of those letters have been filed as Exhibits B and C to the FAC, *see* Docs. 92-2 & 92-3. Those documents speak for themselves and are the best evidence of their content, and the Defendants deny any characterization of those documents that is inconsistent with their contents.

37. The Defendants admit that the language in quotation marks in paragraph 37 of the FAC, with the exception of the substitution of the word "Plaintiff's" as indicated in brackets within the first quotation, accurately but incompletely quotes the text of the cited documents. The Defendants admit that the July 22, 2019, letter referred to a "loss of sales" for the Plaintiff and set forth measures to mitigate any such loss. The documents referenced in paragraph 37 of the FAC speak for themselves and are the best evidence of their content, and the Defendants deny any characterization of those documents inconsistent with their content.

38. The Defendants admit that as of July 22, 2019, HBH Licensing required the Plaintiff not to index its shopping website. The Defendants deny all remaining allegations in paragraph 38 of the FAC.

39. The Defendants admit that the language in quotation marks in paragraph 39 of the FAC, with the exception of the substituted language denoted by brackets within the quotation, accurately but incompletely quotes the cited letter. The July 30, 2019, letter speaks for itself and is the best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its content. The Defendants deny stating an attempt to misappropriate all of the Plaintiff's online business.

40. The Defendants deny the allegations of paragraph 40 of the FAC.

8

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 237

## V.  This Litigation to Date

41.    The Defendants admit that the Plaintiff filed this action on August 7, 2019, and that the initial complaint sought the relief described in paragraph 41 of the FAC. The Defendants deny that the Plaintiff is entitled to any such relief. The Defendants deny that the License Agreement grants the Plaintiff exclusive rights to the California market.

42.    The Defendants admit that this Court initially granted a temporary restraining order prohibiting Honey Baked USA from removing the state selector mechanism from the National Website pending further proceedings in this case. The Defendants admit that the Court subsequently imposed a self-expiring preliminary injunction and then dissolved that preliminary injunction provided that the National Website be maintained in its then-existing manner unless and until the fail-safe system described by Honey Baked USA's expert, Jonathan Hochman, could be implemented such that there was a seamless transition which ensured that at all times California customers were routed to the Plaintiff's website. The Defendants admit that the Court ordered Honey Baked California to submit monthly status reports regarding its progress. The Defendants deny any remaining allegations in paragraph 42 of the FAC.

43.    The Defendants admit that the March 2020 Website Transition Status Report, Doc. 83, informed the Court that Honey Baked USA merged the National Website with its shopping website and deployed its new and improved state selector modal on February 13, 2020. The Defendants admit that the language in quotation marks in paragraph 43 of the FAC accurately but incompletely quotes the March 2020 Status Report. The March 2020 Status Report speaks for itself and is the best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its contents.

44.    The Defendants admit the allegations in paragraph 44 of the FAC.

## VI.   Defendants' Evasion of This Court's Order

45.    The Defendants admit that both *honeybaked.com* and *shipping.honeybaked.com* include state selector mechanisms. The Defendants admit that those state selector mechanisms function. The Defendants deny any remaining allegations in paragraph 45 of the FAC.

46.    The Defendants admit that if the state selector mechanism does not detect a pre-existing cookie indicating a visitor's residence, the visitor is required to interact with the state selector mechanism to identify their state of residence. The Defendants admit that if the user identifies California as its state of residence, a cookie is placed on the user's web browser indicating that selection (a CA cookie) and the user is redirected to the Plaintiff's shopping website at *shophoneybaked.com*. The Defendants admit that if the user identifies any other state as their residence, a cookie so indicating is placed on their web browser (a USA cookie), and the user is redirected to Honey Baked USA's shopping website at *shipping.honeybaked.com*. The Defendants deny any remaining allegations in paragraph 46 of the FAC.

47.    The Defendants admit that if a user's web browser already has a cookie indicating their state of residence, they are not required to interact with the state selector mechanism again and are instead redirected to the appropriate shopping website based on their state of residence as identified by the cookie. The Defendants deny any remaining allegations in paragraph 47 of the FAC.

48.    The Defendants admit that Honey Baked USA has the legal right to modify the state selector in its discretion without notice to the Plaintiff. The Defendants lack information sufficient to form a belief as to the remaining allegations in paragraph 48 of the FAC and deny those allegations on that basis.

49.    The Defendants deny the allegations of paragraph 49 of the FAC.

50.    The Defendants admit that Honey Baked USA has distributed emails to existing customers within its customer database containing direct links (Targeted

10

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 239

Links) to *shipping.honeybaked.com* and that customers who clicked those links would be taken directly to *shipping.honeybaked.com*. The Defendants deny all remaining allegations in paragraph 50 of the FAC.

51.     The Defendants deny the allegations in paragraph 51 of the FAC.

52.     The Defendants deny the allegations in paragraph 52 of the FAC.

53.     The Defendants deny the allegations in paragraph 53 of the FAC.

54.     The Defendants admit that HBH Licensing has informed the Plaintiff that social media accounts, such as Facebook, Instagram, and Twitter, representing the HBH Brand must be subject to control and/or pre-approval of HBH Licensing in accordance with the License Agreement and the Brand social media guidelines. The Defendants admit that the Plaintiff currently does not have approval to operate any social media accounts involving the HBH Brand. The Defendants deny the remaining allegations in paragraph 54 of the FAC.

55.     The Defendants admit that a number of customers have voiced legitimate complaints about the Plaintiff and online orders and deliveries in California and elsewhere on social media accounts maintained by the Defendants, as well as numerous private and third party social media accounts and websites, and on the National Website. The Defendants deny the remaining allegations in paragraph 55 of the FAC.

56.     The Defendants deny the allegations in paragraph 56 of the FAC as stated.

VII.   <u>HBH USA's Attempts to Obstruct Plaintiff's Supply</u>

57.     The Defendants admit that, under the express terms of the License Agreement, the Plaintiff is required to purchase cured hams, turkey breasts, and certain other products identified by the HBH Brand from certain Selected Suppliers approved by HBH Licensing. The Defendants affirmatively state that the License Agreement speaks for itself and is the best evidence of its content, and they deny any

11

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 240

characterization of that document inconsistent with its content. The Defendants admit that the Plaintiff is free to order independently from Selected Suppliers, and is not required to seek approval from the Defendants for its communications with Selected Suppliers regarding orders. The Defendants admit that Selected Suppliers are free to supply the Plaintiff independently and to communicate with the Plaintiff regarding orders without need to seek approval from the Defendants. The Defendants deny the remaining allegations in paragraph 57 of the FAC.

58. The Defendants admit the allegations in paragraph 58 of the FAC.

59. The Defendants admit that the language in quotation marks in paragraph 59 of the FAC accurately but incompletely quotes an email sent from Dan McAleenan, Honey Baked USA's Senior Vice-President of Store Operations, to Richard Gore, Plaintiff's Vice-President, on April 20, 2020. That document speaks for itself and is the best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its content. The Defendants deny that they have failed to make the necessary introduction to Tyson. The Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in paragraph 59 of the FAC and deny those allegations on that basis.

60. The Defendants admit that Honey Baked USA put the Plaintiff in touch with Fresh Mark on April 15, 2020, that Fresh Mark told the Plaintiff that it had 20,000 lbs. of sliced, bone-in ham available and that Fresh Mark offered to provide all of that product to the Plaintiff immediately. Fresh Mark also offered to provide additional, unsliced hams that it had on hand to the Plaintiff immediately. The Defendants admit that pre-sliced hams are an integral part of the HBH Brand product line and feature prominently in HBH Brand marketing. The Defendants deny any and all remaining allegations in paragraph 60 of the FAC.

12

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 241

### First Claim for Relief

### Anticipatory Breach of Contract

61.    The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the FAC.

62.    Paragraph 62 of the FAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 62 of the FAC.

63.    The Defendants admit that the License Agreement gives the Plaintiff the exclusive right and license to use the HBH Brand trademarks and trade dress to promote and operate HBH retail specialty stores and/or cafes and to market and sell HBH Branded products and certain other products through such specialty retail stores in the State of California. The Defendants admit that the License Agreement gives the Plaintiff the right to fulfill orders requiring the shipment of HBH Brand food to customers in California, including online orders. The Defendants admit that the language appearing in quotation marks in paragraph 63 of the FAC accurately but incompletely quotes portions of the cited section of the License Agreement. The Defendants deny that the License Agreement grants the Plaintiff an exclusive right to fulfill orders requiring the shipment of HBH Brand food to customers in California. The License Agreement speaks for itself and is best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its contents. The Defendants deny any remaining allegations in paragraph 63 of the FAC.

64.    The Defendants admit that in July 2019, Honey Baked USA informed the Plaintiff that it intended to remove the state selector mechanism from the National Website. The Defendants deny the remaining allegations in paragraph 64 of the FAC.

65.    The Defendants admit that they subsequently undertook to implement a fail-safe state-selector mechanism to direct customers identifying themselves as

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

**Ex. 16 Page 242**

California customers exclusively to the Plaintiff's website for purchases. The Defendants deny the remaining allegations in paragraph 65 of the FAC.

66.     Paragraph 66 of the FAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 66 of the FAC.

67.     The Defendants lack information sufficient to form a belief as to whether the Plaintiff's online store depends heavily on the National Website to capture potential customers and denies those allegations on that basis. The Defendants deny all remaining allegations in paragraph 67 of the FAC.

68.     The Defendants deny the allegations in paragraph 68 of the FAC.

69.     The Defendants deny the allegations in paragraph 69 of the FAC.

70.     The Defendants deny the allegations in paragraph 70 of the FAC.

The Defendants deny that the Plaintiff is entitled to any of the requested relief.

## <u>Second Claim for Relief</u>

## <u>Breach of Contract</u>

71.     The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the FAC.

72.     Paragraph 72 of the FAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 72 of the FAC.

73.     Paragraph 73 of the FAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 73 of the FAC.

74.     The Defendants admit that the License Agreement gives the Plaintiff the exclusive right and license to use the HBH Brand trademarks and trade dress to promote and operate HBH retail specialty stores and/or cafes and to market and sell HBH Branded products and certain other products through such retail specialty stores

14

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 243

in the State of California. The Defendants admit that the License Agreement gives the Plaintiff the right to fulfill orders requiring the shipment of HBH Brand food to customers in California, including online orders. The Defendants deny that the License Agreement grants the Plaintiff an exclusive right to fulfill orders requiring the shipment of HBH Brand food to customers in California. The License Agreement speaks for itself and is best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its contents. The Defendants deny any remaining allegations in paragraph 74 of the FAC.

75.    The Defendants admit that the language appearing in quotation marks in paragraph 75 of the FAC accurately but incompletely quotes language appearing in the cited provision of the License Agreement. The License Agreement speaks for itself and is best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its contents. The Defendants deny any remaining allegations in paragraph 75 of the FAC.

76.    The Defendants deny the allegations in paragraph 76 of the FAC.

The Defendants deny that the Plaintiff is entitled to any of the requested relief.

### Third Claim for Relief

### Breach of Implied Covenant

77.    The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the FAC.

78.    Paragraph 78 of the FAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 78 of the FAC.

79.    The Defendants admit that HBH Licensing has at all times been aware of Honey Baked USA's actions with regard to the National Website and the state selector mechanism. The remaining allegations in paragraph 79 of the FAC state legal

15

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 244

conclusions to which no response is required. To the extent that a response is required, the Defendants deny the remaining allegations in paragraph 79 of the FAC.

80. Paragraph 80 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 80 of the FAC.

81. Paragraph 81 of the FAC states legal conclusions to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 81 of the FAC.

The Defendants deny that the Plaintiff is entitled to any of the requested relief.

## Fourth Claim for Relief

## Unfair Competition

82. The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the FAC.

83. The Defendants have moved to dismiss the Fourth Claim for Relief. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), they are not required to respond to the allegations supporting this claim pending the Court's action on that motion. To the extent that a response is required, the Defendants deny the allegations set forth in paragraph 83 of the FAC.

84. The Defendants have moved to dismiss the Fourth Claim for Relief. Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), they are not required to respond to the allegations supporting this claim pending the Court's action on that motion. To the extent that a response is required, the Defendants deny the allegations set forth in paragraph 84 of the FAC.

## Plaintiff's Prayer for Relief

The Defendants deny that the Plaintiff is entitled to any of the relief requested.

16

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 245

## **DEFENSES**

The Defendants affirmatively deny any and all other allegations, inferences, or implications arising from any statement in the FAC to the extent that such has not been affirmatively admitted by the Defendants in their answer.

The Defendants further propound the following separate and additional defenses. By doing so, the Defendants in no way concede that they have the burden of proof/and or burden of persuasion with respect to any of the following defenses.

### **First Defense**

1.      The Plaintiff's Fourth Count fails to state any claim upon which relief may be granted.

### **Second Defense**

4.      The Plaintiff's requests for injunctive relief are barred by the lack of any irreparable harm from the purported conduct, if any at all, by the Defendants.

5.      The Plaintiff's requests for injunctive relief are further barred because, to the extent that the Plaintiff can demonstrate that it has suffered any injury from the Defendant's purported conduct, such injury is adequately remedied at law.

### **ADDITIONAL DEFENSES**

6.      In addition to the enumerated defenses identified above, the Defendants reserve the right to raise any additional defenses that may become available or appropriate.

### **COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure 13, Defendants and Counterclaim Plaintiffs Honey Baked Ham Company, LLC (Honey Baked USA) and HBH Licensing, LLC (HBH Licensing or Licensor), assert the following counterclaims against Plaintiff and Counterclaim Defendant Honey Baked Ham, Inc. (Honey Baked California or Licensee):

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

## **Parties**

1.      Counterclaim Defendant Honey Baked California is a California corporation with its principal place of business in Irvine, California.

2.      Counterclaim Plaintiff Honey Baked USA is a Delaware limited liability company with its principal place of business in Alpharetta, Georgia.

3.      Counterclaim Plaintiff HBH Licensing is a Georgia limited liability company with its principal place of business in Alpharetta, Georgia. HBH Licensing is a wholly owned subsidiary of Honey Baked USA.

## **Jurisdiction & Venue**

4.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332, and 1338.

5.      This Court has personal jurisdiction over Honey Baked California because it is a California corporation with its principal place of business in California.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this district and Honey Baked California's principal place of business lies within this district.

## **Nature of Counterclaims**

7.      Honey Baked USA is the owner of trademarks, trade names, trade dress, and other intellectual property associated with the HBH Brand (the Proprietary Marks).[2]

8.      HBH Licensing is a wholly owned subsidiary of Honey Baked USA that is authorized to license the Proprietary Marks to Honey Baked California. Pursuant to a License Agreement (Doc. 92-1) entered into with HBH Limited Partnership and transferred to HBH Licensing, Honey Baked California, has certain, limited rights to

---

[2]  *See* License Agreement ¶ 1(a) and Exhibit A to License Agreement.

18

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 247

use the Proprietary Marks and certain duties and obligations to HBH Licensing as specified in that License Agreement.

9. These counterclaims involve numerous breaches of Honey Baked California's duties and obligations under the License Agreement. Based on those breaches, HBH Licensing seeks a declaratory judgment that it has good cause to terminate the License Agreement prior to the expiration of its term. Honey Baked California's breaches of its obligations under the License Agreement include, but are not necessarily limited to:

- Repeated failure to adhere to Brand standards by preparing and shipping perishable food in interstate commerce from food facilities not registered with the FDA or USDA;

- Repeated failure to adhere to applicable laws and Brand standards regarding food labeling, including but not limited to allergy warnings;

- Engaging in gross violations of license requirements, Brand standards and the California Retail Food Code when fulfilling Easter 2020 food orders that materially and unfavorably affected the operation and reputation of the HBH Brand and System. This harm is real and substantial, as evidenced by the flood of customer complaints concerning Honey Baked California's egregious failures to use appropriate packaging and shipping materials and techniques to preserve the safety and quality of the food it sold to consumers during the 2020 Easter holiday season and its inability to fulfil prepaid orders in time for the holiday meal. Many of those outraged customers indicated that have been longtime customers, yet they were so appalled by Honey Baked California's shocking violation of their holiday and family traditions that they vowed they would never again make purchases from the Brand. Such loss of Brand goodwill is irreparable and reflects materially and

19

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 248

unfavorably upon the operation and reputation of the franchise business and System;

- Applying the Proprietary Marks to food products not approved for sale under the Brand, the manufacturers and sources of which have not been approved by HBH Licensing;

- Using unapproved domain names containing the Proprietary Marks and unapproved social media accounts using the Proprietary Marks to confuse consumers and market its products outside its licensed territory; and

- Repeatedly failing to follow Brand standards regarding use of approved graphics, signage, and packaging.

10.  Despite HBH Licensing's years of repeated, good faith efforts to work with Honey Baked California to bring it in line with food safety, quality control, and other Brand standards, Honey Baked California repeatedly has flouted, ignored, and violated its obligations under the License Agreement, causing irreparable harm to the Brand.

11.  By repeatedly and willfully flouting its legal obligations under the License, Honey Baked California has forfeited the right to use the Honey Baked Brand. HBH Licensing therefore respectfully requests that the Court enter a declaratory judgment that HBH Licensing has good cause and is entitled to terminate the License Agreement.

12.  In addition to HBH Licensing's claims based on Honey Baked California's breaches of the License Agreement, Honey Baked USA asserts additional counterclaims against Honey Baked California based on the latter's unauthorized and unapproved use of HBH Brand marks in violation of federal law and failure to pay Honey Baked USA for more than $230,000 worth of hams that

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Honey Baked California purchased directly from Honey Baked USA during the 2020 Easter holiday season.

### General Allegations

13.    Honey Baked Ham has been a family tradition for three generations. Millions of consumers mark the most important milestones in their lives with their loved ones by sharing a Honey Baked Ham as the centerpiece of their table. The Brand is quite simply adored.

14.    The founder and his family descendants have spent three generations painstakingly building the Brand into the commercial success and position of prominence that it holds in the consumer's imagination today.

15.    This success did not occur purely by happenstance. The owner of the Brand always has held itself and its licensees to lofty standards that befit a premium brand. The HBH Brand is a premium brand for special occasions, and the execution and performance of its lofty standards is crucial to its ongoing success.

16.    The Honey Baked System is made up of approximately: (a) 201 retail specialty stores owned by Counterclaim Plaintiffs; (b) 215 retail specialty stores owned and operated by 145 independent franchisees (excluding Honey Baked California's retail stores); (c) an online catalogue owned by Counterclaim Plaintiffs; (d) 36 retail stores in California operated or licensed by Honey Baked California, as a licensee; and (e) a separate online catalogue owned by Honey Baked California.

17.    Since 2015, when the family owners of the business decided to pool their shared resources into a single operating company, the owner of the Brand has moved with single minded determination to promote uniform standards of quality and operations system wide and to grow the business in a highly competitive market for seasonal customers of gourmet food.

18.    Unfortunately, Honey Baked California refuses to fulfill its end of the bargain; it wants the benefits of the License Agreement but not the obligations. It has

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

**Ex. 16 Page 250**

1   decided that compliance with its contractual obligations to be part of a national
2   system is not mandatory but optional, and that System standards must be followed
3   only if it so chooses and then on a timetable it dictates. Honey Baked California has
4   actively thwarted all efforts to bring it in line with the rest of the System.

5        19.    Honey Baked California has maximized its profits to the detriment of the
6   quality and uniformity of operations required under the Brand. The results speak for
7   themselves.

8        20.    During the Easter 2020 holiday, from an website operated under the
9   domain name *shophoneybaked.com*, Honey Baked California packaged, labeled, and
10  shipped by common carrier side dishes, condiments, and other food products branded
11  with the HONEYBAKED trademarks that arrived to consumers like this:



CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

**Ex. 16 Page 251**



How can I get help with this.
This is how my ham and 2 sides showed up.



I just received my Easter meal and this is how it came





D'Artagnan Pendleton ▶ The Honey Baked Ham Company
15 hrs · 

My delivery from Anaheim, Ca. Shipped yesterday at 8am and delivered today at 2 pm. No Styrofoam, no ice pack. Nothing but food poisoning in a box. Confirmation Number: HBCA400013763 Your Order Number: 996347 After 3 hours and 2 minutes, I was 12 in the queue and I was hung up on. Called back and the recording said No one here to answer the phone. Here is your delivery for my Easter! After 31 years of Honey Bake Ham tradition, Way to Go, CEO!

23

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 252

21.     Licensee has treated the Brand and its customers shabbily and with disrespect. As a result, customers in the state of California are not receiving the benefits of the quality and food safety standards that the rest of the Honey Baked System enjoy.

22.     Licensee repeatedly and recalcitrantly has obstructed Licensor's reasonable efforts to create a nationwide system of Honey Baked stores with uniform methods of operation and standards of quality.

23.     Licensee's conduct reflects materially and unfavorably upon the operation and reputation of the franchise system.

24.     Licensee repeatedly has failed to comply with the requirements of the License Agreement and follow Brand standards.

25.     For these reasons, immediate termination of Honey Baked California's right to use the Brand is justified.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 253

I.    <u>The Parties' rights and obligations under the License Agreement.</u>

26.    Section 2(a) of the License Agreement grants to Honey Baked California "the exclusive right and license to use the Proprietary Marks and the System" to (i) promote and operate HONEYBAKED retail stores in California; (ii) promote and sell "Branded Products" and "Non-Branded Products" through HONEYBAKED retail stores in California (as defined in Exhibits B and C to the License Agreement, respectively); and to conduct "Mail Order Transactions," to the extent permitted by Section 6(b)(xi).[3] License Agreement § 2(a).

27.    "Proprietary Marks" include: (a) the trademark and service marks identified in Exhibit A to the License Agreement,[4] (b) the trade names "The Honey Baked Ham Company" and "Honey Baked Ham Co."; and (c) "other trademarks, service marks, proprietary symbols, logos, advertising slogans, label and wrapper designs, and trade dress specified by Licensor from time to time." License Agreement § 1(a), Ex. A to License Agreement.

28.    Honey Baked California may only use the Proprietary Marks on those "Branded Products" that are identified in Exhibit B of the License Agreement unless it obtains HBH Licensing's prior written approval, which HBH Licensing may withhold in its sole discretion. License Agreement ¶¶ 1(e)(iii); 2(a); 6(a); 6(a)(i); Ex. B to License Agreement.

29.    Should Honey Baked California like to propose to offer a new product as a Branded Product, or a new supplier to supply a Branded Product, Honey Baked

---

[3]  Counterclaim Plaintiffs use capitalized terms herein to indicate terms that are defined in the License Agreement, Doc. 92-1.

[4]  Which include U.S. Reg. Nos. 1,384,504 (HONEY BAKED HAM); 1,861,924 (HONEYBAKED); 3,049,064 (HONEYBAKED); 2,126,500 (THE HONEYBAKED HAM COMPANY); 2,136,466 THE HONEYBAKED HAM COMPANY & Design); 2,150,993 (THE HONEYBAKED HAM COMPANY & Design); 3,452,316 (THE HONEYBAKED HAM COMPANY & Design); and 2,534,573 (THE HONEYBAKED HAM CO. AND CAFÉ) (the "Registered Proprietary Marks").

25

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 254

California must request HBH Licensing's approval and provide it with any information HBH Licensing requests, including product samples. License Agreement ¶ 6 (viii). HBH Licensing may grant, deny, or revoke approval of a product or a supplier, in its sole discretion, for any reason. *Id.*

30.     The License Agreement also permits Honey Baked California to sell through its HoneyBaked Outlets in California and Mail Order Transactions certain food products or related products sourced from third party suppliers that are identified in Exhibit C to the License Agreement. Those "Non-Branded Goods" may not use the Proprietary Marks. License Agreement ¶¶ 1(vi); 2(a); 6(a)(i); 6(b)(vii); Exhibit C to License Agreement.

31.     The License Agreement expressly provides that any use of the Proprietary Marks not authorized by its Section 6(a), including use of the marks for products not identified as Branded Products if not otherwise authorized by HBH Licensing, constitutes a material breach of the Agreement. License Agreement § 6(a).

32.     The following paragraphs set forth a partial list of Honey Baked California's obligations under the License Agreement that are relevant to HBH Licensing's counterclaims.

33.     Section 6(b) of the License Agreement provides, in part:

> Licensee recognizes that the Business to be operated by it will be part of a nationwide network of specialty food stores and businesses operated under licenses granted by Licensor or its licensees, engaging in the sale under the Proprietary Marks of Branded Products and other specialty food items and related services pursuant to the System developed by Licensor. In order to maintain such System and in order to protect and enhance the reputation, value and goodwill of the Proprietary Marks and Licensor's licensing System, and to control the nature and quality

26

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 255

of the goods and services provided under the Proprietary Marks, so that the public may rely upon the Proprietary Marks as identifying Branded Products and other goods and services of the highest order, Licensee agrees to abide by and conform to the standards of Licensor (and such standards as Licensor may formulate from time to time to enhance the quality and national reputation of the System and the goods and services sold under the Proprietary Marks)…

34.     Section 6(b) of the License Agreement further provides: "Licensee agrees all products will be marketed to the public as high-end, premium products in order to protect and enhance the image and goodwill of the Proprietary Marks and the System."

35.     Section 6(b)(ii) of the License Agreement provides, in part, that Honey Baked California shall "at all times comply with all applicable federal, state and local laws, ordinances and regulations."

36.     Section 6(b)(ii) of the License Agreement further provides, in part, that Honey Baked California "shall take all reasonable precautions to ensure that Branded Products and other products offered for sale retain for as long as possible their original flavor, taste, consistency, freshness and other quality attributes."

37.     Section 6(b)(ii) of the License Agreement further provides, in part, that HBH Licensing "has the right, in its sole discretion, to determine, approve and supervise the quality of service, the food products and ingredients used by Licensee and the method of preparation of all products sold from the Business and to take all other action, of whatever kind or nature, it deems necessary or appropriate to maintain the quality and standards of the Branded Products, the Business, and the HoneyBaked system."

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

38.     Section 6(b)(ii) of the License Agreement further provides, in part, that if HBH Licensing "establishes food safety guidelines or requires all of its licensees to implement internal or external food safety audits or procedures, Licensee shall, at a minimum, follow such guidelines and implement such audits or procedures in all aspects of its Business, at Licensee's expense."

39.     Section 6(b)(v) of the License Agreement, in part, requires Honey Baked California to "make such repairs and changes to each HoneyBaked Outlet as Licensor may reasonably request in writing in order to maintain and upgrade the image of the HoneyBaked Outlets."

40.     Section 6(b)(vii) of the License Agreement requires Honey Baked California to provide HBH Licensing "with a list of all Non-Branded Products offered in its Business at least sixty (60) days prior to Easter and sixty (60) days prior to Thanksgiving."

41.     Section 6(c)(iv) of the License Agreement provides, in part, that Honey Baked California "may operate and maintain a website for its Business using the Proprietary Marks only at a domain approved in writing by Licensor."

42.     Section 6(c)(iv) of the License Agreement provides, in part, that Honey Baked California "may not register or use domain names, establish or use social media accounts, or create or use apps for its Business without prior written consent of Licensor, which shall have the right to require such domain names and accounts to be registered in Licensor's name."

43.     Section 6(c)(iv) of the License Agreement further provides, in part, that Honey Baked California "must fully comply with any specifications, standards, policy statements, rules or any other requirements specified by Licensor from time to time related to the use of the Proprietary Marks on the Internet and/or any operations of the Business on the Internet, provided that all of the Licensor's licensees are subject to such requirements."

28

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 257

44. HBH Licensing has performed all of its obligations under the License Agreement.

II. Honey Baked California's non-compliance with food safety standards and requirements.

45. HBH Licensing requires as a System standard, with limited exceptions not relevant here, that all "food products sent through Interstate commerce must come directly from USDA or FDA registered food processing facilities without further processing."

46. In February of 2015, the predecessor of HBH Licensing, HBH Limited Partnership, commissioned an independent laboratory to conduct testing of side dishes manufactured by Honey Baked California in its in-house, non-FDA inspected facilities.

47. The independent testing of Honey Baked California's side dishes revealed high levels of bacteria microorganisms in cheesy potatoes, prepackaged ham salad, and other side dishes. By way of example, cheesy potatoes from Honey Baked California's Anaheim, California, interstate shipping facility were found to have an unacceptably high aerobic plate count (APC) of 6,000,000.

48. On April 8, 2015, a representative of HBH Limited Partnership informed Honey Baked California's Vice-President, Mr. Richard Gore, about the excessive microbial counts in certain side dishes revealed by the February 2015 testing.

49. Mr. Gore claimed that Honey Baked California was no longer preparing the ham salad side dishes in-house and would begin sourcing cheesy potatoes from a third party vendor, among other corrective measures.

50. HBH Licensing renewed the License Agreement effective July 1, 2015.

51. Between 2016 and 2017, HBH Licensing repeatedly discussed with Honey Baked California the need for Honey Baked California to align its food safety program and practices with the rest of the System.

29

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 258

52.     In 2018, HBH Licensing requested that Honey Baked California provide a letter from the USDA confirming that Honey Baked California's Anaheim shipping facility was exempt from any USDA inspection requirements. For the rest of the System, shipping from a USDA inspected facility is required as the standard.

53.     After extensive discussions with Honey Baked California and review of applicable legal requirements, HBH Licensing ultimately agreed to permit the Anaheim facility to continue to ship Branded hams and turkeys produced in its non-USDA inspected facility while conditioning the shipment of all other food products on their being produced and shipped in a registered USDA or FDA food processing facility.

54.     The exception referenced in the preceding paragraph was limited to Branded Product hams and turkeys that are processed by approved suppliers pursuant to Brand specifications, due in part to the use of antimicrobial agents that inhibit the growth of bacteria and other pathogens in the meat, and also because the hams and turkeys have fewer ingredients and handling requirements that result in a lower risk of pathogens.

55.     In a letter dated July 22, 2019, HBH Licensing conveyed food safety requirements (the Safety Requirements) to Honey Baked California relating to food products shipped from the Anaheim Mail Order facility.

56.     Honey Baked California has never objected to the Safety Requirements.

57.     The Safety Requirements conveyed to Honey Baked California on July 22, 2019, included, *inter alia*:

   a) With the exception of Branded Product hams and turkey breasts, all food products shipped through interstate commerce-specifically including cheesy potatoes-must come directly from USDA or FDA registered food processing facilities without further processing;

   b) Honey Baked California must adhere to the California Retail Food Code;

30

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 259

c) Honey Baked California must maintain food products under proper and safe temperatures through to the point of delivery to consumers;

d) Honey Baked California must provide consumers with proper instructions on food safety in its shipment packaging materials and provide access to live customer support to address consumer issues or questions.

58.    Upon information and belief, Honey Baked California is continuing to ship, from its Anaheim facility and other facilities, substantial quantities of cheesy potatoes, other side dishes, and other food products that have not been manufactured or produced in a registered USDA or FDA facility in accordance with the Safety Requirements and to commit other violations of the Safety Requirements.

III.    Honey Baked California's improper labeling of food products.

59.    In 2013, Section 403 of the Federal Food, Drug, and Cosmetic Act of 1938 (FDCA) was amended to establish a federal standard for menu labeling. The federal menu labeling provisions require restaurants and similar retail food establishments that are part of a chain with 20 or more locations doing business under the same name (regardless of the type of ownership, *e.g.*, individual franchises) and offering for sale substantially the same menu items to provide calorie and other nutrition information for standard menu items. *See* 21 U.S.C. § 343(q)(5)(H); 21 C.F.R. § 101.11.

60.    Immediately after the federal menu labeling requirements became effective on December 1, 2014, the family licensees of HBH Limited Partnership began making the necessary changes throughout the System to achieve compliance well before the May 7, 2018, federal deadline.[5]

---

[5] California law required California restaurants to conform to the menu labeling regulations as of December 1, 2016, prior to the federal compliance date. *See* Cal. Health & Safety Code § 114094.

31

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 260

61.     Effective as of November 8, 1990, the Nutrition Labeling and Education Act (NLEA) amended the FDCA to require most foods regulated by the FDA to be labeled with nutrition information, including, without limitation, a list of ingredients by common or usual name in descending order of predominance by weight. *See* 21 § 343(q); C.F.R. § 101.4.

62.     Additionally, the Food Allergen Labeling and Consumer Protection Act (FALCPA) requires that all food labels of packaged foods regulated under the FDCA identify in plain language if the good contains an ingredient that is or contains protein derived from a "major food allergen" (one of the eight major allergenic foods - milk, egg, fish, crustacean shellfish, tree nuts, wheat, peanuts, or soybeans), as specified in the Act. *See* 21 U.S.C. § 343(w). These requirements apply to covered products labeled on or after January 1, 2006.

63.     Once each of the NLEA and FALCPA became effective, the family licensees of HBH Limited Partnership began implementing all necessary changes throughout the System to achieve compliance well before their respective compliance deadlines.

64.     In addition to these federal requirements, HBH Licensing has long required as a System standard that all pre-packaged or pre-portioned food for later serving at home display a food label including: (a) product name; (b) ingredient list; (c) allergen warnings; (d) use by date; (e) net weight; (f) handling requirements (*i.e.*, "Keep Refrigerated"); (g) store name and location; and (h) a nutritional fact label (the Labeling Requirements).

65.     From 2016 to the present, HBH Licensing has discussed with Honey Baked California the need for Honey Baked California to align its labeling practices with the rest of the System.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

**Ex. 16 Page 261**

66.   In February 2016, Honey Baked California assured HBH Licensing that it would soon be adopting the Labeling Requirements followed by the rest of the System.

67.   In June 2017, and repeatedly thereafter, HBH Licensing informed Honey Baked California that side dishes being produced and shipped to Mail Order customers by Honey Baked California did not comply with the System's Labeling Requirements.

68.   Honey Baked California again assured HBH Licensing that it would cure these labeling deficiencies by July 5, 2017.

69.   HBH Licensing is informed and believes, and on that basis alleges, that Honey Baked California did not cure these labeling deficiencies by July 5, 2017, but instead has continued through Easter 2020 to ship by common carrier from its Anaheim Mail Order facility side dishes and other foods lacking proper labeling, including allergen warnings, ingredient lists, and nutritional facts, among other labeling deficiencies.

70.   In addition, in 2017 and repeatedly thereafter, HBH Licensing also notified Honey Baked California that food pre-packed and pre-portioned for sale in its California retail stores is not properly labeled in accordance with applicable law and in keeping with System standards.

71.   During this period, Honey Baked California repeatedly assured HBH Licensing that it would correct its retail store food labeling deficiencies.

72.   Notwithstanding these repeated assurances, Honey Baked California repeatedly has continued to sell improperly labeled food from its retail stores.

73.   For example, during the 2019 winter holiday season, a customer posted a complaint to the Yelp consumer review website indicating that a Honey Baked California retail outlet not only failed to apply labels identifying product ingredients,

33

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 262

but went so far as to actively refuse to provide that information to the customer on request (*see* Exhibit 7 at 11–12):



(Emphasis added.)

74.     In February 2020, Honey Baked California admitted that it is not in compliance with applicable laws and System standards regarding allergen warnings, but it sought to justify its failure to comply on the basis that the "law is not being enforced."

75.     Notwithstanding repeated assurances that Honey Baked California's food labeling practices are otherwise in compliance with System standards and applicable laws, HBH Licensing is informed and believes, and on that basis alleges, that Honey Baked California is continuing to sell food through Mail Order Transactions and in retail stores that is not properly labeled according to System Labeling Requirements for pre-packed or pre-portioned food, and further, is not properly labeled in accordance with food labeling laws and regulations.

34

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 263

IV.    <u>Honey Baked California's Easter 2020 performance damaged the Brand.</u>

76.    Upon information and belief, at least as early as late March and early April, Honey Baked California began having problems fulfilling orders for Easter 2020.

77.    Honey Baked California did not alert the rest of the system to its performance issues. Instead, Honey Baked USA's customer service department began receiving inquiries and complaints regarding the fulfillment of food orders taken by Honey Baked California.

78.    When contacted by Honey Baked USA, Honey Baked California downplayed the problem.

79.    Throughout the holiday period, Honey Baked California customers submitted hundreds and hundreds of complaints concerning Honey Baked California's performance through the contact page of Honey Baked USA's website. *See* Exhibit 1, Honey Baked California customer comments received on Honey Baked USA's website from 3/30/20 – 4/30/20. In addition, Honey Baked USA began receiving dozens of complaints daily through Facebook Messenger.

80.    Many customers complained that improper labeling, packaging, or shipping techniques used by Honey Baked California resulted in ruined, contaminated, and spoiled food, or that they ordered Easter Meals from Honey Baked California but received nothing, with no explanation or further information available.

81.    One customer inquired, "Received shipment.  Got small baked ham with sides. One plastic wrapped side was not identified. It's all yellow in color. I am not sure what it is. I am allergic to cheese and Cheese ingredients …Please advise what this is. . . Please let me know if this contains cheese and what it is." Exhibit 1, line 854.

82.    To add insult to injury, most customers reported they were unable to contact Honey Baked California for live support about their food orders, to request

35

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 264

refunds, or even obtain order status information. Many customers expressed understandable frustration after discovering that links on the California shipping website were broken and after waiting on hold for hours on Honey Baked California's customer service phone line, with no success.

83. For example, on April 7 another customer complained: "I received my delivery order today and the beans, potatoes and beans had split open [leaving] a mess in the bag. The ham was ok. I spent 2 1/2 hours on hold for to first position and then a busy signal. I was unable to get through. Tried calling a store and again disconnected. I know it is a busy time but I'm hoping someone can call me tomorrow." Exhibit 2.

84. On April 8, another customer complained: "I received my order last night. The box was intact BUT the bag inside containing the two side orders was filled with the contents of the two containers! Both containers were cracked down the side and the contents beans and I think potatoes (hard to tell because they were mixed in with the beans at the bottom of the bag) drained out of the CRACKED containers. I would like to receive a credit to my credit card for these two side orders." Exhibit 1, line 339.

85. The severity of Honey Baked California's failure to comply with the license's requirements to use appropriate packaging, shipping materials and techniques became apparent when customers started sending Honey Baked USA photographs of their orders received from Honey Baked California. A sampling of representative messages are shown below, and a larger collection is attached as Exhibit 3.

36

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







37

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 266

1
2
3
4
5
6
7
8
9
10
11
12
13
14



Here is how my order arrived today. Lid from beans container was not secured and the container arrived cracked. Nothing was secured. Had to throw away dry soup package because bean sauce seeped into package. Very disappointed. Spent 30 minutes wiping, cleaning and repackaging everything. Order #████████

15    86.    On April 10, a customer complained: "I am sending this complaint

16  because we received our honey baked ham dinner, on time, but when I opened the

17  box, the containers of baked beans and scalloped potatoes were open and spilt all

18  over the bubble wrap and inside of the box and the taping tool were right on top of

19  everything, And when I picked up the bag of dried beans thinking I could save

20  something, the whole bag on the bottom fell open into the mess in the box so

21  basically I lost everything but the ham. And also during this coronavirus issue I may

22  have the coronavirus in the box. This is our second order from Honeybaked and if

23  this can happen I don't think I would wanna [sic] ever order this again especially for

24  a holiday meal. This whole purpose was so we didn't have to go out due to the virus."

25  Exhibit 1, line 306.  The customer also sent Honey Baked USA a photograph of what

26  they received from Honey Baked California, which inexplicably included a packing

27  tape dispenser, as shown below and in Exhibit 3 at 46.

28

38

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 267

87. Other consumers reported similar experiences. One customer complained: "On April 10 @ 1:15p our [order] was delivered to us, the package was opened, the delivery guy could not explain why. The ham unit was covered in macaroni & cheese and potatoes. The contents of soup bag was opened, the ham was lukewarm. It appears someone opened the box and contents w/in in the box and [poured] these ingredients over the ham. It clearly look as the package has been vandalized prior to arrival to our home. HBH would not deliver this package like this. This is a huge disappointment to my family and mother-in-law who spent good money on this Easter dinner only to have it arrive in a threatening manner. We feel violated and threatened by your package arriving as it did. I have photos to verify the above. A huge disappointment and COMPLETE waste of time try to access HBH customer service over the phone at either OC or Ventura shops. Between my wife and my 10 attempts to contact your customer service, we were abruptly hung up on. I am

currently on hold w/ the 800 # on your website, it will be over 100 min to speak with a representative. The obnoxious Santana knockoff doesn't help this disastrous experience with HBH. I hope your Easter better than ours gonna be." *See* Exhibit 1, line 690.

88.  The customer also sent Honey Baked USA photographs demonstrating how his order was delivered, as shown below and in Exhibit 3 line 30.



89.  In addition to failing to use appropriate packaging to secure side dishes during mailing of Easter orders, Honey Baked California failed to maintain perishable food items under proper and safe temperatures through to the point of delivery to consumers.

90.  On its website, Honey Baked California guarantees that customer orders will "arrive in perfect order," with the foods flash frozen, insulated in a foam cooler, and accompanied by multiple ice packs, as shown below and in Exhibit 4.

40

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 269

**Guaranteed Delicious Delivery**

There is a lot that we do behind the scenes to make sure that your order arrives as fresh and beautiful as the minute we made it. Whether it is our HoneyBaked Ham, a full HoneyBaked Dinner, a delicate dessert, or any of our other gourmet fare, we guarantee it will arrive in perfect order. After all, we want you and your gift recipients to taste the care and pride we put into every HoneyBaked item we make. That's why our packaging process is best in the business.

We utilize UPS to guarantee delivery and ensure that your packages arrive in the best possible condition and in the timeliest manner. Due to the perishability of our products, they are shipped flash frozen (which means they're frozen very quickly at a very low temperature). You, or your recipients, will want to allow 24-36 hours to thaw your product before you plan to serve it.



Flash frozen to preserve freshness and appearance

Gold Foil Wrapped

Multiple ice packs to keep product cool

Insulated foam cooler

Faster handling and shipping to ensure freshness

(Emphasis added.)

91. Despite these representations, Honey Baked California shipped many Easter orders through common carrier without using proper shipping materials and techniques, and in some cases, without foam coolers, Styrofoam insulating inserts, or ice packs altogether.

92. Scores of consumers contacted HBH Licensing about receiving orders from Honey Baked California that they determined were unsafe to consume.

93. For example, one customer reported: "My turkey breast arrived yesterday with the juices leaking through the cardboard and the ice pack completely

41

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 270

melted. I'm afraid to eat it since I don't know how long it's been at room temperature." Exhibit 1, line 312. Another customer reported: "I just received my ham. . . it was shipped yesterday. And it was not shipped with anything to keep it cold. Just placed in the box in a bag. Is it safe to eat? Just doesn't seem right. . . I'm worried about serving it to my family." *Id.*, line 607. Similarly, another customer reported that the Honey Baked Ham they had ordered for overnight delivery arrived a day late, and had "been sitting at the distribution center for 2 days without refrigeration. The Box did not come with any ice packs or solution to keep the ham cold as suggested on your website. We are very hesitant to eat the ham, since we ordered it for our Easter dinner." *Id.*, line 856. And yet another customer complained: "[t]he turkey breast came in a cardboard box with no ice and not Styrofoam. It is at room temperature and juice out of its container. I'm sure this can't be right. . . I'm concerned, especially about the turkey, that it will make my family sick. I can't get a hold of anyone via phone. . . very frustrated." Exhibit *Id.*, line 148. Another customer expressed great frustration at the condition of his food and inability to reach Honey Baked California for assistance: "Order shipped yesterday from Anaheim, CA. Delivered today. No packaging like Styrofoam or anything to cool it. It's rotted through the box and smells. Now I'm on hold for 138 minutes to your 800 number." *Id.*, line 795.

94.    Another customer tried to get assistance through the Honey Baked Ham website after two of the three separate orders she placed with Honey Baked California failed to arrive, and she had been disconnected from Honey Baked California's customer service line after holding for three hours. She wrote: "I ordered 3 hams. One to Utah, one to Oregon, and one to California. Only the one to California had a tracking number and was delivered. Waited on the phone 2hr 57 min to get tracking numbers for the other two because as of 4: 22 pm they have not [been]

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

**Ex. 16 Page 271**

delivered. Was told I was next, heard a click and then the call was dropped. Now on the phone again and the wait time is 184 minutes. :[ " Exhibit 1, line 158.

95.    The day before Easter, Honey Baked USA was flooded with calls and messages from California customers seeking assistance with their orders and stating that the California call center was closed. Many customers were upset because they received spilled or spoiled food they could not use for their family's Easter meal. Others hadn't received their orders, hadn't been giving tracking numbers, and couldn't reach Honey Baked California for assistance.

96.    One customer complained: "When I opened the box it was a mess.... beans, potatoes, all opened in box looked like a bowl of soup....I will never ever purchase anything from Honey Baked Ham again....Thanks for destroying Easter......" Exhibit 1, line 315.

97.    Another customer wrote: "I am currently on hold with your customer service for a quoted time of 178 minutes. I spent a LOT of money on this ham to make our Easter special. It was supposed to be delivered today. When I checked UPS... it now says Monday which is after Easter and also means it will have been in transit for 5 days.... I can't get a hold of anyone who can help me." Exhibit 1, line 412.

98.    Another customer stated: "I am so upset, I paid a lot ahead of time to have a ham delivered, it did not arrive, I was calling and being hung up on, then I finally am on hold and I have been on hold for over 4 hours, I just want to feed my family for Easter, the lack of communication is so frustrating, if you had issues as a company with deliveries you should have sent an email to your customers advising this to them since we are in times that we cannot just run to the store for a back up. I am very very upset with you all!." Exhibit 1, line 178. Similarly, a customer complained: "I ordered a ham a week before Easter. You took my payment and I

Ex. 16 Page 272

never got my ham. You ruined our Easter dinner. I will never order from HBH again. I will warn everyone not to do business w your co[mpany]." *Id.*, line 44.

99.   Still another customer complained that: "Your company has taken advantage of this pandemic, offering product with delivery dates that were impossible to meet. You ruined our holiday as we ordered and paid our ham a week in advance and never received it. Spent days and hours in 'cue' in a feeble attempt to reach your customer service. As their work day ended before our call reached a representative. Shame on you and your greedy business practices." Exhibit 1, line 311.

100.   In addition to contacting Honey Baked USA, hundreds of customers of Honey Baked California posted complaints and negative reviews about the HBH Brand and the System that appeared nationwide on social media platforms such as Facebook, Twitter, and Instagram. Examples of consumer complaints posted to Facebook are shown below, and included in Exhibit 5, which contains a larger selection.



CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 273





CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

**Ex. 16 Page 274**





101. Many customers also took to Twitter to post about their poor experiences caused by Honey Baked California. Some also used hashtags to indicate their disdain for the brand due to their Easter 2020 experiences, such as #honeybakedscam,

46

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 275

#honeybakedhamscam, #hamscam, and #honeybakedpredator. Examples of consumer complaints posted to Twitter are shown below, and included in Exhibit 6, which contains a larger selection:



47

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 276

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 277





**Ms. Kimmay** @thisismskimmay · Apr 11

@**HoneyBakedHam** We were gifted a package of ham and sides for Easter, and when we opened the Styrofoam box, this is what it looked like. What is this? It looks like something from a horror film! Is this a packaging **fail**?

💬 1     🔁     ♡     ⬆

Ruben
@Ruben68138149

@HoneyBakedHam RUINED our Easter dinner!! Ordered & paid for a ham on Thursday 2B delivered by sat, it never came! Moved our dinner to Sunday still NEVER came! No help from customer service! No response about a refund! Once loyal customer will NEVER order again!

7:36 PM · Apr 12, 2020 · Twitter for iPhone



M. Scott Trejo
@MScottyScott

The world is upside down and your move is to scam your customers and deliver bad , damaged product if anything at all.  Awesome job destroying millions of holidays @HoneyBakedHam #honeybakedpredator #hamcsam

5:06 PM · Apr 11, 2020 · Twitter for iPhone

49

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

**Ex. 16 Page 278**





50

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 279

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28







51

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 280

102.   Additionally, dozens of customers posted complaints to Yelp consumer review webpages for Honey Baked California's retail stores. A sample is shown below, and contained in the larger selection that is Exhibit 7.







52

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 281







**Lossie S.**
**Los Angeles, CA**
0 friends
3 reviews

⭐☆☆☆☆  4/13/2020

I am very angry and disappointed on a High Holy Day. Honey Baked Ham disappointed so many people, including myself. Your business should be under promise and over deliver...not the other way around. Your ham has been the centerpiece of holiday dinners for years. In better days, we have stood in long lines to pick up one. But now, when so many of us were dependent on delivery because of COVID-19, I as a senior called and called and called. I was left on hold for hours and your company didn't even have the decency to produce a recorded message for those of us who sat on hold for hours to let us know that the deliveries would be delayed so we could make other arrangements as to not be completely disappointed. You were even advertising delivery services on T.V. when you couldn't even figure out how to fulfill the deliveries already processed. I want my money back, a ham and a gift card for my trouble...oh, and add an apology from the CEO, too! And I want that 1 star back Yelp made me give you to post this review.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

**Ex. 16 Page 282**



103.  Some customers were so frustrated by their inability to reach Honey Baked California's customer support that they began attempting to contact Honey Baked USA employees by sending messages through the LinkedIn website. This is one example:

> Greetings Horace: I am a retired Boeing exec residing in SoCal, and I have been enjoying Honey Baked hams for more than 50 years; it is a long standing Easter tradition for our family. Because my family is not local, I ordered three Honey Baked ham meals to be delivered to our homes for Easter; we were going to Zoom our Honey Baked Easter meal from around the state! The first of three ordered meals was delivered to my sons home about an hour ago, When the box was opened it looked like a war had taken place; food was spilled all over the box and the ham was room temperature and probably spoiled. So much for our Easter dinner. I tried to contact the local store in Lake Forest Ca which hung up on me three times. I called your 1-800 and 1-866 lines and, of course, no one answered the phone. I realize that times are difficult . . . and if ever we needed Honey Baked to bring our families and country together it was 2020. I am actually beyond greatly disappointed; I am really perplexed how this could ever happen to a cornerstone company in the US of A. Our family Zoom / Honey Baked virtual Easter meal has been cancelled.
>
> [Name removed]
> Cell: 949 xxx-xxxx

54

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 283

104.   Other Honey Baked California customers went so far as to locate and contact Honey Baked USA employees at their homes. One customer even sent a letter to Honey Baked USA's CEO, Linda van Rees, which is attached as Exhibit 8.

105.   The complaints described in the preceding paragraphs are illustrative and by no means exhaustive.

106.   Customers posted hundreds, if not thousands, of complaints and negative commentary about the HBH Brand on social media platforms and various websites relating to Honey Baked California's disastrous performance during Easter 2020.

107.   Honey Baked USA alone received more than 800 complaints submitted through its website from Honey Baked California customers around the Easter holiday.

108.   Several hundred Honey Baked California customers complained that their Honey Baked Ham, turkey, and other food items had never arrived for the Easter holiday, or arrived after their scheduled delivery date.

109.   More than 100 Honey Baked California customers complained that they received food that was delivered warm or thawed, or food that had spilled out of containers that were not securely closed and not appropriate for mail order shipping of food

110.   Many customers told Honey Baked USA that their Easter holiday was ruined due to Honey Baked California's dismal performance and total lack of customer service. For example, a long time Honey Baked customer who didn't receive her Easter ham in time for the holiday and was unable to reach anyone at Honey Baked California said "[t]hank you for making this the saddest Easter ever." Exhibit 1, line 689. A man who had purchased a prime rib feast for his family's Easter dinner, who did not receive his order but instead received a smashed cake and mashed potatoes, stated that "[m]y Easter with my family is ruined and with me out of work, me and my family were looking forward to this meal together." *Id.*, line 744.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 284

A woman who received a spoiled harm stated that "[m]y Easter dinner is ruined and just can say how disappointed I am." *Id.*, line 543. Another woman who received inedible spilled side dishes and ham that was not kept cool stated "I want [my] money back we had to throw the whole thing out and its ruined our Easter dinner that due to the pandemic I can't even replace properly." *Id.*, line 446. Further, a woman who did not receive the meal she ordered for Easter stated "[m]y Easter dinner was ruined because you did not fulfill your promise to deliver." *Id.*, line 424.

111.   Honey Baked California's operational issues and repeated failures to meet customer expectations around the Easter holiday reflected materially and unfavorably upon the operation and reputation of the Brand and System.

112.   Following the deluge of complaints from Honey Baked California customers, HBH Licensing demanded that Honey Baked California temporarily suspend courier shipping from its Anaheim facility until HBH Licensing could investigate the problems and ensure that protective measures were in place to protect consumer health and safety, and prevent further damage to the Brand and System.

113.   Honey Baked California declined and refuses to do so.

V.   HBH California's unauthorized use of HBH Proprietary Marks

114.   The License Agreement grants Honey Baked California a license to use the Proprietary Marks only in connection with the Branded Products listed in Exhibit B of the License Agreement. *See* License Agreement § 6(b)(vii).

115.   Honey Baked California has no right, license, or authorization to use the Proprietary Marks other than those limited rights set forth in the License Agreement, and only pursuant to all restrictions and requirements of the License Agreement.

116.   HBH Licensing has not licensed or authorized Honey Baked California to use the Proprietary Marks for any products other than the Branded Products. The Branded Products do not include side dishes, condiments, desserts, or soup mixes.

Ex. 16 Page 285

117. At some point in time, without approval of HBH Licensing, Honey Baked California began using the Proprietary Marks in connection with the sale of side dishes, condiments, desserts, soup mixes, and other food products.

118. For example, Honey Baked California is selling the products below, which use the Proprietary Marks, in its California retail stores.

**Tantalizing Honeyspice Sauce**



**Champagne Gourmet Mustard**



**Cakes**



**Ham Bone Soup Mix**



57

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

119.   HBH Licensing has not approved the manufacturer or supplier of these side dishes, condiments, desserts, and other food products

120.   These side dishes, condiments, desserts, and other food products are not listed in Exhibit B of the License Agreement as Branded Products.

121.   These side dishes, condiments, desserts, and other food products do not comply with System standards. They are not made by an approved manufacturer, and upon information and belief do not comply or fully comply with System Labeling Requirements.

122.   The sale of these unapproved products with the Proprietary Marks affixed to them is likely to cause, and has caused, actual consumer confusion as to whether these products have been approved by HBH Licensing.

VI.    <u>Honey Baked California's unauthorized registration and use of domain names.</u>

123.   The License Agreement provides that Honey Baked California may not register or use domain names, establish or use social media accounts, or create or use apps for its business without the prior written consent of HBH Licensing, which shall have the right to require such domain names and accounts to be registered in Licensor's name.

124.   The License Agreement further provides that Honey Baked California must fully comply with any specifications, standards, policy statements, rules or any other requirements specified by Licensor from time to time related to the use of the Proprietary Marks on the Internet.

125.   At least as early as 1996, the predecessor of HBH Licensing registered the subdomain *ca.honeybaked.com* and approved it for use by Honey Baked California.

126.   From 1996 until at least 2018, HBH Limited Partnership and HBH Licensing caused traffic from the National Website to be directed to this subdomain.

Ex. 16 Page 287

127.   At some point in time, without the knowledge or approval of HBH Licensing or its predecessor, Honey Baked California registered the domain *shophoneybaked.com* and apparently began re-directing traffic from *ca.honeybaked.com* to *shophoneybaked.com*.

128.   In 2018, HBH Licensing became aware that Honey Baked California is using domain name *shophoneybaked.com*. HBH Licensing later became aware that Honey Baked California has registered and is using an additional domain name, *hbhca.com*.

129.   On November 1, 2019, HBH Licensing requested the transfer of the two domain names after the holiday sales rush.

130.   Honey Baked California, through counsel, stated that it would transfer the two domain names to HBH Licensing as requested.

131.   On November 27, 2019, HBH Licensing published in draft form updated Internet Guidelines that delineated requirements pertaining to use of the Proprietary Marks in digital media. These updated requirements, which became effective February 1, 2020, permitted Honey Baked California to use the domain names that it previously registered under certain conditions, including that Honey Baked California transfer ownership of the domain names to Honey Baked USA, include titles and metatags that clearly define the territorial limitations of the California website, and include features distinguishing that website from Honey Baked USA's shopping portals.

132.   On February 28, 2020, Honey Baked California notified HBH Licensing that despite its earlier agreement to transfer ownership of the domain names to HBH Licensing, it was now unwilling to do so.

133.   Honey Baked California has registered and is using the domain names *shophoneybaked.com* and *hbhca.com* in breach of its obligations under License Agreement. Further, Honey Baked California is not complying with the

59

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 288

specifications, standards, policy statements, rules and any other requirements specified by Licensor related to the use of the Proprietary Marks on the Internet.

134. Honey Baked California's use of the domain name *shophoneybaked.com* is likely to cause, and has caused, actual consumer confusion and damaged the reputation of the Honey Baked System and trademarks.

VII. Honey Baked California's failure to update stores to System standards

135. Prior to renewal of the License Agreement in 2015, HBH Limited Partnership notified Honey Baked California that approximately ½ of California's stores were still using pre-1996 "Hexagon" signage.

136. In the 2015 License Agreement, Honey Baked California committed to "update its signage on all of its HoneyBaked Outlets, and [to] cause its sublicensees to update their signage on all of their HoneyBaked Outlets, to match Licensor's current standards for signage … within 180 days" of the License Agreement's effective date. *See* License Agreement § 6(a)(ii).

137. Honey Baked California further committed to update signage on its retail stores to correspond to any signage standards adopted by HBH Licensing in the future on the occurrence of certain conditions and within certain timeframes set forth in the § 6(a)(ii) of the License Agreement.

138. From July 2015 to 2019, Honey Baked California repeatedly informed HBH Licensing that it had fully converted all the pre-1996 signage to current System standards or imminently would do so.

139. In fact, Honey Baked California failed to update and convert many signs throughout California, while continuing to represent that it had or would. For example, in 2016, Honey Baked California assured HBH Licensing that with three exceptions (none of which are identified in the following paragraph) all stores have been converted.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 289

140.   On November 1, 2019, HBH Licensing notified Honey Baked California that it was in default of its obligation to update store signs at its store locations in La Mesa, Stockton, Huntington Beach, and Ventura.

141.   As of February 28, 2020, Honey Baked California had still not corrected the signage defaults at the La Mesa and Stockton stores with permanent signage. On information and belief, it still has not done so as of the date of this filing.

VIII.   Honey Baked California's failure to update graphics to System standards.

142.   Section 6(b) of the License Agreement provides, in part, "In order to maintain such System and in order to protect and enhance the reputation, value and goodwill of the Proprietary Marks and Licensor's licensing System, and to control the nature and quality of the goods and services provided under the Proprietary Marks, so that the public may rely upon the Proprietary Marks as identifying Branded Products and other goods and services of the highest order, Licensee agrees to abide by and conform to the standards of Licensor."

143.   In early spring 2018, Honey Baked USA completely redesigned and modernized the Brand.

144.   On or about March 25, 2018, HBH Licensing sent Honey Baked California a draft of the proposed new Brand Standards, which imposed requirements for the printed display of the Proprietary Marks.

145.   HBH Licensing also reviewed a copy of the new Brand Standards with Honey Baked California in a meeting in June of 2018.

146.   The new Brand Standards contained specifications and requirements for use of the new marks on product packaging, retail bags, shipping boxes, and other materials.

147.   Examples of the new Brand Standards used on packaging for side dishes and condiments, and on retail bags, are shown below.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

**Ex. 16 Page 290**





CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS



148.   On October 13, 2018, HBH Licensing notified Honey Baked California that it required adoption of the new Brand Standards, effective June 1, 2019. Although much of the rest of the System had already implemented the new Brand Standards, HBH Licensing delayed implementation of the Brand Standards for stores in California for more than six months (two holidays later) to allow Honey Baked California time to exhaust its current supply of packaging and to plan ahead to be able to implement the required changes in time for the 2019 Holidays.

149.   Despite having more than a year's notice, Honey Baked California continued to use packaging and bags displaying outdated graphics throughout the 2019 Holiday season in its retail stores:

63

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 292




6

150.  On or about February 28, 2020, Honey Baked California represented to HBH Licensing that it had completed its transition to new standard packaging.

151.  In fact, contrary to its representation, Honey Baked California continued to use outdated, unapproved graphics on tote bags and packaging throughout the 2020 Easter holiday, as shown below:

---

6 In addition to this product packaging using outdated branding, Honey Baked California's distribution of this product itself materially breaches the License Agreement because it uses the Proprietary Marks but is not an authorized Branded Product or otherwise approved by HBH Licensing.

64

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 293

 

 

152.  Honey Baked California's continued use of outdated packaging that is non-compliant with current System Standards constitutes a breach of the License Agreement and damages the Brand.

IX.  Honey Baked California's failure to pay for hams purchased from Honey Baked USA.

153.  Under the terms of the License Agreement, Honey Baked California is responsible for planning and ordering its own requirements of ham from approved suppliers.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

**Ex. 16 Page 294**

154.   On information and belief, Honey Baked California did not properly prepare or plan its ham supply needs for the Easter 2020 holiday.

155.   During the holiday, Honey Baked California asked Honey Baked USA for ham. Honey Baked USA agreed to allow Honey Baked California to purchase from Honey Baked USA nearly 140,000 lbs. of ham that Honey Baked USA had planned to sell during the holidays. As a result, Honey Baked USA ran short of ham to supply its own stores in western markets.

156.   The total cost of the hams purchased by Honey Baked California, inclusive of freight and shipping, amounted to approximately $232,029.

157.   Honey Baked USA provided Honey Baked California with an invoice for $232,028.66 on or about April 27, 2020.

158.   Payment of that invoice was due seven days after its receipt.

159.   As of the date of this document, Honey Baked California still has not paid for the hams that it purchased from Honey Baked USA in April 2020.

**Count I – Breach of Contract—Food Safety Requirements**

**(By HBH Licensing against Honey Baked California)**

160.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–159 as if fully set forth herein.

161.   HBH Licensing and Honey Baked California are parties to the License Agreement.

162.   HBH Licensing performed all of its duties under the License Agreement.

163.   The License Agreement obligates Honey Baked California to, *inter alia*, follow food safety requirements established by HBH Licensing. *See* License Agreement § 6(b)(ii).

164.   HBH Licensing has exercised its rights under the License Agreement by establishing Safety Requirements mandating, *inter alia*, that:

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

a) All food products shipped through interstate commerce, with the exception of Branded Product hams and turkey breasts, must come directly from USDA or FDA registered food processing facilities without further processing;

b) Honey Baked California must adhere to the California Retail Food Code;

c) Honey Baked California must maintain food products under proper and safe temperatures through to the point of delivery to consumers;

d) Honey Baked California is to provide consumers with proper instructions on food safety in the shipment packaging materials and provide access to live customer support to address consumer issues or questions.

165. Honey Baked California has repeatedly and materially breached and failed to meet its obligations under the Safety Requirements.

166. Honey Baked California has shipped products through interstate commerce, including but not limited to cheesy potatoes, ham salads, side dishes and condiments, that did not come directly from a USDA or FDA registered food processing facility without further processing.

167. Honey Baked California repeatedly has shipped food to customers via common courier that was not packaged in a way that allowed it to maintain proper and safe temperatures through to the point of delivery to consumers.

168. Honey Baked California repeatedly has failed to provide proper food safety instructions in the shipment packaging of food products shipped to consumers via common courier.

169. Honey Baked California failed to provide adequately staffed live customer support to field and respond to customer complaints and questions.

170. Honey Baked California has violated the California Retail Food Code in regards to shipments from its retail stores.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 296

171.   Honey Baked California's repeated breaches of the Safety Requirements endanger consumer health and welfare and irreparably harm Counterclaim Plaintiff, the Brand, and they System.

172.   HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to complying with System food safety requirements, so long as the License Agreement remains in effect.

**Count II – Breach of Contract—Product Labeling**

**(By HBH Licensing against Honey Baked California)**

173.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–172 as if fully set forth herein.

174.   The License Agreement obligates Honey Baked California to, *inter alia*, abide by and conform to standards established by HBH Licensing as well as by all applicable federal, state, and local laws and regulations. *See* License Agreement §§ (6)(b), (b)(ii).

175.   HBH Licensing has exercised its rights under the License Agreement by establishing Labeling Requirements for the System that require all retail stores in the Honey Baked System to follow FDA food and menu labeling laws and to label each pre-packed and pre-portioned food products sold at Honey Baked outlets with various information including: (a) product name; (b) ingredient list; (c) allergen warnings; (d) use by date; (e) net weight; (f) handling requirements (i.e. "Keep Refrigerated"); (g) store name and location; and (h) a nutritional fact label.

176.   Honey Baked California has repeatedly violated the Labeling Requirements by, *inter alia*:

- Failing to provide required allergen statements;
- Failing to provide required ingredient lists;
- Failing to provide required nutritional information;

68

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

**Ex. 16 Page 297**

- Failing to provide required use by dates;
- Failing to provide required net weights;
- Failing to provide required store name and location; and
- Failing to provide required nutritional facts and information.

177. In addition to its recurrent failures to comply with the Labeling Requirements, Honey Baked California has repeatedly and recalcitrantly made misrepresentations to HBH Licensing regarding its compliance or plans to come into compliance.

178. In addition to requiring Honey Baked California to comply with Licensor's Labeling Requirements, the License Agreement obligates Honey Baked California to comply with all applicable federal, state, and local laws and regulations.

179. Honey Baked California has not complied with federal labeling laws.

180. In addition to federal laws, one state law, California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Prop 65") requires retailers producing food in California that introduce a listed chemical known to cause cancer or reproductive toxicity into a food product, or sell such a food product under a brand or trademark owned or licensed by the retailer or an affiliated entity, to provide a warning that the food product contains a chemical known to the State of California to cause cancer or reproductive toxicity. *See* Cal. Health & Safety Code § 25249.6.

181. Honey Baked California produces and sells food products that, on information and belief, contain or are likely to contain chemicals identified by the State as Prop 65 chemicals.

182. On information and belief, Honey Baked California's online catalogue and many of its retail stores do not provide the required Prop 65 warnings.

183. Since at least 2017, HBH Licensing has repeatedly voiced its concerns about Prop 65 compliance to Honey Baked California, and the latter has repeatedly failed to provide requested assurances of compliance.

69

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 298

184. Honey Baked California's noncompliance with the Labeling Requirements and federal and state law and regulations, including Prop 65, endangers consumer health and welfare and irreparably harms Counterclaim Plaintiff, the HBH Brand and System.

185. HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to complying with applicable Labeling Requirements, Prop 65, and all other applicable federal, state, and local laws and regulations, so long as the License Agreement remains in effect.

**Count III – Breach of Contract—Gross Violations of Quality Control Standards (By HBH Licensing against Honey Baked California)**

186. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–185 as if fully set forth herein.

187. The License Agreement obligates Honey Baked California to, *inter alia*: (1) market all products as high-end, premium products in order to protect and enhance the image and goodwill of the Proprietary Marks and the System; (2) take all reasonable precautions to ensure that products that it packs and ships to consumers retain their original flavor, taste, quality, and other attributes; (3) use appropriate packaging and shipping materials and techniques and (4) comply with directives from HBH Licensing regarding actions to be taken to maintain the quality and standards of the HBH Brand and System. *See* License Agreement §§ 6(b), 6(b)(ii).

188. During the 2020 Easter holiday season, Honey Baked USA grossly violated these and other obligations under the License Agreement.

189. Honey Baked California shipped by common carrier Branded Products and other products, including numerous side dishes, to consumers in inappropriate and unsafe packaging that was not designed to and could not prevent food spillage and spoilage or maintain temperature control.

70

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 299

190.  In many instances, Honey Baked California simply placed hams and unsecure containers of side dishes in cardboard boxes, sometimes with an ice pack, and shipped them to customers in California via overnight couriers.

191.  Unbelievably, in several instances Honey Baked California shipped by common carrier the Brand's signature product, the Honey Baked Ham, in a cardboard box with no ice pack or dry ice, and no insulation.

192.  Scores of customers complained to Honey Baked USA that their eagerly anticipated Honey Baked Ham was unsafe to eat, spoiled, and rotten.

193.  As a result of Honey Baked California's violation of its duties, many customers who placed orders for family celebrations and observations of the Easter holiday received boxes filled with leaking or broken packages of spilled, spoiled food. Many others complained they never received their Easter meals at all or received them after the holiday.

194.  The improper food shipments sent out by Honey Baked California over the Easter holiday season generated more than 1,000 customer complaints and hundreds of negative reviews posted on social media and other websites, endangered health and safety, damaged Counterclaim Plaintiff, and caused serious and irreparable harm to the HBH Brand.

195.  The problems were compounded by Honey Baked California's breach of its duty to make available live customer support to respond to customer complaints and inquiries.

196.  Scores of dissatisfied customers reached out to Honey Baked USA through many different channels, to express their displeasure and to relay stories of being kept on hold with Honey Baked California's ostensible customer support line for hours, only to be disconnected without receiving assistance. Honey Baked USA itself was many times unable to reach Honey Baked California to relay the complaints.

71

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 300

197. Honey Baked California's breach of its obligations, *inter alia*, to (1) market all products as high-end, premium products in order to protect and enhance the image and goodwill of the Proprietary Marks and the System; (2) take all reasonable precautions to ensure that products that it packs and ships to consumers retain their original flavor, taste, quality, and other attributes; (3) use appropriate packaging and shipping materials and techniques; and (4) comply with directives from HBH Licensing regarding actions to be taken to maintain the quality and standards of the Brand and System reflected materially and unfavorably upon the reputation of the franchise operation and System, caused irreparable harm to the Brand, and damaged HBH Licensing.

198. HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to the mandates that: (1) it take all reasonable precautions to ensure that products that it packs and ships to consumers retain their original flavor, taste, quality, and other attributes; (2) use appropriate packaging and shipping materials and techniques; and (3) comply with directives from HBH Licensing regarding actions to be taken to maintain the quality and standards of the Brand and System, so long as the License Agreement remains in effect.

**Count IV—Breach of Contract—Unauthorized Use of Proprietary Marks**

**(By HBH Licensing against Honey Baked California)**

199. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–198 as if fully set forth herein.

200. The License Agreement grants Honey Baked California a clearly defined and limited License to use the Proprietary Marks.

201. Honey Baked California is only licensed to use the Proprietary Marks on those Branded Products identified in Exhibit B of the License Agreement. *See* License Agreement § 1(e)(iii), 2(a), 6(a), 6(a)(i).

72

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 301

202.   The License Agreement expressly prohibits the Licensee from using the Proprietary Marks for any products other than the Branded Products identified in Exhibit B of the Agreement without HBH Licensing's prior written approval, which HBH Licensing may withhold in its sole discretion. *See* License Agreement § 6(a)(i).

203.   The License Agreement provides that any use of the Proprietary Marks for products not identified as Branded Products without HBH Licensing's prior written approval constitutes a material breach of the Agreement. *See* License Agreement § 6(a).

204.   Without the authorization or approval of HBH Licensing, Honey Baked California has offered for sale, and on information and belief continues to offer for sale, in packaging bearing the Proprietary Marks, numerous types of food products that are not authorized Branded Products.

205.   Honey Baked California's unauthorized use of the Proprietary Marks on food products not authorized as Branded Products materially breaches the License Agreement and irreparably damages Counterclaim Plaintiff and the HBH Brand and System. *See* License Agreement § 6(a).

206.   HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to, immediately and permanently suspending the unauthorized use of the Proprietary Marks all products that are not approved for sale as Branded Products.

**Count V—Breach of Contract—Unauthorized Use of and Refusal to Transfer Domain Names and Social Media Accounts**

**(By HBH Licensing against Honey Baked California)**

207.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–206 as if fully set forth herein.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

208. Through the License Agreement, Honey Baked California agreed that any advertising or marketing that it conducts through the Internet shall be made in accordance with any policies that HBH Licensing shall designate from time to time.

209. Additionally, the License Agreement provides that Honey Baked California may operate and maintain a website for its Business using the Proprietary Marks only at a domain name that HBH Licensing has approved in writing.

210. Further, Honey Baked California may not register or use domain names, or establish or use social media accounts, without HBH Licensing's prior written consent.

211. The License Agreement also provides that HBH Licensing has the right to require that any domain names and social media accounts used by Honey Baked California be registered in HBH Licensing's name.

212. The License Agreement further provides that Honey Baked California must fully comply with any specifications, standards, policy statements, rules or any other requirements specified by Licensor from time to time related to the use of the Proprietary Marks on the Internet and/or any operations of the Business on the Internet.

213. Honey Baked California is using or has used the domain names *shophoneybaked.com* and *hbhca.com*, both of which are registered in its own name, without approval from HBH Licensing.

214. On November 1, 2019, HBH Licensing sent Honey Baked California a letter notifying it of its various breaches of, and obligations under, the License Agreement, including Honey Baked California's obligation to transfer all domain names used in its Business to HBH Licensing upon request.

215. Also in that letter, HBH Licensing requested that Honey Baked California transfer the registration of the domain names *shophoneybaked.com* and *hbhca.com* to HBH Licensing by March 1, 2020.

74

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 303

216.   On November 27, 2019, HBH Licensing updated its Internet Guidelines, which set forth requirements pertaining to use of the Proprietary Marks in digital media. These updated requirements, which became effective February 1, 2020, permitted Honey Baked California to use the domain names that it previously registered under certain conditions, including that Honey Baked California transfer ownership of the domain names to Honey Baked USA, include titles and metatags that clearly define the territorial limitations of the California website, and include features distinguishing that website from the National Website.

217.   Despite initially agreeing to transfer the domain names to HBH Licensing in accordance with the License Agreement, Honey Baked California has since refused to do so, in breach of the License Agreement.

218.   Honey Baked California has also breached the License Agreement by establishing and using numerous social media accounts in the operation of its Business, including accounts on Facebook and Twitter, without HBH Licensing's prior written consent and thereby has irreparably damaged Counterclaim Plaintiff, the Brand, and the System.

219.   HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to: (1) transfer of the registration and ownership of the domain names *shophoneybaked.com* and *hbhca.com* to HBH Licensing; (2) transfer of control of all social media accounts using the Proprietary Marks in the operation of Honey Baked California's Business; (3) comply with the Internet Guidelines regarding use of titles and metatags that clearly define the territorial limitations of the California website and the inclusion of features distinguishing that website from the National Website, so long as the License Agreement remains in effect.

75

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 304

## Count VI—Breach of Contract—Noncompliance with Brand Standards
### (By HBH Licensing against Honey Baked California)

220.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–219 as if fully set forth herein.

221.   The License Agreement obligates Honey Baked California to, *inter alia*, use and display the Proprietary Marks as authorized and directed by HBH Licensing.

222.   In exercise of its rights under the License Agreement, HBH Licensing from time to time updates Brand logos and other Proprietary Marks.

223.   The License Agreement requires Honey Baked California to use and employ updated Proprietary Marks as directed by HBH Licensing.

224.   On or about October 13, 2018, HBH Licensing updated its Brand Standards for printing and display of the Proprietary Marks.

225.   Although most of the rest of the System immediately adopted the updated Proprietary Marks, HBH Licensing delayed the effective date of this update for Honey Baked California until June 1, 2019, so that Honey Baked California would have time to exhaust existing supplies of packaging and other materials bearing the legacy Proprietary Marks.

226.   Despite repeated requests from HBH Licensing and repeated assurances of compliance from Honey Baked California, Honey Baked California continued to use noncompliant packaging at least through the 2020 Easter holiday season.

227.   Honey Baked California's refusal to comply with Brand standards for use of the Proprietary Marks violates the License Agreement, does not confirm to System standards, undermines the licensing system and the uniform use of the Proprietary Marks throughout the System, and irreparably harms Counterclaim Plaintiff and the HBH Brand and System.

228.   HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not

76

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 305

limited to bringing and keeping all packaging materials making use of the Proprietary Marks into compliance with updated Brand standards, so long as the License Agreement remains in effect.

## Count VII—Federal Trademark Infringement, 15 U.S.C. 1114(1)

### (By Honey Baked USA against Honey Baked California)

229. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–228 as if fully set forth herein.

230. Honey Baked USA owns the trademarks HONEYBAKED, HONEY BAKED HAM and the HONEY BAKED HAM COMPANY ("the HONEYBAKED marks"), which have been duly registered in the United States Patent and Trademark office.

231. Copies of the corresponding registration certificates are attached as Exhibit 9 and constitute evidence of Honey Baked USA's ownership of and exclusive rights to use the marks in connection with the goods and services recited in the registrations.

232. By and through its wholly owned subsidiary HBH Licensing, Honey Baked USA has licensed the use of the HONEYBAKED marks to Honey Baked California for use on specified food products. Without authorization or approval, Honey Baked California is using certain reproductions, copies, or colorable imitations of the HONEYBAKED marks on certain types of food products not authorized for sale as Branded Products under the License Agreement.

233. Additionally, by and through its wholly owned subsidiary HBH Licensing, Honey Baked USA has licensed the use of the HONEYBAKED marks for use in specified domain names and subject to territorial restrictions. Without authorization or approval, Honey Baked California is using in the operation of its Business unapproved domain names incorporating reproductions, copies, or colorable imitations of the HONEYBAKED marks on websites without titles or metatags that

77

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 306

clearly define the territorial limitations of the California website and without features distinguishing the California website from the National Website. Honey Baked California also has used without approval in the operation of its Business social media accounts incorporating reproductions, copies, or colorable imitations of the HONEYBAKED marks.

234. Honey Baked California's actions in using the HONEYBAKED marks beyond the scope of the license have caused Honey Baked USA to lose control over the reputation and goodwill associated with the HONEYBAKED marks.

235. Honey Baked California's unauthorized uses of the HONEYBAKED marks, as described above, is likely to cause, and has already caused, confusion, deception, or mistake among consumers concerning the source, affiliation, or sponsorship of Honey Baked California's products and services, and concerning the affiliation, connection, approval, sponsorship, or association of these products with Honey Baked USA.

236. Honey Baked California's unauthorized uses of the HONEYBAKED marks constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

237. As a direct and proximate result of Honey Baked California's actions alleged above, Honey Baked USA has been damaged and will continue to be damaged.

238. Honey Baked California's infringement irreparably injures Counterclaim Plaintiff's business, reputation, and goodwill, which are embodied in the HONEYBAKED marks. Counterclaim Plaintiff has no remedy at law and is entitled to an injunction restraining Honey Baked California from engaging in further acts of infringement.

Ex. 16 Page 307

## Count VIII—Federal Unfair Competition, 15 U.S.C. § 1125(a)

### (By Honey Baked USA against Honey Baked California)

239.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–238 as if fully set forth herein.

240.   As detailed above, Honey Baked California is selling, offering for sale, and distributing certain unauthorized food products using packaging that infringes the HONEYBAKED marks.

241.   Honey Baked California is also using domain names and social media accounts in the operation of its Business that infringe the HONEYBAKED marks.

242.   Honey Baked California's acts have caused Honey Baked USA to lose control over the reputation and goodwill associated with its HONEYBAKED marks.

243.   Honey Baked California's unauthorized use of the HONEYBAKED marks constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

244.   As a direct and proximate result of Honey Baked California's actions alleged above, Counterclaim Plaintiff has been injured and will continue to be injured.

245.   Honey Baked California's infringement irreparably injures Counterclaim Plaintiff's business, reputation, and goodwill. Counterclaim Plaintiff has no remedy at law and is entitled to an injunction restraining Honey Baked California from engaging in further acts of unfair competition.

## Count IX—Termination of License Agreement under

### California Bus. & Prof. Code § 20020

### (By HBH Licensing against Honey Baked California)

246.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–245 as if fully set forth herein.

79

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 308

247. California Business & Professions Code § 20020 provides that a franchisor may terminate a franchise prior to the expiration of its term for good cause.

248. Section 20020 defines good cause as "the failure of the franchisee to substantially comply with the lawful requirements imposed upon the franchisee by the franchise agreement after being given notice of at least 60 days in advance of the termination and a reasonable opportunity, which in no event shall be less than 60 days from the date of the notice of noncompliance, to cure the failure." *Id.*

249. Honey Baked California is a franchisee of the HBH Brand within the meaning of § 20020.

250. HBH Licensing is the franchisor of the HBH Brand within the meaning of § 20020.

251. The License Agreement is a franchise agreement within the meaning of § 20020.

252. As detailed in Counts I – VI *supra*, Honey Baked California has repeatedly failed to substantially comply with numerous lawful requirements imposed on it by the License Agreement.

253. Honey Baked California has received numerous notices of and reasonable opportunities to cure its noncompliance with lawful requirements imposed by the License Agreement and has failed to do so.

254. Based on Honey Baked California's repeated, uncured noncompliance with numerous lawful requirements imposed by the License Agreement, good cause exists to terminate Honey Baked California's license to use the HBH Brand and all associated Proprietary Marks and information, and HBH Licensing is entitled to a declaration to that effect.

255. HBH Licensing has a real and reasonable apprehension that if it exercised its right to terminate the License Agreement, Honey Baked California

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

**Ex. 16 Page 309**

would seek judicial relief. HBH Licensing thus requires a declaratory judgment that it is entitled to terminate the License Agreement and requests that the court enter one.

### Count X—Termination of License Agreement under

### California Bus. & Prof. Code § 20021

### (By HBH Licensing against Honey Baked California)

256. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–255 as if fully set forth herein.

257. The License Agreement provides that grounds for termination prior to the expiration of its term include, *inter alia*, the occurrence of any event specified in the version of California Business & Professions Code § 20021 in effect on the effective date of the License Agreement. *See* License Agreement § 13(a)(iii).

258. The version of Section 20021 in effect on July 1, 2015 provides that a franchisor may terminate a franchise prior to the expiration of its term immediately, without providing an opportunity to cure, where, *inter alia*, (1) the franchisee, after curing any failure in accordance with § 20020, again engages in the same noncompliance or (2) the franchisee repeatedly fails to comply with one or more requirements of the franchise, whether or not corrected after notice. *See* § 20021(f), (g).

259. Honey Baked California is a franchisee of the HBH Brand within the meaning of § 20021.

260. HBH Licensing is the franchisor of the HBH Brand within the meaning of § 20021.

261. The License Agreement is a franchise agreement within the meaning of § 20021.

262. As set forth herein, Honey Baked California has repeatedly failed to comply with multiple requirements of the License Agreement.

Ex. 16 Page 310

263.   Honey Baked California's noncompliance includes both repeated failures to comply with individual requirements of the License Agreement and failures to comply with multiple requirements of the License Agreement.

264.   Based on Honey Baked California's repeated noncompliance with multiple requirements of the License Agreement and its recurrent non-compliance with individual requirements of the License Agreement after notice and cure, good cause exists to terminate Honey Baked California's license to use the HBH Brand and all associated Proprietary Marks and information, and HBH Licensing is entitled to a declaration to that effect.

265.   HBH Licensing has a real and reasonable apprehension that if it exercised its right to terminate the License Agreement, Honey Baked California would seek judicial relief. HBH Licensing thus requires a declaratory judgment that it is entitled to terminate the License Agreement and requests that the court enter one.

### Count XI—Breach of Contract—Failure to Pay Money Owed
### (By Honey Baked USA against Honey Baked California)

266.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–265 as if fully set forth herein.

267.   During the 2020 Easter holiday season, Honey Baked USA agreed to sell, and Honey Baked California agreed to purchase, nearly 140,000 lbs. of ham.

268.   Honey Baked USA has performed the contract.

269.   The total cost of the hams purchased by Honey Baked California, inclusive of freight and shipping, amounted to $232,028.66.

270.   Honey Baked USA provided Honey Baked California with an invoice for $232,028.66 on or about April 27, 2020.

271.   Payment of that invoice was due seven days after its receipt.

272.   As of the date of this document, Honey Baked California still has not paid for the hams that it purchased from Honey Baked USA in April 2020.

82

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

Ex. 16 Page 311

273.   Honey Baked USA has been damaged by Honey Baked California's failure to pay for Honey Baked USA's ham and is entitled to a judgment against Honey Baked California in the amount of $232,028.66 plus prejudgment interest.

## **PRAYER FOR RELIEF**

WHEREFORE, the Defendants respectfully request judgment as follows:

1.     That the Court enter judgment in favor of Honey Baked USA and HBH Licensing on all of Honey Baked California's claims and dismiss those claims with prejudice;

2.     That Honey Baked California take nothing;

3.     That the Court enter a declaratory judgment finding that HBH Licensing is justified in terminating the License Agreement under California Business & Professions Code § 20020 and/or 20021(f) and/or (g);

4.     In the alternative, should the Court not enter the declaratory judgment requested in the immediately preceding paragraph, that the Court enter a declaratory judgment finding that Honey Baked California has breached the License Agreement in each of the ways set forth in HBH Licensing's counterclaims for breach of contract;

5.     In the event that the Court grants all or part of the relief requested in the immediately preceding paragraph, that the Court also order Honey Baked California to specifically perform each of its obligations under the License Agreement that the Court finds Honey Baked California to have breached;

6.     That the Court order Honey Baked California to assign all HONEYBAKED-formative and HBH-formative domain names, and any other domain names containing reproductions, copies, colorable imitations, or abbreviations of, or references to, the Proprietary Marks, that Honey Baked California owns, has registered, or controls, to HBH Licensing, including, without limitation, the domain names *shophoneybaked.com* and *hbhca.com*;

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

7. That the Court order Honey Baked California to transfer control of all social media accounts used in its Business to HBH Licensing;

8. That the Court order Honey Baked California to pay Honey Baked USA for hams purchased by Honey Baked California from Honey Baked USA in April 2020, with interest on the amount past due;

9. That the Court enjoin Honey Baked California's infringement and unauthorized use of the HONEYBAKED marks;

10. That the Court award Honey Baked USA and HBH Licensing their attorneys' fees and costs incurred in connection with this litigation, pursuant to 15 U.S.C. § 1117 and the License Agreement, or as otherwise permitted by law; and

11. That the Court award Honey Baked USA and HBH Licensing such additional relief as it deems just and proper.

DATED: June 22, 2020

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

/s/ J. David Mayberry
J. DAVID MAYBERRY
KOLLIN J. ZIMMERMANN
MARK H. REEVES

*Attorneys for Defendants*

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT
FOR INJUNCTIVE RELIEF, AND COUNTERCLAIMS

# EXHIBIT 17

KILPATRICK TOWNSEND & STOCKTON LLP
KOLLIN J. ZIMMERMANN (State Bar No. 273092)
kzimmermann@kilpatricktownsend.com
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 248-3830
Facsimile: (310) 860-0363

J. DAVID MAYBERRY (admitted *Pro Hac Vice*)
dmayberry@kilpatricktownsend.com
The Grace Building
1114 Avenue of the Americas
New York, New York 10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

MARK H. REEVES (admitted *Pro Hac Vice*)
mreeves@kilpatricktownsend.com
Enterprise Mill
1450 Greene Street, Suite 230
Augusta, Georgia 30901
Telephone: (706) 823-4206
Facsimile: (706) 828-4488

Attorneys for Defendants
HONEY BAKED HAM COMPANY LLC and
HBH LICENSING, LLC

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| **HONEY BAKED HAM INC.**, a California corporation,<br><br>Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>**HONEY BAKED HAM COMPANY LLC**, a Delaware limited liability company, and **HBH LICENSING, LLC**, a Georgia limited liability company,<br><br>Defendants/Counterclaim Plaintiffs. | CASE NO.: 8:19-CV-01528-JVS (DFMx)<br><br>**DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS**<br><br>Assigned to the Hon. James V. Selna Courtroom 10C<br><br>Second Amended Complaint filed: September 18, 2020 |

1

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 315

Defendants Honey Baked Ham Company, LLC (Honey Baked USA), and HBH Licensing, LLC (HBH Licensing) (collectively, the Defendants), by their undersigned attorneys, answer the allegations of the Second Amended Complaint for Injunctive Relief (SAC, Doc. 134)[1] filed by Plaintiff Honey Baked Ham, Inc. (Plaintiff or Honey Baked California) as follows:

## NATURE OF ACTION

1.  The Defendants deny any allegation that the Plaintiff's rights exclude Honey Baked USA's collateral rights to engage in Mail Order Transactions with California residents under certain circumstances. The Defendants admit the remaining allegations in paragraph 1 of the SAC.

2.  The Defendants admit that the Plaintiff has, subject to the terms and conditions set forth in the License Agreement, an apparently true and correct copy of which is filed with the Court as Exhibit A to the SAC (Doc. 134-1), the exclusive right to operate or license others to operate retail specialty stores using the Honey Baked Ham Brand (HBH Brand or Brand) in the State of California. The License Agreement speaks for itself and is the best evidence of its contents, and the Defendants deny any characterization of that document that is inconsistent with its contents. The Defendants deny the remaining allegations in paragraph 2 of the SAC.

3.  The Defendants deny the allegations in paragraph 3 of the SAC.

4.  The Defendants deny the allegations in paragraph 4 of the SAC.

---

[1] Plaintiff has filed two versions of its Second Amended Complaint, neither of which was accompanied by the redlined version required by the Court's procedures, but both of which appear to be substantively identical. The Defendants are responding to the more recently filed version, Docket No. 134, which includes relevant exhibits.

2

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 316

## **PARTIES**

5.      The Defendants lack information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the SAC and deny those allegations on that basis.

6.      The Defendants admit the allegations in paragraph 6 of the SAC.

7.      The Defendants admit that Defendant HBH Licensing is a Georgia limited liability company with its principal place of business at the same address as Honey Baked USA, that HBH Licensing is a wholly owned subsidiary of Honey Baked USA, and that HBH Licensing shares office space with Honey Baked USA. The Defendants deny any remaining allegations in paragraph 7 of the SAC.

## **JURISDICTION AND VENUE**

8.      The allegations contained in Paragraph 8 of the SAC are legal conclusions to which no response is required. Nevertheless, the Defendants affirmatively state that they do not contest this Court's subject-matter jurisdiction.

9.      The Defendants admit that the value of the injunctive relief that the Plaintiff seeks satisfies the jurisdictional threshold of $75,000. The Defendants affirmatively deny that the Plaintiff is entitled to any of the relief that it seeks, including but not limited to attorneys' fees and costs.

10.     The allegations contained in paragraph 10 of the SAC are legal conclusions to which no response is required. Nevertheless, the Defendants affirmatively state that they do not contest this Court's personal jurisdiction over Honey Baked USA.

11.     The allegations contained in paragraph 11 of the SAC are legal conclusions to which no response is required. Nevertheless, the Defendants affirmatively state that they do not contest this Court's personal jurisdiction over HBH Licensing.

3

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

**Ex. 17 Page 317**

12.     The allegations contained in paragraph 12 of the SAC are legal conclusions to which no response is required. Nevertheless, the Defendants affirmatively state that they do not contest that venue is proper.

## **FACTUAL BACKGROUND**

### I.      Brief History of the Honey Baked Ham Brand and Online Distribution[2]

13.     The Defendants admit the Honey Baked Ham brand dates from at least 1957 when founder Harry J. Hoenselaar obtained a patent covering his spiral ham slicing machine and acquired the first Honey Baked Ham store in Detroit Michigan. The Defendants admit the Brand has expanded is now distributed nationwide via retail stores and online sales. The Defendants deny the remaining allegations in paragraph 13 of the SAC.

14.     The Defendants admit that as the Brand expanded nationwide, the HBH Brand business was allocated among the Honey Baked Ham founder's children, who operated the business in different regions. The Defendants deny the remaining allegations in paragraph 14 of the SAC.

15.     The Defendants admit that the Plaintiff, directly or through a predecessor, has been granted a series of exclusive licenses to operate or license the operation of specialty retail stores operating under the HBH Brand in California. The Defendants deny the remaining allegations in paragraph 15 of the SAC.

16.     The Defendants admit that, effective in 1988, ownership of the HBH Brand and related assets were transferred to HBH Limited Partnership, a Michigan limited partnership, which became the licensor to entities owned by four families descended from the founder and to Plaintiff. The Defendants deny the remaining allegations in paragraph 16 of the SAC.

---

[2] For the sake of clarity and ease of reference, the Defendants have included the section headings used in the SAC. This in no way implies the Defendants' agreement with the frequently argumentative, misleading, and inaccurate characterizations set forth in those headings.

4

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

**Ex. 17 Page 318**

17.     The Defendants admit that each licensee of the HBH Brand distributed printed paper catalogs to promote sales of HBH Brand products by mail order before the advent of the Internet, and later each licensee, with the approval of Licensor and subject to its control, developed online catalogue websites. The Defendants deny the remaining allegations in paragraph 17 of the SAC.

18.     The Defendants admit that HBH Limited Partnership developed a website at *www.honeybaked.com*, referred to in License Agreement and the SAC as the National Website, to act as a gateway for online shopping inquiries regarding HBH Brand products and for other reasons. The Defendants admit that the National Website included a state selector that redirected customers to regional websites based on the customer's interaction with the state selector. The Defendants admit that a customer who selected California in the National Website's state selector would have been redirected to Honey Baked California's catalogue website. The Defendants admit that HBH Limited Partnership did not make any retail sales itself. The Defendants deny all remaining allegations in paragraph 18 of the SAC.

19.     The Defendants admit that HBH Limited Partnership required its licensees to include "noindex no follow" instructions in their individual websites to attempt to prevent Internet search engines from listing the individual catalogue websites in search results. The Defendants deny all remaining allegations in paragraph 19 of the SAC.

20.     Paragraph 20 of the SAC attributes quotes to Honey Baked USA without identifying the alleged source of the quoted material. For that reason, the Defendants are unable to verify the accuracy of the alleged quotes and deny their accuracy on that basis. The Defendants deny the remaining allegations in paragraph 20 of the SAC.

21.     The Defendants lack information sufficient to form a belief as to the accuracy of the allegations in paragraph 21 of the SAC and deny those allegations on that basis.

5

22. The Defendants deny the allegations in paragraph 22 of the SAC.

23. The Defendants admit that each licensee of the HBH Brand managed its own pricing, orders, and inventory. The Defendants admit that certain products bearing the HBH Brand have a lengthy production process and cyclical market. The Defendants admit that the production of half and whole hams ranging from six to sixteen pounds can takes months to complete. The Defendants lack information sufficient to form a belief as to the remaining allegations in paragraph 23 of the SAC and deny those allegations on that basis.

II. Plaintiff's License Agreement

24. The Defendants admit that the Plaintiff entered into its current License Agreement with HBH Limited Partnership as licensor effective July 1, 2015, and that what appears to be a true and correct copy of that License Agreement is attached to the SAC as Exhibit A. The Defendants deny all remaining allegations in paragraph 24 of the SAC.

25. The Defendants admit that the words appearing in quotation marks in paragraph 25 of the SAC, excluding the addition of the word "conduct" as denoted by the inclusion of brackets in the SAC, constitute accurate but incomplete quotations of the cited provisions of the License Agreement. The License Agreement speaks for itself and is the best evidence of its contents, and the Defendants deny any characterization of the document that is inconsistent with its contents. The Defendants deny all remaining allegations in paragraph 25 of the SAC, specifically including but not limited to any allegation that the License Agreement gives the Plaintiff an exclusive right to make online sales to customers in California.

26. The Defendants admit that the Plaintiff uses the domain name *shophoneybaked.com* for online sales and other purposes. The Defendants deny that the Plaintiff has used that domain name with approval of HBH Limited Partnership and without objection from HBH Licensing. The Defendants deny that the Plaintiff's

online sales have at all times been in substantial compliance with the requirements of § 6(b)(xi) of the License Agreement.

27. The Defendants admit that the words appearing in quotation marks in paragraph 27 of the SAC constitute accurate but incomplete quotations of the cited provision of the License Agreement. The License Agreement speaks for itself and is the best evidence of its contents, and the Defendants deny any characterization of the document that is inconsistent with its contents. The Defendants deny any and all remaining allegations in paragraph 27 of the SAC, specifically including but not limited to any allegations that the Plaintiff's interweaving of selectively chosen quotations from discrete provisions of the License Agreement accurately reflect the intent or context of that document.

III. Consolidation of Family Ownership

28. The Defendants admit the allegations in paragraph 28 of the SAC.

29. The Defendants admit that as of May 4, 2015, Honey Baked USA acquired substantially all of the assets of HBH Limited Partnership and the remaining family regional licensees, except rights under the Plaintiff's License Agreement, which was transferred to HBH Licensing. The Defendants admit that Honey Baked USA became the owner of the HBH Brand, all related intellectual property, and the National Website. The Defendants deny any and all remaining allegations of paragraph 29 of the SAC.

30. The Defendants admit that HBH Licensing acquired HBH Limited Partnership's rights under the License Agreement as of May 4, 2015, and that HBH Licensing is entitled to receive all payments from the Plaintiff that would otherwise go to HBH Limited Partnership pursuant to the License Agreement.

31. The Defendants deny the allegations in paragraph 31 of the SAC.

IV. HBH USA's Efforts to Infringe on HBH California's Exclusive Territory

7

32.   The Defendants admit that after May 4, 2015, Honey Baked USA consolidated the former family regional online catalogue websites into a single catalogue at the domain *honeybakedonline.com*. The Defendants admit that before July 22, 2019, Honey Baked USA consulted with a website design and marketing company called Proving Ground LLC, dba Dragon Army, to help with the operation and design of various websites owned and operated by Honey Baked USA. The Defendants deny the remaining allegations in paragraph 32 of the SAC.

33.   The Defendants deny the allegations in paragraph 33 of the SAC.

34.   The Defendants deny the allegations in paragraph 34 of the SAC.

35.   The Defendants deny the allegations in paragraph 34 of the SAC.

36.   The Defendants admit that Honey Baked USA sent letters to the Plaintiff on July 22 and 30, 2019, and that what appear to be true and correct copies of those letters have been filed as Exhibits B and C to the SAC, *see* Docs. 92-2 & 92-3. Those documents speak for themselves and are the best evidence of their content, and the Defendants deny any characterization of those documents that is inconsistent with their contents.

37.   The Defendants admit that the language in quotation marks in paragraph 37 of the SAC, with the exception of the substitution of the word "Plaintiff's" as indicated in brackets within the first quotation, accurately but incompletely quotes the text of the cited documents. The Defendants admit that the July 22, 2019, letter referred to a "loss of sales" for the Plaintiff and set forth measures to mitigate any such loss. The documents referenced in paragraph 37 of the SAC speak for themselves and are the best evidence of their content, and the Defendants deny any characterization of those documents inconsistent with their content.

38.   The Defendants admit that the Plaintiff is not allowed to index its shopping website unless the Plaintiff complies with certain requirements set forth in the Digital Guidelines, Polices, and Procedures promulgated by Honey Baked USA,

8

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 322

which it has not done. The Defendants deny all remaining allegations in paragraph 38 of the SAC.

39.     The Defendants admit that the language in quotation marks in paragraph 39 of the SAC, with the exception of the substituted language denoted by brackets within the quotation, accurately but incompletely quotes the cited letter. The July 30, 2019, letter speaks for itself and is the best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its content. The Defendants deny stating an attempt to misappropriate all of the Plaintiff's online business.

40.     The Defendants deny the allegations of paragraph 40 of the SAC.

V.     This Litigation to Date

41.     The Defendants admit that the Plaintiff filed this action on August 7, 2019, and that the initial complaint sought the relief described in paragraph 41 of the SAC. The Defendants deny that the Plaintiff is entitled to any such relief. The Defendants deny that the License Agreement grants the Plaintiff exclusive rights to the California market.

42.     The Defendants admit that this Court initially granted a temporary restraining order prohibiting Honey Baked USA from removing the state selector mechanism from the National Website pending further proceedings in this case. The Defendants admit that the Court subsequently imposed a self-expiring preliminary injunction and then dissolved that preliminary injunction provided that the National Website be maintained in its then-existing manner unless and until the fail-safe system described by Honey Baked USA's expert, Jonathan Hochman, could be implemented such that there was a seamless transition which ensured that at all times California customers were routed to the Plaintiff's website. The Defendants admit that the Court ordered Honey Baked USA to submit monthly status reports regarding

9

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 323

its progress. The Defendants deny any remaining allegations in paragraph 42 of the SAC.

43. The Defendants admit that the March 2020 Website Transition Status Report, Doc. 83, informed the Court that Honey Baked USA merged the National Website with its shopping website and deployed its new and improved state selector modal on February 13, 2020. The Defendants admit that the language in quotation marks in paragraph 43 of the SAC accurately but incompletely quotes the March 2020 Status Report. The March 2020 Status Report speaks for itself and is the best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its contents.

44. The Defendants deny that hbhcollection.com, the website through which Honey Baked USA sells HBH Brand non-food products, is a subdomain of honeybaked.com. The Defendants admit the remaining allegations in paragraph 44 of the SAC.

VI. Defendants' Evasion of This Court's Order

45. The Defendants admit that both *honeybaked.com* and *shipping.honeybaked.com* include state selector mechanisms. The Defendants admit that those state selector mechanisms function. The Defendants deny any remaining allegations in paragraph 45 of the SAC.

46. The Defendants admit that if the state selector mechanism does not detect a pre-existing cookie indicating a visitor's residence, the visitor is required to interact with the state selector mechanism to identify their state of residence. The Defendants admit that if the user identifies California as its state of residence, a cookie is placed on the user's web browser indicating that selection (a CA cookie) and the user is redirected to the Plaintiff's shopping website at *shophoneybaked.com*. The Defendants admit that if the user identifies any other state as their residence, a cookie so indicating is placed on their web browser (a USA cookie), and the user is

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 324

redirected to Honey Baked USA's shopping website at *shipping.honeybaked.com*. The Defendants deny any remaining allegations in paragraph 46 of the SAC.

47. The Defendants admit that if a user's web browser already has a cookie indicating their state of residence, they are not required to interact with the state selector mechanism again and are instead redirected to the appropriate shopping website based on their state of residence as identified by the cookie. The Defendants deny any remaining allegations in paragraph 47 of the SAC.

48. The Defendants admit that Honey Baked USA has the legal right to modify the state selector in its discretion without notice to the Plaintiff. The Defendants lack information sufficient to form a belief as to the remaining allegations in paragraph 48 of the SAC and deny those allegations on that basis.

49. The Defendants deny the allegations of paragraph 49 of the SAC.

50. The Defendants admit that Honey Baked USA has distributed emails to existing customers within its customer database containing direct links (Targeted Links) to *shipping.honeybaked.com* and that customers who clicked those links would be taken directly to *shipping.honeybaked.com*. The Defendants deny all remaining allegations in paragraph 50 of the SAC.

51. The Defendants deny the allegations in paragraph 51 of the SAC.

52. The Defendants deny the allegations in paragraph 52 of the SAC.

53. The Defendants deny the allegations in paragraph 53 of the SAC.

54. The Defendants admit that HBH Licensing has informed the Plaintiff that social media accounts, such as Facebook, Instagram, and Twitter, representing the HBH Brand must be subject to control and/or pre-approval of HBH Licensing in accordance with the License Agreement and the Brand social media guidelines. The Defendants admit that the Plaintiff currently does not have approval to operate any social media accounts involving the HBH Brand. The Defendants deny the remaining allegations in paragraph 54 of the SAC.

55.     The Defendants admit that a number of customers have voiced legitimate complaints about the Plaintiff and online orders and deliveries in California and elsewhere on social media accounts maintained by the Defendants, as well as numerous private and third party social media accounts and websites, and on the National Website. The Defendants deny the remaining allegations in paragraph 55 of the SAC.

56.     The Defendants deny the allegations in paragraph 56 of the SAC as stated.

VII.    <u>HBH USA's Attempts to Obstruct Plaintiff's Supply</u>

57.     The Defendants admit that, under the express terms of the License Agreement, the Plaintiff is required to purchase cured hams, turkey breasts, and certain other products identified by the HBH Brand from certain Selected Suppliers approved by HBH Licensing. The Defendants affirmatively state that the License Agreement speaks for itself and is the best evidence of its content, and they deny any characterization of that document inconsistent with its content. The Defendants admit that the Plaintiff is free to order independently from Selected Suppliers, and is not required to seek approval from the Defendants for its communications with Selected Suppliers regarding orders. The Defendants admit that Selected Suppliers are free to supply the Plaintiff independently and to communicate with the Plaintiff regarding orders without need to seek approval from the Defendants. The Defendants deny the remaining allegations in paragraph 57 of the SAC.

58.     The Defendants admit the allegations in paragraph 58 of the SAC.

59.     The Defendants admit that the language in quotation marks in paragraph 59 of the SAC accurately but incompletely quotes an email sent from Dan McAleenan, Honey Baked USA's Senior Vice-President of Store Operations, to Richard Gore, Plaintiff's Vice-President, on April 20, 2020. That document speaks for itself and is the best evidence of its content, and the Defendants deny any

12

characterization of that document inconsistent with its content. The Defendants deny that they have failed to make the necessary introduction to Tyson. The Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in paragraph 59 of the SAC and deny those allegations on that basis.

60. The Defendants admit that Honey Baked USA put the Plaintiff in touch with Fresh Mark on April 15, 2020, that Fresh Mark told the Plaintiff that it had 20,000 lbs. of sliced, bone-in ham available and that Fresh Mark offered to provide all of that product to the Plaintiff immediately. Fresh Mark also offered to provide additional, unsliced hams that it had on hand to the Plaintiff immediately. The Defendants admit that pre-sliced hams are an integral part of the HBH Brand product line and feature prominently in HBH Brand marketing. The Defendants deny any and all remaining allegations in paragraph 60 of the SAC.

## First Claim for Relief

## Anticipatory Breach of Contract

61. The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the SAC.

62. Paragraph 62 of the SAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 62 of the SAC.

63. The Defendants admit that the License Agreement gives the Plaintiff the exclusive right and license to use the HBH Brand trademarks and trade dress to promote and operate HBH retail specialty stores and to market and sell HBH Branded products and certain other products through such specialty retail stores in the State of California. The Defendants admit that the License Agreement gives the Plaintiff the right to fulfill orders requiring the shipment of HBH Brand food to customers in California, including online orders. The Defendants admit that the language appearing in quotation marks in paragraph 63 of the SAC accurately but incompletely

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

**Ex. 17 Page 327**

quotes portions of the cited section of the License Agreement. The Defendants deny that the License Agreement grants the Plaintiff an exclusive right to fulfill orders requiring the shipment of HBH Brand food to customers in California. The License Agreement speaks for itself and is best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its contents. The Defendants deny any remaining allegations in paragraph 63 of the SAC.

64.     The Defendants admit that in July 2019, Honey Baked USA informed the Plaintiff that it intended to remove the state selector mechanism from the National Website. The Defendants deny the remaining allegations in paragraph 64 of the SAC.

65.     The Defendants admit that they subsequently undertook to implement a fail-safe state-selector mechanism to direct customers identifying themselves as California customers exclusively to the Plaintiff's website for purchases. The Defendants deny the remaining allegations in paragraph 65 of the SAC.

66.     Paragraph 66 of the SAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 66 of the SAC.

67.     The Defendants lack information sufficient to form a belief as to whether the Plaintiff's online store depends heavily on the National Website to capture potential customers and denies those allegations on that basis. The Defendants deny all remaining allegations in paragraph 67 of the SAC.

68.     The Defendants deny the allegations in paragraph 68 of the SAC.

69.     The Defendants deny the allegations in paragraph 69 of the SAC.

70.     The Defendants deny the allegations in paragraph 70 of the SAC.

The Defendants deny that the Plaintiff is entitled to any of the requested relief.

## **Second Claim for Relief**

## **Breach of Contract**

14

71.     The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the SAC.

72.     Paragraph 72 of the SAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 72 of the SAC.

73.     Paragraph 73 of the SAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 73 of the SAC.

74.     The Defendants admit that the License Agreement gives the Plaintiff the exclusive right and license to use the HBH Brand trademarks and trade dress to promote and operate HBH retail specialty stores and to market and sell HBH Branded products and certain other products through such retail specialty stores in the State of California. The Defendants admit that the License Agreement gives the Plaintiff the right to fulfill orders requiring the shipment of HBH Brand food to customers in California, including online orders. The Defendants deny that the License Agreement grants the Plaintiff an exclusive right to fulfill orders requiring the shipment of HBH Brand food to customers in California. The License Agreement speaks for itself and is best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its contents. The Defendants deny any remaining allegations in paragraph 74 of the SAC.

75.     The Defendants admit that the language appearing in quotation marks in paragraph 75 of the SAC accurately but incompletely quotes language appearing in the cited provision of the License Agreement. The License Agreement speaks for itself and is best evidence of its content, and the Defendants deny any characterization of that document inconsistent with its contents. The Defendants deny any remaining allegations in paragraph 75 of the SAC.

76.     The Defendants deny the allegations in paragraph 76 of the SAC.

15

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

The Defendants deny that the Plaintiff is entitled to any of the requested relief.

### Third Claim for Relief

### Breach of Implied Covenant

77.    The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the SAC.

78.    Paragraph 78 of the SAC states a legal conclusion to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 78 of the SAC.

79.    The Defendants admit that HBH Licensing has at all times been aware of Honey Baked USA's actions with regard to the National Website and the state selector mechanism. The remaining allegations in paragraph 79 of the SAC state legal conclusions to which no response is required. To the extent that a response is required, the Defendants deny the remaining allegations in paragraph 79 of the SAC.

80.    Paragraph 80 of the SAC states legal conclusions to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 80 of the SAC.

81.    Paragraph 81 of the SAC states legal conclusions to which no response is required. To the extent that a response is required, the Defendants deny the allegations in paragraph 81 of the SAC.

The Defendants deny that the Plaintiff is entitled to any of the requested relief.

### Fourth Claim for Relief

### Unfair Competition

### California Business & Professions Code § 17200 et seq.—Unfair Conduct

### (against HBH USA)

82.    The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the SAC.

83.    The Defendants deny the allegations in paragraph 83 of the SAC.

16

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 330

84.     The Defendants admit that the spiral-sliced hams sold under the HBH Brand are premium products for special occasions. The Defendants admit, based on information and belief, that many years ago the only commercially available spiral-sliced hams were those sold under the HBH Brand. The Defendants admit that the block quotation in paragraph 83 of the SAC, notwithstanding omissions indicated by brackets, accurately but incompletely quotes language found on the National Website at https://www.honeybaked.com/content/spiral-ham. The Defendants admit, based on information and belief, that many consumers have a preference for HBH Brand spiral sliced hams and that HBH Brand spiral sliced hams are an important part of many families' Easter, Thanksgiving, and Christmas traditions. The Defendants admit that Consumer Reports has, at some point, comparatively reviewed different brands of spiral-sliced hams. The Defendants deny the allegations set forth in paragraph 84 of the SAC.

85.     The Defendants admit that HBH Brand spiral-sliced hams are often purchased for holidays and special occasions. The Defendants admit that there are approximately 447 HBH Brand stores nationwide and that the HBH Brand retail store nearest Manhattan is in West Caldwell, New Jersey. The Defendants admit, based on information and belief, that many consumers enjoy browsing or shopping for products online. The Defendants deny the remaining allegations in paragraph 85 of the SAC.

86.     The Defendants deny the allegations in paragraph 86 of the SAC.

87.     The Defendants admit that paragraph 87 of the SAC, notwithstanding modifications indicated by brackets, accurately but incompletely quotes language from paragraph 13 of the Defendants' Second Amended Counterclaims and that this language is not "mere bluster." The Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in paragraph 87 of the SAC, and on that basis deny such allegations.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

88.     The Defendants deny the allegations in paragraph 88 of the SAC.

89.     The Defendants admit that Honey Baked USA has the right, under certain circumstances, to fulfill online orders for HBH Brand products for delivery in California. The Defendants admit that Honey Baked USA has fulfilled a number of online orders of HBH Branded products and associated non-branded products for delivery in California since the commencement of the License Agreement. The Defendants deny the remaining allegations in paragraph 89 of the SAC.

90.     The Defendants admit that under the License Agreement, Honey Baked California has the right, under certain circumstances, to fulfill online orders for HBH Branded products outside of California. The Defendants deny the remaining allegations in paragraph 90 of the SAC.

91.     The Defendants lack information sufficient to form a belief as to the truth of the remaining allegations in paragraph 91 of the SAC, and on that basis deny such allegations.

92.     The Defendants deny the allegations in paragraph 92 of the SAC.

93.     The Defendants admit that HBH Licensing is a wholly-owned subsidiary of Honey Baked USA. The Defendants admit that under the Digital Guidelines, Policies, and Procedures promulgated by Honey Baked USA, the Plaintiff is not allowed to index its website with Internet search engines unless it complies with certain requirements and protocols, which the Plaintiff has chosen not to do. The Defendants deny the remaining allegations in paragraph 93 of the SAC.

        a.     The Defendants admit that the Plaintiff's non-indexed online sales website will not display in search engine results in the same way that it would if Plaintiff's online sales website were indexed. The Defendants deny the remaining allegations in sub-paragraph 93(a) of the SAC as stated.

18

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 332

b.     The Defendants admit that first time visitors to the National Website are presented with the state selector asking "What state do you live in?". The Defendants deny the remaining allegations in sub-paragraph 93(b) of the SAC.

c.     The Defendants deny the allegations in sub-paragraph 93(c) of the SAC.

d.     The Defendants deny the allegations in sub-paragraph 93(d) of the SAC.

The Defendants deny any remaining allegation in paragraph 93 of the SAC and any of its sub-paragraphs.

94.     The Defendants admit that, under the License Agreement, Honey Baked California may only sell hams obtained from certain approved vendors. The Defendants deny the remaining allegations in paragraph 94 of the SAC.

95.     The Defendants deny the allegations in paragraph 95 of the SAC.

96.     The Defendants deny the allegations in paragraph 96 of the SAC.

97.     The Defendants deny the allegations in paragraph 97 of the SAC.

The Defendants deny that the Plaintiff is entitled to any of the requested relief.

## Fifth Claim for Relief

## Unfair Competition

## California Business & Professions Code § 17200 et seq.—Fraudulent Conduct (against HBH USA)

98.     The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the SAC.

99.     The Defendants admit that Honey Baked USA owns and operates the National Website and is responsible for the implementation and operation of the National Website's state selector mechanism. To the extent that paragraph 99 of the SAC incorporates by references paragraphs 43-52 of the SAC, the Defendants

19

1  incorporate by reference their responses to those paragraphs. The Defendants deny

2  the remaining allegations in paragraph 99 of the SAC.

3      100.  The Defendants admit that Honey Baked USA worked with consultants

4  Jonathan Hochman and Dragon Army to design and implement the state selector

5  between October 1, 2019, and February 13, 2020, and that Jo Ann Herold and Bill

6  Bolton were involved in those efforts. Honey Baked USA admits that Mr. Hochman

7  tested the state selector before the deployment of the redesigned National Website on

8  or about February 13, 2020, and that he confirmed that it functioned in accordance

9  with his design. The Defendants deny any remaining allegations in paragraph 100 of

10  the SAC.

11      101.  The Defendants deny the allegations in paragraph 101 of the SAC.

12      102.  The Defendants admit that the state selector places a cookie on

13  customers' internet browsers based on their response to the state selector's question

14  "What state do you live in?" and that that cookie has a duration of one year. The

15  Defendants admit that, unless overwritten or deleted, the cookie will continue to have

16  effect for one year from the date that it is placed on a customer's web browser. The

17  Defendants admit that the cookie is designed to automatically redirect customers to

18  the appropriate online catalog website in subsequent visits based on their answer to

19  the question "What state do you live in?". The Defendants deny any remaining

20  allegations in paragraph 102 of the SAC.

21      103.  The Defendants admit that if a customer responds to the question "What

22  state do you live in?" by identifying as a resident of a state other than California, that

23  customer will have a USA cookie placed on their web browser and will be redirected

24  to Honey Baked USA's online shopping site for one year thereafter without being

25  forced to repeatedly interact with the state selector, assuming they do not delete the

26  USA cookie or use a different web browser to access the National Website. The

27  Defendants deny the remaining allegations in paragraph 103 of the SAC.

28

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 334

104.    The Defendants admit that Honey Baked USA from time to time sends promotional emails to consumers outside of California that include direct links to Honey Baked USA's online shopping catalog, that a customer who clicks on one of those links will go directly to Honey Baked USA's online catalog without seeing the state selector or being asked "What state do you live in?", and that customers who click on those links will have a USA cookie with a one-year duration placed on their web browser. The Defendants admit that this USA cookie will overwrite any preexisting cookie on the customer's web browser and that the customer will not have to see the state selector or answer the question "What state do you live in?" again as long as they visit the National Website through a web browser with an active USA cookie. The Defendants deny the remaining allegations in paragraph 104 of the SAC.

105.    The Defendants admit that Honey Baked USA has sent promotional emails containing direct links to its online shopping catalog to consumers since February 13, 2020, and that it continues to do so. The Defendants admit that prior to March 16, 2020, they sent such emails to a number of existing Honey Baked USA customers who have previously identified themselves to Honey Baked USA as residing in California. The Defendants deny any remaining allegations in paragraph 105 of the SAC.

106.    The Defendants deny the allegations in paragraph 106 of the SAC.

107.    The Defendants deny the allegations in paragraph 107 of the SAC.

The Defendants deny that the Plaintiff is entitled to any of the requested relief.

### Sixth Claim for Relief

### Intentional Interference with Contract

### (against HBH USA)

108.    The Defendants incorporate their prior responses to the allegations contained in Paragraphs 1 to 60 of the SAC.

109.    The Defendants admit the allegations in paragraph 109 of the SAC.

21

110.   The Defendants admit the allegations in paragraph 110 of the SAC.

111.   The Defendants deny all allegations in paragraph 111 of the SAC, including all sub-paragraphs thereof.

112.   The Defendants deny all allegations in paragraph 112 of the SAC.

113.   The Defendants deny all allegations in paragraph 113 of the SAC.

**Plaintiff's Prayer for Relief**

The Defendants deny that the Plaintiff is entitled to any of the relief requested.

**DEFENSES**

The Defendants affirmatively deny any and all other allegations, inferences, or implications arising from any statement in the SAC to the extent that such has not been affirmatively admitted by the Defendants in their answer.

The Defendants further propound the following separate and additional defenses. By doing so, the Defendants in no way concede that they have the burden of proof/and or burden of persuasion with respect to any of the following defenses.

**First Defense**

1.   The Plaintiff's Fourth Count fails to state any claim upon which relief may be granted.

**Second Defense**

2.   The Plaintiff's requests for injunctive relief are barred by the lack of any irreparable harm from the purported conduct, if any at all, by the Defendants.

3.   The Plaintiff's requests for injunctive relief are further barred because, to the extent that the Plaintiff can demonstrate that it has suffered any injury from the Defendant's purported conduct, such injury is adequately remedied at law.

**ADDITIONAL DEFENSES**

4.   In addition to the enumerated defenses identified above, the Defendants reserve the right to raise any additional defenses that may become available or appropriate.

# COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Defendants and Counterclaim Plaintiffs Honey Baked Ham Company, LLC (Honey Baked USA) and HBH Licensing, LLC (HBH Licensing or Licensor), assert the following counterclaims against Plaintiff and Counterclaim Defendant Honey Baked Ham, Inc. (Honey Baked California or Licensee):

## Parties

1.      Counterclaim Defendant Honey Baked California is a California corporation with its principal place of business in Irvine, California.

2.      Counterclaim Plaintiff Honey Baked USA is a Delaware limited liability company with its principal place of business in Alpharetta, Georgia.

3.      Counterclaim Plaintiff HBH Licensing is a Georgia limited liability company with its principal place of business in Alpharetta, Georgia. HBH Licensing is a wholly owned subsidiary of Honey Baked USA.

## Jurisdiction & Venue

4.      This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1332, and 1338.

5.      This Court has personal jurisdiction over Honey Baked California because it is a California corporation with its principal place of business in California.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to this action occurred in this district and Honey Baked California's principal place of business lies within this district.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 337

## **Nature of Counterclaims**

7.     Honey Baked USA is the owner of trademarks, trade names, trade dress, and other intellectual property associated with the HBH Brand (the Proprietary Marks).[3]

8.     HBH Licensing is a wholly owned subsidiary of Honey Baked USA that is authorized to license the Proprietary Marks to Honey Baked California. Pursuant to a License Agreement (Doc. 92-1) entered into with HBH Limited Partnership and transferred to HBH Licensing, Honey Baked California, has certain, limited rights to use the Proprietary Marks and certain duties and obligations to HBH Licensing as specified in that License Agreement.

9.     These counterclaims involve numerous breaches of Honey Baked California's duties and obligations under the License Agreement. Based on those breaches, HBH Licensing seeks a declaratory judgment that it has good cause to terminate the License Agreement prior to the expiration of its term. Honey Baked California's breaches of its obligations under the License Agreement include, but are not necessarily limited to:

- Repeated failure to adhere to Brand standards by preparing and shipping perishable food in interstate commerce from food facilities not registered with the FDA or USDA;

- Repeated failure to adhere to applicable laws and Brand standards regarding food labeling, including but not limited to allergy warnings;

- Engaging in gross violations of license requirements, Brand standards and the California Retail Food Code when fulfilling Easter 2020 food orders that materially and unfavorably affected the operation and reputation of the HBH Brand and System. This harm is real and substantial, as evidenced by the flood of customer complaints

---

[3]   *See* License Agreement ¶ 1(a) and Exhibit A to License Agreement.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 338

concerning Honey Baked California's egregious failures to use appropriate packaging and shipping materials and techniques to preserve the safety and quality of the food it sold to consumers during the 2020 Easter holiday season and its inability to fulfil prepaid orders in time for the holiday meal. Many of those outraged customers indicated that have been longtime customers, yet they were so appalled by Honey Baked California's shocking violation of their holiday and family traditions that they vowed they would never again make purchases from the Brand. Such loss of Brand goodwill is irreparable and reflects materially and unfavorably upon the operation and reputation of the franchise business and System;

- Applying the Proprietary Marks to food products not approved for sale under the Brand, the manufacturers and sources of which have not been approved by HBH Licensing;

- Failing to comply with system requirements relating to use of the Proprietary Marks on the Internet ("Digital Guidelines, Policies and Procedures" or "Digital Guidelines"), including using unapproved domain names containing the Proprietary Marks, unapproved social media accounts using the Proprietary Marks, failing to use titles and required metatags that clearly define the purpose, territorial limitations and other differentiating features distinguishing the Honey Baked California website from other sales portals using the Proprietary Marks on the National Website to confuse consumers and market its products outside its licensed territory;

- Failing to comply with required Payment Card Industry Data Security Standards on its website as required by the Digital Guidelines;

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 339

- Repeatedly failing to follow Brand standards regarding use of approved graphics, signage, and packaging; and

- Failing to pay royalties due and owing under the License Agreement.

10.    Despite HBH Licensing's years of repeated, good faith efforts to work with Honey Baked California to bring it in line with food safety, quality control, and other Brand standards, Honey Baked California repeatedly has flouted, ignored, and violated its obligations under the License Agreement, causing irreparable harm to the Brand.

11.    By repeatedly and willfully flouting its legal obligations under the License, Honey Baked California has forfeited the right to use the Honey Baked Brand. HBH Licensing therefore respectfully requests that the Court enter a declaratory judgment that HBH Licensing has good cause and is entitled to terminate the License Agreement.

12.    In addition to HBH Licensing's claims based on Honey Baked California's breaches of the License Agreement, Honey Baked USA asserts additional counterclaims against Honey Baked California based on the latter's unauthorized and unapproved use of HBH Brand marks in violation of federal law.

## **General Allegations**

13.    Honey Baked Ham has been a family tradition for three generations. Millions of consumers mark the most important milestones in their lives with their loved ones by sharing a Honey Baked Ham as the centerpiece of their table. The Brand is quite simply adored.

14.    The founder and his family descendants have spent three generations painstakingly building the Brand into the commercial success and position of prominence that it holds in the consumer's imagination today.

15.    This success did not occur purely by happenstance. The owner of the Brand always has held itself and its licensees to lofty standards that befit a premium

26

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

**Ex. 17 Page 340**

brand. The HBH Brand is a premium brand for special occasions, and the execution and performance of its lofty standards is crucial to its ongoing success.

16.     The Honey Baked System is made up of approximately: (a) 201 retail specialty stores owned by Counterclaim Plaintiffs; (b) 215 retail specialty stores owned and operated by 145 independent franchisees (excluding Honey Baked California's retail stores); (c) an online catalogue owned by Counterclaim Plaintiffs; (d) 36 retail stores in California operated or licensed by Honey Baked California, as a licensee; and (e) a separate online catalogue owned by Honey Baked California.

17.     Since 2015, when the family owners of the business decided to pool their shared resources into a single operating company, the owner of the Brand has moved with single minded determination to promote uniform standards of quality and operations system wide and to grow the business in a highly competitive market for seasonal customers of gourmet food.

18.     Unfortunately, Honey Baked California refuses to fulfill its end of the bargain; it wants the benefits of the License Agreement but not the obligations. It has decided that compliance with its contractual obligations to be part of a national system is not mandatory but optional, and that System standards must be followed only if it so chooses and then on a timetable it dictates. Honey Baked California has actively thwarted all efforts to bring it in line with the rest of the System.

19.     Honey Baked California has maximized its profits to the detriment of the quality and uniformity of operations required under the Brand. The results speak for themselves.

20.     During the Easter 2020 holiday, from an website operated under the domain name *shophoneybaked.com*, Honey Baked California packaged, labeled, and shipped by common carrier side dishes, condiments, and other food products branded with the HONEYBAKED trademarks that arrived to consumers like this:

27

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 341

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CASE NO. 8:19-CV-01528  JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20





The Honey Baked Ham Company

I have yet to receive an email back or a refund for my ham. So I'm putting you on blast Honey Baked. We will never use you again and I hope this will influence others to stay away. After getting a confirmation of our order for one ham ($67.95) we were told we would be notified when it shipped. Our ham was due to arrive April 10th. We receive NO shipping notification and we did not receive a ham. We received our ham a day late on 4/11 (still no shipping notification and it was unrefrigerated wrapped only in a shopping bag and bubble wrap. The ham was leaking fluids everywhere including all the way to the bottom of the box. This makes me conclude that the ham was sitting in a warehouse or a truck overnight as it was not delivered on time. This also made the ham completely inedible. Side note: A few years back honey baked actually did this same exact thing on Easter (late delivery) and we were unable to eat our ham because we left out of town the day after it was supposed to arrive. I had to have a friend pick up the ham on our doorstep since we had already left. Thanks for ruining our Easter dinner once again.

21.     Licensee has treated the Brand and its customers shabbily and with disrespect. As a result, customers in the state of California are not receiving the benefits of the quality and food safety standards that the rest of the Honey Baked System enjoy.

22.     Licensee repeatedly and recalcitrantly has obstructed Licensor's reasonable efforts to create a nationwide system of Honey Baked stores with uniform methods of operation and standards of quality.

23.     Licensee's conduct reflects materially and unfavorably upon the operation and reputation of the franchise system.

24.     Licensee repeatedly has failed to comply with the requirements of the License Agreement and follow Brand standards.

25.     For these reasons, immediate termination of Honey Baked California's right to use the Brand is justified.

I.     <u>The Parties' rights and obligations under the License Agreement.</u>

30

26.     Section 2(a) of the License Agreement grants to Honey Baked California "the exclusive right and license to use the Proprietary Marks and the System" to (i) promote and operate HONEYBAKED retail stores in California; (ii) promote and sell "Branded Products" and "Non-Branded Products" through HONEYBAKED retail stores in California (as defined in Exhibits B and C to the License Agreement, respectively); and to conduct "Mail Order Transactions," to the extent permitted by Section 6(b)(xi).[4] License Agreement § 2(a).

27.     "Proprietary Marks" include: (a) the trademark and service marks identified in Exhibit A to the License Agreement,[5] (b) the trade names "The Honey Baked Ham Company" and "Honey Baked Ham Co."; and (c) "other trademarks, service marks, proprietary symbols, logos, advertising slogans, label and wrapper designs, and trade dress specified by Licensor from time to time." License Agreement § 1(a), Ex. A to License Agreement.

28.     Honey Baked California may only use the Proprietary Marks on those "Branded Products" that are identified in Exhibit B of the License Agreement unless it obtains HBH Licensing's prior written approval, which HBH Licensing may withhold in its sole discretion.  License Agreement ¶¶ 1(e)(iii); 2(a); 6(a); 6(a)(i); Ex. B to License Agreement.

29.     Should Honey Baked California like to propose to offer a new product as a Branded Product, or a new supplier to supply a Branded Product, Honey Baked California must request HBH Licensing's approval and provide it with any

---

[4]  Counterclaim Plaintiffs use capitalized terms herein to indicate terms that are defined in the License Agreement, Doc. 92-1.
[5] Which include U.S. Reg. Nos. 1,384,504 (HONEY BAKED HAM); 1,861,924 (HONEYBAKED); 3,049,064 (HONEYBAKED); 2,126,500 (THE HONEYBAKED HAM COMPANY); 2,136,466 THE HONEYBAKED HAM COMPANY & Design); 2,150,993 (THE HONEYBAKED HAM COMPANY & Design); 3,452,316 (THE HONEYBAKED HAM COMPANY & Design); and 2,534,573 (THE HONEYBAKED HAM CO. AND CAFÉ) (the "Registered Proprietary Marks").

31

information HBH Licensing requests, including product samples. License Agreement ¶ 6 (viii). HBH Licensing may grant, deny, or revoke approval of a product or a supplier, in its sole discretion, for any reason. *Id.*

30. The License Agreement also permits Honey Baked California to sell through its HoneyBaked Outlets in California and Mail Order Transactions certain food products or related products sourced from third party suppliers that are identified in Exhibit C to the License Agreement. Those "Non-Branded Goods" may not use the Proprietary Marks. License Agreement ¶¶ 1(vi); 2(a); 6(a)(i); 6(b)(vii); Exhibit C to License Agreement.

31. The License Agreement expressly provides that any use of the Proprietary Marks not authorized by its Section 6(a), including use of the marks for products not identified as Branded Products if not otherwise authorized by HBH Licensing, constitutes a material breach of the Agreement. License Agreement § 6(a).

32. The following paragraphs set forth a partial list of Honey Baked California's obligations under the License Agreement that are relevant to HBH Licensing's counterclaims.

33. Section 4(a) of the License Agreement provides, in part:

Licensee shall pay to Licensor a royalty at the time and in the manner set forth in Section (b) below, equal to three percent (3%) of the Gross Sales of Licensee and all sublicensees of Licensee (the "Royalty").

34. Section 4(b) of the License Agreement provides, in part:

(i) On or before the 15th day of each month, Licensee shall pay to Licensor an amount equal to (i) One Dollar and Forty-Seven Cents ($1.47), as increased pursuant to Section 4(b)(ii) hereof, per Bone-in Ham purchased by Licensee and/or any of its sublicensees during the previous calendar month

32

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 346

("Bone-in Ham Royalty") plus (ii) Thirty Eight Cents ($.38), as increased pursuant to Section 4(b)(iii), per Boneless Ham purchased by Licensee and/or any of its sublicensees during the previous calendar month ("Boneless Ham Royalty"). The Bone-In Ham Royalty and Boneless Ham Royalty shall collectively be referred to as the "Ham Royalty."

(ii)     The Bone-in Ham Royalty shall be adjusted annually on July 1 ("Bone-in Ham Adjustment Date") to reflect the increase or decrease in the Consumer Price Index For All Urban Consumers for the Los Angeles - Riverside - Orange County Metropolitan Areas - All items (1982-84=100), as compiled by the U.S. Department of Labor, Bureau of Labor Statistics (the "CPI-LA"), using June 2014 as the base index. In June 2014, the CPI-LA was 243.528. The Bone-in Ham Royalty for each year (from July to June) shall be equal to $1.47 multiplied by a fraction, the numerator of which shall be the greater of (i) the CPI-LA published for the June immediately preceding the Bone-in Ham Adjustment Date or (ii) the CPI-LA for June 2014 (243.528) and the denominator of which shall be the CPI-LA for June 2014 (243.528). The Bone-In Ham Royalty shall be increased or decreased to the nearest 1/2 of one cent. Licensee shall make the calculation in accordance with this paragraph and promptly send written notice thereof to Licensor.

(iii)     The Boneless Ham Royalty shall be adjusted annually on January 1 ("Boneless Ham Adjustment Date") to reflect the increase or decrease in the Consumer Price Index For

33

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 347

All Urban Consumers U.S. City Average - All items (1982-84=100), as compiled by the U.S. Department of Labor, Bureau of Labor Statistics (the "CPI"), using November 2010 as the base index. In November 2010, the CPI was 218.803. The Boneless Ham Royalty for each year (from January to December) shall be equal to $0.38 multiplied by a fraction, the numerator of which shall be the greater of (i) the CPI published for the November immediately preceding the Boneless Ham Adjustment Date or (ii) the CPI for November 2010 (218.803) and the denominator of which shall be the CPI for November 2010 (218.803). The Boneless Ham Royalty shall be increased or decreased to the nearest *1/2* of one cent. Licensee shall make the calculation in accordance with this paragraph and promptly send written notice thereof to Licensor.

(iv)    On November 30 of each year, Licensee shall pay to Licensor the difference between the total Ham Royalty actually paid to Licensor for the previous July 1 to June 30 and the Royalty owed for such period (as calculated in Section (a) above).

35.    Section 6(b) of the License Agreement provides, in part:

Licensee recognizes that the Business to be operated by it will be part of a nationwide network of specialty food stores and businesses operated under licenses granted by Licensor or its licensees, engaging in the sale under the Proprietary Marks of Branded Products and other specialty food items and related services pursuant to the System developed by Licensor. In order to maintain such System and in order to protect and enhance the

34

reputation, value and goodwill of the Proprietary Marks and Licensor's licensing System, and to control the nature and quality of the goods and services provided under the Proprietary Marks, so that the public may rely upon the Proprietary Marks as identifying Branded Products and other goods and services of the highest order, Licensee agrees to abide by and conform to the standards of Licensor (and such standards as Licensor may formulate from time to time to enhance the quality and national reputation of the System and the goods and services sold under the Proprietary Marks)…

36.　Section 6(b) of the License Agreement further provides: "Licensee agrees all products will be marketed to the public as high-end, premium products in order to protect and enhance the image and goodwill of the Proprietary Marks and the System."

37.　Section 6(b)(ii) of the License Agreement provides, in part, that Honey Baked California shall "at all times comply with all applicable federal, state and local laws, ordinances and regulations."

38.　Section 6(b)(ii) of the License Agreement further provides, in part, that Honey Baked California "shall take all reasonable precautions to ensure that Branded Products and other products offered for sale retain for as long as possible their original flavor, taste, consistency, freshness and other quality attributes."

39.　Section 6(b)(ii) of the License Agreement further provides, in part, that HBH Licensing "has the right, in its sole discretion, to determine, approve and supervise the quality of service, the food products and ingredients used by Licensee and the method of preparation of all products sold from the Business and to take all other action, of whatever kind or nature, it deems necessary or appropriate to

35

CASE NO. 8:19-CV-01528  JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 349

maintain the quality and standards of the Branded Products, the Business, and the HoneyBaked system."

40.     Section 6(b)(ii) of the License Agreement further provides, in part, that if HBH Licensing "establishes food safety guidelines or requires all of its licensees to implement internal or external food safety audits or procedures, Licensee shall, at a minimum, follow such guidelines and implement such audits or procedures in all aspects of its Business, at Licensee's expense."

41.     Section 6(b)(v) of the License Agreement, in part, requires Honey Baked California to "make such repairs and changes to each HoneyBaked Outlet as Licensor may reasonably request in writing in order to maintain and upgrade the image of the HoneyBaked Outlets."

42.     Section 6(b)(vii) of the License Agreement requires Honey Baked California to provide HBH Licensing "with a list of all Non-Branded Products offered in its Business at least sixty (60) days prior to Easter and sixty (60) days prior to Thanksgiving."

43.     Section 6(c)(iv) of the License Agreement provides, in part, that Honey Baked California "may operate and maintain a website for its Business using the Proprietary Marks only at a domain approved in writing by Licensor."

44.     Section 6(c)(iv) of the License Agreement provides, in part, that Honey Baked California "may not register or use domain names, establish or use social media accounts, or create or use apps for its Business without prior written consent of Licensor, which shall have the right to require such domain names and accounts to be registered in Licensor's name."

45.     Section 6(c)(iv) of the License Agreement further provides, in part, that Honey Baked California "must fully comply with any specifications, standards, policy statements, rules or any other requirements specified by Licensor from time to time related to the use of the Proprietary Marks on the Internet and/or any operations

36

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 350

of the Business on the Internet, provided that all of the Licensor's licensees are subject to such requirements."

46. Section 9(a) of the License Agreement provides that Honey Baked California "shall establish and maintain . . . adequate and accurate books, records, accounts and other data . . . containing all particulars on sales and any other information necessary for an exact determination of all royalties owing to" HBH Licensing.

47. Section 9(b) of the License Agreement further provides that Honey Baked Ham California "shall permit (and cooperate with) Licensor and its agents . . . to enter upon any business premises of Licensee . . . for the purpose of examining and auditing the books, records, accounts and data of Licensee, provided that Licensor shall give Licensee at least 48 hours advance notice . . . ."

48. HBH Licensing has performed all of its obligations under the License Agreement.

II. Honey Baked California's non-compliance with food safety standards and requirements.

49. HBH Licensing requires as a System standard, with limited exceptions not relevant here, that all "food products sent through Interstate commerce must come directly from USDA or FDA registered food processing facilities without further processing."

50. In February of 2015, the predecessor of HBH Licensing, HBH Limited Partnership, commissioned an independent laboratory to conduct testing of side dishes manufactured by Honey Baked California in its in-house, non-FDA inspected facilities.

37

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 351

51. The independent testing of Honey Baked California's side dishes revealed high levels of bacteria microorganisms in cheesy potatoes, prepackaged ham salad, and other side dishes. By way of example, cheesy potatoes from Honey Baked California's Anaheim, California, interstate shipping facility were found to have an unacceptably high aerobic plate count (APC) of 6,000,000.

52. On April 8, 2015, a representative of HBH Limited Partnership informed Honey Baked California's Vice-President, Mr. Richard Gore, about the excessive microbial counts in certain side dishes revealed by the February 2015 testing.

53. Mr. Gore claimed that Honey Baked California was no longer preparing the ham salad side dishes in-house and would begin sourcing cheesy potatoes from a third party vendor, among other corrective measures.

54. HBH Licensing renewed the License Agreement effective July 1, 2015.

55. Between 2016 and 2017, HBH Licensing repeatedly discussed with Honey Baked California the need for Honey Baked California to align its food safety program and practices with the rest of the System.

56. In 2018, HBH Licensing requested that Honey Baked California provide a letter from the USDA confirming that Honey Baked California's Anaheim shipping facility was exempt from any USDA inspection requirements. For the rest of the System, shipping from a USDA inspected facility is required as the standard.

57. After extensive discussions with Honey Baked California and review of applicable legal requirements, HBH Licensing ultimately agreed to permit the Anaheim facility to continue to ship Branded hams and turkeys produced in its non-USDA inspected facility while conditioning the shipment of all other food products on their being produced and shipped in a registered USDA or FDA food processing facility.

58. The exception referenced in the preceding paragraph was limited to Branded Product hams and turkeys that are processed by approved suppliers pursuant

38

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 352

to Brand specifications, due in part to the use of antimicrobial agents that inhibit the growth of bacteria and other pathogens in the meat, and also because the hams and turkeys have fewer ingredients and handling requirements that result in a lower risk of pathogens.

59.     In a letter dated July 22, 2019, HBH Licensing conveyed food safety requirements (the Safety Requirements) to Honey Baked California relating to food products shipped from the Anaheim Mail Order facility.

60.     Honey Baked California has never objected to the Safety Requirements.

61.     The Safety Requirements conveyed to Honey Baked California on July 22, 2019, included, *inter alia*:

a) With the exception of Branded Product hams and turkey breasts, all food products shipped through interstate commerce-specifically including cheesy potatoes-must come directly from USDA or FDA registered food processing facilities without further processing;

b) Honey Baked California must adhere to the California Retail Food Code;

c) Honey Baked California must maintain food products under proper and safe temperatures through to the point of delivery to consumers;

d) Honey Baked California must provide consumers with proper instructions on food safety in its shipment packaging materials and provide access to live customer support to address consumer issues or questions.

62.     Upon information and belief, Honey Baked California is continuing to ship, from its Anaheim facility and other facilities, substantial quantities of cheesy potatoes, other side dishes, and other food products that have not been manufactured or produced in a registered USDA or FDA facility in accordance with the Safety Requirements and to commit other violations of the Safety Requirements.

III.     Honey Baked California's improper labeling of food products.

39

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 353

63.     In 2013, Section 403 of the Federal Food, Drug, and Cosmetic Act of 1938 (FDCA) was amended to establish a federal standard for menu labeling. The federal menu labeling provisions require restaurants and similar retail food establishments that are part of a chain with 20 or more locations doing business under the same name (regardless of the type of ownership, *e.g.*, individual franchises) and offering for sale substantially the same menu items to provide calorie and other nutrition information for standard menu items. *See* 21 U.S.C. § 343(q)(5)(H); 21 C.F.R. § 101.11.

64.     Immediately after the federal menu labeling requirements became effective on December 1, 2014, the family licensees of HBH Limited Partnership began making the necessary changes throughout the System to achieve compliance well before the May 7, 2018, federal deadline.[6]

65.     Effective as of November 8, 1990, the Nutrition Labeling and Education Act (NLEA) amended the FDCA to require most foods regulated by the FDA to be labeled with nutrition information, including, without limitation, a list of ingredients by common or usual name in descending order of predominance by weight. *See* 21 § 343(q); C.F.R. § 101.4.

66.     Additionally, the Food Allergen Labeling and Consumer Protection Act (FALCPA) requires that all food labels of packaged foods regulated under the FDCA identify in plain language if the good contains an ingredient that is or contains protein derived from a "major food allergen" (one of the eight major allergenic foods - milk, egg, fish, crustacean shellfish, tree nuts, wheat, peanuts, or soybeans), as specified in the Act. *See* 21 U.S.C. § 343(w). These requirements apply to covered products labeled on or after January 1, 2006.

---

[6] California law required California restaurants to conform to the menu labeling regulations as of December 1, 2016, prior to the federal compliance date. *See* Cal. Health & Safety Code § 114094.

40

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 354

67.     Once each of the NLEA and FALCPA became effective, the family licensees of HBH Limited Partnership began implementing all necessary changes throughout the System to achieve compliance well before their respective compliance deadlines.

68.     In addition to these federal requirements, HBH Licensing has long required as a System standard that all pre-packaged or pre-portioned food for later serving at home display a food label including: (a) product name; (b) ingredient list; (c) allergen warnings; (d) use by date; (e) net weight; (f) handling requirements (*i.e.*, "Keep Refrigerated"); (g) store name and location; and (h) a nutritional fact label (the Labeling Requirements).

69.     From 2016 to the present, HBH Licensing has discussed with Honey Baked California the need for Honey Baked California to align its labeling practices with the rest of the System.

70.     In February 2016, Honey Baked California assured HBH Licensing that it would soon be adopting the Labeling Requirements followed by the rest of the System.

71.     In June 2017, and repeatedly thereafter, HBH Licensing informed Honey Baked California that side dishes being produced and shipped to Mail Order customers by Honey Baked California did not comply with the System's Labeling Requirements.

72.     Honey Baked California again assured HBH Licensing that it would cure these labeling deficiencies by July 5, 2017.

73.     HBH Licensing is informed and believes, and on that basis alleges, that Honey Baked California did not cure these labeling deficiencies by July 5, 2017, but instead has continued through Easter 2020 to ship by common carrier from its Anaheim Mail Order facility side dishes and other foods lacking proper labeling,

41

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 355

including allergen warnings, ingredient lists, and nutritional facts, among other labeling deficiencies.

74. In addition, in 2017 and repeatedly thereafter, HBH Licensing also notified Honey Baked California that food pre-packed and pre-portioned for sale in its California retail stores is not properly labeled in accordance with applicable law and in keeping with System standards.

75. During this period, Honey Baked California repeatedly assured HBH Licensing that it would correct its retail store food labeling deficiencies.

76. Notwithstanding these repeated assurances, Honey Baked California repeatedly has continued to sell improperly labeled food from its retail stores.

77. For example, during the 2019 winter holiday season, a customer posted a complaint to the Yelp consumer review website indicating that a Honey Baked California retail outlet not only failed to apply labels identifying product ingredients, but went so far as to actively refuse to provide that information to the customer on request:



(Emphasis added.)

42

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 356

78.     In February 2020, Honey Baked California admitted that it is not in compliance with applicable laws and System standards regarding allergen warnings, but it sought to justify its failure to comply on the basis that the "law is not being enforced."

79.     Notwithstanding repeated assurances that Honey Baked California's food labeling practices are otherwise in compliance with System standards and applicable laws, HBH Licensing is informed and believes, and on that basis alleges, that Honey Baked California is continuing to sell food through Mail Order Transactions and in retail stores that is not properly labeled according to System Labeling Requirements for pre-packed or pre-portioned food, and further, is not properly labeled in accordance with food labeling laws and regulations.

IV.     <u>Honey Baked California's Easter 2020 performance damaged the Brand.</u>

80.     Upon information and belief, at least as early as late March and early April, Honey Baked California began having problems fulfilling orders for Easter 2020.

81.     Honey Baked California did not alert the rest of the system to its performance issues. Instead, Honey Baked USA's customer service department began receiving inquiries and complaints regarding the fulfillment of food orders taken by Honey Baked California.

82.     When contacted by Honey Baked USA, Honey Baked California downplayed the problem.

83.     Throughout the holiday period, Honey Baked California customers submitted hundreds and hundreds of complaints concerning Honey Baked California's performance through the contact page of Honey Baked USA's website. In addition, Honey Baked USA began receiving dozens of complaints daily through Facebook Messenger.

84. Many customers complained that improper labeling, packaging, or shipping techniques used by Honey Baked California resulted in ruined, contaminated, and spoiled food, or that they ordered Easter Meals from Honey Baked California but received nothing, with no explanation or further information available.

85. One customer inquired, "Received shipment. Got small baked ham with sides. One plastic wrapped side was not identified. It's all yellow in color. I am not sure what it is. I am allergic to cheese and Cheese ingredients …Please advise what this is. . . Please let me know if this contains cheese and what it is."

86. To add insult to injury, most customers reported they were unable to contact Honey Baked California for live support about their food orders, to request refunds, or even obtain order status information. Many customers expressed understandable frustration after discovering that links on the California shipping website were broken and after waiting on hold for hours on Honey Baked California's customer service phone line, with no success.

87. For example, on April 7 another customer complained: "I received my delivery order today and the beans, potatoes and beans had split open [leaving] a mess in the bag. The ham was ok. I spent 2 1/2 hours on hold for to first position and then a busy signal. I was unable to get through. Tried calling a store and again disconnected. I know it is a busy time but I'm hoping someone can call me tomorrow."

88. On April 8, another customer complained: "I received my order last night. The box was intact BUT the bag inside containing the two side orders was filled with the contents of the two containers! Both containers were cracked down the side and the contents beans and I think potatoes (hard to tell because they were mixed in with the beans at the bottom of the bag) drained out of the CRACKED containers. I would like to receive a credit to my credit card for these two side orders."

44

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 358

89.     The severity of Honey Baked California's failure to comply with the license's requirements to use appropriate packaging, shipping materials and techniques became apparent when customers started sending Honey Baked USA photographs of their orders received from Honey Baked California. A sampling of representative messages are shown below.

Here is how my order arrived today. Lid from beans container was not secured and the container arrived cracked. Nothing was secured. Had to throw away dry soup package because bean sauce seeped into package. Very disappointed. Spent 30 minutes wiping, cleaning and repackaging everything. Order #████████

Frozen on dry ice????I did order ahead. My box came 1 day late. Not frozen, no dry ice and this is what it looked like. I know these are hard times but I'm sure they knew once orders started coming in that they were not going to be able to handle it. At that point they needed to have shut down online ordering and they didn't. This was my order. Do you see dry ice?



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



> How can I get help with this.
> This is how my ham and 2 sides showed up.

> I just received my Easter meal and this is how it came

     90.    On April 10, a customer complained: "I am sending this complaint because we received our honey baked ham dinner, on time, but when I opened the box, the containers of baked beans and scalloped potatoes were open and spilt all over the bubble wrap and inside of the box and the taping tool were right on top of everything, And when I picked up the bag of dried beans thinking I could save something, the whole bag on the bottom fell open into the mess in the box so basically I lost everything but the ham. And also during this coronavirus issue I may have the coronavirus in the box. This is our second order from Honeybaked and if this can happen I don't think I would wanna [sic] ever order this again especially for

46

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 360

a holiday meal. This whole purpose was so we didn't have to go out due to the virus." The customer also sent Honey Baked USA a photograph of what they received from Honey Baked California, which inexplicably included a packing tape dispenser, as shown below.



91.    Other consumers reported similar experiences. One customer complained: "On April 10 @ 1:15p our [order] was delivered to us, the package was opened, the delivery guy could not explain why. The ham unit was covered in macaroni & cheese and potatoes. The contents of soup bag was opened, the ham was lukewarm. It appears someone opened the box and contents w/in in the box and [poured] these ingredients over the ham. It clearly look as the package has been vandalized prior to arrival to our home. HBH would not deliver this package like this. This is a huge disappointment to my family and mother-in-law who spent good money on this Easter dinner only to have it arrive in a threatening manner. We feel

47

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 361

violated and threatened by your package arriving as it did. I have photos to verify the above. A huge disappointment and COMPLETE waste of time try to access HBH customer service over the phone at either OC or Ventura shops. Between my wife and my 10 attempts to contact your customer service, we were abruptly hung up on. I am currently on hold w/ the 800 # on your website, it will be over 100 min to speak with a representative. The obnoxious Santana knockoff doesn't help this disastrous experience with HBH. I hope your Easter better than ours gonna be."

92.     The customer also sent Honey Baked USA photographs demonstrating how his order was delivered, as shown below.

 

93.     In addition to failing to use appropriate packaging to secure side dishes during mailing of Easter orders, Honey Baked California failed to maintain perishable food items under proper and safe temperatures through to the point of delivery to consumers.

94.     On its website, a screen capture of which is shown below, Honey Baked California guarantees that customer orders will "arrive in perfect order," with the

48

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 362

1  foods flash frozen, insulated in a foam cooler, and accompanied by multiple ice

2  packs. (Emphasis added.)[7]

3

4

5

6  **Guaranteed Delicious Delivery**

7  There is a lot that we do behind the scenes to make sure that your order arrives as fresh and beautiful as the minute we made it. Whether it is our HoneyBaked Ham, a full HoneyBaked Dinner, a delicate dessert, or any of our other gourmet fare, we guarantee it will arrive in perfect order. After all, we want you and your gift recipients to taste the care and pride we put into every HoneyBaked item we make. That's why our packaging process is best in the business.

8

9  We utilize UPS to guarantee delivery and ensure that your packages arrive in the best possible condition and in the timeliest manner. Due to the perishability of our products, they are shipped flash frozen (which means they're frozen very quickly at a very low temperature). You, or your recipients, will want to allow 24-36 hours to thaw your product before you plan to serve it.

10

11

12  

13

14

15

16

17

18

19

20

21

22

23

24  95.    Despite these representations, Honey Baked California shipped many

25  Easter orders through common carrier without using proper shipping materials and

26

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
[7] Accessed on July 9, 2020 at Honey Baked California's "Shop Online" webpage.

28  https://shophoneybaked.com/shop-by-product/sides-soups-more/the-classic-2-side-sampler.html

Ex. 17 Page 363

techniques, and in some cases, without foam coolers, Styrofoam insulating inserts, or ice packs altogether.

96.     Scores of consumers contacted HBH Licensing about receiving orders from Honey Baked California that they determined were unsafe to consume.

97.     For example, one customer reported: "My turkey breast arrived yesterday with the juices leaking through the cardboard and the ice pack completely melted. I'm afraid to eat it since I don't know how long it's been at room temperature." Another customer reported: "I just received my ham. . . it was shipped yesterday. And it was not shipped with anything to keep it cold. Just placed in the box in a bag. Is it safe to eat? Just doesn't seem right. . . I'm worried about serving it to my family." Similarly, another customer reported that the Honey Baked Ham they had ordered for overnight delivery arrived a day late, and had "been sitting at the distribution center for 2 days without refrigeration. The Box did not come with any ice packs or solution to keep the ham cold as suggested on your website. We are very hesitant to eat the ham, since we ordered it for our Easter dinner." And yet another customer complained: "[t]he turkey breast came in a cardboard box with no ice and not Styrofoam. It is at room temperature and juice out of its container. I'm sure this can't be right. . . I'm concerned, especially about the turkey, that it will make my family sick. I can't get a hold of anyone via phone. . . very frustrated." Another customer expressed great frustration at the condition of his food and inability to reach Honey Baked California for assistance: "Order shipped yesterday from Anaheim, CA. Delivered today. No packaging like Styrofoam or anything to cool it. It's rotted through the box and smells. Now I'm on hold for 138 minutes to your 800 number."

98.     Another customer tried to get assistance through the Honey Baked Ham website after two of the three separate orders she placed with Honey Baked California failed to arrive, and she had been disconnected from Honey Baked California's customer service line after holding for three hours. She wrote: "I ordered

3 hams. One to Utah, one to Oregon, and one to California. Only the one to California had a tracking number and was delivered. Waited on the phone 2hr 57 min to get tracking numbers for the other two because as of 4: 22 pm they have not [been] delivered. Was told I was next, heard a click and then the call was dropped. Now on the phone again and the wait time is 184 minutes. :[ "

99.     The day before Easter, Honey Baked USA was flooded with calls and messages from California customers seeking assistance with their orders and stating that the California call center was closed. Many customers were upset because they received spilled or spoiled food they could not use for their family's Easter meal. Others hadn't received their orders, hadn't been giving tracking numbers, and couldn't reach Honey Baked California for assistance.

100.   One customer complained: "When I opened the box it was a mess.... beans, potatoes, all opened in box looked like a bowl of soup....I will never ever purchase anything from Honey Baked Ham again....Thanks for destroying Easter....."

101.   Another customer wrote: "I am currently on hold with your customer service for a quoted time of 178 minutes. I spent a LOT of money on this ham to make our Easter special. It was supposed to be delivered today. When I checked UPS...it now says Monday which is after Easter and also means it will have been in transit for 5 days.... I can't get a hold of anyone who can help me."

102.   Another customer stated: "I am so upset, I paid a lot ahead of time to have a ham delivered, it did not arrive, I was calling and being hung up on, then I finally am on hold and I have been on hold for over 4 hours, I just want to feed my family for Easter, the lack of communication is so frustrating, if you had issues as a company with deliveries you should have sent an email to your customers advising this to them since we are in times that we cannot just run to the store for a back up. I am very very upset with you all!." Similarly, a customer complained: "I ordered a ham a week before Easter. You took my payment and I never got my ham. You

51

CASE NO. 8:19-CV-01528  JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 365

ruined our Easter dinner. I will never order from HBH again. I will warn everyone not to do business w your co[mpany]."

103. Still another customer complained that: "Your company has taken advantage of this pandemic, offering product with delivery dates that were impossible to meet. You ruined our holiday as we ordered and paid our ham a week in advance and never received it. Spent days and hours in 'cue' in a feeble attempt to reach your customer service. As their work day ended before our call reached a representative. Shame on you and your greedy business practices."

104. In addition to contacting Honey Baked USA, hundreds of customers of Honey Baked California posted complaints and negative reviews about the HBH Brand and the System that appeared nationwide on social media platforms such as Facebook, Twitter, and Instagram. Representative examples of consumer complaints posted to Facebook are shown below.





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Mike Gines ▶ The Honey Baked Ham Company
19 hrs · ⊙

Just received our order.
$100 down the drain. How infuriating. We always buy Honeybaked for the holidays. Not anymore.
I'm 143 in line on the phone.
Apparently we were not they only ones.
UPDATE- Ive been on hold for 2 HOURS!!!!!! im now number 62 in line.




D'Artagnan Pendleton ▶ The Honey Baked Ham Company
15 hrs · ⊙

My delivery from Anaheim, Ca. Shipped yesterday at 8am and delivered today at 2 pm. No Styrofoam, no ice pack. Nothing but food poisoning in a box. Confirmation Number: HBCA400013763 Your Order number: 996347 After 3 hours and 2 minutes, I was 12 in the queue and I was hung up on. Called back and the recording said No one here to answer the phone. Here is your delivery for my Easter! After 31 years of Honey Bake Ham tradition. Way to Go, CEO!


Sandi Miller ▶ The Honey Baked Ham Company
April 13 · ⊙

2 hrs ·

Ordered from Honey Baked Ham for my uncle on the 7th was supposed to be delivered on the 10th, never came, no tracking number, tried to call 800 number rang for 40 minutes then hung up, tried all day Saturday same thing, closed on Sunday, opened at 10am California time called at 10 was 240 in the Que at 1:18 finally got a rep, who told me OH well it didn't come, maybe you might get a refund in 7-14 business days and maybe you won't??????????? Then hung up on me, Last time I use Honey Baked Ham Online

CASE NO: 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 367



105.   Many customers also took to Twitter to post about their poor experiences caused by Honey Baked California. Some also used hashtags to indicate their disdain for the brand due to their Easter 2020 experiences, such as #honeybakedscam, #honeybakedhamscam, #hamscam, and #honeybakedpredator. Representative examples of consumer complaints posted to Twitter are shown below:



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28





55

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 369

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28







1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**Diane Van der Linde**
@DianeLinde

@HoneyBakedHam The absolute worst customer service EVER has made me break down and tweet for the first time. What a nightmare! SEVEN HOURS on hold over three days with no answer, multiple unanswered emails, and my ham was delivered late the day AFTER Easter. Never again!

12:18 PM · Apr 14, 2020 · Twitter for iPhone

1 Like

**Tori Langlois** @ToriMLanglois · Apr 11

Happy Easter from @HoneyBakedHam. No delivery confirmation, a day late and THIS.....

**HiRiseLA**
@theHiRiseLA

Replying to @HoneyBakedHam

DO NOT ORDER ONLINE IN CALIFORNIA. nightmare. No deliver two days after due. 2 days of 3 hr wait times on phone line. Took my $ and can't even tell me where my ham is. Went to store. Bought a ham.

5:17 PM · Apr 8, 2020 · Twitter for iPhone

106. Additionally, dozens of customers posted complaints to Yelp consumer review webpages for Honey Baked California's retail stores. A sample is shown below:







1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

 **S B.**
Aliso Viejo, CA
14 friends
14 reviews
2 photos

 4/10/2020

1 photo

Most frustrating experience ordering dinner for Easter. Trying to support our local businesses in this chaotic time & they were anything but grateful. I called regarding this order and how it came, waited on hold for over a half! I was then told that it wasn't their fault & to call the shipping company to figure out. Unacceptable to me since I had no control over how their food was delivered. Very disappointing to not have Easter dinner as well as now having to clean up this huge mess.



 **Lossie S.**
Los Angeles, CA
0 friends
3 reviews

 4/13/2020

I am very angry and disappointed on a High Holy Day. Honey Baked Ham disappointed so many people, including myself. Your business should be under promise and over deliver...not the other way around. Your ham has been the centerpiece of holiday dinners for years. In better days, we have stood in long lines to pick up one. But now, when so many of us were dependent on delivery because of COVID-19, I as a senior called and called and called. I was left on hold for hours and your company didn't even have the decency to produce a recorded message for those of us who sat on hold for hours to let us know that the deliveries would be delayed so we could make other arrangements as to not be completely disappointed. You were even advertising delivery services on T.V. when you couldn't even figure out how to fulfill the deliveries already processed. I want my money back, a ham and a gift card for my trouble...oh, and add an apology from the CEO, too! And I want that 1 star back Yelp made me give you to post this review.



107.  Some customers were so frustrated by their inability to reach Honey Baked California's customer support that they began attempting to contact Honey Baked USA employees by sending messages through the LinkedIn website. This is one example:

Greetings Horace: I am a retired Boeing exec residing in SoCal, and I have been enjoying Honey Baked hams for more than 50 years; it is a long standing Easter tradition for our family. Because my family is not local, I ordered three Honey Baked ham meals to be delivered to our homes for Easter; we were going to Zoom our Honey Baked Easter meal from around the state! The first of three ordered meals was delivered to my sons home about an hour ago, When the box was opened it looked like a war had taken place; food was spilled all over the box and the ham was room temperature and probably spoiled. So much for our Easter dinner. I tried to contact the local store in Lake Forest Ca which hung up on me three times. I called your 1-800 and 1-866 lines and, of course, no one answered the phone. I realize that times are difficult . . . and if ever we needed Honey Baked to bring our families and country together it was 2020. I am actually beyond greatly disappointed; I am really perplexed how this could ever happen to a cornerstone company in the US of A. Our family Zoom / Honey Baked virtual Easter meal has been cancelled.

Ex. 17 Page 155

108. Other Honey Baked California customers went so far as to locate and contact Honey Baked USA employees at their homes. One customer even sent a letter to Honey Baked USA's CEO, Linda van Rees.

109. The complaints described in the preceding paragraphs are illustrative and by no means exhaustive.

110. Customers posted hundreds, if not thousands, of complaints and negative commentary about the HBH Brand on social media platforms and various websites relating to Honey Baked California's disastrous performance during Easter 2020.

111. Honey Baked USA alone received more than 800 complaints submitted through its website from Honey Baked California customers around the Easter holiday.

112. Several hundred Honey Baked California customers complained that their Honey Baked Ham, turkey, and other food items had never arrived for the Easter holiday, or arrived after their scheduled delivery date.

113. More than 100 Honey Baked California customers complained that they received food that was delivered warm or thawed, or food that had spilled out of containers that were not securely closed and not appropriate for mail order shipping of food

114. Many customers told Honey Baked USA that their Easter holiday was ruined due to Honey Baked California's dismal performance and total lack of

62

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 376

customer service. For example, a long time Honey Baked customer who didn't receive her Easter ham in time for the holiday and was unable to reach anyone at Honey Baked California said "[t]hank you for making this the saddest Easter ever." A man who had purchased a prime rib feast for his family's Easter dinner, who did not receive his order but instead received a smashed cake and mashed potatoes, stated that "[m]y Easter with my family is ruined and with me out of work, me and my family were looking forward to this meal together." A woman who received a spoiled harm stated that "[m]y Easter dinner is ruined and just can say how disappointed I am." Another woman who received inedible spilled side dishes and ham that was not kept cool stated "I want [my] money back we had to throw the whole thing out and its ruined our Easter dinner that due to the pandemic I can't even replace properly." Further, a woman who did not receive the meal she ordered for Easter stated "[m]y Easter dinner was ruined because you did not fulfill your promise to deliver."

115.   Honey Baked California's operational issues and repeated failures to meet customer expectations around the Easter holiday reflected materially and unfavorably upon the operation and reputation of the Brand and System.

116.   Following the deluge of complaints from Honey Baked California customers, HBH Licensing demanded that Honey Baked California temporarily suspend courier shipping from its Anaheim facility (or any other location where they conducted ecommerce or engaged in mail order transactions) until HBH Licensing could investigate the problems and ensure that protective measures were in place to protect consumer health and safety, and prevent further damage to the Brand and System.

117.   Honey Baked California declined and refuses to do so.

V.   HBH California's unauthorized use of HBH Proprietary Marks

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 377

118.   The License Agreement grants Honey Baked California a license to use the Proprietary Marks only in connection with the Branded Products listed in Exhibit B of the License Agreement. *See* License Agreement § 6(b)(vii).

119.   Honey Baked California has no right, license, or authorization to use the Proprietary Marks other than those limited rights set forth in the License Agreement, and only pursuant to all restrictions and requirements of the License Agreement.

120.   HBH Licensing has not licensed or authorized Honey Baked California to use the Proprietary Marks for any products other than the Branded Products. The Branded Products do not include side dishes, condiments, desserts, or soup mixes.

121.   At some point in time, without approval of HBH Licensing, Honey Baked California began using the Proprietary Marks in connection with the sale of side dishes, condiments, desserts, soup mixes, and other food products.

122.   For example, Honey Baked California is selling the products below, which use the Proprietary Marks, in its California retail stores.

**Tantalizing Honeyspice Sauce**

**Champagne Gourmet Mustard**





64

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

| | |
|---|---|
| **Cakes** | **Ham Bone Soup Mix** |




123. HBH Licensing has not approved the manufacturer or supplier of these side dishes, condiments, desserts, and other food products.

124. These side dishes, condiments, desserts, and other food products are not listed in Exhibit B of the License Agreement as Branded Products.

125. These side dishes, condiments, desserts, and other food products do not comply with System standards. They are not made by an approved manufacturer, and upon information and belief do not comply or fully comply with System Labeling Requirements.

126. The sale of these unapproved products with the Proprietary Marks affixed to them is likely to cause, and has caused, actual consumer confusion as to whether these products have been approved by HBH Licensing.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 379

**VI.** <u>Honey Baked California's non-compliance with standards relating to use of the Proprietary Marks on the Internet.</u>

127. The License Agreement provides that Honey Baked California may not register or use domain names, establish or use social media accounts, or create or use apps for its business without the prior written consent of HBH Licensing, which shall have the right to require such domain names and accounts to be registered in Licensor's name.

128. The License Agreement further provides that Honey Baked California must fully comply with any specifications, standards, policy statements, rules or any other requirements specified by Licensor from time to time related to the use of the Proprietary Marks on the Internet.

129. At least as early as 1996, the predecessor of HBH Licensing registered the subdomain *ca.honeybaked.com* and approved it for use by Honey Baked California.

130. From 1996 until at least 2018, HBH Limited Partnership and HBH Licensing caused traffic from the National Website to be directed to this subdomain.

131. At some point in time, without the knowledge or approval of HBH Licensing or its predecessor, Honey Baked California registered the domain *shophoneybaked.com* and apparently began re-directing traffic from *ca.honeybaked.com* to *shophoneybaked.com*.

132. In 2018, HBH Licensing became aware that Honey Baked California is using domain name *shophoneybaked.com*. HBH Licensing later became aware that Honey Baked California has registered and is using an additional domain name, *hbhca.com*.

133. On November 1, 2019, HBH Licensing requested the transfer of the two domain names after the holiday sales rush.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 380

134. Honey Baked California, through counsel, stated that it would transfer the two domain names to HBH Licensing as requested.

135. On November 27, 2019, HBH Licensing published in draft form updated Digital Guidelines, Policies and Procedures that delineated requirements pertaining to use of the Proprietary Marks on the Internet.

136. These updated requirements, which became effective February 1, 2020, mandated, among other requirements, that Honey Baked California transfer ownership of the domain name *shophoneybaked.com* to Honey Baked USA, use titles and required metatags on Honey Baked California's website that clearly define the purpose, territorial limitations and other differentiating features distinguishing that website from other sales portals on the National Website, and comply with Payment Card Industry Data Security Standards and other data security protocols.

137. On February 28, 2020, Honey Baked California notified HBH Licensing that despite its earlier agreement to transfer ownership of the domain names to HBH Licensing, it was now unwilling to do so.

138. Honey Baked California has registered and is using the domain names *shophoneybaked.com* and *hbhca.com* in breach of its obligations under License Agreement.

139. Further, Honey Baked California is not complying with the specifications, standards, policy statements, rules and other requirements specified by Licensor related to the use of the Proprietary Marks on the Internet.

140. Honey Baked California's use of the domain name *shophoneybaked.com* and violation of the Digital Guidelines is likely to cause, and has caused, actual consumer confusion and damaged the reputation of the Honey Baked System and trademarks.

VII.   Honey Baked California's failure to update stores to System standards

67

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 381

141. Prior to renewal of the License Agreement in 2015, HBH Limited Partnership notified Honey Baked California that approximately ½ of California's stores were still using pre-1996 "Hexagon" signage.

142. In the 2015 License Agreement, Honey Baked California committed to "update its signage on all of its HoneyBaked Outlets, and [to] cause its sublicensees to update their signage on all of their HoneyBaked Outlets, to match Licensor's current standards for signage … within 180 days" of the License Agreement's effective date. *See* License Agreement § 6(a)(ii).

143. Honey Baked California further committed to update signage on its retail stores to correspond to any signage standards adopted by HBH Licensing in the future on the occurrence of certain conditions and within certain timeframes set forth in the § 6(a)(ii) of the License Agreement.

144. From July 2015 to 2019, Honey Baked California repeatedly informed HBH Licensing that it had fully converted all the pre-1996 signage to current System standards or imminently would do so.

145. In fact, Honey Baked California failed to update and convert many signs throughout California, while continuing to represent that it had or would. For example, in 2016, Honey Baked California assured HBH Licensing that with three exceptions (none of which are identified in the following paragraph) all stores have been converted.

146. On November 1, 2019, HBH Licensing notified Honey Baked California that it was in default of its obligation to update store signs at its store locations in La Mesa, Stockton, Huntington Beach, and Ventura.

147. As of February 28, 2020, Honey Baked California had still not corrected the signage defaults at the La Mesa and Stockton stores with permanent signage. On information and belief, it still has not done so as of the date of this filing.

VIII.   Honey Baked California's failure to update graphics to System standards.

68

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 382

148. Section 6(b) of the License Agreement provides, in part, "In order to maintain such System and in order to protect and enhance the reputation, value and goodwill of the Proprietary Marks and Licensor's licensing System, and to control the nature and quality of the goods and services provided under the Proprietary Marks, so that the public may rely upon the Proprietary Marks as identifying Branded Products and other goods and services of the highest order, Licensee agrees to abide by and conform to the standards of Licensor."

149. In early spring 2018, Honey Baked USA completely redesigned and modernized the Brand.

150. On or about March 25, 2018, HBH Licensing sent Honey Baked California a draft of the proposed new Brand Standards, which imposed requirements for the printed display of the Proprietary Marks.

151. HBH Licensing also reviewed a copy of the new Brand Standards with Honey Baked California in a meeting in June of 2018.

152. The new Brand Standards contained specifications and requirements for use of the new marks on product packaging, retail bags, shipping boxes, and other materials.

153. Examples of the new Brand Standards used on packaging for side dishes and condiments, and on retail bags, are shown below.





CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 384

154. On October 13, 2018, HBH Licensing notified Honey Baked California that it required adoption of the new Brand Standards, effective June 1, 2019. Although much of the rest of the System had already implemented the new Brand Standards, HBH Licensing delayed implementation of the Brand Standards for stores in California for more than six months (two holidays later) to allow Honey Baked California time to exhaust its current supply of packaging and to plan ahead to be able to implement the required changes in time for the 2019 Holidays.

155. Despite having more than a year's notice, Honey Baked California continued to use packaging and bags displaying outdated graphics throughout the 2019 Holiday season in its retail stores:

  

[8]

156. On or about February 28, 2020, Honey Baked California represented to HBH Licensing that it had completed its transition to new standard packaging.

157. In fact, contrary to its representation, Honey Baked California continued to use outdated, unapproved graphics on tote bags and packaging throughout the 2020 Easter holiday, as shown below:

---

[8] In addition to this product packaging using outdated branding, Honey Baked California's distribution of this product itself materially breaches the License Agreement because it uses the Proprietary Marks but is not an authorized Branded Product or otherwise approved by HBH Licensing.

71

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 385





158. Honey Baked California's continued use of outdated packaging that is non-compliant with current System Standards constitutes a breach of the License Agreement and damages the Brand.

IX. Honey Baked California's underpayment of royalties.

159. Section 4 of the License Agreement requires Honey Baked California to make royalty payments to HBH Licensing.

160. Specifically, § 4(a) of the License Agreement requires Honey Baked California to pay to HBH Licensing an annual royalty "equal to three percent (3%) of

72

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 386

the Gross Sales of [Honey Baked California]" and all of its sublicensees (the Royalty).

161. Section 4(a) of the License Agreement also identifies the time and manner in which the Royalty is to be paid.

162. Section 4(b) of the License Agreement provides for the timing and manner of payment of the Royalty, including monthly installments in a specified amount based on ham purchases (the Ham Royalty).

163. On information and belief, Honey Baked California has under reported its Gross Sales and has not paid the full amount of the Royalty due to HBH Licensing for each year since the effective date of the License Agreement.

164. In addition, Honey Baked California has also failed to timely or fully pay the Ham Royalty during the period June, 2019, to July, 2020.

165. Section 9(b) of the License Agreement requires Honey Baked California to maintain complete and accurate records of all sales and other information necessary to determine all royalties owed to Honey Baked USA. Further, section 9(c) permits Honey Baked USA or its agents to conduct an audit of these records upon at least 48 hours advance notice to Honey Baked USA.

166. On or about June 10, 2020, Honey Baked USA informed Honey Baked California that it would be exercising its right to conduct an audit of Honey Baked California's books, records, accounts, and other data pursuant to Section 9(c) of the License Agreement, and the audit is currently underway.

**Count I – Breach of Contract—Food Safety Requirements**

**(By HBH Licensing against Honey Baked California)**

167. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–166 as if fully set forth herein.

168. HBH Licensing and Honey Baked California are parties to the License Agreement.

73

169.     HBH Licensing performed all of its duties under the License Agreement.

170.     The License Agreement obligates Honey Baked California to, *inter alia*, follow food safety requirements established by HBH Licensing. *See* License Agreement § 6(b)(ii).

171.     HBH Licensing has exercised its rights under the License Agreement by establishing Safety Requirements mandating, *inter alia*, that:

a)     All food products shipped through interstate commerce, with the exception of Branded Product hams and turkey breasts, must come directly from USDA or FDA registered food processing facilities without further processing;

b)     Honey Baked California must adhere to the California Retail Food Code;

c)     Honey Baked California must maintain food products under proper and safe temperatures through to the point of delivery to consumers;

d)     Honey Baked California is to provide consumers with proper instructions on food safety in the shipment packaging materials and provide access to live customer support to address consumer issues or questions.

172.     Honey Baked California has repeatedly and materially breached and failed to meet its obligations under the Safety Requirements.

173.     Honey Baked California has shipped products through interstate commerce, including but not limited to cheesy potatoes, ham salads, side dishes and condiments, that did not come directly from a USDA or FDA registered food processing facility without further processing.

174.     Honey Baked California repeatedly has shipped food to customers via common courier that was not packaged in a way that allowed it to maintain proper and safe temperatures through to the point of delivery to consumers.

175.     Honey Baked California repeatedly has failed to provide proper food safety instructions in the shipment packaging of food products shipped to consumers via common courier.

74

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 388

176. Honey Baked California failed to provide adequately staffed live customer support to field and respond to customer complaints and questions.

177. Honey Baked California has violated the California Retail Food Code in regards to shipments from its retail stores.

178. Honey Baked California's repeated breaches of the Safety Requirements endanger consumer health and welfare and irreparably harm Counterclaim Plaintiff, the Brand, and they System.

179. HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to complying with System food safety requirements, so long as the License Agreement remains in effect.

### Count II – Breach of Contract—Product Labeling
### (By HBH Licensing against Honey Baked California)

180. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–179 as if fully set forth herein.

181. The License Agreement obligates Honey Baked California to, *inter alia*, abide by and conform to standards established by HBH Licensing as well as by all applicable federal, state, and local laws and regulations. *See* License Agreement §§ (6)(b), (b)(ii).

182. HBH Licensing has exercised its rights under the License Agreement by establishing Labeling Requirements for the System that require all retail stores in the Honey Baked System to follow FDA food and menu labeling laws and to label each pre-packed and pre-portioned food products sold at Honey Baked outlets with various information including: (a) product name; (b) ingredient list; (c) allergen warnings; (d) use by date; (e) net weight; (f) handling requirements (i.e. "Keep Refrigerated"); (g) store name and location; and (h) a nutritional fact label.

75

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 389

183. Honey Baked California has repeatedly violated the Labeling Requirements by, *inter alia*:

- Failing to provide required allergen statements;
- Failing to provide required ingredient lists;
- Failing to provide required nutritional information;
- Failing to provide required use by dates;
- Failing to provide required net weights;
- Failing to provide required store name and location; and
- Failing to provide required nutritional facts and information.

184. In addition to its recurrent failures to comply with the Labeling Requirements, Honey Baked California has repeatedly and recalcitrantly made misrepresentations to HBH Licensing regarding its compliance or plans to come into compliance.

185. In addition to requiring Honey Baked California to comply with Licensor's Labeling Requirements, the License Agreement obligates Honey Baked California to comply with all applicable federal, state, and local laws and regulations.

186. Honey Baked California has not complied with federal labeling laws.

187. In addition to federal laws, one state law, California's Safe Drinking Water and Toxic Enforcement Act of 1986 ("Prop 65") requires retailers producing food in California that introduce a listed chemical known to cause cancer or reproductive toxicity into a food product, or sell such a food product under a brand or trademark owned or licensed by the retailer or an affiliated entity, to provide a warning that the food product contains a chemical known to the State of California to cause cancer or reproductive toxicity. *See* Cal. Health & Safety Code § 25249.6.

188. Honey Baked California produces and sells food products that, on information and belief, contain or are likely to contain chemicals identified by the State as Prop 65 chemicals.

189. On information and belief, Honey Baked California's online catalogue and many of its retail stores do not provide the required Prop 65 warnings.

190. Since at least 2017, HBH Licensing has repeatedly voiced its concerns about Prop 65 compliance to Honey Baked California, and the latter has repeatedly failed to provide requested assurances of compliance.

191. Honey Baked California's noncompliance with the Labeling Requirements and federal and state law and regulations, including Prop 65, endangers consumer health and welfare and irreparably harms Counterclaim Plaintiff, the HBH Brand and System.

192. HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to complying with applicable Labeling Requirements, Prop 65, and all other applicable federal, state, and local laws and regulations, so long as the License Agreement remains in effect.

**Count III – Breach of Contract—Gross Violations of Quality Control Standards (By HBH Licensing against Honey Baked California)**

193. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–192 as if fully set forth herein.

194. The License Agreement obligates Honey Baked California to, *inter alia*: (1) market all products as high-end, premium products in order to protect and enhance the image and goodwill of the Proprietary Marks and the System; (2) take all reasonable precautions to ensure that products that it packs and ships to consumers retain their original flavor, taste, quality, and other attributes; (3) use appropriate packaging and shipping materials and techniques and (4) comply with directives from HBH Licensing regarding actions to be taken to maintain the quality and standards of the HBH Brand and System. *See* License Agreement §§ 6(b), 6(b)(ii).

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 391

195. During the 2020 Easter holiday season, Honey Baked USA grossly violated these and other obligations under the License Agreement.

196. Honey Baked California shipped by common carrier Branded Products and other products, including numerous side dishes, to consumers in inappropriate and unsafe packaging that was not designed to and could not prevent food spillage and spoilage or maintain temperature control.

197. In many instances, Honey Baked California simply placed hams and unsecure containers of side dishes in cardboard boxes, sometimes with an ice pack, and shipped them to customers in California via overnight couriers.

198. Unbelievably, in several instances Honey Baked California shipped by common carrier the Brand's signature product, the Honey Baked Ham, in a cardboard box with no ice pack or dry ice, and no insulation.

199. Scores of customers complained to Honey Baked USA that their eagerly anticipated Honey Baked Ham was unsafe to eat, spoiled, and rotten.

200. As a result of Honey Baked California's violation of its duties, many customers who placed orders for family celebrations and observations of the Easter holiday received boxes filled with leaking or broken packages of spilled, spoiled food. Many others complained they never received their Easter meals at all or received them after the holiday.

201. The improper food shipments sent out by Honey Baked California over the Easter holiday season generated more than 1,000 customer complaints and hundreds of negative reviews posted on social media and other websites, endangered health and safety, damaged Counterclaim Plaintiff, and caused serious and irreparable harm to the HBH Brand.

202. The problems were compounded by Honey Baked California's breach of its duty to make available live customer support to respond to customer complaints and inquiries.

203.   Scores of dissatisfied customers reached out to Honey Baked USA through many different channels, to express their displeasure and to relay stories of being kept on hold with Honey Baked California's ostensible customer support line for hours, only to be disconnected without receiving assistance. Honey Baked USA itself was many times unable to reach Honey Baked California to relay the complaints.

204.   Honey Baked California's breach of its obligations, *inter alia*, to (1) market all products as high-end, premium products in order to protect and enhance the image and goodwill of the Proprietary Marks and the System; (2) take all reasonable precautions to ensure that products that it packs and ships to consumers retain their original flavor, taste, quality, and other attributes; (3) use appropriate packaging and shipping materials and techniques; and (4) comply with directives from HBH Licensing regarding actions to be taken to maintain the quality and standards of the Brand and System reflected materially and unfavorably upon the reputation of the franchise operation and System, caused irreparable harm to the Brand, and damaged HBH Licensing.

205.   HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to the mandates that: (1) it take all reasonable precautions to ensure that products that it packs and ships to consumers retain their original flavor, taste, quality, and other attributes; (2) use appropriate packaging and shipping materials and techniques; and (3) comply with directives from HBH Licensing regarding actions to be taken to maintain the quality and standards of the Brand and System, so long as the License Agreement remains in effect.

**Count IV—Breach of Contract—Unauthorized Use of Proprietary Marks**

**(By HBH Licensing against Honey Baked California)**

79

206. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–205 as if fully set forth herein.

207. The License Agreement grants Honey Baked California a clearly defined and limited License to use the Proprietary Marks.

208. Honey Baked California is only licensed to use the Proprietary Marks on those Branded Products identified in Exhibit B of the License Agreement. *See* License Agreement § 1(e)(iii), 2(a), 6(a), 6(a)(i).

209. The License Agreement expressly prohibits the Licensee from using the Proprietary Marks for any products other than the Branded Products identified in Exhibit B of the Agreement without HBH Licensing's prior written approval, which HBH Licensing may withhold in its sole discretion. *See* License Agreement § 6(a)(i).

210. The License Agreement provides that any use of the Proprietary Marks for products not identified as Branded Products without HBH Licensing's prior written approval constitutes a material breach of the Agreement. *See* License Agreement § 6(a).

211. Without the authorization or approval of HBH Licensing, Honey Baked California has offered for sale, and on information and belief continues to offer for sale, in packaging bearing the Proprietary Marks, numerous types of food products that are not authorized Branded Products.

212. Honey Baked California's unauthorized use of the Proprietary Marks on food products not authorized as Branded Products materially breaches the License Agreement and irreparably damages Counterclaim Plaintiff and the HBH Brand and System. *See* License Agreement § 6(a).

213. HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to, immediately and permanently suspending the unauthorized use of the Proprietary Marks all products that are not approved for sale as Branded Products.

80

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 394

## Count V—Breach of Contract—Digital Guidelines, Policies and Procedures
### (By HBH Licensing against Honey Baked California)

214. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–213 as if fully set forth herein.

215. Through the License Agreement, Honey Baked California agreed that any advertising or marketing that it conducts through the Internet shall be made in accordance with any policies that HBH Licensing shall designate from time to time.

216. Additionally, the License Agreement provides that Honey Baked California may operate and maintain a website for its Business using the Proprietary Marks only at a domain name that HBH Licensing has approved in writing.

217. Further, Honey Baked California may not register or use domain names, or establish or use social media accounts, without HBH Licensing's prior written consent.

218. The License Agreement also provides that HBH Licensing has the right to require that any domain names and social media accounts used by Honey Baked California be registered in HBH Licensing's name.

219. The License Agreement further provides that Honey Baked California must fully comply with any specifications, standards, policy statements, rules or any other requirements specified by Licensor from time to time related to the use of the Proprietary Marks on the Internet and/or any operations of the Business on the Internet.

220. Honey Baked California is using or has used the domain names *shophoneybaked.com* and *hbhca.com*, both of which are registered in its own name, without approval from HBH Licensing.

221. On November 1, 2019, HBH Licensing sent Honey Baked California a letter notifying it of its various breaches of, and obligations under, the License

81

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 395

Agreement, including Honey Baked California's obligation to transfer all domain names used in its Business to HBH Licensing upon request.

222. Also in that letter, HBH Licensing requested that Honey Baked California transfer the registration of the domain names *shophoneybaked.com* and *hbhca.com* to HBH Licensing by March 1, 2020.

223. On November 27, 2019, HBH Licensing published updated Digital Guidelines, Policies and Procedures effective February 1, 2020. The updated Digital Guidelines mandated, among other requirements, that Honey Baked California transfer ownership of *shophoneybaked.com*, use titles and required metatags that clearly define the purpose, territorial limitations and other differentiating features distinguishing the Honey Baked California website from other sales portals on the National Website, and comply with required Payment Card Industry Data Security Standards on its website.

224. Despite initially agreeing to transfer the domain names to HBH Licensing in accordance with the License Agreement, Honey Baked California has since refused to do so, in breach of the License Agreement.

225. Honey Baked California has also breached the License Agreement by establishing and using numerous social media accounts in the operation of its Business, including accounts on Facebook and Twitter, without HBH Licensing's prior written consent and thereby has irreparably damaged Counterclaim Plaintiff, the Brand, and the System.

226. Honey Baked California has also breached the License Agreement by failing to comply with the Digital Standards, Policies and Procedures, including by failing to use titles and required metatags that clearly define the purpose, territorial limitation and other differentiating features distinguishing the Honey Baked California website from other sales portals on the National Website, and by failing to comply with required Payment Card Industry Data Security Standards on its website.

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 396

227.    HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to: (1) transfer of the registration and ownership of the domain names *shophoneybaked.com* and *hbhca.com* to HBH Licensing; (2) transfer of control of all social media accounts using the Proprietary Marks in the operation of Honey Baked California's Business; (3) comply with the Digital Standards, Policies and Procedures regarding use of titles and required metatags that clearly define the purpose, territorial limitations, and differentiating features distinguishing the Honey Baked California website from other sales portals on the National Website, and (4) compliance with Payment Card Industry Data Security Standards as set forth in the Digital Guidelines so long as the License Agreement remains in effect.

## Count VI—Breach of Contract—Noncompliance with Brand Standards
## (By HBH Licensing against Honey Baked California)

228.    The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–227 as if fully set forth herein.

229.    The License Agreement obligates Honey Baked California to, *inter alia*, use and display the Proprietary Marks as authorized and directed by HBH Licensing.

230.    In exercise of its rights under the License Agreement, HBH Licensing from time to time updates Brand logos and other Proprietary Marks.

231.    The License Agreement requires Honey Baked California to use and employ updated Proprietary Marks as directed by HBH Licensing.

232.    On or about October 13, 2018, HBH Licensing updated its Brand Standards for printing and display of the Proprietary Marks.

233.    Although most of the rest of the System immediately adopted the updated Proprietary Marks, HBH Licensing delayed the effective date of this update for Honey Baked California until June 1, 2019, so that Honey Baked California

would have time to exhaust existing supplies of packaging and other materials bearing the legacy Proprietary Marks.

234. Despite repeated requests from HBH Licensing and repeated assurances of compliance from Honey Baked California, Honey Baked California continued to use noncompliant packaging at least through the 2020 Easter holiday season.

235. Honey Baked California's refusal to comply with Brand standards for use of the Proprietary Marks violates the License Agreement, does not confirm to System standards, undermines the licensing system and the uniform use of the Proprietary Marks throughout the System, and irreparably harms Counterclaim Plaintiff and the HBH Brand and System.

236. HBH Licensing is entitled to an order directing Honey Baked California to specifically perform its obligations under the License Agreement, including but not limited to bringing and keeping all packaging materials making use of the Proprietary Marks into compliance with updated Brand standards, so long as the License Agreement remains in effect.

### Count VII—Breach of Contract—Underpayment of Royalty
### (By HBH Licensing against Honey Baked California)

237. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–236 as if fully set forth herein.

238. Section 4 of the License Agreement obligates Honey Baked California to pay an annual Royalty to HBH Licensing and sets forth the time and manner in which the Royalty is to be paid.

239. On information and belief, Honey Baked California has failed to fully and timely make the monthly Ham Royalty payments due under § 4 of the License Agreement during the period July, 2019 to June, 2020.

84

CASE NO. 8:19-CV-01528  JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 398

240. In addition, on information and belief, Honey Baked California has not paid the full amount of the Royalty due for each year that the License Agreement has been in effect, beginning on July 1, 2015 through to 2020.

241. Section 9(b) of the License Agreement requires Honey Baked California to maintain complete and accurate records of all sales and other information necessary to determine all royalties is owed to HBH Licensing. Further, section 9(c) permits HBH Licensing or its agents to conduct an audit of these records on at least 48 hours advance notice to Honey Baked USA.

242. HBH Licensing has notified Honey Baked California that it intends to exercise its rights to conduct an audit of Honey Baked California's books and records, and the audit is currently underway.

243. HBH Licensing has been damaged in an amount to be calculated following completion of the audit and to be proven at trial for underpayment of the royalties due from Honey Baked California.

244. HBH Licensing is entitled to an order directing Honey Baked California to pay the full amount of the Ham Royalty adjusted by Consumer Price Index as required under § 4 (b)(ii) and (iii) for each month during the period July, 2019 to July, 2020 and to pay the full amount of the Royalty owed for each year 2015–2020.

245. Additionally, in the event that that Honey Baked California has underpaid the Royalty or other payments owed to HBH Licensing by more than 5%, HBH Licensing is also entitled to recover from Honey Baked California the costs of performing the audit, including but not limited to accountants' and attorneys' fees. *See* License Agreement § 9(e).

### Count VIII—Federal Trademark Infringement, 15 U.S.C. § 1114(1)

### (By Honey Baked USA against Honey Baked California)

246. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–245 as if fully set forth herein.

85

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 399

247. Honey Baked USA owns the trademarks HONEYBAKED, HONEY BAKED HAM and the HONEY BAKED HAM COMPANY ("the HONEYBAKED marks"), which have been duly registered in the United States Patent and Trademark office.

248. Copies of the corresponding registration certificates are attached as Exhibit 1 and constitute evidence of Honey Baked USA's ownership of and exclusive rights to use the marks in connection with the goods and services recited in the registrations.

249. By and through its wholly owned subsidiary HBH Licensing, Honey Baked USA has licensed the use of the HONEYBAKED marks to Honey Baked California for use on specified food products. Without authorization or approval, Honey Baked California is using certain reproductions, copies, or colorable imitations of the HONEYBAKED marks on certain types of food products not authorized for sale as Branded Products under the License Agreement.

250. Additionally, by and through its wholly owned subsidiary HBH Licensing, Honey Baked USA has licensed the use of the HONEYBAKED marks for use in specified domain names and subject to territorial restrictions. Without authorization or approval, Honey Baked California is using in the operation of its Business unapproved domain names incorporating reproductions, copies, or colorable imitations of the HONEYBAKED marks on websites without titles or required metatags that clearly define the territorial limitations of the California website and without features distinguishing the California website from the National Website. Honey Baked California also has used without approval in the operation of its Business social media accounts incorporating reproductions, copies, or colorable imitations of the HONEYBAKED marks.

86

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 400

251.   Honey Baked California's actions in using the HONEYBAKED marks beyond the scope of the license have caused Honey Baked USA to lose control over the reputation and goodwill associated with the HONEYBAKED marks.

252.   Honey Baked California's unauthorized uses of the HONEYBAKED marks, as described above, is likely to cause, and has already caused, confusion, deception, or mistake among consumers concerning the source, affiliation, or sponsorship of Honey Baked California's products and services, and concerning the affiliation, connection, approval, sponsorship, or association of these products with Honey Baked USA.

253.   Honey Baked California's unauthorized uses of the HONEYBAKED marks constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

254.   As a direct and proximate result of Honey Baked California's actions alleged above, Honey Baked USA has been damaged and will continue to be damaged.

255.   Honey Baked California's infringement irreparably injures Counterclaim Plaintiff's business, reputation, and goodwill, which are embodied in the HONEYBAKED marks.  Counterclaim Plaintiff has no remedy at law and is entitled to an injunction restraining Honey Baked California from engaging in further acts of infringement.

**Count X—Federal Unfair Competition, 15 U.S.C. § 1125(a)**

**(By Honey Baked USA against Honey Baked California)**

256.   The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–255 as if fully set forth herein.

257.   As detailed above, Honey Baked California is selling, offering for sale, and distributing certain unauthorized food products using packaging that infringes the HONEYBAKED marks.

87

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 401

258. Honey Baked California is also using domain names and social media accounts in the operation of its Business that infringe the HONEYBAKED marks.

259. Honey Baked California's acts have caused Honey Baked USA to lose control over the reputation and goodwill associated with its HONEYBAKED marks.

260. Honey Baked California's unauthorized use of the HONEYBAKED marks constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

261. As a direct and proximate result of Honey Baked California's actions alleged above, Counterclaim Plaintiff has been injured and will continue to be injured.

262. Honey Baked California's infringement irreparably injures Counterclaim Plaintiff's business, reputation, and goodwill. Counterclaim Plaintiff has no remedy at law and is entitled to an injunction restraining Honey Baked California from engaging in further acts of unfair competition.

### Count XI—Termination of License Agreement under
### California Bus. & Prof. Code § 20020
### (By HBH Licensing against Honey Baked California)

263. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–262 as if fully set forth herein.

264. California Business & Professions Code § 20020 provides that a franchisor may terminate a franchise prior to the expiration of its term for good cause.

265. Section 20020 defines good cause as "the failure of the franchisee to substantially comply with the lawful requirements imposed upon the franchisee by the franchise agreement after being given notice of at least 60 days in advance of the termination and a reasonable opportunity, which in no event shall be less than 60 days from the date of the notice of noncompliance, to cure the failure." *Id.*

88

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS

Ex. 17 Page 402

266. Honey Baked California is a franchisee of the HBH Brand within the meaning of § 20020.

267. HBH Licensing is the franchisor of the HBH Brand within the meaning of § 20020.

268. The License Agreement is a franchise agreement within the meaning of § 20020.

269. As detailed in Counts I – IX *supra*, Honey Baked California has repeatedly failed to substantially comply with numerous lawful requirements imposed on it by the License Agreement.

270. Honey Baked California has received numerous notices of and reasonable opportunities to cure its noncompliance with lawful requirements imposed by the License Agreement and has failed to do so.

271. Based on Honey Baked California's repeated, uncured noncompliance with numerous lawful requirements imposed by the License Agreement, good cause exists to terminate Honey Baked California's license to use the HBH Brand and all associated Proprietary Marks and information, and HBH Licensing is entitled to a declaration to that effect.

272. HBH Licensing has a real and reasonable apprehension that if it exercised its right to terminate the License Agreement, Honey Baked California would seek judicial relief. HBH Licensing thus requires a declaratory judgment that it is entitled to terminate the License Agreement and requests that the court enter one.

## Count XII—Termination of License Agreement under
## California Bus. & Prof. Code § 20021
### (By HBH Licensing against Honey Baked California)

273. The Counterclaim Plaintiffs hereby incorporate the allegations of paragraphs 1–272 as if fully set forth herein.

274.   The License Agreement provides that grounds for termination prior to the expiration of its term include, *inter alia*, the occurrence of any event specified in the version of California Business & Professions Code § 20021 in effect on the effective date of the License Agreement. *See* License Agreement § 13(a)(iii), or the occurrence of any other event that shall be deemed to be good cause for termination under California law.

275.   The version of Section 20021 in effect on July 1, 2015 provides that a franchisor may terminate a franchise prior to the expiration of its term immediately, without providing an opportunity to cure, where, *inter alia*, (1) the franchisee, after curing any failure in accordance with § 20020, again engages in the same noncompliance, *see* § 20021(f); (2) the franchisee repeatedly fails to comply with one or more requirements of the franchise, whether or not corrected after notice, *see* § 20021(g); or (3) the franchisee engages in conduct that reflects materially and unfavorably upon the operation and reputation of the franchise business or system, *see* § 20021(d). In addition, the failure of the franchisee to comply with the lawful requirements imposed upon it by the franchise agreement after being given notice of the noncompliance and a reasonable opportunity to cure the failure constitutes good cause for termination of the agreement under the operative version of § 20020.

276.   Honey Baked California is a franchisee of the HBH Brand within the meaning of § 20021.

277.   HBH Licensing is the franchisor of the HBH Brand within the meaning of § 20021.

278.   The License Agreement is a franchise agreement within the meaning of § 20021.

279.   As set forth herein, Honey Baked California has repeatedly failed to comply with one or more requirements of the License Agreement.

90

280. Honey Baked California's noncompliance includes both repeated failures to comply with individual requirements of the License Agreement and failures to comply with multiple requirements of the License Agreement. In addition, Honey Baked California has engaged in conduct which reflects materially and unfavorably upon the operation and reputation of the Honey Baked franchise business and system.

281. Based on Honey Baked California's repeated noncompliance with multiple requirements of the License Agreement, its recurrent non-compliance with individual requirements of the License Agreement after notice and cure, and its conduct that reflects materially and unfavorably upon the operation and reputation of Honey Baked USA, valid grounds exist to terminate Honey Baked California's license to use the HBH Brand and all associated Proprietary Marks and information, and HBH Licensing is entitled to a declaration to that effect.

282. HBH Licensing has a real and reasonable apprehension that if it exercised its right to terminate the License Agreement, Honey Baked California would seek judicial relief. HBH Licensing thus requires a declaratory judgment that it is entitled to terminate the License Agreement and requests that the court enter one.

## **PRAYER FOR RELIEF**

WHEREFORE, the Defendants respectfully request judgment as follows:

1.	That the Court enter judgment in favor of Honey Baked USA and HBH Licensing on all of Honey Baked California's claims and dismiss those claims with prejudice;

2.	That Honey Baked California take nothing;

3.	That the Court enter a declaratory judgment finding that HBH Licensing is justified in terminating the License Agreement under California Business & Professions Code § 20020 and/or § 20021;

4.    In the alternative, should the Court not enter the declaratory judgment requested in the immediately preceding paragraph, that the Court enter a declaratory judgment finding that Honey Baked California has breached the License Agreement in each of the ways set forth in HBH Licensing's counterclaims for breach of contract;

5.    In the event that the Court grants all or part of the relief requested in the immediately preceding paragraph, that the Court also order Honey Baked California to specifically perform each of its obligations under the License Agreement that the Court finds Honey Baked California to have breached;

6.    That the Court, regardless of its ruling on the question of whether HBH Licensing is justified in terminating the License Agreement, order Honey Baked California to fully comply with its obligations under § 9 of the License Agreement by allowing auditors retained by HBH Licensing to immediately access all of Honey Baked Licensing's books, records, accounts, data, and any other information necessary to conduct a full audit and make an exact determination of all royalties owed to HBH Licensing under the Agreement;

7.    That the Court order immediate specific performance of Honey Baked California's obligation to pay to HBH Licensing any and all deficiencies or understatements in royalties and other payments owed to HBH Licensing and, if such deficiencies or understatements exceed 5% of the royalties and other payments paid by Honey Baked California during any relevant period, that the Court order Honey Baked California to immediately pay to HBH Licensing all of its costs in performing the audit that uncovered such deficiencies and understatements, including but not limited to accountants' and attorneys' fees.   Alternatively, that the Court award damages in the form of royalty payments and interest due and owing to HBH Licensing under the Agreement, in the amount to be determined during the audit and court-supervised discovery.

92

CASE NO. 8:19-CV-01528 JVS (DFMx)
DEFENDANTS' ANSWER TO PLAINTIFF'S SECOND AMENDED
COMPLAINT, AND SECOND AMENDED COUNTERCLAIMS
Ex. 17 Page 406

8.     That the Court order Honey Baked California to assign all HONEYBAKED-formative and HBH-formative domain names, and any other domain names containing reproductions, copies, colorable imitations, or abbreviations of, or references to, the Proprietary Marks, that Honey Baked California owns, has registered, or controls, to HBH Licensing, including, without limitation, the domain names *shophoneybaked.com* and *hbhca.com*;

9.     That the Court order Honey Baked California to transfer control of all social media accounts used in its Business to HBH Licensing;

10.    That the Court order Honey Baked California to comply with the Digital Standards, Policies and Procedures;

11.    That the Court enjoin Honey Baked California's infringement and unauthorized use of the HONEYBAKED marks;

12.    That the Court award Honey Baked USA and HBH Licensing their attorneys' fees and costs incurred in connection with this litigation, pursuant to 15 U.S.C. § 1117 and the License Agreement, or as otherwise permitted by law; and

13.    That the Court award Honey Baked USA and HBH Licensing such additional relief as it deems just and proper.

DATED:  October 22, 2020

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

/s/ J. David Mayberry
J. DAVID MAYBERRY
KOLLIN J. ZIMMERMANN
MARK H. REEVES

*Attorneys for Defendants*

93

# EXHIBIT 1

# Trademark Registration Certificates

EXHIBIT 1
- 94 -

Ex. 17 Page 408

# United States of America

## United States Patent and Trademark Office

# HONEYBAKED

**Reg. No. 5,094,383**

**Registered Dec. 06, 2016**

**Int. Cl.: 29, 30**

**Trademark**

**Principal Register**

The Honey Baked Ham Company, LLC (DELAWARE LIMITED LIABILITY COMPANY)
3875 Mansell Road
Alpharetta, GA 30022

CLASS 29: Ham; ham slices; ham bones; prepared meals consisting of ham; prepared foods, namely, ham packaged on trays; gift baskets containing ham; candied nuts; appetizers, namely, ham and cheese bites; pork; pork roast; barbeque pork roast; pork loin; pork ribs; pork chops; barbecue pork; beef; beef roast; beef ribs; beef steaks; beef tenderloin; prime rib; beef wellington; chicken; poultry; Cornish hens; turkey; vegetable salads; baked bean salad; meat salads, including ham salad, chicken salad, and turkey salad; seafood (not live), namely, salmon and lobster; deli meats; sliced turkey; sliced ham; cheese; prepared food, namely, cheese, vegetables, ham, meat, or fruit packaged on trays; gift baskets containing ham, cheese, soup, fruit, prepared nuts, crackers, candy, cookies, biscuits; prepared foods, namely, casseroles mainly consisting of vegetables, potatoes, beans or fruits; mashed potatoes; au gratin potatoes; cinnamon apples; sweet potato soufflé; corn casserole; green bean casserole; fruit salad; fruit preserves; cheese spreads; jams, jellies; soup mix

FIRST USE 1-31-1985; IN COMMERCE 1-31-1985

CLASS 30: Sauces, namely, three pepper mayonnaise, finishing sauce in the nature of a cooking sauce, honey mustard sauce, horseradish sauce, barbecue sauce; Sandwiches; cakes; coffee cakes; pies; bread; cookies; rolls; stuffing mixes containing bread; muffins; biscuits; brownies; candy; gravy; pancake mix; pasta salad; macaroni salad; macaroni and cheese bake; pancake syrup; ham glaze; mustard; relish; quiche

FIRST USE 1-31-1985; IN COMMERCE 1-31-1985

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

OWNER OF U.S. REG. NO. 1883717, 3049064, 1861924

SEC.2(F)

SER. NO. 86-943,886, FILED 03-17-2016
ALLISON A HOLTZ, EXAMINING ATTORNEY



Director of the United States
Patent and Trademark Office

EXHIBIT 1
- 95 -
Ex. 17 Page 409

Generated on: This page was generated by TSDR on 2020-06-22 12:34:46 EDT
Mark: HONEYBAKED

# HONEYBAKED

| | | | |
|---|---|---|---|
| **US Serial Number:** | 86943886 | **Application Filing Date:** | Mar. 17, 2016 |
| **US Registration Number:** | 5094383 | **Registration Date:** | Dec. 06, 2016 |
| **Filed as TEAS RF:** | Yes | **Currently TEAS RF:** | Yes |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |
| **TM5 Common Status Descriptor:** | | LIVE/REGISTRATION/Issued and Active | |
| | | The trademark application has been registered with the Office. | |
| **Status:** | Registered. The registration date is used to determine when post-registration maintenance documents are due. | | |
| **Status Date:** | Dec. 06, 2016 | | |
| **Publication Date:** | Sep. 20, 2016 | | |

# Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | HONEYBAKED |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |
| **Acquired Distinctiveness Claim:** | In whole |

# Related Properties Information

| | |
|---|---|
| **Claimed Ownership of US Registrations:** | 1861924, 1883717, 3049064 |

# Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** Ham; ham slices; ham bones; prepared meals consisting of ham; prepared foods, namely, ham packaged on trays; gift baskets containing ham; candied nuts; appetizers, namely, ham and cheese bites; pork; pork roast; barbeque pork roast; pork loin; pork ribs; pork chops; barbecue pork; beef; beef roast; beef ribs; beef steaks; beef tenderloin; prime rib; beef wellington; chicken; poultry; Cornish hens; turkey; vegetable salads; baked bean salad; meat salads, including ham salad, chicken salad, and turkey salad; seafood (not live), namely, salmon and lobster; deli meats; sliced turkey; sliced ham; cheese; prepared food, namely, cheese, vegetables, ham, meat, or fruit packaged on trays; gift baskets containing ham, cheese, soup, fruit, prepared nuts, crackers, candy, cookies, biscuits; prepared foods, namely, casseroles mainly consisting of vegetables, potatoes, beans or fruits; mashed potatoes; au gratin potatoes; cinnamon apples; sweet potato soufflé; corn casserole; green bean casserole; fruit salad; fruit preserves; cheese spreads; jams, jellies; soup mix

| | | | |
|---|---|---|---|
| **International Class(es):** | 029 - Primary Class | **U.S Class(es):** | 046 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |

EXHIBIT 1
Ex. 17 Page 410
- 96 -

| | | | |
|---|---|---|---|
| **First Use:** Jan. 31, 1985 | | **Use in Commerce:** Jan. 31, 1985 | |

| | |
|---|---|
| **For:** | Sauces, namely, three pepper mayonnaise, finishing sauce in the nature of a cooking sauce, honey mustard sauce, horseradish sauce, barbecue sauce; Sandwiches; cakes; coffee cakes; pies; bread; cookies; rolls; stuffing mixes containing bread; muffins; biscuits; brownies; candy; gravy; pancake mix; pasta salad; macaroni salad; macaroni and cheese bake; pancake syrup; ham glaze; mustard; relish; quiche |

| | | |
|---|---|---|
| **International Class(es):** | 030 - Primary Class | **U.S Class(es):** 046 |
| **Class Status:** | ACTIVE | |
| **Basis:** | 1(a) | |

| | | |
|---|---|---|
| **First Use:** Jan. 31, 1985 | | **Use in Commerce:** Jan. 31, 1985 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |
| **Filed No Basis:** | No | | |

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | The Honey Baked Ham Company, LLC |
| **Owner Address:** | 3875 Mansell Road<br>Alpharetta, GEORGIA UNITED STATES 30022 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY |
| **State or Country Where Organized:** | DELAWARE |

## Attorney/Correspondence Information

**Attorney of Record**

| | | |
|---|---|---|
| **Attorney Name:** | J. David Mayberry | **Docket Number:** 043652-TBD |
| **Attorney Primary Email Address:** | dctrademarks@kilpatricktownsend.com | **Attorney Email Authorized:** Yes |

**Correspondent**

| | |
|---|---|
| **Correspondent Name/Address:** | J. DAVID MAYBERRY<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>607 14TH STREET, NW<br>SUITE 900<br>WASHINGTON, DISTRICT OF COLUMBIA UNITED STATES 20005 |
| **Phone:** 202-508-5800 | **Fax:** 202-508-5858 |
| **Correspondent e-mail:** | dctrademarks@kilpatricktownsend.com |
| | **Correspondent e-mail Authorized:** Yes |

**Domestic Representative - Not Found**

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Dec. 06, 2016 | REGISTERED-PRINCIPAL REGISTER | |
| Sep. 20, 2016 | OFFICIAL GAZETTE PUBLICATION CONFIRMATION E-MAILED | |
| Sep. 20, 2016 | PUBLISHED FOR OPPOSITION | |
| Aug. 31, 2016 | NOTIFICATION OF NOTICE OF PUBLICATION E-MAILED | |
| Aug. 17, 2016 | LAW OFFICE PUBLICATION REVIEW COMPLETED | 70884 |
| Aug. 10, 2016 | ASSIGNED TO LIE | 70884 |
| Aug. 02, 2016 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Jul. 30, 2016 | TEAS/EMAIL CORRESPONDENCE ENTERED | 88889 |
| Jul. 29, 2016 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 88889 |
| Jul. 29, 2016 | TEAS RESPONSE TO OFFICE ACTION RECEIVED | |

EXHIBIT 1<br>Ex. 17 Page 411<br>- 97 -

| | | |
|---|---|---|
| Jun. 29, 2016 | NOTIFICATION OF NON-FINAL ACTION E-MAILED | 6325 |
| Jun. 29, 2016 | NON-FINAL ACTION E-MAILED | 6325 |
| Jun. 29, 2016 | NON-FINAL ACTION WRITTEN | 78484 |
| Jun. 28, 2016 | ASSIGNED TO EXAMINER | 78484 |
| Mar. 24, 2016 | NOTICE OF PSEUDO MARK E-MAILED | |
| Mar. 23, 2016 | NEW APPLICATION OFFICE SUPPLIED DATA ENTERED IN TRAM | |
| Mar. 21, 2016 | NEW APPLICATION ENTERED IN TRAM | |

## TM Staff and Location Information

| **TM Staff Information - None** |
|---|
| **File Location** |

| | | | |
|---|---|---|---|
| Current Location: | PUBLICATION AND ISSUE SECTION | Date in Location: | Dec. 06, 2016 |

## Assignment Abstract Of Title Information

| **Summary** | | | |
|---|---|---|---|
| Total Assignments: | 3 | Registrant: | The Honey Baked Ham Company, LLC |

### Assignment 1 of 3

| | | | |
|---|---|---|---|
| Conveyance: | SECURITY INTEREST | | |
| Reel/Frame: | 6196/0131 | Pages: | 26 |
| Date Recorded: | Nov. 03, 2017 | | |
| Supporting Documents: | assignment-tm-6196-0131.pdf | | |

| **Assignor** | | | |
|---|---|---|---|
| Name: | THE HONEY BAKED HAM COMPANY, LLC | Execution Date: | Sep. 29, 2017 |
| Legal Entity Type: | LIMITED LIABILITY COMPANY | State or Country Where Organized: | DELAWARE |

| **Assignee** | | | |
|---|---|---|---|
| Name: | REGIONS BANK | | |
| Legal Entity Type: | CORPORATION | State or Country Where Organized: | ALABAMA |
| Address: | 1180 W. PEACHTREE STREET, SUITE 900 ATLANTA, GEORGIA 30309 | | |

| **Correspondent** | |
|---|---|
| Correspondent Name: | SAM GUNN |
| Correspondent Address: | 1201 WEST PEACHTREE STREET ATLANTA, GA 30309 |

| **Domestic Representative - Not Found** |
|---|

### Assignment 2 of 3

| | | | |
|---|---|---|---|
| Conveyance: | SECURITY INTEREST | | |
| Reel/Frame: | 6646/0243 | Pages: | 11 |
| Date Recorded: | May 15, 2019 | | |
| Supporting Documents: | assignment-tm-6646-0243.pdf | | |

| **Assignor** | | | |
|---|---|---|---|
| Name: | THE HONEY BAKED HAM COMPANY, LLC | Execution Date: | May 13, 2019 |
| Legal Entity Type: | LIMITED LIABILITY COMPANY | State or Country Where Organized: | DELAWARE |

| **Assignee** | | | |
|---|---|---|---|
| Name: | PNC BANK, NATIONAL ASSOCIATION | | |
| Legal Entity Type: | CORPORATION | State or Country Where Organized: | PENNSYLVANIA |

EXHIBIT 1
Ex. 17 Page 412
- 98 -

| | |
|---|---|
| **Address:** | 249 FIFTH AVENUE |
| | PITTSBURGH, PENNSYLVANIA 15222 |

### Correspondent

| | |
|---|---|
| **Correspondent Name:** | INDIA E. VINCENT |
| **Correspondent Address:** | 420 20TH STREET NORTH |
| | SUITE 3400 |
| | BIRMINGHAM, AL 35203 |

### Domestic Representative - Not Found

### Assignment 3 of 3

| | | | |
|---|---|---|---|
| **Conveyance:** | RELEASE BY SECURED PARTY | | |
| **Reel/Frame:** | 6658/0967 | **Pages:** | 7 |
| **Date Recorded:** | May 17, 2019 | | |
| **Supporting Documents:** | assignment-tm-6658-0967.pdf | | |

### Assignor

| | | | |
|---|---|---|---|
| **Name:** | REGIONS BANK | **Execution Date:** | May 13, 2019 |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | ALABAMA |

### Assignee

| | | | |
|---|---|---|---|
| **Name:** | THE HONEY BAKED HAM COMPANY, LLC | | |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | DELAWARE |
| **Address:** | 3875 MANSELL ROAD | | |
| | ALPHARETTA, GEORGIA 30022 | | |

### Correspondent

| | |
|---|---|
| **Correspondent Name:** | INDIA E. VINCENT |
| **Correspondent Address:** | 420 20TH STREET NORTH |
| | SUITE 3400 |
| | BIRMINGHAM, AL 35203 |

### Domestic Representative - Not Found

EXHIBIT 1
**Ex. 17 Page 413**
- 99 -

Int. Cls.: 29, 30, 35 and 43

Prior U.S. Cls.: 46, 100, 101 and 102

**United States Patent and Trademark Office**

Reg. No. 3,049,064

Registered Jan. 24, 2006

**TRADEMARK**
**SERVICE MARK**
**PRINCIPAL REGISTER**

# HONEYBAKED

HBH LIMITED PARTNERSHIP (MICHIGAN LIM-
ITED PARTNERSHIP)
SUITE 200
11935 MASON-MONTGOMERY ROAD
CINCINNATI, OH 452491745

FOR: POULTRY, NAMELY, CHICKEN AND
TURKEY; BEEF, NAMELY, BEEF RIBS AND
ROASTS; PORK, NAMELY, HAM, BACON, PORK
LOINS, PORK RIBS AND CANADIAN BACON;
VEGETABLE SALADS; AND SOUP, IN CLASS 29
(U.S. CL. 46).

FIRST USE 1-31-1985; IN COMMERCE 1-31-1985.

FOR: CONFECTIONERIES, NAMELY, CHEESE-
CAKES AND FRUIT AND NUT PIES; CONDI-
MENTS, NAMELY, RELISHES; AND SAUCES, IN
CLASS 30 (U.S. CL. 46).

FIRST USE 1-31-1985; IN COMMERCE 1-31-1985.

FOR: MAIL ORDER CATALOG SERVICES FEA-
TURING PREPARED FOODS; ONLINE STORE SER-

VICES FEATURING PREPARED FOODS, IN CLASS
35 (U.S. CLS. 100, 101 AND 102).

FIRST USE 1-31-1985; IN COMMERCE 1-31-1985.

FOR: RESTAURANT SERVICES, IN CLASS 43
(U.S. CLS. 100 AND 101).

FIRST USE 9-1-2003; IN COMMERCE 9-1-2003.

THE MARK CONSISTS OF STANDARD CHAR-
ACTERS WITHOUT CLAIM TO ANY PARTICULAR
FONT, STYLE, SIZE, OR COLOR.

OWNER OF U.S. REG. NOS. 1,384,504, 2,816,485
AND OTHERS.

SEC. 2(F).

SER. NO. 78-435,628, FILED 6-15-2004.

BRIAN BROWN, EXAMINING ATTORNEY

EXHIBIT 1
**Ex. 17 Page 414**
- 100 -

Generated on: This page was generated by TSDR on 2020-06-22 12:33:51 EDT

Mark: HONEYBAKED

**HONEYBAKED**

| | | | |
|---|---|---|---|
| **US Serial Number:** | 78435628 | **Application Filing Date:** | Jun. 15, 2004 |
| **US Registration Number:** | 3049064 | **Registration Date:** | Jan. 24, 2006 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark, Service Mark | | |
| **TM5 Common Status Descriptor:** | | LIVE/REGISTRATION/Issued and Active | |
| | | The trademark application has been registered with the Office. | |
| **Status:** | The registration has been renewed. | | |
| **Status Date:** | Mar. 30, 2016 | | |
| **Publication Date:** | Nov. 01, 2005 | | |

## Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | HONEYBAKED |
| **Standard Character Claim:** | Yes. The mark consists of standard characters without claim to any particular font style, size, or color. |
| **Mark Drawing Type:** | 4 - STANDARD CHARACTER MARK |
| **Acquired Distinctiveness Claim:** | In whole |

## Related Properties Information

| | |
|---|---|
| **Claimed Ownership of US Registrations:** | 1384504, 1519978, 1861924, 1883717, 2524038, 2534573, 2816485 and others |

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | | | |
|---|---|---|---|
| **For:** | Poultry, namely, chicken and turkey; beef, namely, beef ribs and roasts; pork, namely, ham, bacon, pork loins, pork ribs and Canadian bacon; vegetable salads; and soup | | |
| **International Class(es):** | 029 - Primary Class | **U.S Class(es):** | 046 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |
| **First Use:** | Jan. 31, 1985 | **Use in Commerce:** | Jan. 31, 1985 |

| | | | |
|---|---|---|---|
| **For:** | Confectioneries, namely, cheesecakes and fruit and nut pies; condiments, namely, relishes; and sauces | | |
| **International Class(es):** | 030 - Primary Class | **U.S Class(es):** | 046 |
| **Class Status:** | ACTIVE | | |
| **Basis:** | 1(a) | | |

EXHIBIT 1
Ex. 17 Page 415
- 101 -

| | | | |
|---|---|---|---|
| **First Use:** Jan. 31, 1985 | | **Use in Commerce:** Jan. 31, 1985 | |

| | |
|---|---|
| **For:** | Mail order catalog services featuring prepared foods; online store services featuring prepared foods |
| **International Class(es):** | 035 - Primary Class |
| **Class Status:** | ACTIVE |
| **Basis:** | 1(a) |

**U.S Class(es):** 100, 101, 102

| | | | |
|---|---|---|---|
| **First Use:** Jan. 31, 1985 | | **Use in Commerce:** Jan. 31, 1985 | |

| | |
|---|---|
| **For:** | Restaurant services |
| **International Class(es):** | 043 - Primary Class |
| **Class Status:** | ACTIVE |
| **Basis:** | 1(a) |

**U.S Class(es):** 100, 101

| | | | |
|---|---|---|---|
| **First Use:** Sep. 01, 2003 | | **Use in Commerce:** Sep. 01, 2003 | |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | Yes | **Currently Use:** | Yes |
| **Filed ITU:** | No | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |
| **Filed No Basis:** | No | | |

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | THE HONEY BAKED HAM COMPANY, LLC |
| **Owner Address:** | 3875 MANSELL ROAD<br>ALPHARETTA, GEORGIA UNITED STATES 300221532 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY |

**State or Country Where Organized:** DELAWARE

## Attorney/Correspondence Information

### Attorney of Record

| | | | |
|---|---|---|---|
| **Attorney Name:** | J. David Mayberry | **Docket Number:** | 0302234 |
| **Attorney Primary Email Address:** | dctrademarks@kilpatricktownsend.com | **Attorney Email Authorized:** | Yes |

### Correspondent

| | |
|---|---|
| **Correspondent Name/Address:** | J. DAVID MAYBERRY<br>KILPATRICK TOWNSEND & STOCKTON LLP<br>607 14TH STREET NW, SUITE 900<br>WASHINGTON, DISTRICT OF COLUMBIA UNITED STATES 20005 |
| **Phone:** | 202-508-5800 |
| **Correspondent e-mail:** | dctrademarks@kilpatricktownsend.com |

**Fax:** 202-508-5858

**Correspondent e-mail Authorized:** Yes

### Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Mar. 30, 2016 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Mar. 30, 2016 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | 75461 |
| Mar. 30, 2016 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 75461 |
| Mar. 30, 2016 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 75461 |
| Jan. 21, 2016 | TEAS SECTION 8 & 9 RECEIVED | |
| May 20, 2015 | AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP | |

EXHIBIT 1
Ex. 17 Page 416
- 102 -

| Feb. 27, 2012 | NOTICE OF ACCEPTANCE OF SEC. 8 & 15 - E-MAILED | |
| Feb. 27, 2012 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | 66607 |
| Feb. 27, 2012 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 66607 |
| Jan. 10, 2012 | TEAS SECTION 8 & 15 RECEIVED | |
| Jan. 04, 2012 | TEAS CHANGE OF CORRESPONDENCE RECEIVED | |
| Jan. 24, 2006 | REGISTERED-PRINCIPAL REGISTER | |
| Nov. 01, 2005 | PUBLISHED FOR OPPOSITION | |
| Oct. 12, 2005 | NOTICE OF PUBLICATION | |
| Sep. 07, 2005 | LAW OFFICE PUBLICATION REVIEW COMPLETED | 71373 |
| Aug. 26, 2005 | ASSIGNED TO LIE | 71373 |
| Aug. 19, 2005 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Aug. 17, 2005 | EXAMINER'S AMENDMENT ENTERED | 71373 |
| Aug. 15, 2005 | EXAMINERS AMENDMENT E-MAILED | 6328 |
| Aug. 15, 2005 | EXAMINERS AMENDMENT -WRITTEN | 76835 |
| Jul. 28, 2005 | AMENDMENT FROM APPLICANT ENTERED | 78413 |
| Jul. 18, 2005 | CORRESPONDENCE RECEIVED IN LAW OFFICE | 78413 |
| Jul. 18, 2005 | PAPER RECEIVED | |
| Jan. 18, 2005 | NON-FINAL ACTION E-MAILED | 6325 |
| Jan. 18, 2005 | NON-FINAL ACTION WRITTEN | 76835 |
| Jan. 18, 2005 | ASSIGNED TO EXAMINER | 76835 |
| Jun. 23, 2004 | NEW APPLICATION ENTERED IN TRAM | |

## TM Staff and Location Information

| TM Staff Information - None | |
| **File Location** | |
| Current Location: GENERIC WEB UPDATE | Date in Location: Mar. 30, 2016 |

## Assignment Abstract Of Title Information

| Summary | |
| Total Assignments: 4 | Registrant: HBH Limited Partnership |

### Assignment 1 of 4

| Conveyance: | ASSIGNS THE ENTIRE INTEREST | | |
| Reel/Frame: | 5512/0289 | Pages: | 6 |
| Date Recorded: | May 07, 2015 | | |
| Supporting Documents: | assignment-tm-5512-0289.pdf | | |

| Assignor | |
| Name: HBH LIMITED PARTNERSHIP | Execution Date: May 04, 2015 |
| Legal Entity Type: LIMITED PARTNERSHIP | State or Country Where Organized: MICHIGAN |

| Assignee | |
| Name: THE HONEY BAKED HAM COMPANY, LLC | |
| Legal Entity Type: LIMITED LIABILITY COMPANY | State or Country Where Organized: DELAWARE |
| Address: 3875 MANSELL ROAD ALPHARETTA, GEORGIA 30022-1532 | |

| Correspondent | |
| Correspondent Name: J. DAVID MAYBERRY | |
| Correspondent Address: 607 14TH STREET, NW SUITE 900 WASHINGTON, DC 20005 | |

| Domestic Representative - Not Found | |

EXHIBIT 1

Ex. 17 Page 417

- 103 -

## Assignment 2 of 4

| | | | |
|---|---|---|---|
| **Conveyance:** | SECURITY INTEREST | | |
| **Reel/Frame:** | 6196/0131 | **Pages:** | 26 |
| **Date Recorded:** | Nov. 03, 2017 | | |
| **Supporting Documents:** | assignment-tm-6196-0131.pdf | | |

### Assignor

| | | | |
|---|---|---|---|
| **Name:** | THE HONEY BAKED HAM COMPANY, LLC | **Execution Date:** | Sep. 29, 2017 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | DELAWARE |

### Assignee

| | | | |
|---|---|---|---|
| **Name:** | REGIONS BANK | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | ALABAMA |
| **Address:** | 1180 W. PEACHTREE STREET, SUITE 900 ATLANTA, GEORGIA 30309 | | |

### Correspondent

| | |
|---|---|
| **Correspondent Name:** | SAM GUNN |
| **Correspondent Address:** | 1201 WEST PEACHTREE STREET ATLANTA, GA 30309 |

### Domestic Representative - Not Found

## Assignment 3 of 4

| | | | |
|---|---|---|---|
| **Conveyance:** | SECURITY INTEREST | | |
| **Reel/Frame:** | 6646/0243 | **Pages:** | 11 |
| **Date Recorded:** | May 15, 2019 | | |
| **Supporting Documents:** | assignment-tm-6646-0243.pdf | | |

### Assignor

| | | | |
|---|---|---|---|
| **Name:** | THE HONEY BAKED HAM COMPANY, LLC | **Execution Date:** | May 13, 2019 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | DELAWARE |

### Assignee

| | | | |
|---|---|---|---|
| **Name:** | PNC BANK, NATIONAL ASSOCIATION | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | PENNSYLVANIA |
| **Address:** | 249 FIFTH AVENUE PITTSBURGH, PENNSYLVANIA 15222 | | |

### Correspondent

| | |
|---|---|
| **Correspondent Name:** | INDIA E. VINCENT |
| **Correspondent Address:** | 420 20TH STREET NORTH SUITE 3400 BIRMINGHAM, AL 35203 |

### Domestic Representative - Not Found

## Assignment 4 of 4

| | | | |
|---|---|---|---|
| **Conveyance:** | RELEASE BY SECURED PARTY | | |
| **Reel/Frame:** | 6658/0967 | **Pages:** | 7 |
| **Date Recorded:** | May 17, 2019 | | |
| **Supporting Documents:** | assignment-tm-6658-0967.pdf | | |

### Assignor

| | | | |
|---|---|---|---|
| **Name:** | REGIONS BANK | **Execution Date:** | May 13, 2019 |
| **Legal Entity Type:** | CORPORATION | **State or Country** | ALABAMA |

EXHIBIT 1

Ex. 17 Page 418

- 104 -

Where Organized:

### Assignee

| | |
|---|---|
| **Name:** | THE HONEY BAKED HAM COMPANY, LLC |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized** | DELAWARE |
| **Address:** | 3875 MANSELL ROAD ALPHARETTA, GEORGIA 30022 |

### Correspondent

| | |
|---|---|
| **Correspondent Name:** | INDIA E. VINCENT |
| **Correspondent Address:** | 420 20TH STREET NORTH SUITE 3400 BIRMINGHAM, AL 35203 |

### Domestic Representative - Not Found

EXHIBIT 1
**Ex. 17 Page 419**
- 105 -

Int. Cls.: 29, 30 and 42

Prior U.S. Cls.: 46, 100 and 101

## United States Patent and Trademark Office

Reg. No. 2,126,500

Registered Jan. 6, 1998

### TRADEMARK
### SERVICE MARK
### PRINCIPAL REGISTER

# THE HONEYBAKED HAM COMPANY

HBH LIMITED PARTNERSHIP (MICHIGAN LIMITED PARTNERSHIP)
11935 MASON-MONTGOMERY ROAD
SUITE 200
CINCINNATI, OH 452499897

FOR: POULTRY, NAMELY, CHICKEN AND TURKEY; BEEF, NAMELY, BEEF RIBS AND ROASTS; PORK, NAMELY, HAM, BACON, PORK LOINS, PORK RIBS AND CANADIAN BACON; VEGETABLE SALADS, NAMELY, POTATO SALAD, THREE-BEAN SALAD AND COLE SLAW; AND SOUP MIXES, IN CLASS 29 (U.S. CL. 46).

FIRST USE 3-0-1995; IN COMMERCE 3-0-1995.

FOR: CONFECTIONERIES, NAMELY, CHEESECAKES AND FRUIT AND NUT PIES; CONDIMENTS, NAMELY, HORSERADISH SAUCE, RELISHES AND MUSTARDS; SAUCES, NAMELY, BARBECUE SAUCE AND CHILI SAUCE; MACARONI SALAD; AND COFFEE AND TEA, IN CLASS 30 (U.S. CL. 46).

FIRST USE 6-0-1995; IN COMMERCE 6-0-1995.

FOR: MAIL ORDER SERVICES FOR PREPARED FOODS AND RESTAURANT SERVICES, IN CLASS 42 (U.S. CLS. 100 AND 101).

FIRST USE 6-0-1995; IN COMMERCE 6-0-1995.

OWNER OF U.S. REG. NOS. 1,384,504, 2,045,359 AND OTHERS.

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "HAM COMPANY" AS TO CLASS 29 AND 42 AND "COMPANY" AS TO CLASS 30, APART FROM THE MARK AS SHOWN.

SEC. 2(F).

SER. NO. 74-648,964, FILED 3-20-1995.

HENRY S. ZAK, EXAMINING ATTORNEY

EXHIBIT 1
Ex. 17 Page 420
- 106 -

EXHIBIT 1
Ex. 17 Page 421
- 107 -

Generated on: This page was generated by TSDR on 2020-06-22 12:32:13 EDT

Mark: THE HONEYBAKED HAM COMPANY

| | | | |
|---|---|---|---|
| **US Serial Number:** | 74648964 | **Application Filing Date:** | Mar. 20, 1995 |
| **US Registration Number:** | 2126500 | **Registration Date:** | Jan. 06, 1998 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark, Service Mark | | |

**TM5 Common Status Descriptor:**



LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

**Status:** The registration has been renewed.

**Status Date:** Jan. 26, 2018

**Publication Date:** Oct. 14, 1997

# Mark Information

| | |
|---|---|
| **Mark Literal Elements:** | THE HONEYBAKED HAM COMPANY |
| **Standard Character Claim:** | No |
| **Mark Drawing Type:** | 1 - TYPESET WORD(S) /LETTER(S) /NUMBER(S) |
| **Disclaimer:** | "HAM COMPANY" as to class 29 and 42 and "COMPANY" as to class 30 |
| **Acquired Distinctiveness Claim:** | In whole |

# Related Properties Information

| | |
|---|---|
| **Claimed Ownership of US Registrations:** | 1384504, 2026371, 2045359 and others |

# Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:

- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

| | |
|---|---|
| **For:** | poultry, namely, chicken and turkey; beef, namely, beef ribs and roasts; pork, namely, ham, bacon, pork loins, pork ribs and Canadian bacon; vegetable salads, namely, potato salad, [ three-bean salad ] and cole slaw; and soup mixes |
| **International Class(es):** | 029 - Primary Class |
| **Class Status:** | ACTIVE |
| **Basis:** | 1(a) |
| **First Use:** | Mar. 1995 |

| | |
|---|---|
| **U.S Class(es):** | 046 |
| **Use in Commerce:** | Mar. 1995 |

EXHIBIT 1
Ex. 17 Page 422
- 108 -

|  | |
|---|---|
| **For:** | confectioneries, namely, cheesecakes and fruit and nut pies; condiments, namely, horseradish sauce, [ relishes ] and mustards; sauces, namely, barbecue sauce [ and chili sauce ] ; macaroni salad [ ; and coffee and tea ] |
| **International Class(es):** | 030 - Primary Class |
| **U.S Class(es):** | 046 |
| **Class Status:** | ACTIVE |
| **Basis:** | 1(a) |
| **First Use:** | Jun. 1995 |
| **Use in Commerce:** | Jun. 1995 |

|  | |
|---|---|
| **For:** | mail order services for prepared foods and restaurant services |
| **International Class(es):** | 042 - Primary Class |
| **U.S Class(es):** | 100, 101 |
| **Class Status:** | ACTIVE |
| **Basis:** | 1(a) |
| **First Use:** | Jun. 1995 |
| **Use in Commerce:** | Jun. 1995 |

## Basis Information (Case Level)

| | | | |
|---|---|---|---|
| **Filed Use:** | No | **Currently Use:** | Yes |
| **Filed ITU:** | Yes | **Currently ITU:** | No |
| **Filed 44D:** | No | **Currently 44E:** | No |
| **Filed 44E:** | No | **Currently 66A:** | No |
| **Filed 66A:** | No | **Currently No Basis:** | No |
| **Filed No Basis:** | No | | |

## Current Owner(s) Information

| | |
|---|---|
| **Owner Name:** | THE HONEY BAKED HAM COMPANY, LLC |
| **Owner Address:** | 3875 MANSELL ROAD<br>ALPHARETTA, GEORGIA UNITED STATES 300221532 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY |
| **State or Country Where Organized:** | DELAWARE |

## Attorney/Correspondence Information

### Attorney of Record

| | |
|---|---|
| **Attorney Name:** | J. David Mayberry |
| **Docket Number:** | 0298838 |
| **Attorney Primary Email Address:** | tmadmin@kilpatricktownsend.com |
| **Attorney Email Authorized:** | Yes |

### Correspondent

| | |
|---|---|
| **Correspondent Name/Address:** | J. David Mayberry<br>Kilpatrick Townsend & Stockton LLP<br>1100 Peachtree Street, Suite 2800<br>Mailstop: IP Docketing - 22<br>Atlanta, GEORGIA UNITED STATES 30309 |
| **Phone:** | 202-508-5800 |
| **Fax:** | 202-508-5858 |
| **Correspondent e-mail:** | tmadmin@kilpatricktownsend.com wstrademarks @kilpatricktownsend.com |
| **Correspondent e-mail Authorized:** | Yes |

### Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|---|---|---|
| Jan. 26, 2018 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Jan. 26, 2018 | REGISTERED AND RENEWED (SECOND RENEWAL - 10 YRS) | 74704 |
| Jan. 26, 2018 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 74704 |
| Jan. 26, 2018 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 74704 |
| Jan. 05, 2018 | TEAS SECTION 8 & 9 RECEIVED | |

EXHIBIT 1
Ex. 17 Page 423
- 109 -

| | | |
|---|---|---|
| Jan. 06, 2017 | COURTESY REMINDER - SEC. 8 (10-YR)/SEC. 9 E-MAILED | |
| May 20, 2015 | AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP | |
| May 16, 2011 | CASE FILE IN TICRS | |
| Apr. 04, 2011 | CASE FILE IN TICRS | |
| Jun. 21, 2007 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | 69934 |
| Jun. 21, 2007 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | |
| Jun. 07, 2007 | ASSIGNED TO PARALEGAL | 69934 |
| May 11, 2007 | REGISTERED - COMBINED SECTION 8 (10-YR) & SEC. 9 FILED | |
| May 11, 2007 | TEAS SECTION 8 & 9 RECEIVED | |
| Aug. 04, 2004 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | |
| Jul. 01, 2004 | REGISTERED - SEC. 8 (6-YR) & SEC. 15 FILED | |
| Jul. 01, 2004 | TEAS SECTION 8 & 15 RECEIVED | |
| Jan. 06, 1998 | REGISTERED-PRINCIPAL REGISTER | |
| Oct. 14, 1997 | PUBLISHED FOR OPPOSITION | |
| Sep. 12, 1997 | NOTICE OF PUBLICATION | |
| Aug. 12, 1997 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Aug. 12, 1997 | USE AMENDMENT ACCEPTED | |
| Aug. 08, 1997 | EXAMINER'S AMENDMENT MAILED | |
| Aug. 08, 1997 | ASSIGNED TO EXAMINER | 62126 |
| Mar. 02, 1996 | AMENDMENT TO USE PROCESSING COMPLETE | |
| Jan. 24, 1996 | USE AMENDMENT FILED | |
| Jul. 26, 1995 | NON-FINAL ACTION MAILED | |
| Jul. 23, 1995 | ASSIGNED TO EXAMINER | 66324 |

## TM Staff and Location Information

| | |
|---|---|
| **TM Staff Information - None** | |
| **File Location** | |
| Current Location: GENERIC WEB UPDATE | Date in Location: Jan. 26, 2018 |

## Assignment Abstract Of Title Information

| | |
|---|---|
| **Summary** | |
| **Total Assignments:** 4 | **Registrant:** HBH Limited Partnership |

### Assignment 1 of 4

| | | |
|---|---|---|
| Conveyance: | ASSIGNS THE ENTIRE INTEREST | |
| Reel/Frame: | 5512/0289 | Pages: 6 |
| Date Recorded: | May 07, 2015 | |
| Supporting Documents: | assignment-tm-5512-0289.pdf | |

| | |
|---|---|
| **Assignor** | |
| Name: HBH LIMITED PARTNERSHIP | Execution Date: May 04, 2015 |
| Legal Entity Type: LIMITED PARTNERSHIP | State or Country Where Organized: MICHIGAN |

| | |
|---|---|
| **Assignee** | |
| Name: THE HONEY BAKED HAM COMPANY, LLC | |
| Legal Entity Type: LIMITED LIABILITY COMPANY | State or Country Where Organized: DELAWARE |
| Address: 3875 MANSELL ROAD ALPHARETTA, GEORGIA 30022-1532 | |

| | |
|---|---|
| **Correspondent** | |
| Correspondent Name: J. DAVID MAYBERRY | |
| Correspondent Address: 607 14TH STREET, NW SUITE 900 WASHINGTON, DC 20005 | |

EXHIBIT 1
Ex. 17 Page 424
- 110 -

**Domestic Representative - Not Found**

## Assignment 2 of 4

| | |
|---|---|
| **Conveyance:** | SECURITY INTEREST |
| **Reel/Frame:** | 6196/0131    **Pages:** 26 |
| **Date Recorded:** | Nov. 03, 2017 |
| **Supporting Documents:** | assignment-tm-6196-0131.pdf |

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | THE HONEY BAKED HAM COMPANY, LLC | **Execution Date:** | Sep. 29, 2017 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | DELAWARE |

**Assignee**

| | | | |
|---|---|---|---|
| **Name:** | REGIONS BANK | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | ALABAMA |
| **Address:** | 1180 W. PEACHTREE STREET, SUITE 900 ATLANTA, GEORGIA 30309 | | |

**Correspondent**

| | |
|---|---|
| **Correspondent Name:** | SAM GUNN |
| **Correspondent Address:** | 1201 WEST PEACHTREE STREET ATLANTA, GA 30309 |

**Domestic Representative - Not Found**

## Assignment 3 of 4

| | |
|---|---|
| **Conveyance:** | SECURITY INTEREST |
| **Reel/Frame:** | 6646/0243    **Pages:** 11 |
| **Date Recorded:** | May 15, 2019 |
| **Supporting Documents:** | assignment-tm-6646-0243.pdf |

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | THE HONEY BAKED HAM COMPANY, LLC | **Execution Date:** | May 13, 2019 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | DELAWARE |

**Assignee**

| | | | |
|---|---|---|---|
| **Name:** | PNC BANK, NATIONAL ASSOCIATION | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | PENNSYLVANIA |
| **Address:** | 249 FIFTH AVENUE PITTSBURGH, PENNSYLVANIA 15222 | | |

**Correspondent**

| | |
|---|---|
| **Correspondent Name:** | INDIA E. VINCENT |
| **Correspondent Address:** | 420 20TH STREET NORTH SUITE 3400 BIRMINGHAM, AL 35203 |

**Domestic Representative - Not Found**

## Assignment 4 of 4

| | |
|---|---|
| **Conveyance:** | RELEASE BY SECURED PARTY |
| **Reel/Frame:** | 6658/0967    **Pages:** 7 |
| **Date Recorded:** | May 17, 2019 |
| **Supporting Documents:** | assignment-tm-6658-0967.pdf |

**Assignor**

| | | | |
|---|---|---|---|
| **Name:** | REGIONS BANK | **Execution Date:** | May 13, 2019 |

EXHIBIT 1
Ex. 17 Page 425
- 111 -

| | | | |
|---|---|---|---|
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | ALABAMA |

| | Assignee | | |
|---|---|---|---|
| **Name:** | THE HONEY BAKED HAM COMPANY, LLC | | |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | DELAWARE |
| **Address:** | 3875 MANSELL ROAD ALPHARETTA, GEORGIA 30022 | | |

| | Correspondent | | |
|---|---|---|---|
| **Correspondent Name:** | INDIA E. VINCENT | | |
| **Correspondent Address:** | 420 20TH STREET NORTH SUITE 3400 BIRMINGHAM, AL 35203 | | |

**Domestic Representative - Not Found**

EXHIBIT 1

**Ex. 17 Page 426**

- 112 -

Int. Cls.: 29 and 30

Prior U.S. Cl.: 46

**United States Patent and Trademark Office**

Amended

Reg. No. 1,861,924

Registered Nov. 8, 1994

OG Date Oct. 10, 2006

**TRADEMARK**
**PRINCIPAL REGISTER**

# HONEYBAKED

HBH LIMITED PARTNERSHIP (MICHI-
GAN LIMITED PARTNERSHIP)
11935 MASON-MONTGOMERY ROAD,
SUITE 200
CINCINNATI, OH 452499897
THE MARK CONSISTS OF STAN-
DARD CHARACTERS WITHOUT CLAIM
TO ANY PARTICULAR FONT, STYLE,
SIZE, OR COLOR.
OWNER OF U.S. REG. NOS. 1,384,504,
1,519,978 AND 1,553,044.
SEC. 2(F).

FOR: POULTRY AND MEATS;
NAMELY, TURKEY AND PORK, IN-
CLUDING HAM AND PORK RIBS; VE-
GETABLE SALADS; NAMELY, THREE-
BEAN SALAD AND COLE SLAW; AND
POTATO SALAD, IN CLASS 29 (U.S. CL.
46).

FIRST USE 12-0-1989; IN COMMERCE
12-0-1989.

FOR: CONFECTIONERIES; NAMELY,
CHEESECAKES; FRUIT AND NUT PIES;
CONDIMENTS; NAMELY, HORSERAD-
ISH SAUCE, RELISHES, AND MUS-
TARDS; BARBECUE SAUCE; AND
CHILI SAUCE; SALADS; NAMELY, MA-
CARONI SALAD, IN CLASS 30 (U.S. CL.
46).

FIRST USE 12-0-1989; IN COMMERCE
12-0-1989.

SER. NO. 74-342,368, FILED 12-21-1992.

*In testimony whereof I have hereunto set my hand
and caused the seal of The Patent and Trademark
Office to be affixed on Oct. 10, 2006.*

**DIRECTOR OF THE U.S. PATENT AND TRADEMARK OFFICE**

EXHIBIT 1
**Ex. 17 Page 427**
- 113 -

Generated on: This page was generated by TSDR on 2020-06-22 12:31:04 EDT

Mark: HONEYBAKED

**HONEYBAKED**

| | | | |
|---|---|---|---|
| **US Serial Number:** | 74342368 | **Application Filing Date:** | Dec. 21, 1992 |
| **US Registration Number:** | 1861924 | **Registration Date:** | Nov. 08, 1994 |
| **Register:** | Principal | | |
| **Mark Type:** | Trademark | | |

**TM5 Common Status Descriptor:** LIVE/REGISTRATION/Issued and Active

The trademark application has been registered with the Office.

**Status:** The registration has been renewed.

**Status Date:** Nov. 24, 2014

**Publication Date:** Apr. 12, 1994

## Mark Information

**Mark Literal Elements:** HONEYBAKED

**Standard Character Claim:** Yes. The mark consists of standard characters without claim to any particular font style, size, or color.

**Mark Drawing Type:** 4 - STANDARD CHARACTER MARK

**Acquired Distinctiveness Claim:** In whole

## Related Properties Information

**Claimed Ownership of US Registrations:** 1384504, 1519978, 1553044

## Goods and Services

**Note:**
The following symbols indicate that the registrant/owner has amended the goods/services:
- Brackets [..] indicate deleted goods/services;
- Double parenthesis ((..)) identify any goods/services not claimed in a Section 15 affidavit of incontestability; and
- Asterisks *..* identify additional (new) wording in the goods/services.

**For:** poultry and meats; namely, turkey and pork, including ham and pork ribs; [ vegetable salads; namely, three-bean salad and cole slaw; and potato salad ]

**International Class(es):** 029 - Primary Class    **U.S Class(es):** 046

**Class Status:** ACTIVE

**Basis:** 1(a)

**First Use:** Dec. 1989    **Use in Commerce:** Dec. 1989

**For:** confectioneries; namely, cheesecakes; fruit and nut pies; condiments; namely, [ horseradish sauce, ] relishes, [ and mustards; ] barbecue sauce; and chili sauce; salads; namely, macaroni salad ]

**International Class(es):** 030 - Primary Class    **U.S Class(es):** 046

**Class Status:** ACTIVE

EXHIBIT 1
Ex. 17 Page 428
- 114 -

Basis: 1(a)

First Use: Dec. 1989

Use in Commerce: Dec. 1989

## Basis Information (Case Level)

Filed Use: Yes

Filed ITU: No

Filed 44D: No

Filed 44E: No

Filed 66A: No

Filed No Basis: No

Currently Use: Yes

Currently ITU: No

Currently 44E: No

Currently 66A: No

Currently No Basis: No

## Current Owner(s) Information

Owner Name: THE HONEY BAKED HAM COMPANY, LLC

Owner Address: 3875 MANSELL ROAD
ALPHARETTA, GEORGIA UNITED STATES 300221532

Legal Entity Type: LIMITED LIABILITY COMPANY

State or Country Where Organized: DELAWARE

## Attorney/Correspondence Information

### Attorney of Record

Attorney Name: Daniel H. Marti

Attorney Primary Email Address: wstrademarks@kilpatricktownsend.com

Docket Number: 43652-298194

Attorney Email Authorized: Yes

### Correspondent

Correspondent Name/Address: Daniel H. Marti
KILPATRICK TOWNSEND & STOCKTON LLP
STE 900
607 14TH ST NW
WASHINGTON, DISTRICT OF COLUMBIA UNITED STATES 20005-2018

Phone: 202-508-5800

Fax: 202-508-5858

Correspondent e-mail: wstrademarks@kilpatricktownsend.com

Correspondent e-mail Authorized: Yes

### Domestic Representative - Not Found

## Prosecution History

| Date | Description | Proceeding Number |
|------|-------------|-------------------|
| May 20, 2015 | AUTOMATIC UPDATE OF ASSIGNMENT OF OWNERSHIP | |
| Nov. 24, 2014 | NOTICE OF ACCEPTANCE OF SEC. 8 & 9 - E-MAILED | |
| Nov. 24, 2014 | REGISTERED AND RENEWED (SECOND RENEWAL - 10 YRS) | 68335 |
| Nov. 24, 2014 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | 68335 |
| Nov. 24, 2014 | CASE ASSIGNED TO POST REGISTRATION PARALEGAL | 68335 |
| Nov. 05, 2014 | TEAS SECTION 8 & 9 RECEIVED | |
| Sep. 05, 2008 | REGISTERED AND RENEWED (FIRST RENEWAL - 10 YRS) | 59807 |
| Sep. 05, 2008 | REGISTERED - SEC. 8 (10-YR) ACCEPTED/SEC. 9 GRANTED | |
| Sep. 01, 2006 | AMENDMENT UNDER SECTION 7 Â– PROCESSED | |
| Jul. 14, 2006 | ON HOLD - ELECTRONIC RECORD REVIEW REQUIRED | |
| Jul. 01, 2006 | AMENDMENT UNDER SECTION 7 Â– PROCESSED | |
| May 19, 2006 | ON HOLD - ELECTRONIC RECORD REVIEW REQUIRED | |
| May 11, 2006 | AMENDMENT UNDER SECTION 7 Â– PROCESSED | |
| May 06, 2005 | REGISTERED - COMBINED SECTION 8 (10-YR) & SEC. 9 FILED | |
| Oct. 29, 2005 | AMENDMENT UNDER SECTION 7 Â– PROCESSED | |
| Aug. 29, 2005 | AMENDMENT UNDER SECTION 7 Â– PROCESSED | |
| Aug. 29, 2005 | REINSTATED | |

EXHIBIT 1

**Ex. 17 Page 429**
- 115 -

| | | |
|---|---|---|
| Aug. 13, 2005 | CANCELLED SEC. 8 (10-YR)/EXPIRED SECTION 9 | |
| Aug. 05, 2005 | ASSIGNED TO PARALEGAL | 59807 |
| Jun. 01, 2005 | PAPER RECEIVED | |
| May 06, 2005 | SEC 7 REQUEST FILED | |
| May 06, 2005 | TEAS SECTION 8 & 9 RECEIVED | |
| May 06, 2005 | PAPER RECEIVED | |
| Feb. 05, 2001 | REGISTERED - SEC. 8 (6-YR) ACCEPTED & SEC. 15 ACK. | |
| Oct. 04, 2000 | REGISTERED - SEC. 8 (6-YR) & SEC. 15 FILED | |
| Nov. 08, 1994 | REGISTERED-PRINCIPAL REGISTER | |
| Apr. 12, 1994 | PUBLISHED FOR OPPOSITION | |
| Mar. 11, 1994 | NOTICE OF PUBLICATION | |
| Sep. 07, 1993 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Aug. 16, 1993 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| Jul. 13, 1993 | PREVIOUS ALLOWANCE COUNT WITHDRAWN | |
| Jul. 12, 1993 | APPROVED FOR PUB - PRINCIPAL REGISTER | |
| Jun. 21, 1993 | CORRESPONDENCE RECEIVED IN LAW OFFICE | |
| May 24, 1993 | EXAMINER'S AMENDMENT MAILED | |
| Mar. 22, 1993 | ASSIGNED TO EXAMINER | 69194 |
| Mar. 19, 1993 | ASSIGNED TO EXAMINER | 69194 |
| Mar. 19, 1993 | ASSIGNED TO EXAMINER | 69194 |
| Mar. 18, 1993 | ASSIGNED TO EXAMINER | 69812 |

# TM Staff and Location Information

| TM Staff Information - None |
|---|

| File Location | | |
|---|---|---|
| Current Location: | GENERIC WEB UPDATE | Date in Location: Nov. 24, 2014 |

# Assignment Abstract Of Title Information

| Summary | | |
|---|---|---|
| Total Assignments: 4 | | Registrant: HBH Limited Partnership |

| Assignment 1 of 4 |
|---|

| Conveyance: | ASSIGNS THE ENTIRE INTEREST | |
|---|---|---|
| Reel/Frame: | 5512/0289 | Pages: 6 |
| Date Recorded: | May 07, 2015 | |
| Supporting Documents: | assignment-tm-5512-0289.pdf | |

| Assignor | | |
|---|---|---|
| Name: | HBH LIMITED PARTNERSHIP | Execution Date: May 04, 2015 |
| Legal Entity Type: | LIMITED PARTNERSHIP | State or Country Where Organized: MICHIGAN |

| Assignee | | |
|---|---|---|
| Name: | THE HONEY BAKED HAM COMPANY, LLC | |
| Legal Entity Type: | LIMITED LIABILITY COMPANY | State or Country Where Organized: DELAWARE |
| Address: | 3875 MANSELL ROAD ALPHARETTA, GEORGIA 30022-1532 | |

| Correspondent | | |
|---|---|---|
| Correspondent Name: | J. DAVID MAYBERRY | |
| Correspondent Address: | 607 14TH STREET, NW SUITE 900 WASHINGTON, DC 20005 | |

| Domestic Representative - Not Found |
|---|

| Assignment 2 of 4 |
|---|

EXHIBIT 1

Ex. 17 Page 430

- 116 -

| | | | |
|---|---|---|---|
| **Conveyance:** | SECURITY INTEREST | | |
| **Reel/Frame:** | 6196/0131 | **Pages:** | 26 |
| **Date Recorded:** | Nov. 03, 2017 | | |
| **Supporting Documents:** | assignment-tm-6196-0131.pdf | | |

| **Assignor** | | | |
|---|---|---|---|
| **Name:** | THE HONEY BAKED HAM COMPANY, LLC | **Execution Date:** | Sep. 29, 2017 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | DELAWARE |

| **Assignee** | | | |
|---|---|---|---|
| **Name:** | REGIONS BANK | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | ALABAMA |
| **Address:** | 1180 W. PEACHTREE STREET, SUITE 900 ATLANTA, GEORGIA 30309 | | |

| **Correspondent** | |
|---|---|
| **Correspondent Name:** | SAM GUNN |
| **Correspondent Address:** | 1201 WEST PEACHTREE STREET ATLANTA, GA 30309 |

| **Domestic Representative - Not Found** |
|---|

## Assignment 3 of 4

| | | | |
|---|---|---|---|
| **Conveyance:** | SECURITY INTEREST | | |
| **Reel/Frame:** | 6646/0243 | **Pages:** | 11 |
| **Date Recorded:** | May 15, 2019 | | |
| **Supporting Documents:** | assignment-tm-6646-0243.pdf | | |

| **Assignor** | | | |
|---|---|---|---|
| **Name:** | THE HONEY BAKED HAM COMPANY, LLC | **Execution Date:** | May 13, 2019 |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY | **State or Country Where Organized:** | DELAWARE |

| **Assignee** | | | |
|---|---|---|---|
| **Name:** | PNC BANK, NATIONAL ASSOCIATION | | |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | PENNSYLVANIA |
| **Address:** | 249 FIFTH AVENUE PITTSBURGH, PENNSYLVANIA 15222 | | |

| **Correspondent** | |
|---|---|
| **Correspondent Name:** | INDIA E. VINCENT |
| **Correspondent Address:** | 420 20TH STREET NORTH SUITE 3400 BIRMINGHAM, AL 35203 |

| **Domestic Representative - Not Found** |
|---|

## Assignment 4 of 4

| | | | |
|---|---|---|---|
| **Conveyance:** | RELEASE BY SECURED PARTY | | |
| **Reel/Frame:** | 6658/0967 | **Pages:** | 7 |
| **Date Recorded:** | May 17, 2019 | | |
| **Supporting Documents:** | assignment-tm-6658-0967.pdf | | |

| **Assignor** | | | |
|---|---|---|---|
| **Name:** | REGIONS BANK | **Execution Date:** | May 13, 2019 |
| **Legal Entity Type:** | CORPORATION | **State or Country Where Organized:** | ALABAMA |

EXHIBIT 1
**Ex. 17 Page 431**
- 117 -

| Assignee | |
|---|---|
| **Name:** | THE HONEY BAKED HAM COMPANY, LLC |
| **Legal Entity Type:** | LIMITED LIABILITY COMPANY |
| **State or Country Where Organized:** | DELAWARE |
| **Address:** | 3875 MANSELL ROAD ALPHARETTA, GEORGIA 30022 |

| Correspondent | |
|---|---|
| **Correspondent Name:** | INDIA E. VINCENT |
| **Correspondent Address:** | 420 20TH STREET NORTH SUITE 3400 BIRMINGHAM, AL 35203 |

**Domestic Representative - Not Found**

EXHIBIT 1
**Ex. 17 Page 432**
- 118 -

# EXHIBIT 18

KILPATRICK TOWNSEND & STOCKTON LLP
KOLLIN J. ZIMMERMANN (State Bar No. 273092)
*kzimmermann@kilpatricktownsend.com*
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone:   (310) 248-3830
Facsimile:    (310) 860-0363

J. DAVID MAYBERRY (Admitted *Pro Hac Vice*)
*dmayberry@kilpatricktownsend.com*
The Grace Building
1114 Avenue of the Americas
New York, New York 10036
Telephone:   (212) 775-8700
Facsimile:    (212) 775-8800

MARK H. REEVES (Admitted *Pro Hac Vice*)
*mreeves@kilpatricktownsend.com*
Enterprise Mill
1450 Greene Street, Suite 230
Augusta, Georgia 30901
Telephone:   (706) 823-4206
Facsimile:    (706) 828-4488

PLAVE KOCH PLC
JAMES C. RUBINGER (Admitted *Pro Hac Vice*)
*jrubinger@plavekoch.com*
12005 Sunrise Valley Drive, Suite 200
Reston, Virginia 20191
Telephone:   (703) 774-1200
Facsimile:    (703) 774-1201

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| **HONEY BAKED HAM INC.,** | CASE NO.: 8:19-cv-01528-JVS (DFMx) |
| Plaintiff & Counterclaim-Defendant, | **HONEY BAKED HAM COMPANY LLC'S RESPONSES TO HONEY BAKED HAM INC.'S SECOND SET OF REQUESTS FOR ADMISSION (14-30)** |
| v. | |
| **HONEY BAKED HAM COMPANY LLC**, et al., | Judge: Hon. James v. Selna |
| Defendants & Counterclaim-Plaintiffs. | Second Amended Complaint filed: September 18, 2020 |

1    The Honey Baked Ham Company, LLC ("Honey Baked USA") hereby

2  responds to Honey Baked Ham, Inc.'s ("Plaintiff" or "Honey Baked California")

3  Second Set of Requests for Admission as follows:

4  REQUEST FOR ADMISSION NO. 14:

5    Admit that YOUR audit has not found a deficiency or understatement in

6  royalty or other payments due from HBH CALIFORNIA exceeding 5% under

7  Section 9(e) of the License Agreement.

8  RESPONSE TO REQUEST NO. 14:

9    Honey Baked USA has made reasonable inquiry concerning potential

10  deficiencies or understatements in royalties or other payments due from Plaintiff, but

11  at this time cannot admit or deny this request because for months, Plaintiff has

12  delayed in providing documents and withheld relevant and responsive documents.

13  After multiple conferrals regarding Plaintiff's production of financial documents to

14  enable a standard financial audit, Plaintiff only recently completed its production of

15  documents responsive to Honey Baked USA's second RFPs, and even that production

16  contained numerous documents in formats that were difficult to evaluate. Honey

17  Baked USA's experts and forensic accountants are continuing their analysis, but

18  given the unwarranted delay in production of responsive documents, the information

19  Honey Baked USA possesses at this time is insufficient to enable it to admit or deny

20  this request.

21  REQUEST FOR ADMISSION NO. 15:

22    Admit that, in regard to any audit conducted by BDO during the course of this

23  legal action, YOU have not yet demanded any specific payment for an alleged

24  deficiency or underpayment under Section 9(e) of the License Agreement

25  RESPONSE TO REQUEST NO. 15:

26    Honey Baked USA admits that it has not yet demanded any specific payment

27  for an alleged deficiency or underpayment under Section 9(e) of the License

28  Agreement, but denies that BDO conducted an audit of Honey Baked USA during

1   the course of this legal action. While Honey Baked USA attempted to conduct an

2   audit of Honey Baked California using BDO and BDO began conducting an audit,

3   HONEY BAKED CALIFORNIA refused to allow that audit to proceed and it was

4   never completed.

5       To the extent not admitted herein, the remainder of this request is denied.

6   REQUEST FOR ADMISSION NO. 16:

7       Admit that there is no evidence beyond the language set forth in the 2015

8   License Agreement that supports YOUR claimed right to sell Honey Baked products

9   by mail order or through the Internet to customers in California.

10  RESPONSE TO REQUEST NO. 16:

11      Denied.

12  REQUEST FOR ADMISSION NO. 17:

13      Admit that on or about January 26, 2021, YOU issued a "Notice of Data

14  Breach" to customers because of a malware attack that occurred on Sunday,

15  December 13, 2020.

16  RESPONSE TO REQUEST NO. 17:

17      Denied.

18  REQUEST FOR ADMISSION NO. 18:

19      Admit that YOUR January 26, 2021 "Notice of Data Breach" was sent to

20  Honey Baked customers across the country, including in California.

21  RESPONSE TO REQUEST NO. 18:

22      Denied.

23  REQUEST FOR ADMISSION NO. 19:

24      Admit that providing the "Notice of Data Breach" to Honey Baked customers

25  on January 26, 2021 reflects materially and unfavorably upon YOUR operation and

26  reputation.

27  RESPONSE TO REQUEST NO. 19:

28      Denied.

REQUEST FOR ADMISSION NO. 20:

Admit that, with regard to issues relating to Easter of 2020 and HBH CALIFORNIA, YOU never provided a written notice of termination posted by registered, certified or other receipted mail, delivered by telegram or personally delivered to the franchisee; that contains a statement of intent to terminate the License Agreement with HBH CALIFORNIA with the reasons therefor and that also includes the effective date of such termination.

RESPONSE TO REQUEST NO. 20:

Admitted in part and denied in part. On June 22, 2020, Honey Baked USA and HBH Licensing filed their Answer to Plaintiff's First Amended Complaint for Injunctive Relief, and Counterclaims (Dkt. No. 99). Those counterclaims included detailed information about Plaintiff's multiple breaches of the license agreement and Plaintiff's failures to cure such breaches, including breaches that occurred during the Easter 2020 season relating to its labeling, packaging, transportation, and shipment of food, and its customer service deficiencies, and requested that the court enter a declaratory judgment finding that termination of the license agreement is justified under California Business & Professions Code §§ 20020 and/or 20021(e), (f) and/or (g). Honey Baked USA admits that the June 22, 2020 notice was not posted to Plaintiff by registered, certified, or other receipted mail, or delivered personally or by telegram, because pursuant to applicable federal and local rules and procedures, that pleading was filed on the court's ECF system and served upon Honey Baked California by ECF email notification to its attorneys.

Further, on October 22, 2020, Honey Baked USA and HBH Licensing filed their Answer to Plaintiff's Second Amended Complaint, and Second Amended Counterclaims (Dkt. No. 144). That notice also included detailed information about Plaintiff's multiple breaches of the license agreement and failures to cure such breaches, including breaches that occurred during the Easter 2020 season relating to Plaintiff's labeling, packaging, transportation, and shipment of food, and its customer

1  service deficiencies, and requested that the court enter a declaratory judgment finding

2  that termination of the license agreement is justified under California Business &

3  Professions Code §§ 20020 and/or 20021(e), (f) and/or (g). Honey Baked USA

4  admits that the October 22, 2020 notice was not posted to Plaintiff by registered,

5  certified, or other receipted mail, or delivered personally or by telegram, because

6  pursuant to applicable federal and local rules and procedures, that pleading was filed

7  on the court's ECF system and served upon Honey Baked California by ECF email

8  notification to its attorneys.

9         It is expressly averred that Plaintiff received actual notice of breaches of the

10  license agreement justifying its termination and of HBH Licensing's intent to

11  terminate, and that no further requirement is imposed by the license agreement or

12  applicable law.

13         To the extent not admitted herein, the remainder of this request is denied.

14  REQUEST FOR ADMISSION NO. 21:

15         Admit that YOU have never provided a written notice of termination posted by

16  registered, certified or other receipted mail, delivered by telegram or personally

17  delivered to HBH CALIFORNIA; that contains a statement of intent to terminate the

18  License Agreement with the reasons therefor and that also includes the effective date

19  of such termination.

20  RESPONSE TO REQUEST NO. 21:

21         Admitted in part and denied in part. On November 2, 2019, Honey Baked USA

22  and HBH Licensing, through their attorney David Gurnick, sent a letter to Plaintiff's

23  attorneys Mr. Solish and Mr. Mulcahy regarding "Notice of Breaches of License

24  Agreement by Your Client Honey Baked Ham, Inc., Request that Your Client Cure

25  the Breaches and Comply with the License Agreement; Notice of Reservation of

26  Rights and Claims Up to and Including Termination of License Agreement."

27         Honey Baked USA admits that the November 2, 2019 notice was not posted to

28  Plaintiff by registered, certified, or other receipted mail, or delivered personally or by

telegram, because it was emailed from Honey Baked USA's and HBH Licensing's attorneys to Plaintiff's attorneys, as the parties were currently involved in the present litigation.

Further, on June 22, 2020, Honey Baked USA and HBH Licensing filed their Answer to Plaintiff's First Amended Complaint for Injunctive Relief, and Counterclaims (Dkt. No. 99). Those counterclaims included detailed information about Plaintiff's multiple breaches of the license agreement and failures to cure such breaches, and requested that the court enter a declaratory judgment finding that termination of the license agreement is justified under California Business & Professions Code §§ 20020 and/or 20021(e), (f) and/or (g). Honey Baked USA admits that the June 22, 2020 notice was not posted to Plaintiff by registered, certified, or other receipted mail, or delivered personally or by telegram, because pursuant to applicable federal and local rules and procedures, that pleading was filed on the court's ECF system and served upon Plaintiff by ECF email notification to its attorneys.

Further, on October 22, 2020, Honey Baked USA and HBH Licensing filed their Answer to Plaintiff's Second Amended Complaint, and Second Amended Counterclaims (Dkt. No. 144). That notice also included detailed information about Plaintiff's multiple breaches of the license agreement and failures to cure such breaches, and requested that the court enter a declaratory judgment finding that termination of the license agreement is justified under California Business & Professions Code §§ 20020 and/or 20021(e), (f) and/or (g). Honey Baked USA admits that the October 22, 2020 notice was not posted to Plaintiff by registered, certified, or other receipted mail, or delivered personally or by telegram, because pursuant to applicable federal and local rules and procedures, that pleading was filed on the court's ECF system and served upon Honey Baked California by ECF email notification to its attorneys.

1     It is expressly averred that Plaintiff received actual notice of breaches of the

2  license agreement justifying its termination and of HBH Licensing's intent to

3  terminate, and that no further requirement is imposed by the license agreement or

4  applicable law.

5     To the extent not admitted herein, the remainder of this request is denied.

6  REQUEST FOR ADMISSION NO. 22:

7     Admit that due to the listeria issue as to Honey Baked Ham of Ohio,

8  approximately 46,000 pounds of turkey and ham were recalled.

9  RESPONSE TO REQUEST NO. 22:

10     Honey Baked USA admits that, in November 2006, HoneyBaked Foods Inc.,

11  of Holland, Ohio, discovered that a sample of its products had tested positive for

12  Listeria Monocytogenes ("Lm"). As a result of the Lm discovery, HoneyBaked

13  Foods, Inc. investigated to identify the source of contamination, removed the source

14  of contamination once identified, conducted extensive cleaning and sampling

15  procedures, temporarily suspended operations, and voluntarily issued a recall of

16  46,941 pounds of its cooked ham and turkey products.

17     To the extent not admitted herein, the remainder of this request is denied.

18  REQUEST FOR ADMISSION NO. 23:

19     Admit that David Keil, at a time when he was YOUR chief executive officer,

20  travelled to California where he made an offer to purchase HBH CALIFORNIA.

21  RESPONSE TO REQUEST NO. 23:

22     Denied.

23  REQUEST FOR ADMISSION NO. 24:

24     Admit that all of the alleged breaches of the License Agreement set forth in the

25  letter written by David Gurnick, dated November 1, 2019, have subsequently been

26  cured.

27  RESPONSE TO REQUEST NO. 24:

28     Denied.

REQUEST FOR ADMISSION NO. 25:

Admit there are no uncured breaches of the 2015 License Agreement by HBH CALIFORNIA.

RESPONSE TO REQUEST NO. 25:

Denied.

REQUEST FOR ADMISSION NO. 26:

Admit that in the Easter 2020 season, YOU had complete control over Facebook social media on behalf of the Honey Baked Ham brand.

RESPONSE TO REQUEST NO. 26:

Denied.

REQUEST FOR ADMISSION NO. 27:

Admit that despite knowledge of a developing crisis in California in the Easter 2020 season, YOU did not forward consumer complaints to HBH CALIFORNIA as they were received.

RESPONSE TO REQUEST NO. 27

Honey Baked USA objects to this request on the grounds that the phrase "as they were received" is vague and ambiguous. Honey Baked USA denies that it did not forward complaints to Honey Baked California in a timely manner.

REQUEST FOR ADMISSION NO. 28:

Admit that YOU were aware that HBH CALIFORNIA was using the shophoneybaked.com website before YOU executed the 2015 License Agreement and the accompanying mutual release.

RESPONSE TO REQUEST NO. 28:

Denied.

REQUEST FOR ADMISSION NO. 29:

Admit that Digital Guidelines version 4.0 is a change of YOUR position as to whether YOU were obligated to provide a California state selector mechanism that occurred on YOUR part only after this suit was filed.

RESPONSE TO REQUEST NO. 29:

Denied.

REQUEST FOR ADMISSION NO. 30:

Admit that David Gurnick was acting as YOUR authorized agent when he entered an HBH CALIFORNIA store on October 24, 2019 to investigate issues relevant to this action.

RESPONSE TO REQUEST NO. 30:

Honey Baked USA admits that David Gurnick entered one of Plaintiff's stores on October 24, 2019. Honey Baked USA further admits that David Gurnick was retained as its attorney at that time. Honey Baked USA denies that Mr. Gurnick was directed or instructed to enter a Honey Baked California store to investigate issues relevant to this action.

DATED: June 22, 2021                    Respectfully submitted,

                                        KILPATRICK TOWNSEND & STOCKTON
                                        LLP

                                        _____
                                        J. David Mayberry (Admitted *Pro Hac Vice*)
                                        dmayberry@kilpatricktownsend.com
                                        The Grace Building
                                        1114 Avenue of the Americas
                                        New York, New York 10036
                                        Telephone:  (212) 775-8700
                                        Facsimile:   (212) 775-8800

                                        Kollin J. Zimmermann (State Bar No. 273092)
                                        kzimmermann@kilpatricktownsend.com
                                        1801 Century Park East, Suite 2300
                                        Los Angeles, California 90067
                                        Telephone:  (310) 248-3830
                                        Facsimile:   (310) 860-0363

                                        Mark H. Reeves (Admitted *Pro Hac Vice*)
                                        mreeves@kilpatricktownsend.com
                                        Enterprise Mill
                                        1450 Greene Street, Suite 230
                                        Augusta, Georgia 30901

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Telephone:   (706) 823-4206
Facsimile:   (706) 828-4488

PLAVE KOCH PLC

James C. Rubinger (Admitted *Pro Hac Vice*)
*jrubinger@plavekoch.com*
12005 Sunrise Valley Drive, Suite 200
Reston, Virginia 20191
Telephone:   (703) 774-1200
Facsimile:   (703) 774-1201

*Attorneys for Honey Baked USA*

# PROOF OF SERVICE

[C.C.P. §§ 1011 and 1013, C.R.C. § 2008, F.R.C.P. Rule 5, F.R.A.P. 25]

I declare I am employed in the Washington, DC in the office of a member of the bar of this court at whose direction this service was made. I am over the age of eighteen and not a party to this action. My business address is Kilpatrick Townsend & Stockton LLP, 607 14th Street, NW, Suite 900, Washington, DC 20005.

On June 22, 2021, I served the following document entitled **HONEY BAKED HAM COMPANY, LLC'S RESPONSES TO HONEY BAKED HAM INC.'S SECOND SET OF REQUESTS FOR ADMISSION** on the interested parties in this action by electronic transmission to the e-mail addresses indicated below. The transmitting terminal address is schick@kilpatricktownsend.com.

Jonathan Solish
Alfred Shumyan
David J. Root
BRYAN CAVE LEIGHTON PAISNER LLP
120 Broadway Suite 300
Santa Monica, California 90401
EMAIL:      jonathan.solish@bclplaw.com
              alfred.shaumyan@bclplaw.com
              david.root@bclplaw.com

Executed on this 22nd day of June, 2021 at Washington, DC.

I declare under penalty of perjury under the laws of the United States that the above is true and correct.

_____
Shawn R. Chick

# EXHIBIT 19

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL.**
**Linda van Rees on 06/28/2021**

```
 1              IN THE UNITED STATES DISTRICT COURT
           FOR THE CENTRAL DISTRICT OF CALIFORNIA
 2                    SOUTHERN DIVISION

 3   HONEY BAKED HAM, INC.,        §
                                   § Case NO.
 4                                 § 8:19-cv-01528-JVS (DFM)
     Plaintiff &                   §
 5   Counterclaim-Defendant,       §
                                   §
 6      vs.                        §
                                   §
 7                                 §
     HONEY BAKED HAM COMPANY,      §
 8   LLC, et al.,                  §
                                   §
 9                                 §
     Defendants &                  §
10   Counterclaim-Plaintiffs.      §
                                   §
11   ~~~~~~~~~~~~~~~~~~~~~~~~~

12              VIDEOTAPED DEPOSITION OF
                    LINDA van REES
13

14                    10:06 a.m.
           Monday, the 28th day of June 2021
15

16                    Suite 2800
            1100 Peachtree Street, NE
17               Atlanta, Georgia

18


19


20     Blanche J. Dugas, CRR, RPR, CCR No. B-2290

21


22


23


24


25
```

Ex. 19 Page 446

```
 1    court reporter is obligated to take down everything we
 2    say.  So sometimes there's an interchange and they
 3    can't take down all the words.
 4              And then we -- we -- we try not to say
 5    uh-huh (affirmative) or huh-uh (negative) even though
 6    these days with video, that's less of a problem, but
 7    we just want to have a -- a sort of an out loud
 8    answer.  Sometimes people nod their heads and I'll
 9    usually say do you understand and -- and people will
10    nod their heads.  But so -- just sometimes I just want
11    an audible answer.
12        A.    Sure.
13        Q.    It's whatever your answer is, but I just
14    want to make sure there's something on the record.
15        A.    Sure.
16        Q.    So whatever the answer is.
17              And if at any time you have any questions
18    about the proceeding, I -- I don't mind if you -- if
19    you ask me and I'll try to sort things out.
20              What -- what is your present position?
21    Do -- do you -- I understand that you -- there's been
22    some change in your position fairly recently.  So tell
23    me --
24        A.    Right.
25        Q.    Tell me what that is.
```

Case 8:19-cv-01528-JVS-DFM   Document 187-6   Filed 08/30/21   Page 225 of 315   Page ID #:5084

HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL.

Linda van Rees on 06/28/2021                                    Page 8

1      A.   I'm a director.  I'm -- I'm back on the

2   board of directors exclusively.  I'm -- I resigned as

3   CEO.  I think my last official day was May 7th.

4      Q.   **And who replaced you as CEO?**

5      A.   Jim Dinkins.

6      Q.   And could you tell me just briefly about

7   your educational background.

8      A.   I graduated from the University of Georgia

9   with a business degree in systems analysis and design.

10  So MS, I think, BA and MS.

11     Q.   Okay.  And could you tell me -- I'd like to

12  just sort of start by kind of trying to understand the

13  company and kind of how it came together and so some

14  of the history of -- was the company founded in 1957;

15  is that correct?

16     A.   Yes.

17     Q.   And was that your grandfather who started

18  the company?

19     A.   Yes.

20     Q.   And what was his name?

21     A.   Harry Hoenselaar.

22     Q.   Okay.  And he had -- had he come up with a

23  new product or treatment or what was it that he had

24  done with regard to the ham that got the company

25  started?

 1        A.   California is a licensee.  They operate at a

 2   higher level.  They are to direct their system -- we

 3   don't direct them at the same level that we would

 4   direct a franchisee.  They are -- a franchisee is much

 5   more closely managed than a licensee is.  So our

 6   franchisees get FOM instead of MOM.  It's called FOM.

 7        Q.   F-O-M?

 8        A.   Yes.

 9        Q.   Okay.  What does that stand for?

10        A.   Franchise operating manual.

11        Q.   Gotcha.  I should have known.  Okay.

12        A.   Not very creative.

13        Q.   Okay.  So there's something called the

14   franchise operating -- operating, is that the word,

15   operating?

16        A.   It's -- it's -- yes.

17        Q.   Okay.  Operating manual?

18        A.   Yes.

19        Q.   And when was that developed?

20        A.   Oh, gosh.  In the '90s.

21        Q.   And about how long a document is that?

22        A.   It's comparable to MOM, but it is not

23   identical because, again, we have different,

24   obviously, corporate stores.  We have a greater -- we

25   have complete say-so in that.  We don't as much

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL.**
Linda van Rees on 06/28/2021                                      Page 110

1   on; is that right?

2       A.   Yes.

3       Q.   And when you say you were chairman of the

4   board, you were chairman of the board in 2012 of what

5   entity?

6       A.   The Georgia entity, not the limited

7   partnership.  Yeah.  Just our lone division.

8       Q.   Okay.  And so the board that -- that -- that

9   Vaughan was on, was that a -- was that a board of

10  directors or was it just called the board or -- or

11  what -- what was that entity?

12      A.   It was the same -- it was the same entity it

13  had been.  It was the -- the -- the board of directors

14  of the limited partnership that managed the license

15  and trademark assets of the Honey Baked Ham Company

16  nationally.

17      Q.   So we're -- we're back on this Page 377

18  that's in the bottom right corner of Exhibit 121.  And

19  going to Item 5, it's referring to Section 2.

20  "Exclusive license.  Will need to clarify the right of

21  license or to sell products under proprietary marks in

22  the territory through all channels of distribution,

23  except specialty food stores, for the purpose of

24  selling spiral sliced hams and through mail order

25  transactions."

```
 1           So did you know in 2012 that this was one of

 2   the -- the objectives of -- of the board of Limited in

 3   its negotiations with California?

 4      A.   Yes.

 5      Q.   And as far as you know, were these rights

 6   ever secured in the transaction with California

 7   that -- that was culminated in the 2015 license

 8   agreement?

 9      A.   I believe they were, yes.

10      Q.   So we've talked about -- you've mentioned

11   several CEOs, I think.  And I want to go back and talk

12   about that for a minute here.

13           So when the -- the various family companies

14   were consolidated, was there a new name -- a new

15   entity that was created from the combined companies?

16      A.   Yes.

17      Q.   What -- what was that entity?

18      A.   HBH, LLC.

19      Q.   And that would have occurred somewhere about

20   the middle of 2015; is that right?

21      A.   I think it was early May 2015.

22      Q.   And had that been in progress for a while,

23   the -- the finalized end of the -- of the various

24   family entities?

25           MR. MAYBERRY:  Object to the form.
```

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL.**
Linda van Rees on 06/28/2021                                    Page 122

```
 1    that mail order transaction includes Internet websites
 2    associated with domain names, the use of which have
 3    been approved by a licensor.
 4          So would you agree that mail order
 5    transactions includes Internet sales?
 6    A.   Yes.
 7    Q.   And so turning back to Page 4 --
 8    A.   But --
 9    Q.   Yeah, go ahead.  Uh-huh (affirmative).
10    A.   Well, as I said, it's -- mail -- Internet
11    sales are bigger than mail order, per se.  I mean,
12    stores get sales through the Internet as well.  So not
13    all sales that come in through the Internet are mail
14    order.  Does that make sense?  It's a little
15    complicated --
16    Q.   Okay.  I appreciate -- I -- I'm sorry.  I
17    didn't mean to cut you off, either.
18          But when it -- it says the definition of
19    mail order transactions includes the Internet as far
20    as you understand it?
21    A.   It -- those sales would, in part, be mail --
22    in part, yes.
23    Q.   And so would you agree with my statement
24    that the rights for -- to -- the rights of HBH Limited
25    Partnership to make sales inside the territory are as
```

Ex. 19 Page 452

 1   set forth as permitted in Section 6B, Romanette 11?

 2        A.   I would say that 6B, Romanette 11 is the

 3   mail order transaction paragraph.  And I'm not sure

 4   exactly what you're saying, the other part of that.

 5   I'm not trying to be difficult.  I'm not tracking

 6   entirely.  I'm a little confused here.

 7        Q.   Well, we just read back on Page 3 of the

 8   agreement that mail order transactions includes

 9   Internet websites; correct?

10        A.   Yes.

11        Q.   And so is it not true that looking at

12   provision 2B, Romanette 1, rights retained, that the

13   rights retained by HBH Limited Partnership are to the

14   extent permitted in Section 6B Romanette 11?

15        A.   Yes.

16        Q.   And so turning to that, which is on Page 12,

17   and Romanette 11 is -- takes up the bottom almost half

18   of the page.  Do you see anything in that section,

19   Romanette 11, that gives Honey Baked -- well, I'll

20   start again.

21             Do you see anything in provision

22   Romanette 11 that gives HBH limited partnership any

23   right to make sales into the exclusive territory of

24   California?

25        A.   I think that the rights retained, that

 1   the -- are you talking about the collateral rights?

 2   You're asking me --

 3       **Q.   I'm more than happy to address that after we**

 4   **address this.**

 5           **Do you see anything in Romanette 11 that**

 6   **gives HBH Limited the right to make Internet sales**

 7   **into California?**

 8       A.   Yeah, the -- the rights are -- the reference

 9   in 6B, Romanette 1 reserves the rights to sell within

10   the territory mail order transactions.  And in terms

11   of the Romanette 11, 6B 11, "Licensee may not ship

12   products with mail order transactions to customers

13   located outside the territory except in response to

14   unsolicited orders from customers or orders taken by

15   existing consumers or orders placed by existing

16   customers."

17           That is the reciprocal language that had

18   been used since the 1970s.  It applies here and it

19   applies across the entire system.  It doesn't make

20   sense unless it applies both ways.  That's the only

21   way that makes sense.  So, yes.

22       **Q.   So did your side of this transaction forget**

23   **to put that -- that -- that collateral right into this**

24   **version of the agreement?**

25       A.   No.  I --

```
 1   retained rights which says "The licensor retains the

 2   right to sell within the territory" and then it

 3   cross-references here "Licensee may not ship products

 4   through mail order transactions to customers located

 5   outside the territory except in response to

 6   unsolicited orders from consumers or orders placed by

 7   existing customers.  Licensee acknowledges that the

 8   licensor must administer an orderly system for mail

 9   order transactions for the benefit of the entire Honey

10   Baked system, that the licensor serves" -- "reserves

11   the right to establish a system for doing so,

12   including without limitation the right to establish a

13   mail order house and that the restrictions on the

14   licensee set forth in this paragraph are reasonable

15   means to do so provided that the system shall not

16   undermine the licensee's fundamental right to engage

17   in mail order transactions therein."

18           So I think both of those sentences, plus the

19   reference in B, we essentially put in that first

20   sentence the reciprocal language that has been in

21   place since the 1970s and preceded in the family

22   agreements what is here.  If -- if you're suggesting

23   it isn't reciprocal, then we would have violated all

24   of our family agreements here.

25       Q.   Okay.  So the retained right that is
```

HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL.

Linda van Rees on 06/28/2021                                          Page 128

1   referred to in B, Romanette 1 to the extent permitted

2   in B6, Romanette 11, as you see it, is these two

3   sentences, "Licensee may not ship products" and then

4   the next sentence, "Licensee acknowledges," those two

5   sentences state the complete statement of your right

6   to sell into California by Internet?

7       A.   The reference in the retained rights, plus

8   these two sentences, plus the 40-year history of the

9   reciprocal language.

10      Q.   Okay.  We'll -- get to the -- the -- that

11  reciprocal and collateral issue.

12      A.   Yeah.

13      Q.   But let's stay focused on -- on Romanette

14  11.

15           So how is it that a sentence that begins,

16  "Licensee may not ship products through mail order

17  transactions to customers located outside of the

18  territories," how does that give you the right to sell

19  products to customers in California?

20           MR. MAYBERRY:  Objection, asked and

21       answered.

22      Q.   (By Mr. Solish)  You can answer.

23      A.   I think I did.  That is how we translated

24  this language for decades.  That's how we read it.

25           There was never even discussion around this

Ex. 19 Page 456

 1   point.  This was not even a controversial point for

 2   decades.  This was the way it was for everybody.

 3        Q.   Well, wasn't one of the points that

 4   Mr. Vaughan Curtis stated in his discussion points was

 5   to clarify the right to sell into the California

 6   territory?  Isn't that correct?

 7        A.   No.  That has nothing to do with this.  That

 8   had nothing to do with this.  That was mass-channel

 9   rights.

10        Q.   What is a mass-channel?

11        A.   Selling into the grocery stores, like a soup

12   line with a brand on it.  That's what that was about.

13   Richard Gore had a lot of pushback on work that had

14   been done at Costco and that was one of those issues

15   of the moment.  It was a very hot topic at that time

16   and we thought the old agreement was clear on that

17   point.  He did not.  And so we made sure -- we wanted

18   to make sure that business with respect to the

19   mass-market channels was clearly carved out of the

20   agreement.

21        Q.   So why don't we go back to Exhibit 121.

22        A.   Okay.

23        Q.   And we're looking at the second page of it

24   and this is from Vaughan Curtis's items to update in

25   the license agreement.  And Item 5 refers to "Will

1      Q.    (By Mr. Solish)  Do you think that there's

2   anything in the custom and practice that modifies the

3   language of the agreement as to the right to sell hams

4   into California?

5      A.    No.

6      Q.    So, basically, the rights of the parties,

7   whether or not there is a right to sell hams into

8   California, is set forth within the four corners of

9   the agreement that we're looking at right now?

10     A.    The -- I'm sorry.  Ask that question again.

11     Q.    Yes.  The rights of the -- to sell hams into

12   California is set forth in the -- within the four

13   corners of this agreement; correct?

14     A.    Oh, no.  There's -- it's set forth in

15   documents that well precede this.

16     Q.    And what -- what documents would those be?

17     A.    The license agreements with the families,

18   the Internet guidelines with all the licensees.

19     Q.    And is there some reason why -- why -- in

20   this retained rights section, Romanette 11, why it

21   doesn't state that the licensor retains the right to

22   sell into California?

23     A.    It was like air.  We had been doing it from

24   the 1970s and it was already in all the contracts.  It

25   was not even controversial.  We never discussed it

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL.**
Linda van Rees on 06/28/2021                              Page 138

1    could sell into California?

2        A.   They didn't have to agree.  They had to --

3    they had an agreement with the limited partnership and

4    the limited partnership was responsible for granting

5    the rights consistent with each other, which is what

6    they did, in our opinion.  We -- it's consistent

7    across all the contracts.

8        Q.   And have you ever visited the Honey Baked

9    stores in California?

10       A.   Uh-huh (affirmative).

11       Q.   I'm sorry.  Just a yes or no.

12       A.   Yes.

13       Q.   Okay.

14       A.   Yes.

15       Q.   And -- and -- and you went out before the

16   2015 license agreement was signed; is that right?

17       A.   I had -- in my career, you're asking?  In

18   my --

19       Q.   Okay.  Sure.  Yeah.

20       A.   I've -- gosh.  Yes, I've probably been out

21   there probably half a dozen times, at least.

22       Q.   When was the first time you were out there?

23       A.   Oh, I -- I don't remember.

24       Q.   Roughly.  It's not going to matter --

25       A.   Probably the '90s.

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL.**
Linda van Rees on 06/28/2021                                                    Page 139

1      Q.    Okay.

2      A.    Yeah.

3      Q.    And throughout the relationship with

4   California, has there always been a right to audit the

5   stores whenever you wanted to?

6      A.    As far as I -- as far as I know.  I don't

7   know that it was articulated in the same way it was

8   here.

9      Q.    And from time to time, you've had people buy

10  products from California stores to --

11     A.    Yes.

12     Q.    -- investigate various issues; is that

13  right?

14     A.    We don't have a staff in California like we

15  have for our own stores.  What we do is we generally

16  contract with third parties to just go purchase some

17  products and that's easier for us than having

18  full-time staff like we have for the rest of the

19  business.  That's how we do it right now.

20     Q.    And you -- California has always been --

21  been -- always emphasized the sale of side dishes;

22  correct?

23     A.    Yes.

24     Q.    And you knew from visiting the stores that

25  the side dishes had the Honey Baked Ham marks on them;

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL.**
Linda van Rees on 06/28/2021                                    Page 140

```
 1   correct?

 2       A.   No.

 3       Q.    Something you never noticed?

 4       A.   No.  We -- we -- our trips -- my -- my

 5   trips, in particular -- you can ask Dan about his --

 6   we had always had a very difficult relationship with

 7   California.  The trips that I made -- and I think I

 8   made -- I don't know if I made more than one.  I think

 9   we all made one market visit.  They were very much

10   diplomatic missions.

11          They were not -- what would you call it?

12   They were not oversight in looking into the operations

13   of the stores.  They were diplomatic.  Let's talk and,

14   you know, try to get the relationship in a good place.

15   They were more diplomatic.  I -- I wasn't out there

16   investigating products and labels and stuff like that.

17       Q.    So the franchise stores all sell side dishes

18   that say Honey Baked Ham on them; right?

19       A.   Yeah.

20       MR. MAYBERRY:  Object to the form.

21     What -- can you clarify which franchise

22     stores?

23       MR. SOLISH:  Sure.

24       Q.    (By Mr. Solish)  Outside of California, the

25   franchise stores all sell side dishes that are marked
```

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL.**
Linda van Rees on 06/28/2021                                         Page 141

1    with the Honey Baked Ham trademark?

2        A.   I believe they do, yes.

3        Q.   And do they pay an extra royalty for doing

4    that or is that part of the royalty they pay to the

5    Honey Baked franchisee?

6        A.   They don't pay an extra royalty, no.

7        Q.   And did you know, one way or the other,

8    before 2015 whether or not California was selling side

9    dishes with the Honey Baked Ham logo on them?

10       A.   No.  I -- the -- the -- we didn't go out

11   there in person very often.  And as I said, we didn't

12   have staff that -- whose job it was to oversee

13   California.  We didn't have that.  And so we relied

14   on -- we relied on the exhibits.  I -- I couldn't tell

15   you what that was.  We relied on the exhibits.

16       Q.   What exhibits?  I'm sorry.

17       A.   Exhibits B and C of the contract.

18       Q.   So let's go back, if we could, to

19   Exhibit 121.

20       A.   Is that this?  Yes.

21       Q.   Yes, it is.  And -- and to the third page,

22   Item 29.  So -- and specifically, the part that says,

23   "Partnership will visit every retail outlet before

24   executing the agreement, and partnership reserves the

25   right to modify the terms of the term sheet of

1      A.   Yes.

2      Q.   So let's -- let's go to page -- we're

3   looking here at the Bates numbers, 11930.  And the

4   fourth line -- so we're -- we're talking about

5   ensuring proper trademark usage on all materials.  So

6   what -- what was that topic about?  This is part of

7   your memo explaining to Mr. Keil how to deal with

8   California; is that right?

9      A.   Yes.

10     Q.   And so what did it mean to ensure proper

11   trademark usage on all materials?

12     A.   In the -- in the late 1990s, early 2000s, we

13   actually did a -- we had something we called the

14   trademark council, and actually, I was the head of the

15   trademark council.  And we went through nationally and

16   we looked at all of the materials, the bags and boxes

17   and we just collected -- we went out to each one of

18   the areas and we pulled bags and boxes and labels and

19   just everything to see how the trademark was being

20   utilized.

21         And this was referring to that process where

22   we literally went out and looked at everything and

23   just saw what was consistent with the manual and

24   anything that wasn't.  You know, sometimes it's as

25   little as the font, instead of looking burgundy, it

```
 1   area as we move forward in changing how we go to
 2   market here."
 3              So what was super touchy?
 4       A.   The Internet had been, as I mentioned
 5   earlier, an area of a lot of heat prior -- you know,
 6   in '11, '12.  It hadn't been actually during the
 7   period of time from -- from the point we purchased,
 8   Steve McCue and Richard was no longer on the board.  I
 9   don't think anything happened for -- and many years
10   into this.  But in the time frame coming up to that,
11   there was a lot -- as you -- as the document shows,
12   there was a lot of debate as the Internet was emerging
13   and we were trying to understand how best to manage
14   that.
15       Q.   Then you say, "super touchy area as we move
16   forward in changing how we go to market here."
17              How were you changing the way you went to
18   market?
19       A.   The Internet algorithms were always changing
20   and we were always having discussions about having to
21   deal with changing algorithms and how we had to deal
22   with that.  The -- and you did not want to get into an
23   argument with California.  They were very difficult so
24   it was, once again, just caution.
25       Q.   And then you say, "I'm very concerned that
```

1   yet signed and he and I had a number of exchanges

2   prior to them signing.

3        Q.   Were those by telephone?

4        A.   Yes.  We never met in person prior to the --

5   him signing.

6        Q.   And did you tell Richard at any time that --

7   that the -- the brand was moving, changing direction?

8        A.   I think I told him that we were going -- we

9   were effectively modernizing and very excited about

10  that.  And the ability, since we didn't have disparate

11  messages with all the family companies, to have a

12  momentum around common communication and -- yeah, very

13  excited about that.

14       Q.   So --

15       A.   And I thought that that meant the health of

16  the system was, you know, just better, you know, for

17  everybody.

18       Q.   Yeah.  So under "Mail order transactions" --

19  and there's -- there's a statement here that's --

20  that's right toward the bottom.  It's the second up

21  from the -- down the page still on 934 of Exhibit 122.

22  And under "Mail order transactions," in -- in

23  parentheses, you say right here, "Exclusive as long as

24  they don't solicit outside of state," et cetera,

25  et cetera.

1      So does that state your -- your

2  understanding of California's rights to mail order

3  transactions?

4      A.   I think the discussions that we've had are

5  pretty clear on what I understood it to be and I don't

6  think that statement is inconsistent with that.

7          But the whole thing on the rights was

8  solicitation.  And if the business came to you without

9  you soliciting it, the word was -- it was all about

10  solicitation.  So in other words, in the old days, we

11  would get calls on the 800 number, right, and you

12  would be like, okay, you're calling Georgia and you're

13  from New York.  How did that happen?

14          It's like you're not going to say, I'm not

15  going to help you.  You'd say, okay, so you got --

16  well, typically, they would have gotten it because

17  somebody handed somebody a piece of paper.  So I

18  didn't solicit that.  It came in.

19          Same thing with ship tos.  They weren't --

20  those are not solicited.  "Soliciting," that was the

21  keyword, was the -- the word was "solicitation."  So

22  if you're not soliciting and it comes to you, like

23  they walk through your store and then --

24      Q.   Right.

25      A.   -- that's -- that's a legitimate way to get

HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL.

Linda van Rees on 06/28/2021                                      Page 194

```
 1   a customer and you take care of the customer.
 2   Because, otherwise, what you're doing is you're
 3   throwing the customer under the bus because they don't
 4   know there's a difference.
 5        Q.   So let's look at the last sentence on this
 6   page.  "The web mail order rights for California grew
 7   out of a contract that had no clear rights here."
 8             And then it goes on to say, "This part of
 9   the California contract is sticky and a bit
10   unfortunate, but it came through 40 years of operating
11   under the trademarks as the web was created as a
12   channel underneath us.  No avoiding the difficulties
13   here."
14             So what did you mean by the first sentence
15   there, "The web mail order rights for California grew
16   out of a contract that had no clear rights here"?
17        A.   The earlier contracts, they didn't have
18   this.
19        Q.   The earlier contract didn't address mail
20   order at all?
21        A.   California's first two contracts, which were
22   in the '70s, they did not have those rights.  Then the
23   language in the contract that was in the '90s had it,
24   but it was not -- it was not exactly like the
25   family's.  The family's had the -- the addendum that
```

 1    had the clear rights.

 2          But the issue wasn't that as much as it was

 3    the dynamic nature of the web itself, and trying to

 4    translate what had been mail order, you know, 1-800

 5    and catalogs, into web rules.  And it was like, okay,

 6    we wrote this for 1-800 shipping and now it's a web,

 7    and it just -- we had to try to make that work for

 8    everybody.  Because those are two different things,

 9    you know.  So it was difficult.  It was very

10    difficult.

11        Q.    So the next sentence goes on to Page 935, so

12    this part of the California contract.  So this part is

13    referring to the web mail order rights.  Is that what

14    you're referring to?

15        A.    I -- I would think so, yeah.

16        Q.    So you say, "That part of the contract is

17    sticky and a bit unfortunate."

18          So what was unfortunate about -- about the

19    web mail order rights for California?

20        A.    That the origin of the rights were 1-800 and

21    mail order and they had to be translated into the web.

22    And -- and we knew that our functioning on the web

23    from the beginning was very compromised.

24        Q.    What do you mean by very compromised?

25        A.    The -- from the inception of the web -- and

```
 1       A.    Yeah.  It was -- it was an emerging area and
 2   we didn't know where it was going.  And the contract
 3   was rigid and the web was not.  But the issue of
 4   customers and consumers has never been a discussion.
 5   It's never been a problem.
 6       Q.    And when you -- you concluded this paragraph
 7   by saying, "no avoiding the difficulties here."  What
 8   do you mean by that?
 9       A.    The web is emerging and it's modern and the
10   contract is not.
11       Q.    Now, this -- this was just, what, a couple
12   of weeks after you just signed that brand-new contract
13   with California; correct?
14       A.    Uh-huh (affirmative).
15       Q.    And --
16       A.    Yes.
17       Q.    And are you saying that -- that there wasn't
18   any way to avoid Internet difficulties through
19   negotiated language in the contract?
20       A.    I didn't know how to.  Nobody really knew.
21   It's -- it's complicated, the web.  And there wasn't
22   an easy way to find a way through it.
23       Q.    Was there some point when the -- the --
24   well, let me -- let me -- I'll -- I'll defer that
25   issue till probably tomorrow.  But let me just go to
```

1    STATE OF GEORGIA:

2    COUNTY OF FULTON:

3

4         I hereby certify that the foregoing

5         transcript was reported, as stated in the

6         caption, and the questions and answers

7         thereto were reduced to typewriting under

8         my direction; that the foregoing pages

9         represent a true, complete, and correct

10        transcript of the evidence given upon said

11        hearing, and I further certify that I am

12        not of kin or counsel to the parties in the

13        case; am not in the employ of counsel for

14        any of said parties; nor am I in any way

15        interested in the result of said case.

16

17

18

19

20             BLANCHE J. DUGAS, CCR-B-2290

21

22

23

24

25

# EXHIBIT 20

| | |
|---|---|
| **From:** | Reeves, Mark <MReeves@kilpatricktownsend.com> |
| **Sent:** | Tuesday, June 22, 2021 5:30 PM |
| **To:** | Solish, Jonathan; Shaumyan, Alfred; Root, David |
| **Cc:** | Mayberry, David; Weeks, Rita; Greene, Dustin |
| **Subject:** | 30(b)(6) designees, meet and confer, & document claw back |
| **Attachments:** | 30(b)(6) designess & conferral topics.PDF |

Jon, Alfred, and David –

I have attached a document with the planned designees for the 212 30(b)(6) topics that you have identified for HBH USA and HBH Licensing. We reserve the right to modify these designations or add additional designees if necessary.

We do have concerns about a handful of the topics, and we are available to meet and confer tomorrow afternoon, if that works for you. In order to make the most productive use of our conferral, we have also identified those topics in the attached document.

Finally, as we reviewed the topics to identify appropriate designees, we realized that we inadvertently produced an email and attachment (Bates numbered HBHUSA0037169 – HBHUSA0037170) that should have been withheld on the basis of attorney-client privilege and/or work product protection. The attachment is a draft email from Linda van Rees to David Mayberry seeking legal advice on a draft legal letter regarding the parties' ongoing dispute. The email to which the draft was attached was Ms. van Rees' email to an HBH USA employee, Anna Kitchens, asking her to provide and verify information relevant to Ms. van Rees's request for legal advice in connection with this case. Both documents were prepared in connection with and anticipation of the pending lawsuit, and the attachment explicitly seeks legal advice from outside counsel. As such, we request, under Section 11 of the Protective Order and Rule 26(b)(5), that your side "promptly return, sequester, or destroy the specified information and any copies it has."

Please advise as soon as possible whether you will agree to our request to claw back these documents. We also trust that your side will not use or disclose this information until this issue is resolved.

Thanks, and have a good evening.

- Mark



**KILPATRICK TOWNSEND**
ATTORNEYS AT LAW

**Mark Reeves**
**Kilpatrick Townsend & Stockton LLP**
Enterprise Mill | 1450 Greene St., Suite 230 | Augusta, GA 30901
office 706 823 4206 | fax 706 828 4488
mreeves@kilpatricktownsend.com | My Profile | vCard

Confidentiality Notice:

1

**Ex. 20 Page 472**

This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

---

***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

**Ex. 20 Page 473**

| Witness | HBH USA Topics | HBH Licensing Topics |
|---|---|---|
| Linda van Rees | 1-9, 16-23, 26-27, 33, 38-39, 42-47, 50-51, 56-59, 61-62, 64-65, 74-75, 80-89, 91-97, 101-105 | 1-9, 15-16, 18-22, 24-25, 33-35, 43-49, 51-52, 59-63, 65-66, 68-69, 75-76, 80-89, 91-97, 101-107 |
| Bill Bolton | 10, 25, 49, 53-54, 63, | 10, 23, 50, 54-55, 57, 67 |
| Jo Ann Herold | 10, 11, 24, 28, 30, 34-37, 52, 60, 66-67, 69, 70-73 | 10-11, 26, 53, 64, 71, 73-74 |
| Mandy Muller | 12, 24, 68 | 12, 28, 72 |
| Anna Kitchens | 13-15, 20, 29, 32 | 13-14, 17, 19, 27, 32 |
| Dan McAleenan | 31, 76-79 | 29-31, 36-38, 40, 77-79 |
| David Jones | 40-41, 48, 55, 66, 90, 98-100 | 41-42, 56, 58, 70, 90, 98-100 |
| Greg Hundt | | 39 |
| Topics to meet & confer | 24, 27, 32-33, 51, 55, 70 | 25, 32-33, 52, 56 |



1

**From:** Reeves, Mark <MReeves@kilpatricktownsend.com>
**Sent:** Thursday, July 1, 2021 11:23 AM
**To:** Solish, Jonathan <jonathan.solish@bryancave.com>; Shaumyan, Alfred <alfred.shaumyan@bryancave.com>
**Cc:** Mayberry, David <DMayberry@kilpatricktownsend.com>
**Subject:** FW: deposition schedule, topics

**Mark Reeves**
**Kilpatrick Townsend & Stockton LLP**
Enterprise Mill | 1450 Greene St., Suite 230 | Augusta, GA 30901
office 706 823 4206 | fax 706 828 4488
mreeves@kilpatricktownsend.com | My Profile | vCard

Ex. 20 Page 476

**From:** Reeves, Mark
**Sent:** Thursday, June 24, 2021 6:56 PM
**To:** Solish, Jonathan <jonathan.solish@bclplaw.com>; 'Shaumyan, Alfred' <alfred.shaumyan@bclplaw.com>; Root, David <david.root@bclplaw.com>
**Cc:** Mayberry, David <DMayberry@kilpatricktownsend.com>; Weeks, Rita <RWeeks@kilpatricktownsend.com>; Desai, Shreya <SPDesai@kilpatricktownsend.com>
**Subject:** deposition schedule, topics

All –

First, to answer Alfred's question from earlier today, yes, we will be making Caryn Kinzler available per your deposition notice. She is not being designated to testify on behalf of either defendant entity, however.

Second, we have confirmed with all of the designated witnesses that they should be available to testify on the following schedule next week:

Monday – Tuesday – Linda van Rees

Tuesday afternoon – Greg Hundt

Wednesday – Dan McAleenan, Bill Bolton

Thursday – Anna Kitchens, David Jones, Caryn Kinzler

Friday – Jo Ann Herold, Mandy Muller

Third, we have a handful of changes to the 30(b)(6) designees. They are as follows:

Linda van Rees: subtract HBA USA & HBH Licensing topic 101

Jo Ann Herold: subtract HBH USA topics 30, 34-36, and 66

Mandy Muller: subtract HBH USA topic 24, add HBH USA topic 30

David Jones: add HBH USA topics 34-36 and 101, and HBH Licensing topic 101

Thanks, and please let us know if you have any questions.

- Mark

<image003.jpg>

**Mark Reeves**

3

**Kilpatrick Townsend & Stockton LLP**

Enterprise Mill | 1450 Greene St., Suite 230 | Augusta, GA 30901

office 706 823 4206 | fax 706 828 4488

mreeves@kilpatricktownsend.com | My Profile | vCard

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

***DISCLAIMER*** Per Treasury Department Circular 230: Any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

<30(b)(6) designess & conferral topics.PDF>

**Ex. 20 Page 478**

1   **BRYAN CAVE LEIGHTON PAISNER LLP**
Jonathan Solish (CA Bar No. 67609)
2   Alfred Shaumyan (CA Bar No. 266908)
David J. Root (CA Bar No. 307251)
3   120 Broadway, Suite 300
Santa Monica, California  90401-2386
4   Telephone:   (310) 576-2100
Facsimile:   (310) 576-2200
5   E-Mail:      jonathan.solish@bclplaw.com
               alfred.shaumyan@bclplaw.com
6              david.root@bclplaw.com

7   Attorneys for Plaintiff HONEY BAKED HAM INC.

8

9                 UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                      SOUTHERN DIVISION

12

13  **HONEY BAKED HAM INC.,**          Case No.:8:19-cv-01528-JVS (DFM)

14            Plaintiff,               **PLAINTIFF HONEY BAKED
                                       HAM INC.'S NOTICE OF
15       v.                            DEPOSITION TO DEFENDANT
                                       HBH LICENSING, LLC
16  **HONEY BAKED HAM COMPANY**        PURSUANT TO FEDERAL RULE
    **LLC, et al.,**                   OF CIVIL PROCEDURE 30(b)(6)**
17
           Defendants.                 Judge: Hon. James V. Selna
18
                                       Date:      July 1, 2021
19                                     Time:      10:00 a.m.
                                       Location:  Kilpatrick Townsend &
20                                                Stockton LLP
                                                  1100 Peachtree Street NE
21                                                Suite 2800
                                                  Atlanta, GA 30309
22

23

24

25

26                          Plaintiff Exhibit

                                **118**
27
                             **Linda van Rees**
                            Mon, Jun 28, 2021
28                          Bj Dugas, CRR, RPR

603769242.4

PLAINTIFF HONEY BAKED HAM INC.'S NOTICE OF DEPOSITION TO
DEFENDANT HBH LICENSING, LLC

PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Plaintiff Honey Baked Ham Inc. ("HBH California") hereby notices the deposition of Defendant and Counter-Claimant HBH Licensing, LLC ("HBH Licensing").  The deposition shall take place on July 1, 2021 at 10:00 a.m., and continuing from day-to-day thereafter until completed or adjourned.  The deposition will be held at 1100 Peachtree Street NE, Suite 2800, Atlanta, GA 30309.

The deposition shall be conducted under the supervision of an officer who is authorized to administer an oath.  The deposition testimony shall be recorded by stenographic means and preserved by written transcript and shall be taken for the purpose of discovery, for use at trial and for such other purposes permitted by the Federal Rules of Civil Procedure or other statutes or rules of this Court.  Pursuant to Rule 30(b)(3),  HBH California reserves the right to videotape the deposition.

HBH USA has requested to designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf about information known or reasonably available to it concerning the matters identified in the attached **Exhibit A**.

Dated:  June 21, 2021          **BRYAN CAVE LEIGHTON PAISNER LLP**

By: _____

Jonathan Solish
Attorneys for Plaintiff HONEY BAKED
HAM INC.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

603769242.4

1

# EXHIBT A

## DEFINITIONS

1.    "COMMUNICATION(S)" means every manner of disclosure, transfer, or exchange of information whether person-to-person, in a group, orally, in writing, by telephone, by electronic transmission, or otherwise, subject to the parties' agreed upon ESI order.

2.    "HBH CALIFORNIA" means Plaintiff Honey Baked Ham Inc.

3.    "YOU" or "YOUR" mean Defendant HBH Licensing, LLC, including all officers, directors, employees, agents, consultants, predecessors, subsidiaries, indirect subsidiaries, and contractors.

## DEPOSITION TOPICS

1.    All facts that support YOUR allegation in paragraph 269 of YOUR Second Amended Counterclaim that HBH CALIFORNIA has repeatedly failed to substantially comply with lawful requirements imposed on it by the 2015 License Agreement.

2.    All facts supporting YOUR allegations in paragraph 270 of YOUR Second Amended Counterclaim that HBH CALIFORNIA has received numerous notices of its noncompliance with lawful requirements imposed by the 2015 License Agreement.

3.    All facts supporting YOUR allegations in paragraph 270 of YOUR Second Amended Counterclaim that HBH CALIFORNIA has received numerous reasonable opportunities to cure any noncompliance with any lawful requirements imposed by the 2015 License Agreement.

4.    All facts supporting YOUR allegations in paragraph 270 of YOUR Second Amended Counterclaim that HBH CALIFORNIA has failed to cure any noncompliance with any lawful requirement imposed by the 2015 License Agreement.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1    5.    All facts supporting YOUR allegations in paragraph 271 of YOUR

2  Second Amended Counterclaim that HBH CALIFORNIA has repeatedly failed to

3  cure noncompliance with any requirements of the 2015 License Agreement.

4    6.    All facts supporting YOUR allegations in paragraph 270 of YOUR

5  Second Amended Counterclaim as to any notices of noncompliance with any

6  provision of the 2015 License Agreement.

7    7.    All facts supporting YOUR allegations in paragraph 270 of YOUR

8  Second Amended Counterclaim as to opportunities to cure any noncompliance with

9  provision of the 2015 License Agreement.

10   8.    All facts supporting YOUR allegations in paragraph 270 of YOUR

11  Second Amended Counterclaim as to any failure of HBH CALIFORNIA to cure any

12  breach of any provision of the 2015 License Agreement after being given an

13  opportunity to cure.

14   9.    Any COMMUNICATION that YOU have made to HBH

15  CALIFORNIA that YOU believe to be a notice of immediate termination of the

16  2015 License Agreement.

17   10.    With respect to Honey Baked Ham Company, LLC's ("HBH USA")

18  data breach that occurred on December 13, 2020, any customer information that

19  may have been compromised, any notices of the breach sent to any customer with a

20  California address, and the effect of the data breach on the reputation and good will

21  of the Honey Baked brand.

22   11.    All direct or indirect contacts, including surveys or questionnaires,

23  YOU have had with any customer of HBH CALIFORNIA since the 2015 License

24  Agreement was signed and what information was exchanged in each such contact.

25   12.    The manner in which Facebook complaints about HBH CALIFORNIA

26  in the Easter season of 2020 were conveyed to HBH CALIFORNIA and any delay

27  in conveying those complaints and reason for such delay.

28   13.    All ingredients in products sold in California that YOU contend are

603769242.4

3

**Ex. 20 Page 482**

1   known to cause cancer or reproductive toxicity, as YOU allege in paragraphs 187

2   and 188 of YOUR Second Amended Counterclaim.

3       14.    All grounds for YOUR contention in paragraph 186 that HBH

4   CALIFORNIA has not complied with federal labelling laws.

5       15.    Any complaints YOU currently have as to signage in any California

6   Honey Baked location.

7       16.    Any complaints that YOU currently have as to the sale of products by

8   HBH CALIFORNIA that YOU contend is unlawful or in violation of any of YOUR

9   legal rights.

10      17.    Any current concern YOU have about health or safety issues relating to

11  HBH CALIFORNIA.

12      18.    Any facts that show that HBH CALIFORNIA is currently in violation

13  of the California Retail Code or ever has been in violation of the California Retail

14  Code since the signing of the 2015 License Agreement.

15      19.    Details as to all purchases of product from HBH CALIFORNIA YOU

16  have made since the signing of the 2015 License Agreement where YOU or an

17  affiliate paid for the purchase, whether through an investigator, a lawyer or

18  otherwise.

19      20.    All complaints YOU have made to any governmental agency about

20  HBH CALIFORNIA.

21      21.    All claims YOU have that HBH CALIFORNIA has failed to comply

22  with any USDA law or regulation.

23      22.    Any facts that demonstrate that HBH CALIFORNIA is currently

24  selling any unauthorized food products.

25      23.    HBH USA's January 26, 2021 "Notice of Data Breach" to customers

26  because of a malware attack that occurred on or about Sunday, December 13, 2020,

27  and the effect on its reputation.

28

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

603769242.4

4

**Ex. 20 Page 483**

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1    24.    The consent decree in *United States of America v. the Original Honey*

2  *Baked Ham Company of Georgia* and its effect on the reputation and goodwill of the

3  Honey Baked brand.

4    25.    The suit in which a $370,000 payment was made by the Honey Baked

5  Ham Company of Georgia to settle a suit that claimed severe and pervasive sexual

6  harassment and retaliation and retaliation filed by the U.S. Equal Employment

7  Commission in Colorado and the effect of that suit on the reputation and goodwill of

8  the Honey Baked brand.

9    26.    Ratings of the Honey Baked brand on social media sites that assign

10  ratings or stars to brands, including any ratings on Yelp, Facebook, Instagram, or

11  other social media and the effect on the reputation and goodwill of the Honey Baked

12  brand.

13    27.    Any health or safety citation from any government agency to any

14  Honey Baked facility outside of California since the 2015 License Agreement was

15  signed.

16    28.    All customer complaints made on social media about any Honey Baked

17  facility or product sold from any location outside of California since March 1, 2020.

18    29.    News reports about health and safety violations in Honey Baked Ham

19  stores outside of California.

20    30.    All evidence that all Honey Baked outlets outside of California have

21  been in full compliance since 2015 with all of the standards that YOU are seeking to

22  enforce against HBH CALIFORNIA (or, if not all Honey Baked outlets outside of

23  California have been in full compliance with the standards that you are seeking to

24  enforce against HBH CALIFORNIA, the steps taken to bring those outlets into full

25  compliance).

26    31.    All information that YOU have, for the period 2015 to the present,

27  concerning the relative performance of the stores operated and sub-franchised by

28  HBH CALIFORNIA in comparison to Honey Baked Ham stores outside of

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1  California on all criteria measured by YOU (such as customer service, cleanliness,

2  customer satisfaction, product quality, and overall brand strength).

3      32.    All grounds for the assertion in document HBHUSA 0037170 that

4  HBH CALIFORNIA is required to be registered with the California Department of

5  Public Health, Food and Drug Branch.

6      33.    The assertions of fact stated in document HBHUSA 0037170.

7      34.    YOUR claimed rights to make or to authorize persons other than HBH

8  CALIFORNIA to make Mail Order sales to customers with California addresses,

9  notwithstanding the 2015 License Agreement.

10     35.    YOUR actions to ensure HBH CALIFORNIA's compliance with the

11 2015 License Agreement.

12     36.    YOUR advice and assistance to HBH CALIFORNIA to assure HBH

13 CALIFORNIA's compliance with the 2015 License Agreement.

14     37.    The training and instruction that YOU provided to HBH

15 CALIFORNIA from 2015 to the present, including with respect to the "System" (as

16 defined in the 2015 License Agreement).

17     38.    All advice, assistance, and instruction that YOU provided to HBH

18 CALIFORNIA concerning how to deal with the special circumstances arising out of

19 the COVID-19 pandemic, including enhanced sanitation, governmental orders for

20 social distancing, and anticipated changes in consumer behavior as a result of the

21 pandemic and associated health concerns and governmental orders.

22     39.    YOUR advice and assistance to, and cooperation with, HBH

23 CALIFORNIA from 2015 to the present with regards to supply chain matters,

24 including sourcing of inventory, such as "Spec Products," "Branded Products," and

25 "Non-Branded Products" (as each of those terms is defined in the 2015 License

26 Agreement); supplies, such as packaging materials and shipping containers; and

27 services, such as shipping services.

28

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

40.     All coordination between YOU and HBH Franchising, LLC, to assure that the "System" (as defined in the 2015 License Agreement) and other standards are the same and are administered consistently with respect to HBH CALIFORNIA and the franchisees of HBH Franchising, LLC.

41.     All audits of any type YOU have conducted pursuant to the 2015 License Agreement.

42.     The audit conducted by BDO during the course of this legal action, and any COMMUNICATIONS YOU have had with BDO as to how the audit is to be conducted, the goals of the audit, and the results of the audit.

43.     YOUR initiation and involvement in any investigation or inquiry relating to any breach or suspected breach by HBH CALIFORNIA of any provision of the 2015 License Agreement.

44.     Whether at least 35% of the Honey Baked system has implemented all changes YOU have required HBH CALIFORNIA to make.

45.     Any deficiency or understatement in royalty or other payments due from HBH CALIFORNIA exceeding 5%.

46.     YOUR allegations in paragraph 239 of YOUR Second Amended Counterclaim that HBH CALIFORNIA has "failed to fully and timely make the monthly Ham Royalty payments due under" the 2015 License Agreement during the period of "July 2019 to June 2020."

47.     YOUR allegations in paragraph 240 of YOUR Second Amended Counterclaim that HBH CALIFORNIA has not "paid the full amount of the Royalty due for each year that the 2015 License Agreement has been in effect, beginning on July 1, 2015 through to 2020."

48.     Any wrongful conduct that YOU allege was committed by HBH CALIFORNIA in connection with royalty payments that are owed pursuant to the terms of the 2015 License Agreement.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

49.    The decision to redesign the national website to remove the state selector mechanism, including any financial modeling or *pro forma* projecting the possible damages to HBH CALIFORNIA from that removal.

50.    The operation of the national website since 2018.

51.    YOUR understanding as to why removing the state selector mechanism did not violate Section 6(b)(xi) of the 2015 License Agreement by "undermin[ing] Licensee's fundamental right to engage in Mail Order Transactions."

52.    The impact on YOUR revenues due to changes to the national website by removing the state selector mechanism.

53.    User data and analytics collected by YOU or on YOUR behalf with respect to use of the state selector from 2015 to February 2020, and from February 2020 to the present.

54.    Design and implementation of all mechanisms in the national website for setting cookies on user's devices, and user data and analytics collected by YOU or on YOUR behalf regarding cookies.

55.    Design and implementation of all mechanisms in the national website or any other website of YOURS for bypassing the state selector by any means, and user data and analytics collected by YOU or on YOUR behalf regarding such mechanisms.

56.    The impact on sales by your parent and by Honey Baked stores outside California due to changes to the national website by removing the state selector mechanism.

57.    YOUR administration of the national website since May 2015 (*See* License Agreement § 6(b)(xi)).

58.    Delegation of YOUR obligation to manage the national website.

59.    YOUR instructions to HBH CALIFORNIA not to index its website(s).

60.    YOUR knowledge of websites and domain names used at any time by HBH CALIFORNIA.

603769242.4

8

Ex. 20 Page 487

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1      61.     YOUR knowledge of websites and domain names used at any time, or
2 authorized for use by others at any time by any entity from whom YOU received
3 any assignment of rights or assets.

4      62.     All assignments of rights received by YOU.

5      63.     YOUR request(s) and the basis for any such request(s) to transfer
6 ownership of any domain names used by HBH CALIFORNIA.

7      64.     YOUR control over HBH CALIFORNIA's social media account(s)
8 from 2015 through the present.

9      65.     Digital Guidelines or Internet Guidelines promulgated by YOU from
10 2015 through the present.

11      66.     YOUR understanding of HBH CALIFORNIA's obligations and
12 responsibilities under the Digital Guidelines or Internet Guidelines from 2015
13 through the present.

14      67.     HBH CALIFORNIA's compliance or non-compliance with the Digital
15 Guidelines or Internet Guidelines.

16      68.     The identity of all of the parties that are bound by each version of the
17 Digital Guidelines or Internet Guidelines.

18      69.     YOUR understanding as to whether the adoption of Digital Guidelines
19 or Internet Guidelines version 4.0 is a change in YOUR position as to whether HBH
20 CALIFORNIA is entitled to a state selector mechanism.

21      70.     All crisis management programs that YOU have had in effect in 2015
22 or that YOU have developed or implemented from 2015 through the present.

23      71.     YOUR implementation of and compliance with any crisis management
24 programs that YOU had in effect during the Easter 2020 season.

25      72.     Problems that non-California stores (company owned or franchise) and
26 mail order operations experienced and customer complaints that they received in
27 connection with Easter 2020 food product shipments.

28      73.     YOUR control over social media accounts on behalf of the Honey

603769242.4

**Ex. 20 Page 488**

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1   Baked Ham brand during the Easter 2020 season.

2        74.    HBH CALIFORNIA's brand strength and product quality nationwide

3   in the Honey Baked Ham system.

4        75.    All marks or right to use marks that have been assigned to YOU.

5        76.    YOUR allegations in paragraph 280 of YOUR Second Amended

6   Counterclaim that HBH CALIFORNIA "engaged in conduct which reflects

7   materially and unfavorably upon the operation and reputation of the Honey Baked

8   franchise business and system."

9        77.    All site inspections or store visits YOU have performed related to HBH

10  CALIFORNIA from 2015 through the present.

11       78.    Site inspections or store visits performed on Honey Baked Ham stores

12  outside California from 20115 through the present.

13       79.    YOUR reviews, assessments, or evaluations of HBH CALIFORNIA

14  stores from 2015 through the present.

15       80.    YOUR allegations in paragraph 173 of YOUR Second Amended

16  Counterclaim that HBH CALIFORNIA prepared and shipped perishable food in

17  interstate commerce from food facilities not registered with the FDA or USDA.

18       81.    YOUR allegations in paragraph 172 of YOUR Second Amended

19  Counterclaim that HBH CALIFORNIA "has repeatedly and materially breached and

20  failed to meet its obligations under the Safety Requirements."

21       82.    YOUR allegations in paragraph 177 of YOUR Second Amended

22  Counterclaim that HBH CALIFORNIA has "violated the California Retail Food

23  Code in regards to shipments from its retail stores."

24       83.    YOUR allegations in paragraph 158 of YOUR Second Amended

25  Counterclaim that HBH CALIFORNIA uses outdated packaging.

26       84.    YOUR allegations in paragraph 183 of YOUR Second Amended

27  Counterclaim that HBH CALIFORNIA "has repeatedly violated the Labeling

28  Requirements."

603769242.4                                    10

85.     YOUR allegations in paragraph 234 of YOUR Second Amended Counterclaim that HBH CALIFORNIA "continued to use noncompliant packaging at least through the 2020 Easter holiday season."

86.     YOUR allegations in paragraph 235 of YOUR Second Amended Counterclaim that HBH CALIFORNIA has refused to "comply with Brand standards for use of the proprietary Marks."

87.     YOUR rights upon termination of the 2015 License Agreement.

88.     Any offer, formal or informal made by YOU or any of YOUR executive officers to purchase HBH CALIFORNIA.

89.     Any discussions YOU had with any third party about purchasing HBH CALIFORNIA.

90.     YOUR valuation of HBH CALIFORNIA, including any valuation of its Mail Order (or eCommerce) business, and any valuation based upon termination of the 2015 License Agreement.

91.     Any analysis of YOUR own value, including any difference in YOUR value if HBH CALIFORNIA were not allowed to engage in Mail Order Transactions, if YOU were to acquire HBH CALIFORNIA, or if HBH CALIFORNIA's License Agreement were terminated.

92.     Advice YOU received from McKinsey & Company on how to improve performance.

93.     Advice YOU received from McKinsey & Company about purchasing HBH CALIFORNIA or any component of HBH CALIFORNIA.

94.     YOUR surveillance of HBH CALIFORNIA's stores from 2015 through the present.

95.     YOUR surveillance of Richard Gore from 2015 through the present.

96.     YOUR knowledge of HBH CALIFORNIA's breach as to any of the topics listed in YOUR 30(b)(6) deposition notice.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

97.   YOUR damages as to each claim listed in the Second Amended Counterclaim.

98.   YOUR and HBH USA's organizational structures, including officers and directors.

99.   The identities of YOUR managers and members.

100.   YOUR managers and/or members' service as members and/or managers for HBH Licensing, LLC.

101.   Documents relating to YOUR corporate governance, including YOUR operating agreement, articles of organization, and bylaws.

102.   Facts and circumstances of, and negotiations regarding, consolidation of former regional Honey Baked licensees, YOUR formation and acquisition of assets, and the formation of Honey Baked Ham Company, LLC and its acquisition of assets.

103.   All agreements that YOU had in place at the time of the assignment to YOU of the 2015 License Agreement that gave YOU the unrestricted ability to fulfill the obligations of the Licensor under the 2015 License Agreement.

104.   Any analysis by YOU or on YOUR behalf at or around the time of the assignment to YOU of the 2015 License Agreement concerning the assets and agreements that would be needed by YOU to fulfill YOUR obligations as Licensor under the 2015 License Agreement.

105.   The negotiation of the 2015 License Agreement.

106.   YOUR understanding of YOUR rights under the 2015 License Agreement.

107.   Modifications or proposed modifications to the 2015 License Agreement.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

12

PLAINTIFF HONEY BAKED HAM INC.'S NOTICE OF DEPOSITION TO DEFENDANT HBH LICENSING, LLC

**Ex. 20 Page 491**

1

# PROOF OF SERVICE

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is:  120 Broadway, Suite 300, Santa Monica, California 90401-2386.  My email address is: michelle.elhardouzi@bclplaw.com.

5

6

7

On June 21, 2021, I served the foregoing document(s) described as **PLAINTIFF HONEY BAKED HAM INC.'S NOTICE OF DEPOSITION TO DEFENDANT HBH LICENSING, LLC PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**   on all interested parties in this action as follows:

8

9

| | |
|---|---|
| KOLLIN J. ZIMMERMANN<br>Kilpatrick Townsend and Stockton LLP<br>*kzimmermann@kilpatricktownsend.com*<br>1801 Century Park East, Suite 2300<br>Los Angeles, California 90067<br>Telephone: (310) 248-3830<br>Facsimile: (310) 860-0363 | *Counsel for Defendants/Counter Plaintiffs, Honey Baked Ham Company LLC and HBH Licensing, LLC* |
| J. DAVID MAYBERRY (Admitted *Pro Hac Vice*)<br>SARA K. SADLER (Admitted *Pro Hac Vice*)<br>Kilpatrick Townsend and Stockton LLP<br>*dmayberry@kilpatricktownsend.com*<br>*sstadler@kilpatricktownsend.com*<br>The Grace Building<br>1114 Avenue of the Americas<br>New York, New York 10036<br>Telephone: (212) 775-8700<br>Facsimile: (212) 775-8800<br>Sara's Tel: (404) 532-6908<br>Sara's Fax: (404) 541-3411 | *Counsel for Defendants/Counter Plaintiffs, Honey Baked Ham Company LLC and HBH Licensing, LLC* |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

603769242.4

1

**Ex. 20 Page 492**

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

| | |
|---|---|
| MARK H. REEVES (Admitted *Pro Hac Vice*)<br>*mreeves@kilpatricktownsend.com*<br>Enterprise Mill<br>1450 Greene Street, Suite 230<br>Augusta, Georgia 30901<br>Telephone: (706) 823-4206<br>Facsimile: (706) 828-4488 | *Counsel for Defendants/Counter Plaintiffs, Honey Baked Ham Company LLC and HBH Licensing, LLC* |
| JAMES C. RUBINGER (Admitted *Pro Hac Vice*)<br>PLAVE KOCH PLC<br>*jrubinger@plavekoch.com*<br>12005 Sunrise Valley Drive, Suite 200<br>Reston, Virginia 20191<br>Telephone: (703) 774-1200<br>Facsimile: (703) 774-1201 | *Counsel for Defendants/Counter Plaintiffs, Honey Baked Ham Company LLC and HBH Licensing, LLC* |

☐ BY MAIL - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Santa Monica, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ BY EMAIL – I caused a true copy of the foregoing document(s) to be served by electronic email transmission at the time shown on each transmission, to each interested party at the email address shown above. Each transmission was reported as complete and without error.

☐ BY OVERNIGHT DELIVERY - Depositing the above document(s) in a box or other facility regularly maintained by FedEx in an envelope or package designated by FedEx with delivery fees paid or provided for.

☒ FEDERAL - I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 21, 2021 at Santa Monica, California.

*Michelle Elhardouzi*

Michelle Elhardouzi

1   **BRYAN CAVE LEIGHTON PAISNER LLP**
    Jonathan Solish (CA Bar No. 67609)
2   Alfred Shaumyan (CA Bar No. 266908)
    David J. Root (CA Bar No. 307251)
3   120 Broadway, Suite 300
    Santa Monica, California  90401-2386
4   Telephone:  (310) 576-2100
    Facsimile:  (310) 576-2200
5   E-Mail:      jonathan.solish@bclplaw.com
                  alfred.shaumyan@bclplaw.com
6                 david.root@bclplaw.com

7   Attorneys for Plaintiff HONEY BAKED HAM INC.

8

9                    UNITED STATES DISTRICT COURT

10           FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                       SOUTHERN DIVISION

12

13   **HONEY BAKED HAM INC.,**            Case No.:8:19-cv-01528-JVS (DFM)

14                 Plaintiff,             **PLAINTIFF HONEY BAKED
                                          HAM INC.'S NOTICE OF
15          v.                            DEPOSITION TO DEFENDANT
                                          HONEY BAKED HAM
16   **HONEY BAKED HAM COMPANY            COMPANY LLC PURSUANT TO
     LLC,** et al.,                       FEDERAL RULE OF CIVIL
17                                        PROCEDURE 30(B)(6)**
                  Defendants.
18                                        Judge: Hon. James V. Selna

19                                        Date:       June 21, 2021
                                          Time:       10:00 a.m.
20                                        Location:   Kilpatrick Townsend &
                                                      Stockton LLP
21                                        1100 Peachtree Street NE
                                          Suite 2800
22                                        Atlanta, GA 30309

23

24

25

26                     Plaintiff Exhibit
                            **119**
27                      **Linda van Rees**
                       Mon, Jun 28, 2021
28                     Bj Dugas, CRR, RPR

     603707885.3

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1       PLEASE TAKE NOTICE that, pursuant to Rule 30(b)(6) of the Federal Rules

2   of Civil Procedure, Plaintiff Honey Baked Ham Inc. ("HBH California") hereby

3   notices the deposition of Defendant and Counter-Claimant Honey Baked Ham

4   Company LLC ("HBH USA").  The deposition shall take place on June 21, 2021 at

5   10:00 a.m., and continuing from day-to-day thereafter until completed or adjourned.

6   The deposition will be held at 1100 Peachtree Street NE, Suite 2800, Atlanta, GA

7   30309.

8       The deposition shall be conducted under the supervision of an officer who is

9   authorized to administer an oath.  The deposition testimony shall be recorded by

10  stenographic means and preserved by written transcript and shall be taken for the

11  purpose of discovery, for use at trial and for such other purposes permitted by the

12  Federal Rules of Civil Procedure or other statutes or rules of this Court.  Pursuant to

13  Rule 30(b)(3),  HBH California reserves the right to videotape the deposition.

14      HBH USA is requested to designate one or more officers, directors, or

15  managing agents, or other persons who consent to testify on its behalf about

16  information known or reasonably available to it concerning the matters identified in

17  the attached **Exhibit A**.

18  Dated:  June 4, 2021        **BRYAN CAVE LEIGHTON PAISNER LLP**

19

20

21

22  By: _____

23      Jonathan Solish

24      Attorneys for Plaintiff HONEY BAKED
    HAM INC.

25

26

27

28

603707885.3

1

**EXHIBT A**

**DEFINITIONS**

1.  "COMMUNICATION(S)" means every manner of disclosure, transfer, or exchange of information whether person-to-person, in a group, orally, in writing, by telephone, by electronic transmission, or otherwise, subject to the parties' agreed upon ESI order.

2.  "HBH CALIFORNIA" means Plaintiff Honey Baked Ham Inc.

3.  "YOU" or "YOUR" mean Defendant Honey Baked Ham Company LLC, including all officers, directors, employees, agents, consultants, predecessors, subsidiaries, indirect subsidiaries, parents, affiliates, and contractors.

**DEPOSITION TOPICS**

1.  All facts that support YOUR allegation in paragraph 269 of YOUR Second Amended Counterclaim that HBH CALIFORNIA has repeatedly failed to substantially comply with lawful requirements imposed on it by the 2015 License Agreement.

2.  All facts supporting YOUR allegations in paragraph 270 of YOUR Second Amended Counterclaim that HBH CALIFORNIA has received numerous notices of its noncompliance with lawful requirements imposed by the 2015 License Agreement.

3.  All facts supporting YOUR allegations in paragraph 270 of YOUR Second Amended Counterclaim that HBH CALIFORNIA has received numerous reasonable opportunities to cure any noncompliance with any lawful requirements imposed by the 2015 License Agreement.

4.  All facts supporting YOUR allegations in paragraph 270 of YOUR Second Amended Counterclaim that HBH CALIFORNIA has failed to cure any noncompliance with any lawful requirement imposed by the 2015 License Agreement.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1       5.    All facts supporting YOUR allegations in paragraph 271 of YOUR

2   Second Amended Counterclaim that HBH CALIFORNIA has repeatedly failed to

3   cure noncompliance with any requirements of the 2015 License Agreement.

4       6.    All facts supporting YOUR allegations in paragraph 270 of YOUR

5   Second Amended Counterclaim as to any notices of noncompliance with any

6   provision of the 2015 License Agreement.

7       7.    All facts supporting YOUR allegations in paragraph 270 of YOUR

8   Second Amended Counterclaim as to opportunities to cure any provision of the 2015

9   License Agreement.

10       8.    All facts supporting YOUR allegations in paragraph 270 of YOUR

11   Second Amended Counterclaim as to any failure of HBH CALIFORNIA to cure any

12   breach of any provision of the 2015 License Agreement after being given an

13   opportunity to cure.

14       9.    Any COMMUNICATION that YOU have made to HBH

15   CALIFORNIA that YOU believe to be a notice of immediate termination of the

16   2015 License Agreement.

17       10.    With respect to the data breach that occurred on December 13, 2020,

18   any customer information that may have been compromised, any notices of the

19   breach sent to any customer with a California address, and the effect of the data

20   breach on the reputation and good will of the Honey Baked brand.

21       11.    All direct or indirect contacts, including surveys or questionnaires,

22   YOU have had with any customer of HBH CALIFORNIA since the 2015 License

23   Agreement was signed and what information was exchanged in each such contact.

24       12.    The manner in which Facebook complaints about HBH CALIFORNIA

25   in the Easter season of 2020 were conveyed to HBH CALIFORNIA and any delay

26   in conveying those complaints and reason for such delay.

27       13.    All ingredients in products sold in California that YOU contend are

28   known to cause cancer or reproductive toxicity, as YOU allege in paragraphs 187

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1   and 188 of YOUR Second Amended Counterclaim.

2       14.    The Proposition 65 notices YOU have provided to customers with

3   California addresses on sales YOU made.

4       15.    All grounds for YOUR contention in paragraph 186 that HBH

5   CALIFORNIA has not complied with federal labelling laws.

6       16.    Any complaints YOU currently have as to signage in any California

7   Honey Baked location.

8       17.    Any complaints that YOU currently have as to the sale of products by

9   HBH CALIFORNIA that YOU contend is unlawful or in violation of any of YOUR

10  legal rights.

11      18.    Any current concern YOU have about health or safety issues relating to

12  HBH CALIFORNIA.

13      19.    Any facts that show that HBH CALIFORNIA is currently in violation

14  of the California Retail Code or ever has been in violation of the California Retail

15  Code since the signing of the 2015 License Agreement.

16      20.    Details as to all purchases of product from HBH CALIFORNIA YOU

17  have made since the signing of the 2015 License Agreement where YOU or an

18  affiliate paid for the purchase, whether through an investigator, a lawyer or

19  otherwise.

20      21.    All complaints YOU have made to any governmental agency about

21  HBH CALIFORNIA.

22      22.    All claims YOU have that HBH CALIFORNIA has failed to comply

23  with any USDA law or regulation.

24      23.    Any facts that demonstrate that HBH CALIFORNIA is currently

25  selling any unauthorized food products.

26      24.    Any facts showing YOUR good, or bad, reputation or goodwill or the

27  negative effect on that reputation or goodwill, as alleged in paragraph 262 of YOUR

28  Second Amended Counterclaim.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1    25.    YOUR January 26, 2021 "Notice of Data Breach" to customers because

2    of a malware attack that occurred on or about Sunday, December 13, 2020.

3    26.    The consent decree in *United States of America v. the Original Honey*

4    *Baked Ham Company of Georgia* and its effect on the reputation and goodwill of the

5    Honey Baked brand.

6    27.    The suit in which a $370,000 payment was made by the Honey Baked

7    Ham Company of Georgia to settle a suit that claimed severe and pervasive sexual

8    harassment and retaliation and retaliation filed by the U.S. Equal Employment

9    Commission in Colorado and the effect of that suit on the reputation and goodwill of

10   the Honey Baked brand.

11   28.    Ratings of the Honey Baked brand on social media sites that assign

12   ratings or stars to brands, including any ratings on Yelp, Facebook, Instagram, or

13   other social media and the effect on the reputation and goodwill of the Honey Baked

14   brand.

15   29.    Any health or safety citation from any government agency to any

16   Honey Baked facility outside of California since the 2015 License Agreement was

17   signed.

18   30.    All customer complaints made on social media about any Honey Baked

19   facility or product sold from any location outside of California since March 1, 2020.

20   31.    News reports about health and safety violations in Honey Baked Ham

21   stores outside of California.

22   32.    All grounds for the assertion in document HBHUSA 0037170 that

23   HBH CALIFORNIA is required to be registered with the California Department of

24   Public Health, Food and Drug Branch.

25   33.    The assertions of fact stated in document HBHUSA 0037170.

26   34.    YOUR Mail Order sales, and the trends in those sales, to customers

27   with addresses in California from 2015 through the present.

28   35.    Your overall Mail Order sales, and the trends in those sales, from 2015

603707885.3

**Ex. 20 Page 499**

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1   through the present.

2       36.     YOUR profits on Mail Order sales to customers with addresses in

3   California from 2015 through the present and how YOU calculate them.

4       37.     All of YOUR efforts to promote the Mail Order sale of Honey Baked

5   products to customers with California addresses.

6       38.     YOUR claimed rights to fulfill Mail Orders in California,

7   notwithstanding the 2015 License Agreement.

8       39.     YOUR actions to ensure HBH CALIFORNIA's compliance with the

9   2015 License Agreement.

10      40.     All audits of any type YOU have conducted pursuant to the 2015

11  License Agreement.

12      41.     The audit conducted by BDO during the course of this legal action, and

13  any COMMUNICATIONS YOU have had with BDO as to how the audit is to be

14  conducted and the results of the audit.

15      42.     YOUR initiation and involvement in any investigation or inquiry

16  relating to any breach or suspected breach by HBH CALIFORNIA of any provision

17  of the 2015 License Agreement.

18      43.     Whether at least 35% of the Honey Baked system has implemented all

19  changes YOU have required HBH CALIFORNIA to make.

20      44.     Any deficiency or understatement in royalty or other payments due

21  from HBH CALIFORNIA exceeding 5%.

22      45.     YOUR allegations in paragraph 239 of YOUR Second Amended

23  Counterclaim that HBH CALIFORNIA has "failed to fully and timely make the

24  monthly Ham Royalty payments due under" the 2015 License Agreement during the

25  period of "July 2019 to June 2020."

26      46.     YOUR allegations in paragraph 240 of YOUR Second Amended

27  Counterclaim that HBH CALIFORNIA has not "paid the full amount of the Royalty

28  due for each year that the 2015 License Agreement has been in effect, beginning on

1   July 1, 2015 through to 2020."

2       47.     Any wrongful conduct that YOU allege was committed by HBH

3   CALIFORNIA in connection with royalty payments that are owed pursuant to the

4   terms of the 2015 License Agreement.

5       48.     YOUR decision to redesign the national website to remove the state

6   selector mechanism, including any financial modeling or *pro forma* projecting the

7   possible damages to HBH CALIFORNIA from that removal.

8       49.     The operation of the national website since 2018.

9       50.     YOUR understanding as to why removing the state selector mechanism

10   did not violate Section 6(b)(xi) of the 2015 License Agreement by "undermin[ing]

11   Licensee's fundamental right to engage in Mail Order Transactions."

12       51.     The impact on YOUR sales due to changes to the national website by

13   removing the state selector mechanism in 2018.

14       52.     User data and analytics collected by YOU or on YOUR behalf with

15   respect to use of the state selector from 2015 to February 2020, and from February

16   2020 to the present.

17       53.     Design and implementation of all mechanisms in the national website

18   for setting cookies on user's devices, and user data and analytics collected by YOU

19   or on YOUR behalf regarding cookies.

20       54.     Design and implementation of all mechanisms in the national website

21   or any other website of YOURS for bypassing the state selector by any means, and

22   user data and analytics collected by YOU or on YOUR behalf regarding such

23   mechanisms.

24       55.     The impact on YOUR franchisees' sales due to changes to the national

25   website by removing the state selector mechanism in 2018.

26       56.     YOUR instructions to HBH CALIFORNIA not to index its website(s).

27       57.     YOUR knowledge of websites and domain names used at any time by

28   HBH CALIFORNIA.

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

603707885.3

7

**Ex. 20 Page 501**

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1    58.    YOUR knowledge of websites and domain names used at any time by
2  any entity from whom YOU received any assignment of rights or assets.

3    59.    YOUR request(s) and the basis for any such request(s) to transfer
4  ownership of any domain names used by HBH CALIFORNIA.

5    60.    YOUR control over HBH CALIFORNIA's social media account(s)
6  from 2015 through the present.

7    61.    Digital Guidelines or Internet Guidelines promulgated by YOU from
8  2015 through the present.

9    62.    YOUR understanding of HBH CALIFORNIA's obligations and
10  responsibilities under the Digital Guidelines or Internet Guidelines from 2015
11  through the present.

12    63.    HBH CALIFORNIA's compliance or non-compliance with the Digital
13  Guidelines or Internet Guidelines.

14    64.    The identity of all of the parties that are bound by each version of the
15  Digital Guidelines or Internet Guidelines.

16    65.    YOUR understanding as to whether the adoption of Digital Guidelines
17  or Internet Guidelines version 4.0 is a change in YOUR position as to whether HBH
18  CALIFORNIA is entitled to a state selector mechanism.

19    66.    All crisis management programs that YOU have had in effect in 2015
20  or that YOU have developed or implemented from 2015 through the present.

21    67.    YOUR implementation of and compliance with any crisis management
22  programs that YOU had in effect during the Easter 2020 season.

23    68.    Problems that YOU or YOUR non-California sub-licensees
24  experienced and customer complaints that YOU received in connection with Easter
25  2020 food product shipments.

26    69.    YOUR control over social media accounts on behalf of the Honey
27  Baked Ham brand during the Easter 2020 season.

28    70.    HBH CALIFORNIA's brand strength and product quality nationwide

603707885.3

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1 in the Honey Baked Ham system.

2     71.    YOUR brand strength and product quality nationwide in the Honey

3 Baked Ham system.

4     72.    YOUR reputation and goodwill associated with YOUR trademarks.

5     73.    YOUR efforts to measure, quantify, or otherwise evaluate or document

6 Your brand strength, product quality, reputation, or goodwill.

7     74.    YOUR allegations in paragraph 255 of YOUR Second Amended

8 Counterclaim that HBH CALIFORNIA's "infringement irreparably injures [YOUR]

9 . . . business, reputation, and goodwill, which are embodied in the HONEYBAKED

10 marks."

11     75.    YOUR allegations in paragraph 280 of YOUR Second Amended

12 Counterclaim that HBH CALIFORNIA "engaged in conduct which reflects

13 materially and unfavorably upon the operation and reputation of the Honey Baked

14 franchise business and system."

15     76.    All site inspections or store visits YOU have performed related to HBH

16 CALIFORNIA from 2015 through the present.

17     77.    Site inspections or store visits YOU have performed on YOUR non-

18 California franchisees from 2015 through the present.

19     78.    Site inspections or store visits YOU have performed on Honey Baked

20 Ham stores owned by YOU from 2015 through the present.

21     79.    YOUR reviews, assessments, or evaluations of HBH CALIFORNIA

22 stores from 2015 through the present.

23     80.    YOUR allegations in paragraph 173 of YOUR Second Amended

24 Counterclaim that HBH CALIFORNIA prepared and shipped perishable food in

25 interstate commerce from food facilities not registered with the FDA or USDA.

26     81.    YOUR allegations in paragraph 172 of YOUR Second Amended

27 Counterclaim that HBH CALIFORNIA "has repeatedly and materially breached and

28 failed to meet its obligations under the Safety Requirements."

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1    82.    YOUR allegations in paragraph 177 of YOUR Second Amended

2  Counterclaim that HBH CALIFORNIA has "violated the California Retail Food

3  Code in regards to shipments from its retail stores."

4    83.    YOUR allegations in paragraph 158 of YOUR Second Amended

5  Counterclaim that HBH CALIFORNIA uses outdated packaging.

6    84.    YOUR allegations in paragraph 183 of YOUR Second Amended

7  Counterclaim that HBH CALIFORNIA "has repeatedly violated the Labeling

8  Requirements."

9    85.    YOUR allegations in paragraph 234 of YOUR Second Amended

10  Counterclaim that HBH CALIFORNIA "continued to use noncompliant packaging

11  at least through the 2020 Easter holiday season."

12    86.    YOUR allegations in paragraph 235 of YOUR Second Amended

13  Counterclaim that HBH CALIFORNIA has refused to "comply with Brand

14  standards for use of the proprietary Marks."

15    87.    YOUR rights upon termination of the 2015 License Agreement.

16    88.    Any offer, formal or informal made by YOU or any of YOUR

17  executive officers to purchase HBH CALIFORNIA.

18    89.    Any discussions YOU had with any third party about purchasing HBH

19  CALIFORNIA.

20    90.    YOUR valuation of HBH CALIFORNIA, including any valuation

21  based upon termination of the 2015 License Agreement.

22    91.    Any analysis of YOUR own value, including any difference in YOUR

23  value if HBH CALIFORNIA were not allowed to engage in Mail Order

24  Transactions, if YOU were to acquire HBH CALIFORNIA, or if HBH

25  CALIFORNIA's License Agreement were terminated.

26    92.    Advice YOU received from McKinsey & Company on how to improve

27  performance.

28    93.    Advice YOU received from McKinsey & Company about purchasing

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

1    HBH CALIFORNIA or any component of HBH CALIFORNIA.

2        94.    YOUR surveillance of HBH CALIFORNIA's stores from 2015 through

3    the present.

4        95.    YOUR surveillance of Richard Gore from 2015 through the present.

5        96.    YOUR knowledge of HBH CALIFORNIA's breach as to any of the

6    topics listed in YOUR 30(b)(6) deposition notice.

7        97.    YOUR damages as to each claim listed in the Second Amended

8    Counterclaim.

9        98.    YOUR/HBH Licensing, LLC's organizational structure, including

10   officers and directors.

11       99.    The identities of YOUR managers and members.

12       100.   YOUR managers and/or members' service as members and/or

13   managers for HBH Licensing, LLC.

14       101.   Documents relating to YOUR corporate governance, including YOUR

15   operating agreement, articles of organization, and bylaws.

16       102.   Facts and circumstances of, and negotiations regarding, consolidation

17   of former regional Honey Baked licensees, YOUR formation and acquisition of

18   assets, and the formation of HBH Licensing and its acquisition of assets.

19       103.   The negotiation of the 2015 License Agreement.

20       104.   YOUR understanding of YOUR rights under the 2015 License

21   Agreement.

22       105.   Modifications or proposed modifications to the 2015 License

23   Agreement.

24

25

26

27

28

603707885.3

PLAINTIFF HONEY BAKED HAM INC.'S NOTICE OF DEPOSITION TO
DEFENDANT HONEY BAKED HAM COMPANY LLC

**Ex. 20 Page 505**

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is:  120 Broadway, Suite 300, Santa Monica, California 90401-2386.  My email address is: david.root@bclplaw.com.

On June 4, 2021, I served the foregoing document(s) described as **PLAINTIFF HONEY BAKED HAM INC.'S NOTICE OF DEPOSITION TO DEFENDANT HONEY BAKED HAM COMPANY LLC PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(B)(6)** on all interested parties in this action as follows:

| | |
|---|---|
| KOLLIN J. ZIMMERMANN<br>Kilpatrick Townsend and Stockton LLP<br>*kzimmermann@kilpatricktownsend.com*<br>1801 Century Park East, Suite 2300<br>Los Angeles, California 90067<br>Telephone: (310) 248-3830<br>Facsimile: (310) 860-0363 | *Counsel for Defendants/Counter Plaintiffs, Honey Baked Ham Company LLC and HBH Licensing, LLC* |
| J. DAVID MAYBERRY (Admitted *Pro Hac Vice*)<br>SARA K. SADLER (Admitted *Pro Hac Vice*)<br>Kilpatrick Townsend and Stockton LLP<br>*dmayberry@kilpatricktownsend.com*<br>*sstadler@kilpatricktownsend.com*<br>The Grace Building<br>1114 Avenue of the Americas<br>New York, New York 10036<br>Telephone: (212) 775-8700<br>Facsimile: (212) 775-8800<br>Sara's Tel: (404) 532-6908<br>Sara's Fax: (404) 541-3411 | *Counsel for Defendants/Counter Plaintiffs, Honey Baked Ham Company LLC and HBH Licensing, LLC* |

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

603707885.3

1

**Ex. 20 Page 506**

Bryan Cave Leighton Paisner LLP
120 Broadway, Suite 300
Santa Monica, California 90401-2386

| | |
|---|---|
| MARK H. REEVES (Admitted *Pro Hac Vice*)<br>*mreeves@kilpatricktownsend.com*<br>Enterprise Mill<br>1450 Greene Street, Suite 230<br>Augusta, Georgia 30901<br>Telephone: (706) 823-4206<br>Facsimile: (706) 828-4488 | *Counsel for Defendants/Counter Plaintiffs, Honey Baked Ham Company LLC and HBH Licensing, LLC* |
| JAMES C. RUBINGER (Admitted *Pro Hac Vice*)<br>PLAVE KOCH PLC<br>*jrubinger@plavekoch.com*<br>12005 Sunrise Valley Drive, Suite 200<br>Reston, Virginia 20191<br>Telephone: (703) 774-1200<br>Facsimile: (703) 774-1201 | *Counsel for Defendants/Counter Plaintiffs, Honey Baked Ham Company LLC and HBH Licensing, LLC* |

☐ BY MAIL - As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on that same day with postage thereon fully prepaid at Santa Monica, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☒ BY EMAIL – I caused a true copy of the foregoing document(s) to be served by electronic email transmission at the time shown on each transmission, to each interested party at the email address shown above.  Each transmission was reported as complete and without error.

☐ BY OVERNIGHT DELIVERY - Depositing the above document(s) in a box or other facility regularly maintained by FedEx in an envelope or package designated by FedEx with delivery fees paid or provided for.

☒ FEDERAL - I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 4, 2021 at Santa Monica, California.

David J. Root

603707885.3

2

PROOF OF SERVICE

**Ex. 20 Page 507**

# EXHIBIT 21

CONFIDENTIAL

**Message**

| | |
|---|---|
| **From:** | VanRees, Linda [/O=HONEYBAKED HAM COMPANY/OU=ATLANTA/CN=RECIPIENTS/CN=LINDAV] |
| **Sent:** | 6/4/2015 7:13:22 PM |
| **To:** | Keil, Dave [/O=HONEYBAKED HAM COMPANY/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=Dave Keilf01]; DeCan, Maggie [/O=HONEYBAKED HAM COMPANY/OU=Atlanta/cn=Recipients/cn=MDecan] |
| **Subject:** | California |
| **Attachments:** | California.docx |

Please see the attached document for an updated summary of the California relationship.

I will continue to refine and add to the document. Your input is requested on any and all items!

Dave you and I need to construct the dialog for our trip out there. That is not yet in this document.

linda

Plaintiff Exhibit

**122**

**Linda van Rees**
Mon, Jun 28, 2021
BJ Dugas, CRR, RPR

CONFIDENTIAL

# California Relationship 2015

## A.  Process to Manage the Day to Day Relationship

As the relationship was handed over from the HBH LTD. Licensing Body, there were a number of open issues that need to be managed in the short term.  There are also some basic interconnections we have with California that must be managed proactively.   Richard can be a volatile person, and he needs to be managed with respect, with considered thought and preferably proactively.  We do not want to get sideways with him in this young relationship. He is trying to assess what this new relationship is going to be, so everything communicates.

We plan on visiting Richard in late June early July to paint the picture for him of what the future likely looks like under this new structure.   In essence, that the structure gives us the opportunity to create a single consistent face to the consumer under the Brand for the first time in our history.   That the value driven in the next 10 years will be due to that consistency.

Between now and our visit to California, it is important to get ourselves organized to manage this strategic relationship.  And try not to step in any potholes!

**Open California Issues :**

#1.  Store Signage

In the mid 1990's we redesigned the Trademark and we mandated that all Licensees change out their store signs to reflect the new Logo.   Richard had complied to this same request in the 80's, the last time the logo was redesigned, and the family never really followed suit. The second time around he got The HBH Ltd. agreed that he did not have to change his signs until 50% or more of the rest of the system had already done so.   We passed that measure in about the year 2000 and Richard never changed his signs.

No one on the HBH Ltd. Board visited California, ever, but we knew his signs were not updated.   No one wanted to confront Richard as he was so litigious.  He still has old 'hexagon' era exterior signage up in many locations.

In the new agreement he has 6 months from the date of his new contract to change all of his signage over to the new specifications.  Given he is like 15 years late, Richard never argued doing this in the negotiations.  The specifications for the signage are spelled out clearly in the 2006 Standards Manual.

HBHUSA0011927

In any case, we need to follow up with him by mid-late summer, and see what his plans are
for updating the exterior signage.   I think we should approve the layout and the schedule,
and I would be open to giving him a little more leeway into 2016 to get there.

#2.  Fresh Sides Food Safety Issue

Richard is a huge proponent of fresh side dishes and has been for a very long time.  He actually
I think has several systems in place for his side dishes.   In some cases, he buys Ingredients
(many are canned veggies etc.) and he mixes in store, then puts in bowls in refrigerated cases
to sell out of.   In other cases they appear to be premixed and or prepackaged.  We really don't
know what he is doing there, and since he has quite a few Franchisees under his operation,
there are likely several programs in operation.

When we bought New England, Steve McHugh was using Richards' manuals for fresh sides.
The food safety results in NE were just a nightmare.  The counts were off the charts bad.  Since
we knew the program was 100% Richards, in the fall of 2012 we (Georgia) secretly tested
Richards' sides.  The results were almost identical to what we saw in NE.  NOT GOOD.  The HBH
LP did not act in response to Georgia's independent analysis.

This past year I insisted the Board do testing prior to renewing California.  This marked the first
time the HBH Ltd. had ever done *direct* testing on California of any type with respect to Food
Safety.  California has been doing self monitoring for years, but the HBH Ltd. never asked for
the results.   When the HBH Ltd. did their own analysis in February of 2015, they found similar
results to the ones done by Georgia years earlier.

There appears to be a particular problem with the meat salads and the cheesy potatoes.  Just
prior to executing the new contract in April, Richard was told of the problem.  Richard
responded that he was changing his process 'before we called him' and going to premixed meat
salads, and moving away from the cheesy potatoes, at least in the form we tested them in.  In
any case, he promised to 'report back'.

We told him that we would be out to test again as a part of the follow up....  The process
recommended at the time by Keith Kurz, was to ask for the new protocol from California, and
then to ask Richard to do his own testing.  We would then at some point, retest to ensure the
proper results.   None of this has been followed up on as of yet.

CONFIDENTIAL

#3.  Open Contract with 

Richard gets 100% of his ham supply from █████████ and his contract runs adjacent to the
Ohio and Foods have have with ████, theoretically it has been 'extended' through ███████. We
are assuming the terms are the same or similar, but we have not seen his supply contract, and I
am not clear that we have ever had it (we have the right to see it per the license agreement).

Richard will be VERY sensitive about any change in that relationship that may be required of
him.    He does not want hams from other packers.  His total tonnage is in the ██████████
range. ████████  ██████████  ██████████  Or half of the ████  ██████████.  We need to 'bring him
into' the dialog without over sharing.   We can talk about what that means, but in essence, he
probably needs to be reassured that the relationship is stable, and rest assured, any deal we do
on pricing to accommodate the IP around quarters needs to take Richard into account.  That
could get a little sticky as well. We can't expect Richard to pay for the IP in a disproportionate
way in other words, even inadvertently.  It is our job to protect him and ensure he is on equal
footing as a minimum in the supply arena.   It is not ultimately our responsibility to "Guarantee"
████ for him, but adequate supply of the product on equal terms.

## Ongoing Licensee Management :

On an ongoing basis, the following areas are ones that will be potential intersection point
between California and the Licensor, The Honey Baked Ham Company LLC. :

    #1. Translating the Contract and owning the relationship…. On all issues.  Someone
needs to be point on what position we take on the contract in total, and communicating
with Richard.  This point will be the primary contact, and the highest level of contact
Richard should expect to have on an ongoing basis.  It is critical, that this person is 100%
up to date on what is going on, so that we act consistently over time, and against the
various parts of the contract.  The biggest area of potential liability, is saying one thing
and doing another. Regardless of where the contract is. We have to walk and talk with
them consistently, and consistently within the bounds of the License agreement.  This is
a smart guy, a guy with a memory like an elephant, and he will nail us if we are
inconsistent.  It is essential that someone takes ownership of knowing the history, and
taking a considered position against the back drop of the history and the contract.   No
missteps allowed on this one.

#2. Ensuring proper Trademark Usage on all materials.  We have not reviewed this since the late 1990's when I did it as a part of the national Trademark Council. No idea where execution is for him right now relative to what is described in the TM Standards Manual.

#3. Ecommerce Coordination and cooperation.  This is a super touchy area as we move forward in changing how we go to market here.  I am very concerned that we have a high probability of inadvertently crossing a line while we change this up.

#4. National Food Safety Program execution. Touchy.  We have a good start with the work the HBH Ltd did, and he has responded pretty level headed to that issue as a start. The follow up must be done with great sensitivity.

#5. Advertising Cooperation when desired (national publications).  We have needed to work with California many times through the years on national promotions or national advertising.  This should be an easy coordination with Marketing folks here.

#6. Vendor Coordination.  We could really add more value for Richard here if we approached this more proactively.  We need to let him push it as a priority, but we could add some real value here I suspect.

#7. Product Menu Continuity.  We have never in our history really tried to create continuity here, but at some point there needs to be at least a review, and a comfort that the basic offering is consistent.   This needs to go very slow....

## B.  Current State Essentials.

a)  Richard has an automated glaze machine that he has patented and we have no rights to. I believe he has only one machine at his shipping facility.  It is moderately interesting.

b)  Richard operates under an exemption from the USDA that was granted a long time ago (in the 1990's?) in his shipping facility.  He is not USDA inspected there.  It is a precarious deal in my mind. Redacted ████████████████████████████████ He is a very good resource, and if we have any concerns on this exemption status California operates under, Redacted ████████████

c)  Richard has made numerous modifications to the slicing machines over the years.  He loves to tinker.  I am not clear that any of the changes are of particular interest for us other than the net impact they have on the product he sells to the consumer.  I think he has a consistent issue of extreme thick and thin slicing due to the changes he made at one point.  I would like to see how much his machines are modified.  I understand that

for the first time he is considering buying pre sliced product from ████ primarily because his machines are beginning to get ratty.  He either has to invest and modernize them, or execute plan B and get pre slice.

d)  Half of the California system is Franchise and half are company owned (by the Martin Family).  I think there are like 6 total Franchisees in California, including Richard Gore. They are very long term Franchisees for the most part.  Richard manages the corporate stores and the Franchise stores.  In general they have a much more liberal menu than the family does in their stores.  Customer service is spotty for sure.  They also do not believe in a trim neat appearance on the ham faces.  Georgia is really the only operator that is picky about that, but California is particularly messy....  They still generally get high marks on product quality from their customers.  Georgia and California consistently rate highest for Brand strength and product quality.

e)  Richard has never believed in Alternative Distribution.  As far as I am aware he has never done holiday kiosks or otherwise sold product in any grocery store.  He also has never gotten behind the boneless ham as far as I am aware.   His stores are like prepared food stores that sell ham (more like a Boston Market sort of thing).

## C.  Historical Context

Richard Martin took control of HBH California from his partner Royal Macleese in 1973.

Eventually Richard Martin's son Craig would take the business.  By the mid 1980's Richard Gore who was an employee with HBH in California and soon to be a franchisee, began to take the helm from Craig Martin.  Richard was pretty much in command of the business for the Martins from the 1990's onward.

Richard is very creative, very volatile, and very smart.  Through the years he has threatened lawsuits and filed lawsuits against the family.  The first time was in the 1980's against both the Schmidt family as the seller of the proprietary slicing machines he was buying, and as a co-defendant the Farbolin Family in Georgia because we were actually building the machines that the Michigan family was selling to California.   When that suit was resolved the Georgia company refused to build or supply machines to California without indemnity from Michigan and or California.

The second time Richard sued the Board was in the late 1990's when he discovered that the HBH family members using ████████ were getting a 3 cent a pound rebate that he was not

CONFIDENTIAL

receiving ▓Redacted▓ Richard sued ▓▓ and the Ohio family which at the time was the representative negotiating on behalf of California ▓Redacted▓ The suits were settled and Ohio stopped representing California with the suppliers!

There was a period from the late 1990's to the early 2000's when Richard participated with the family members on Trademark committees and new product R&D committees where things seemed to be going relatively well between California and the Family.

In 2006 Steve McHugh left the HBH Ltd. Partnership Board and appointed Richard Gore as his representative along with the other three family members.  The relationship between the McHugh family and the other three Hoenselaar families was terribly strained at that time, and Richards marching orders were to basically attack on all fronts.  He did not seem to have any specific agenda at the time other than to wreck utter chaos on the entire licensing body.  He was very successful.

From Richards chair on the board, he threatened countless lawsuits (never actually filing) threatened to disclose trade secrets, threatened to block any potential action put up for a vote with legal action, etc. etc.  We had a attorney at every meeting to take notes, the collective family members had to respond to an endless stream of accusations whether it was on internet activity, funds spent at the LP level, supplier relationships and the right for Licensees to operate autonomously without noticing him on every move, etc. etc.

It was an awful time and the time was utterly wasted on almost ALL efforts beyond those that were taking place in the individual Licensee operations.

The atmosphere was so caustic, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓  In 2009 I finally resorted to blocking Richards' emails.  He would send endless emails in the middle of the night that were barely understandable.

I put Chuck Bengochea in my Board seat and left the Board.  Best move I ever made.  I was the lighting rode for MOST of Richards (and Steve's) wrath.   Chuck was in the Board seat for Georgia for a little more than a year.  It was not a successful term for Chuck.  We both decided that perhaps someone else could better manage the chaos out of the Board and handle Richard in a way that would calm things down.

I appointed Vaughan Curtis as the Georgia Board member at the HBH Ltd. Board.  Vaughan proceeded to dismantle Richards' ability to pit the families against each other.  The fact that Vaughan was an attorney, and could calm Lou and Craig when Richard would make legal threats, made a huge difference.  Vaughan just knew how to unplug Richard.  Slowly things began to calm down.

CONFIDENTIAL

Richard became less and less relevant and less and less able to create chaos. Ultimately, Steve McHugh sold out to Georgia and Richard immediately lost his seat on the Board. (2012). His 6 years on the Board marked the all-time low point of the dysfunction in the HB system. However bad the family was over the years, it paled by comparison to what happened with Richard on the Board.

After Steve was bought out, Richard pretty quickly had regrets about the path he had taken. He told David Mayberry he felt "Used" by Steve. He was put on the Board to seek vengeance for Steve's perceived slights by the family, and he did it with gusto. He has since that time tried to make amends. He is not a bad person, but he is very unpredictable and very volatile. Well beyond the bounds of the normal business conduct that would fall under those descriptors.... You would be unprepared for his emails from that time no matter how much I tried to prepare you.

In any case, I believe that Richard wants today, and at his heart has always wanted to feel a part of the family. Not a 'licensee' or franchisee, but a part of the business. He has done a reasonably good job in California. The repeated consumer research we have done in California shows a very strong brand. He has typically held his prices to some of the lowest in the national system while certainly battling some of the most competitive conditions and in one of the most expensive retail markets in the country without a doubt.

I think he is older and wiser. I think whether he stays or he goes, he wants it to be in a positive way. The entertainment value of battling the segments of the family I believe has totally lost its charm for him.

The consolidation means that for the first time in our entire history we can try to create a common consumer experience under the Trademarks. This can and should be our focus in the coming years. The fallout of Richards' extreme contentiousness was that he has always been left TOTALLY on his own. He was always so busy attacking the family , we never got around to checking out what he was doing. He has operated pretty much since the inception of the business in the early 70's, as a COMPLETE island.

Any effort to bring the concept under any sort of oversight I suspect will be very difficult for Richard.

If you talk to him, he appears to be very knowledgeable on the business, and in many respects he is. But Richard has a VERY short attention span. He is not disciplined in terms of his execution of things. He likes to create and do new and different things and he has a very good mind with respect to food. He is not however a disciplined operator and it shows in his business at times. Customer service is not consistent and there have always been food safety

HBHUSA0011933

concerns.  Those concerns were validated twice in the past 3 years with high bug counts in his fresh side dishes.

The new contract gave HBH LLC a very strong ability to ultimately bring California into the fold to a national system.   Considering this will constitute a 180 degree turn to how things have been done, it will not be an easy road for Richard or his Licensor.

He is a smart man.   If the future is painted to him with clarity, he may very well decide to seek another alternative.   If articulated carefully and thoughtfully, the inevitable future for the business is impossible to argue with.  The national system must come together operationally and function consistently for the consumer and the health of the Brand.

### D.  Basics of the California License Agreement Terms.

The contract executed late April 2015 is relatively tight.   The relationship has evolved over time as have California's rights.  Considering however the very long time frame and the several agreements we have had, this new agreement is superb, and a big improvement over the last one. (which was by the way an enormous improvement over the original one!).

There is a strong line of logic throughout the contract that references the Licensor's right to insist on a uniform method across the national franchise. 'The System" as a defined term, and the Licensors right to insist on uniformity to strengthen the national franchise is very clear and very consistent throughout.

A.  Channel Rights :

HoneyBaked Outlets : 1800 sq.ft. plus retail stores primarily identified by TM's selling Finished hams and other Branded Products.  (Exclusive right in state of California)

Temporary HoneyBaked Outlets : Seasonal kiosks located in malls/grocery stores that have been specifically approved in writing by Licensor

Mail Order Transactions : orders that require shipment of food to customers placing orders through HoneyBaked Outlets, print catalogs, or online catalogs accessible on Internet websites with domain names that have been approve by Licensor.(exclusive as long as they don't solicit outside of state, etc etc).

Presence on National Website ONLY at domain names approved by Licensor, domain names owned by Licensor and in compliance with rules required by Licensor.   The web/mail order rights for California grew out of a contract that had no clear rights here…. This part of the

California contract is sticky and a bit unfortunate, but it came through 40 plus years of operating under the TM's , as the web was created as a channel underneath us.  No avoiding the difficulties here.

NO right to sell Wholesale

Licensor retains right to all things under TM's outside California, but ALSO retains the right to INSIDE California to sell through channels other than HoneyBaked Outlets, to advertise or authorize others to advertise INSIDE the territory, and to optimize national website inside his territory.

Licensor reserves the right to advertise market and sell Branded Products through Non HoneyBaked Outlets within California.  If Licensor sells Bone in hams, boneless hams or turkey breasts the royalty rate drops from 3% to 2.75%.

B)      Control of Product Sales:

Spec Products are products designated by Licensor which must be offered under TM's and only according to defined product specifications, and specified suppliers.  As long as 51% of national system carries them, California licensee must as well.

Licensor has right to approve Supply contract with any Supplier of a Spec Product.

Branded Products are products that the TM's can be used on.  Licensor can modify at their sold discretion what the TM's are used on.  Licensee must request TM to go on a product in writing.

Non Branded Products can be sold as seen on Exhibit C, but Licensor maintains the right to remove a product as a non-branded product in its sole discretion through written notice to Licensee.

C)      Store design and Signage:

As long as "Minimum Outlets" have made the change being recommended (35% of national system), the California Licensee has one year to implement change, or 2 years from when the change was first asked for.  Licensee must comply to Standards Manual.  Licensee can only display marks and symbols approved by Licensor.  Licensee agrees to abide by standards of Licensor and changes Licensor may ask for from time to time to protect and enhance the national "System".  Licensor may request upgrading the image of the HoneyBaked Outlets in order to maintain an appearance of national identity. (Licensee have 2 years from time first requirement of alteration to any HoneyBaked Outlet.

HBHUSA0011935

CONFIDENTIAL

**D)** **Misc. Items :**

#1. Licensor can inspect the facilities of the Licensee with normal business hours, including product or facility testing.   Licensor can also request to inspect the records of the Licensee with 48 hours notice.

#2.   Licensor has the First Right of Refusal for any bona fide offer made to Licensee.

#3.   Licensor has the right to approve Sub License agreement forms.  We should in fact have the current forms.

#4.   Licensor is required to provide Licensee with semi-annual updates regarding system wide initiatives provided the Licensor shall have the right to discontinue such updates at any time.

HBHUSA0011936

# EXHIBIT 22

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL**
Linda Van Rees  Volume II on 06/29/2021

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE CENTRAL DISTRICT OF CALIFORNIA
 2                     SOUTHERN DIVISION

 3   HONEY BAKED HAM, INC.,      §
                                 § CASE NO.
 4                               § 8:19-cv-01528-JVS (DFM)
     Plaintiff &                 §
 5   Counterclaim-Defendant,     §
                                 §
 6       vs.                     §
                                 §
 7                               §
     HONEY BAKED HAM COMPANY,    §
 8   LLC, et al.,                §
                                 §
 9                               §
     Defendants &               §
10   Counterclaim-Plaintiffs.    §
                                 §
11   ~~~~~~~~~~~~~~~~~~~~~~~~~

12              VIDEOTAPED DEPOSITION OF
                    LINDA Van REES
13                    VOLUME II

14
                      10:05 a.m.
15        Tuesday, the 29th day of June 2021

16
                     Suite 2800
17            1100 Peachtree Street, NE
                  Atlanta, Georgia
18

19

20
         Blanche J. Dugas, CRR, RPR, CCR No. B-2290
21

22

23

24

25
```

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL**
Linda Van Rees  Volume II on 06/29/2021                    Page 230

1   about having the -- ensure that our California

2   partner.  California partner, you're referring to the

3   licensee in the license agreement; is that right?

4       A.   The California licensee, yes.

5       Q.   And, "To ensure that our California partner

6   has the same tools that the national system has in

7   terms of defining food standards."

8            So what was done to ensure that that took

9   place?

10      A.   Post-consolidation, is that your question,

11  post --

12      Q.   Well, I guess post this memo.

13      A.   There were phone calls, face-to-face

14  meetings, and documents exchanged with respect to the

15  federal and state guidelines, and we also had as a

16  part of this was the EcoSure testing.  So there were

17  both the guidelines and there was the program, the

18  microbiological testing program that all of the USA

19  stores were subject to, and they were, at this point,

20  not subject to -- California was not doing this.

21      Q.   So did you want to ensure that California

22  had the same tools as your franchisees had with regard

23  to food safe standards?

24      A.   We were going to provide for them the tools

25  that we had provided for the franchise system.  As a

1   licensee, he had -- he would develop his own food

2   safety protocol as a licensee.  For the franchisees,

3   we developed it.  Giving him our tools was the way of

4   going above and beyond our obligations to try to help

5   him in both the microbiological testing, which I think

6   was the primary issue here, and also the -- just

7   ensuring that he was abiding by the federal and the

8   state regulations.

9        **Q.   So if I understand what you said correctly,**

10  **so basically when it comes to franchisees, you tell**

11  **them everything that they have to do with regard to**

12  **food safety, kind of on a micromanaging basis; is that**

13  **right?**

14       A.   With franchisees we have -- it's a much

15  tighter relationship with respect to our

16  responsibilities and our -- I mean, if you read the

17  contracts, it's a typical franchise relationship as it

18  is with California and their franchisees --

19       **Q.   Right.**

20       A.   -- where you basically dictate the standard,

21  you provide the materials, the training materials and

22  everything else.

23            With a licensee, licensees are basically to

24  self-regulate.  You have to follow the state with

25  respect to -- we set out the standard in the contract,

1    and then they have to meet that standard.  With the

2    licensee, we don't have to provide all of that.

3    That's not the way the license relationship works.

4        Q.   And did you have that same self-regulation

5    relationship with California and with Japan when you

6    had a Japanese licensee?

7        A.   We had -- yes.  It was very similar.  We set

8    out the standard in the contract.  So the contract

9    would say these are the marks you have to hit, and how

10   you get there, as a licensee, is up to you.  With a

11   franchisee, how you get there, we dictate how you get

12   there.

13       Q.   I understand.

14            So turning to the next page, and the Bates

15   number at the bottom corner is 469, so under

16   eCommerce, front-end, solve for structural changes, so

17   that's No. 3 here.  And I apologize, this print is

18   rather small.

19       A.   Yeah.  I may actually need glasses at some

20   point.

21       Q.   Yeah, I'm straining.  But I'll read it to

22   you.  But --

23       A.   No, I can read it.

24       Q.   If you can't see it, and if you need

25   glasses, let me know and we can do whatever you need

1    sentence here, "I know he is ours, but I asked Jo Ann

2    to distance us from them if at all possible in the

3    messaging"?

4       A.   Trying to articulate to the customers that

5    Honey Baked USA and Honey Baked California, this is

6    always very difficult.  How can we articulate to them

7    that this is us but it is a separate operation.  It's

8    very, very difficult for customers to get their head

9    around that.

10      Q.   So now we're going to turn our attention to

11   after Easter.  At some point after the events of

12   Easter 2020, did you consider terminating the

13   California franchise or let's call it license

14   agreement since you distinguish it as so?

15      A.   In our counter-complaint.  It was a part of

16   our counter-complaint.

17      Q.   Did you consider terminating them

18   immediately for health and safety violations?

19      A.   We -- it was only in the counter-complaint

20   that we said we would terminate them immediately.

21      Q.   Did you ever immediately terminate the

22   California license?

23      A.   No.

24      Q.   And did -- what -- and you have sued to

25   terminate the California franchise; correct?

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL**
Linda Van Rees  Volume II on 06/29/2021                          Page 394

```
 1   all of those things.
 2       Q.   And did you provide cure rights to the
 3   licensee for all of the defaults that you just listed?
 4       A.   Repeatedly.
 5       Q.   And the cure rights were all set forth in
 6   what documents?
 7       A.   The license agreement would -- would tell
 8   you how much time he has to cure it.
 9       Q.   Did you ever send a notice to California
10   licensees stating a date on which the franchise or
11   license terminates because of a default?
12       A.   I'm not sure I understand the question.
13       Q.   Did you ever send a notice to the California
14   licensee stating a date on which the license is to
15   terminate due to a default?
16       A.   I believe that the counter-complaint seeks
17   that relief from the Court.
18       Q.   And does the counter-complaint state a
19   date --
20       A.   I don't know.
21       Q.   -- for the termination?
22       A.   I don't know.  I have to check the
23   counter-complaint.
24       Q.   Is there anyplace else that a date of
25   termination of the license agreement was provided to
```

1    the licensee in California?

2        A.   Not that I'm aware of.

3        Q.   Of the issues that you raise with regard to

4    Easter 2020, are any of those currently uncured, as

5    far as you know?

6        A.   Yes.

7        Q.   Specifically what?

8        A.   He's continuing to ship in improper packages

9    through third-party carriers.  He's continuing not to

10   label.  He's -- he doesn't have allergens.  He's

11   continuing to ship, out of Anaheim, side dishes that

12   he's making.  He's in violation of the July 22nd

13   letter that I just went through, as far as I could

14   tell, as much as he was at Easter.

15       Q.   Do you -- does your company maintain

16   standards for packaging?

17       A.   Yes.

18       Q.   And where were those set forth?

19       A.   You can ask Greg Hundt how we package our

20   products.

21       Q.   Okay.  As far as you know, where are they?

22       A.   Where are the what?

23       Q.   The packaging standards for your company.

24       A.   Greg Hundt can tell you.

25       Q.   You don't know, though?

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL**
Linda Van Rees  Volume II on 06/29/2021                    Page 415

1    Q.   Okay.

2    A.   That's confusing.  I can show you.

3         You can see it on Bates stamp 3016.  That's

4    how we solved that problem right there.  So that's the

5    Duffy graphics.

6    Q.   Uh-huh (affirmative).

7    A.   With the Honey Baked, and that was an

8    acceptable sign and that's a sign that's used a lot.

9    Q.   I see.  Okay.

10   A.   Yep.

11        (Plaintiff's Exhibit 146 was marked

12    for identification.)

13   Q.   (By Mr. Solish)  Did -- did you hire

14   investigators to go through the trash at Honey Baked

15   stores in California?

16   A.   Yes.

17   Q.   And why did you do that?

18   A.   We were looking for boxes from unauthorized

19   vendors.

20   Q.   And so what did you instruct these

21   investigators to do?

22   A.   To look at the public areas behind the

23   store.

24   Q.   And were you trying to find violations of

25   the license agreement in going through the trash?

```
 1      A.   This would be from Tuskin, yes.

 2      Q.   And was there -- did these people that you

 3   hired go through the trash during regular business

 4   hours or when did they -- when did they do this?

 5      A.   I think they went at night.  I don't know

 6   when they went, but I think they went at night.

 7      Q.   And these investigators that went through

 8   the trash in California, was any advance warning given

 9   to the California licensee?

10      A.   No.

11           (Plaintiff's Exhibit 148 was marked

12        for identification.)

13      Q.   (By Mr. Solish)  So was Evangelia Pelonis a

14   lawyer for your company?

15      A.   I don't recognize that name.

16      Q.   Did you cause a lawyer to report to the

17   California Department of Environmental Health a

18   complaint about your California licensee?

19      A.   In the wake of the Easter problems, yes.

20      Q.   And what was your intent in making the

21   report to the California Environmental Health

22   Division?

23      A.   To ask them to look into it because we were

24   not getting cooperation from California.

25           (Plaintiff's Exhibit 149 was marked
```

 1   audits, review of exterior signage, secret shopping in

 2   stores, and items I want to address when I go out and

 3   see a number of his stores."

 4          So was this plan that Mr. Keil was proposing

 5   in line with what you were wanting him to do at this

 6   point?

 7      A.   I think it's consistent with everything that

 8   was discussed, yes.

 9      Q.   And so your e-mail that he's responding to

10   here says that you're asking him for a specific plan

11   going out to California; is that right?

12      A.   Yeah, I'm asking what his plans were.  Yeah.

13      Q.   And then you're instructing him to visit the

14   front retail area of every" -- capitalized -- "store

15   in California unannounced and unknown to California,

16   create a checklist for what we are looking for."

17          That's what you were telling Mr. Keil to do;

18   correct?

19      A.   I was suggesting that, yes.

20      Q.   And then you say, "Do a sampling of products

21   from the sampling of stores for buzz including those

22   stores that registered high on the test earlier this

23   year."  That's something else you wanted him to do?

24      A.   Yes.

25      Q.   And then moving down a little bit further,

1    STATE OF GEORGIA:

2    COUNTY OF FULTON:

3

4          I hereby certify that the foregoing

5          transcript was reported, as stated in the

6          caption, and the questions and answers

7          thereto were reduced to typewriting under

8          my direction; that the foregoing pages

9          represent a true, complete, and correct

10         transcript of the evidence given upon said

11         hearing, and I further certify that I am

12         not of kin or counsel to the parties in the

13         case; am not in the employ of counsel for

14         any of said parties; nor am I in any way

15         interested in the result of said case.

16

17

18

19

20         BLANCHE J. DUGAS, CCR-B-2290

21

22

23

24

25

# EXHIBIT 23

 1              IN THE UNITED STATES DISTRICT COURT
           FOR THE CENTRAL DISTRICT OF CALIFORNIA
 2                      SOUTHERN DIVISION

 3   HONEY BAKED HAM, INC.,      §
                                 § CASE NO.
 4                               § 8:19-cv-01528-JVS (DFM)
     Plaintiff &                 §
 5   Counterclaim-Defendant,     §
                                 §
 6        vs.                    §
                                 §
 7                               §
     HONEY BAKED HAM COMPANY,    §
 8   LLC, et al.,                §
                                 §
 9                               §
     Defendants &               §
10   Counterclaim-Plaintiffs.    §
                                 §
11   ~~~~~~~~~~~~~~~~~~~~~~~~~

12           VIDEOTAPED 30(b)(6) DEPOSITION OF
                    JOHN DAVID JONES
13

14                    3:27 p.m.
           Thursday, the 1st day of July 2021
15

16                   Suite 2800
               1100 Peachtree Street, NE
17                 Atlanta, Georgia

18

19

20      Blanche J. Dugas, CRR, RPR, CCR No. B-2290

21

22

23

24

25

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL**

```
 1   financial risk in the business.

 2        Q.    And didn't Linda van Rees tell you that she

 3   thought that California was hiding something and that

 4   they were giving improper information to the company?

 5        A.    No, she never -- she never said that.  I

 6   think during the course -- you know, during the course

 7   of the BDO audit, as we were getting some of the

 8   more -- some of the limited information from

 9   California that had been requested based on the store

10   selections that BDO had landed on in concert with our

11   input, and then understanding that information

12   relative to what had been reported to us from a

13   royalty perspective, and then also the shipments from

14   Smithfield, who is the ham provider.  We were -- we

15   were trying to connect all of the necessary dots to

16   try to understand were, in fact, the royalties, you

17   know, accurate, timely and complete with respect to

18   going back to 2015.

19        Q.    And as of today, how much has California

20   underpaid in royalties that are due to your company?

21        A.    We weren't able to conclude the audit, so

22   that was -- that was inconclusive.

23        Q.    As of now, you don't know whether they owe

24   money or not that they haven't paid?

25        A.    I -- I do not have any conclusion that they
```

1   either -- that they've either overpaid us or underpaid

2   us.

3        Q.    What caused you to -- to -- to look into the

4   number of hams that were purchased by California from

5   Smithfield?

6        A.    So a couple things there.  One is, you know,

7   I had mentioned before that there's the bone-in ham

8   royalty that California owes us on a monthly basis

9   until we get to the end of the year, then they do 3

10  percent against their sales, so they sort of true-up

11  the royalty to that 3 percent level.

12            So we wanted to understand based on their --

13  their ham purchases were we able to see from their ham

14  purchased data and the fact that they were paying us

15  this monthly royalty, did they actually agree to the

16  hams that Smithfield was saying that they had shipped

17  to them from 2015 through -- gosh, I believe early

18  20 -- 2020.

19            The -- the other reason why we were looking

20  at the Smithfield data and trying to understand that

21  as well was we were trying to look at individual store

22  information, which, if you think about the royalty,

23  the royalty is the sum of all individual stores, and

24  really which stores do we want to audit, in particular

25  relative to the BDO audit or look into where we were

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL**

```
 1    like many states do.

 2              MR. REEVES:  Object to form.

 3              THE WITNESS:  I am -- I'm not aware.

 4       I am not versed in Ohio state minimum wage

 5       laws to be able to answer that question.

 6       Q.   (By Mr. Solish)  And by the way, should --

 7    is shipping the sale of a product?

 8       A.   Yes.  So typically the way we -- the way we

 9    go to market at Honey Baked Ham, LLC is we charge the

10    customer both for the price of the product, whether

11    it's a bundle or an individual ham, and then we --

12    also, there's an add-on charge for the cost of for

13    freight as well.  And typically that charge doesn't

14    cover the entire cost of freight, so we end up losing

15    money on freight.

16       Q.   Is freight a product being sold to a

17    customer?

18       A.   It is sold in conjunction with the product,

19    so --

20       Q.   But it's not a product; right?

21       A.   It's not a product, no.  It's a -- it's the

22    service that gets the product there.  But the customer

23    is paying, like, $19.99 plus the price of their

24    bundle.

25       Q.   And what were the annual revenues of the
```

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL**

30(b)(6)　　　　　　　　John David Jones on 07/01/2021　　　　　　　　Page 53



```
 1    California licensee?

 2         A.   My understanding -- the annual -- so the

 3    system sales for California are about $52 million, but

 4    I think $18 million of that is their franchise

 5    business.  So you really have to back -- back that

 6    out.  So, you know, if you want to call it 33,

 7    $34 million, which is the revenue that they would

 8    really account for on their P&L.

 9         Q.   And you understand that your company has

10    filed a lawsuit to terminate the California franchise?

11         A.   Yes, I'm aware of the lawsuits.

12         Q.   And you understand that if you do terminate

13    the California franchise, that under the license

14    agreement, the franchise system becomes your -- your

15    company's property.

16         A.   Yes, I'm aware of that.
```

```
25         Q.   Have you done an evaluation of California's
```

Ex. 23 Page 537

**HONEY BAKED HAM, INC. vs HONEY BAKED HAM COMPANY, LLC, ET AL**

```
 1   STATE OF GEORGIA:

 2   COUNTY OF FULTON:

 3

 4        I hereby certify that the foregoing

 5        transcript was reported, as stated in the

 6        caption, and the questions and answers

 7        thereto were reduced to typewriting under

 8        my direction; that the foregoing pages

 9        represent a true, complete, and correct

10        transcript of the evidence given upon said

11        hearing, and I further certify that I am

12        not of kin or counsel to the parties in the

13        case; am not in the employ of counsel for

14        any of said parties; nor am I in any way

15        interested in the result of said case.

16

17

18

19

20        BLANCHE J. DUGAS, CCR-B-2290

21

22

23

24

25
```

Ex. 23 Page 538