Jonathan Solish (CA Bar No. 67609)
Jonathan.solish@bclplaw.com
Glenn J. Plattner (CA Bar No. 137454)
Glenn.plattner@bclplaw.com
Alfred Shaumyan (CA Bar No. 266908)
Alfred.shaumyan@bclplaw.com
David J. Root (CA Bar No. 307251)
David.root@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
120 Broadway, Suite 300
Santa Monica, California 90401-2386
Telephone:    (310) 576-2100
Facsimile:    (310) 576-2200

Attorneys for Plaintiff and Counterclaim Defendant
HONEY BAKED HAM INC.

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| HONEY BAKED HAM INC., <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> HONEY BAKED HAM COMPANY LLC, et al., <br><br> Defendants/Counterclaim Plaintiffs. | Case No.:8:19-cv-01528-JVS (DFMx) <br><br> Judge: Hon. James V. Selna <br><br> **HONEY BAKED HAM INC.'S REQUEST FOR ORAL ARGUMENT REGARDING SUMMARY JUDGMENT AS TO:** <br><br> **(1) Counterclaim Counts XI and XII (Declaratory Relief regarding Termination);** <br><br> **(2) Second Amended Complaint Counts I, II, and III (Collateral Rights); and** <br><br> **(3) Counterclaim Counts V, VIII and X (Domain Name)** |

## I. Counterclaim Counts XI and XII (Declaratory Relief regarding Termination)

The Tentative defers consideration of the franchise termination issue until a determination of the fact issues on breach of contract, citing the right to decline to consider declaratory judgment, even where there is a justiciable controversy. [Tentative, at p. 18.] At trial, there would be no right to an immediate termination as of March of 2020 because there was no notice of immediate termination. There could be no right to terminate with a right to cure at trial, because there has never been a statutorily compliant notice to cure.

There are two ways a franchise may be terminated under the California Franchise Relations Act. Business & Professions Code § 20021 allows for an "immediate *notice of termination*." (Emphasis added). "**In order to terminate** a franchise without an opportunity to cure, the franchisor **must provide 'immediate notice of termination**.'" *Tikiz Franchising, LLC v. Piddington*, 2017 WL 8780761, at *8 (S.D. Fla. Aug. 1, 2017) (applying the CFRA) (emphasis added). Count XII should be dismissed now because it is undisputed that there was never an immediate notice of termination.

Alternatively, a franchise may be terminated by providing a formal notice with an opportunity to cure, stating the specific date of termination if there is no substantial compliance. *See* Bus. & Prof. Code §§ 20020, 20030. "[T]he CFRA requires a notice of termination regardless of whether the franchisor terminates the agreement with or without the opportunity to cure." *Tikiz,* 2017 WL 8780761, at *8.

Honey Baked USA expressly conceded in its Opposition that the "Plaintiff has received no notice of termination, compliant or otherwise…." [Dkt. 194, 2:11-13 (emphasis in original).] A formal notice of termination is a prerequisite to a right to terminate because a franchisor cannot terminate on grounds that were not stated in the notice of termination. *See Am. Isuzu Motors, Inc. v. New Motor Vehicle Bd.*, 186 Cal. App. 3d 464, 477 (1986) (franchisor is limited to the grounds stated in the notice to terminate).

As this Court ruled five months ago, where there is a right to cure and it is

uncontested that no such right was given, summary adjudication is warranted. *See Store SPE LA Fitness Int'l, LLC,* 2021 WL 3285036 (C.D. Cal. June 30, 2021) (in the context of a commercial lease). The mandatory notices under the protective Franchise Relations Act ensure that a franchisee has clear notice that its franchise is in jeopardy, what must be done to avert termination, and the effective date of termination. Here, termination hangs like the Sword of Damocles over Honey Baked California, but it shouldn't because no statutorily-compliant notice of termination was ever provided.

Honey Baked California has to order millions of dollars of branded products for every holiday [Dkt. 187-3, Dec. of R. Gore, ¶ 46] and has 36 Honey Baked stores in California that require re-investment and renovation. The Franchise Relations Act sets up a specific notice mechanism that allows a franchisee to know where it stands on defaults and cure rights at all times. If a ruling on termination is deferred, Honey Baked California must operate with the knowledge that if its franchise is terminated at trial, it will immediately lose the right to sell any inventory branded with the Honey Baked brand. Honey Baked USA admittedly failed to provide the notice required by the CFRA, making the franchise termination issue ripe for immediate resolution and eliminating weeks of unnecessary trial testimony.

## II.     Second Amended Complaint Counts I, II, and III ("Collateral Rights")

The Tentative concludes that, as a matter of law, Honey Baked USA has the right to license other licensees to sell to unsolicited customers in California. [p. 9.] This interpretation appears to be based on an assumption that the right of the "**L**icensee" to sell to customers in California by Mail Order is a right granted to *all* Honey Baked licensees. "Licensee," however is defined in the first sentence of the License Agreement ("Agreement") to mean "HONEY BAKED HAM, INC., a California corporation," the legal name of Honey Baked California. [Dkt. 187-5, Ex. 1, p. 11.]

Section 2(a) says that the Licen*see* may engage in Mail Order Transactions outside of California, but only "to the extent permitted in Section 6(b)(xi)." Section 2(b)(i), "Licen*sor's* Reserved Rights, Rights Retained," says that the Licen*sor* retains the right to

1  "authorize Mail Order Transactions to customers located outside of the Territory *and to*
2  *the extent permitted in section 6(b)(xi), to customers located inside the Territory. . . .*" (Emphasis
3  added).  Sections 2(a) and 2(b) provide that the right of the Licensor and the Licensee
4  would be spelled out in § 6(b)(xi).

5  In the final version of § 6(b)(xi), the right stated is for the **Licensee**—defined as
6  Honey Baked California—and established only a right to sell *outside of* "**the** Territory."
7  "Territory shall mean the entire state of California." [Dkt. 187-5, Ex. 1, § 1(d).]  The
8  express right of the Licensee, Honey Baked California, to sell *outside* of the Territory—
9  the state of California—is *not* a grant to Honey Baked USA or anyone else to sell by
10 Mail Order *inside* the exclusive California territory.  The only right to sell outside of an
11 assigned territory that appears in § 6(b)(xi) is the right of one specific Licensee to sell
12 *outside of California*.  It is further undisputed that Honey Baked California is the only
13 Honey Baked licensee.  [*See* Resp. to UF # 117, Dkt. 194-1 at p. 43.]

14 The clever use of the made-up phrase "collateral rights," which appears nowhere
15 in the Agreement, suggests some sort of implied reciprocal right, but the right of one
16 specific Licensee, Honey Baked California, to sell *outside* of California, ought not to give
17 rise to some sort of implied right for Honey Baked USA or anyone else to sell by Mail
18 Order *inside* of the exclusive California territory.  Section 6(b)(xi) does not state the right
19 of anyone to make Mail Order Transactions "inside the Territory."  The *Licensor's* right
20 to make Mail Order Transactions inside California to the extent permitted in § 6(b)(xi),
21 is no right at all, because § 6(b)(xi) creates no right to sell *inside* California.

22 As the Tentative states, the Court "must provisionally receive extrinsic evidence
23 regarding the meaning of the contract," to determine if a contract is "'reasonably
24 susceptible' to different meanings."  [p. 9, citing *Curry v. Moody*, 40 Cal. App. 4th 1547,
25 1552 (1995).]  Honey Baked USA asked the Court to consider extrinsic evidence in the
26 form of a draft of the Agreement.  [Dkt. 194-8, Decl. of D. Mayberry, Ex. FF at 505.]
27 That draft shows why there is no right at all for the Licensor to authorize Mail Order
28 Sales in California.  In the proposed draft of § 6(b)(xi), the Licen*sor* would have had the

express right to "**make sales** . . . in response **to unsolicited orders from consumers or orders placed by existing customers located within the Territory**." [UF 143 (emphasis added).] Had that provision remained in the Agreement, summary judgment would be warranted in favor of Honey Baked USA. But in the redline, this express right was deleted from § 6(b)(xi). The term "*Limited* Exclusive License" was changed to "*Exclusive* License" in the final version of the Agreement. [UF 175 (emphasis added).] This extrinsic evidence confirms that Honey Baked USA gave up any "collateral right" to sell into California. At a minimum, this extrinsic evidence shows that the Agreement is "reasonably susceptible" to the interpretation that Honey Baked USA has no collateral right to sell by Mail Order into the Territory.

### III. Counterclaim Counts V, VIII and X (Domain Name)

The Agreement allows Honey Baked California to use "the Proprietary Marks only at a domain name approved in writing by Licensor." [Ex. 1 § 6(c)(iv).] On May 24, 2010, the Licensor gave written approval, when it wrote "*to clarify that Licensees are licensed to use HONEYBAKED domain names*," identifying shophoneybaked.com and hbhca.com as Honey Baked California's domain names. [UF 91, 92 (emphasis added).]

In a Declaration submitted on the Preliminary Injunction, Ms. van Rees stated, "HBH has made it clear to Plaintiff that *it can continue to operate* **its own website** and online catalog at **shophoneybaked.com** and that HBH *would not interfere* with its right to operate online." [UF 228 (emphasis added).] This post-contract confirmation that shophoneybaked.com was owned by the Licensee and that Honey Baked USA had reassured it that nothing would be done to interfere with the use of that website provides extrinsic evidence that the contract provisions on preapproved domains are "reasonably susceptible' to different meanings."

Honey Baked USA may have a right to administer an orderly system, but there is now only one licensee, so that its rules are stated as rules for Honey Baked California alone. [UF 114, 117.] The new rule was made in the midst of contentious litigation and no showing has been made why ownership of a duly licensed domain name is necessary

for an orderly system.  System rules cannot impose "conditions by which a franchisor might extort its own profit at the expense of the profits of the franchisee."  *Huang v. Holiday Inns, Inc.*, 594 F.Supp. 352, 299 (C.D. Cal. 1984).

The Tentative points to a failure to show why "being required to use the domain ca.honeybaked.com instead would materially undermine [Honey Baked California's] fundamental right to engage in Mail Order Transactions."  [Tentative, at p. 17.]  The shophoneybaked.com domain name has been used with customers since 2004; its loss would cause substantial harm to Honey Baked California.  Half of Honey Baked California's Internet sales come directly from shophoneybaked.com, and not as referrals from Honey Baked USA's website.  [Dkt. 193-4, Dec. of R. Gore, ¶ 26.]  Loss of the shophoneybaked.com domain would deprive Honey Baked California of $3.9 million in annual sales.  [Dkt. 193-12, Ex. 48 at p. 904.]  That loss should create a triable issue of fact as to whether loss of the domain name undermines the fundamental right to Internet Sales.  There is no harm to Honey Baked USA because, on termination of the franchise, domain names must be assigned to the Licensor or cancelled under § 13(c)(iii).  Given the written approvals to use the domain name and the assurance in a sworn declaration that Honey Baked USA would never do anything to interfere with the use of the shophoneybaked.com domain name, the issue should be determined by the jury.

Dated:  October 19, 2021

Respectfully submitted,
**BRYAN CAVE LEIGHTON PAISNER LLP**

By: */s/ Jonathan Solish*
Jonathan Solish
Attorneys for Plaintiff
HONEY BAKED HAM INC.